UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEITH STANSELL,
MARC GONSALVES,
THOMAS HOWES,
JUDITH G. JANIS,
CHRISTOPHER T. JANIS,
GREER C. JANIS,
MICHAEL I. JANIS, and
JONATHAN N. JANIS,

      Plaintiffs,

v.                                                   CASE NO:  8:09-cv-2308-T-26MAP

REVOLUTIONARY ARMED FORCES
OF COLOMBIA (FARC), et al.,

      Defendants.
_____/

**O R D E R**

      This cause comes before the Court on Plaintiffs' Motion for Entry of Final Default Judgment on Liability and Damages and Memorandum of Law (Dkt. 228).  Defendants were all properly served with a summons and complaint and defaults have now been entered pursuant to Rule 55(a), Federal Rules of Civil Procedure, for Defendants' failure to timely respond.  After a default has been entered, in order to determine whether the moving party is entitled to a default judgement pursuant to Rule 55(b), the Court must review the sufficiency of the complaint and its underlying substantive merits.  Chudasma

v. Mazda Motor Corp., 123 F.3d 1353, 1370, n.41 (11th Cir. 1997).  In defaulting, a defendant "admit[s] the plaintiff's well-pleaded allegations of fact" for purposes of liability.  Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987).

Plaintiffs brought this action against Defendants, the Revolutionary Armed Forces of Colombia ("FARC") and its members, pursuant to the civil remedies provisions of the Anti-Terrorism Act (the "ATA"), 18 U.S.C. § 2333, which provides:

> (a) Action and jurisdiction. -- Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

On February 13, 2003, Plaintiffs Keith Stansell, Marc Gonsalves, and Thomas Howes, along with Thomas Janis, all of whom are United States Citizens, were engaged in a civilian airborne anti-narcotics mission in Colombia when FARC members opened gunfire on their United States registered aircraft, forcing it to make a crash landing.  The occupants of the plane survived the crash, but were immediately taken captive by FARC members.  FARC members shot and killed Janis[1], the pilot of the aircraft, within minutes of the landing.  FARC held Stansell, Gonsalves, and Howes hostage against their will and kept them captive in the Colombian jungle for 1,967 days.

---

[1] Janis's wife, Judith G. Janis, as personal representative of his estate, and his surviving children, Christopher T. Janis, Greer C. Janis, Michael I. Janis, and Jonathan N. Janis, join in this action on his behalf.

Plaintiffs seek damages against FARC and its members for committing acts of international terrorism or conspiring to commit acts of international terrorism or to provide material support to FARC. 28 U.S.C. § 2331(1) states that:

> (1) the term "international terrorism" means activities that--
>     (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;
>
>     (B) appear to be intended--
>         (I) to intimidate or coerce a civilian population;
>         (ii) to influence the policy of a government by intimidation or coercion; or
>         (iii) to affect the conduct of a government by mass destruction, assassination, or kidnaping; and
>
>     (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

The ATA material support statute, 8 U.S.C. § 2339B(a)(1), provides:

> Providing material support or resources to designated foreign terrorist organizations
>
> (a) Prohibited activities.--
> (1) Unlawful conduct.--Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 15 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life. To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization (as defined in subsection (g)(6), that the organization has engaged or engages in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), or that the organization has engaged or engages in

      terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989).

Plaintiffs' Complaint alleges all elements of a claim for relief under the ATA, detailing that Plaintiffs have suffered an injury by reason of an act of international terrorism outside of the United States. Plaintiffs allege specific conduct that violates 18 U.S.C. § 2331 [international terrorism], 18 U.S.C. § 2339B(a)(1) [material support of terrorists], 18 U.S.C. § 2332b [acts of terrorism transcending national boundaries], and 18 U.S.C. § 1203 [hostage taking]. They claim that they have suffered injury by reason of international terrorism, including acts dangerous to human life that are a violation of the laws of the United States, that appear to be intended to intimidate or coerce a civilian population, influence a government, or that affect the conduct of a government through kidnaping. (Dkt. 1, Complaint, ¶¶ 154-56.)

The Complaint clearly establishes Defendants' liability for performing the terrorist acts of murder and hostage taking, but also for aiding and abetting these acts, and engaging in a criminal conspiracy to commit these acts, and for providing material support to a terrorist organization. (See id. at ¶¶ 152, 153, 159.) Plaintiffs demonstrate that no sovereign immunity or act of war exceptions to the ATA apply in this instance and that this action was commenced within the four-year limitations period under 18 U.S.C. § 2335(a), the ATA statute of limitations. (Dkt. 228, pp. 4-16.) Plaintiffs also show that the Court has personal jurisdiction over Defendants that comports with due process and

that they have standing to sue in this case under Article III of the United States Constitution.  (Id. at 17-50.)

With Defendants' liability now established, the Court must determine the amount of damages to be awarded.  Where the record is sufficient, as is the case here, a court may be able to determine damages without a hearing.  See Securities. & Exchange Comm'n v. Smyth, 420 F.3d 1225, 1231-31 n.13 (11th Cir. 2005).  Plaintiffs submit detailed affidavits describing the nature and extent of their damages.  Stansell, Gonsalves, and Howes describe 1,967 days in captivity that included beatings, psychological torture, constant threats of execution, malnourishment, being chained at the neck like an animal, grueling jungle marches, disease, lack of medical care, and other severe emotional and physical distress.  They also assert continued, permanent suffering of damages.  (Dkt. 229, Exs. 1-8.)  They each request a compensatory award of $19,670,000 ($10,000 per day in captivity), plus an additional lump sum factor of an amount based upon the horrific injury in fact, and trebling of the total award pursuant to 18 U.S.C. § 2333.

The requested compensatory award is appropriate inasmuch as federal courts have developed a damage calculation standard that grants former hostages roughly $10,000 per day of captivity in pain and suffering damages.  See Kilburn v. Islamic Republic of Iran, ___ F. Supp. 2d ___, 2010 WL 1198561 (D.D.C. 2010); Price v Socialist People's Libyan, 384 F. Supp. 2d. 120, 135 (D.D.C. 2005); Levin v Islamic Republic of Iran, 529 F. Supp. 2d. 1, 21 (D.D.C. 2007).  Further, in cases where the pain and suffering is heightened by torturous acts, such as this one, courts have added a lump sum award to the

*per diem* amount, in order to fully compensate the victim.  Levin, 529 F. Supp. 2d. at p.20.  An additional lump sum amount of $5,000,000 (or approximately $1,000,000 for each year in captivity) is also an appropriate award for Stansell, Gonsalves, and Howes in view of the record before this Court and the line of case law on this issue.

In Levin, the court awarded the plaintiff a *per diem* amount of $3,430,000 ($10,000 multiplied by the 343 days of captivity) plus a lump sum of $15 million, in order to more fully compensate Mr. Levin for the brutal treatment he received during his captivity.  Id. at 21; see also Cronin v. Islamic Republic of Iran, 238 F. Supp. 2d 222, 234-35 (D.D.C. 2002) (court awarded lump sum of $1.2 million in compensatory damages to hostage who was held captive for four days and who suffered severe beatings during that time); Surette v. Islamic Republic of Iran, 231 F. Supp. 2d 260, 264-69 (D.D.C. 2002) (court awarded *per diem* amount of $4,440,000 plus lump sum of $1 million in compensatory damages to the estate of a hostage who was held for 14 months prior to his death); Cicippio v. Islamic Republic of Iran, 18 F. Supp. 2d 62, 70 (D.D.C. 1998) (court awarded lump sum of $6.1 million in compensatory damages to hostage who was held captive for 532 days and who suffered regular beatings); Acree v. Republic of Iraq, 271 F. Supp. 2d. 179, 219-20 (D.D.C. 2003) (awarding lump sums of $20 million, $15 million, or $10 million for the pain and suffering endured during captivity by various U.S. soldiers captured and brutally tortured by Iraq for periods of less than 50 days); Price v. Socialist People's Libyan Arab, 384 F. Supp. 2d. 120, 135-36 (D.D.C. 2005) (court

awarded an additional lump sum of $7 million for pain and suffering damages endured after captivity and into the future).

With respect to the family of Tom Janis, federal courts have frequently awarded compensatory damages to surviving spouses and children of decedent victims of terrorist acts under the ATA. In determining the appropriate award of damages for solatium, the Court may look to prior decisions awarding damages for intentional infliction of emotional distress as well as to decisions regarding solatium. See Acosta v. Islamic Republic of Iran, 574 F. Supp. 2d 15, 29 (D.D.C. 2008). While the loss suffered by a spouse is difficult to quantify, courts typically award between $8 million and $12 million for the emotional distress resulting from the death of a spouse. See Belkin v. Islamic Republic of Iran, 667 F. Supp. 2d 8 (D.D.C. 2009); See Acosta, 574 F. Supp. 2d at 30 ($8 million to wife of target of terrorist assassination); Heiser v. Islamic Republic of Iran, 466 F. Supp. 2d 229, 293 (D.D.C. 2006) (relying on solatium cases to find that range of compensatory damages for spouses is $8-12 million); Greenbaum v. Islamic Republic of Iran, 451 F. Supp. 2d 90, 107-108 (D.D.C. 2006) ($9 million to husband of woman killed by suicide bomber); Salazar v. Islamic Republic of Iran, 370 F. Supp. 2d 105, 116 (D.D.C. 2005) (awarding $10 million to the widow of a bombing victim); Kerr v. Islamic Republic of Iran, 245 F. Supp. 2d 59, 64 (D.D.C. 2003) (award of $10 million to the widow of a torture and hostage taking victim). One recent award to a spouse was for $30 million. See Estate of Bayani v. Islamic Republic of Iran, 530 F. Supp. 2d 40, 46 (D.D.C. 2007) ($30 million awarded to spouse whose husband was tortured and executed).

The court, in <u>Knox v PLO</u>, 442 F. Supp. 2d. 62, 68-70 (S.D.N.Y. 2006), concluded that $5 million (before trebling) was a reasonable award commensurate with other cases for the decedent's surviving child who was less than 2 years old when his father was murdered, and for each of his surviving surrogate step-children. See also <u>Ungar v. Palestinian Auth.</u>, 304 F. Supp. 2d 232, 273-74 (D.R.I. 2004) (awarding each of two children of terrorist victim $10 million, noting that children lost their mother at the same time they lost their father, and there was psychiatric evidence that the loss caused "psychic trauma"); <u>Smith ex. rel. Smith v. Islamic Emirate of Afghanistan</u>, 262 F. Supp. 2d 217, 239 (awarding each child of terrorist victim $3 million); <u>Kerr v. Islamic Republic of Iran</u>, 245 F. Supp. 2d 59, 64 (D.D.C. 2003) (awarding $3 million to each adult child whose father was shot in the back of the head by terrorists); <u>Weinstein v. Islamic Republic of Iran</u>, 184 F. Supp. 2d 13, 23 (D.D.C. 2002) (awarding $5 million to each adult child of a terrorism victim); <u>Higgins</u>, 2000 WL 33674311, at *9 (D.D.C. 2001) (awarding $12 million to adolescent child of victim who was kidnaped, tortured, and killed); <u>Alejandre v. Republic of Cuba</u>, 996 F. Supp. 1239, 1249 (S.D. Fla. 1997) (awarding $8 million for mental pain and suffering and loss of parental companionship and guidance to adult child for death of her father). In light of the foregoing line of case law and the damage affidavits submitted by the surviving spouse and children of Thomas Janis, it is reasonable to award non-economic damages of $12,000,000.00 to Judith Janis, as spouse, and $5,000,000.00 to each of the four surviving children (Christopher, Greer,

Michael, and Jonathan), as requested, with each award then subject to trebling under § 2333(a).

Finally, inasmuch as the FARC used profits from the manufacture and distribution of cocaine, money laundering, and extortion to support their terrorist acts, Plaintiffs are deemed crime victim judgment creditors with perfected liens on proceeds derived from these related offense criminal activities.

**ACCORDINGLY**, it is **ORDERED AND ADJUDGED**:

Plaintiffs' Motion for Entry of Final Default Judgment on Liability and Damages (Dkt. 228) is granted. Damages are awarded as follows:

1. Plaintiffs Stansell, Gonsalves, and Howes are each entitled to an award in the amount of $74,010,000.

2. Plaintiff Judith Janis is entitled to an award in the amount of $36,000,000.

3. Plaintiffs Christopher Janis, Greer Janis, Michael Janis, and Jonathan Janis are each entitled to an award of $15,000,000.

The Clerk shall enter judgment accordingly and close this case.

**DONE AND ORDERED** at Tampa, Florida, on June 14, 2010.

    s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record