UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Tampa Division

KEITH STANSELL,
MARC GONSALVES,
THOMAS HOWES,
JUDITH G. JANIS,
CHRISTOPHER T. JANIS,
GREER C. JANIS, MICHAEL I. JANIS,
and JONATHAN N. JANIS,

     *Plaintiffs*,

v.

REVOLUTIONARY ARMED FORCES
OF COLOMBIA (FARC), et al.,

     *Defendants*.

_____/

Case No. 8:09-CV-2308-RAL-MAP

## CLAIMANT JOSE RICAURTE DIAZ HERRERA'S MOTION FOR RELIEF FROM JUDGMENT AND RELATED ORDERS AND INCORPORATED MEMORANDUM OF LAW

JOSEPH S. ROSENBAUM, ESQ.
LAW OFFICES OF JOSEPH S. ROSENBAUM, P.A.
Grove Forest Plaza, Suit 101
2937 S.W. 27th Avenue
Miami, FL 33133-3141
Telephone: (305) 446-6099
Fax: (305) 446-6150
E-mail: jsr@rosenbaum-lunalaw.com
*Counsel For Jose Ricaurte Diaz Herrera*
[OFAC LICENSE No. FNK-785]

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................. 2

II.     MR. HERRERA'S BACKGROUND ........................................ 3

III.    THE LIMITED BASIS OF OFAC'S "DETERMINATION" ............... 4

IV.     THE PENDING FAVORABLE REVIEW OF MR. HERRERA'S ADMINISTRATIVE PETITION .... 7

V.      P&K'S IMPROPER MOTION FOR WRIT OF GARNISHMENT .......... 9

        A.     The Legal & Factual Basis for OFAC's "Determination" ................. 10

        B.     Other Misleading Legal Arguments ............................. 13

        C.     The Court's First Ghostwritten Order ......................... 15

        D.     P&K's Motion for Judgment .................................. 16

        E.     The Court's Second Ghostwritten Order ....................... 18

VI.     RULE 55(C) AND RULE 60(b) REQUIRE VACATUR ................. 19

        A.     The Court's Orders Were Obtained Through Fraud ............... 20

        B.     The Court's Orders Must Be Considered Void .................. 20

        C.     Good Cause/Extraordinary Circumstances .................... 22

CONCLUSION ................................................................. 24

LOCAL RULE 3.01(g) CERTIFICATION ........................................ 24

CERTIFICATE OF SERVICE ................................................... 24

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page**

*Al Haramain Islamic Foundation v. U.S. Dept. of Treasury,*
  585 F. Supp. 2d 1233 (D. Ore. 2008) ............................................ 5

*Austin v. Smith,*
  312 F.2d 337 (D.C. Cir. 1962) ................................................ 21

*Blois v. Friday,*
  612 F.2d 938 (5th Cir. 1980) ................................................. 21

*Burke v. Smith,*
  252 F.3d 1260 (11th Cir. 2001) .............................................. 20

*Citizens Electric Corp. v. Bituminous Fire & Marine Ins. Co.,*
  68 F.3d 1016 (7th Cir. 1995) ................................................ 14

*Compania Interamericana Export-Import, S.A. v.
  Compania Dominicana de Aviacion,*
  88 F.3d 948 (11th Cir. 1996) ................................................ 22

*Edgar v. K.L.,*
  93 F.3d 256 (7th Cir. 1996),
  cert. denied, 519 U.S. 1111 (1997) .......................................... 18

*Griffin v. Swim-Tech Corp.,*
  722 F.2d 677 (11th Cir. 1984) ............................................... 19

*Hausler v. JP Morgan Chase Bank, N.A.,*
  740 F. Supp. 2d 525 (S.D.N.Y. 2010) ......................................... 14

*Hausler v. The Republic of Cuba,*
  Case No. 09-20942-Civ-Jordan (S.D. Fla.) .................................... 14

*Hausler v. The Republic of Cuba,*
  Case No. 09-21175-Civ-Jordan (S.D. Fla.) .................................... 14

*Hertz Corp. v. Alamo Rent-a-Car, Inc.,*
  16 F.3d 1126 (11th Cir. 1994) ............................................... 21

**Cases**                                               **Page**

*Holy Land Foundation For Relief & Devel. v. Ashcroft,*
    333 F.3d 156 (D.C. Cir. 2003),
    *cert. denied,* 540 U.S. 1218 (2004) .......................................... 13

*Hugel v. McNell,*
    886 F.2d 1 (1st Cir. 1989) .................................................. 22

*In re Banco Santander Securities-Optimal Litigation,*
    732 F. Supp. 2d 1305 (S.D. Fla. 2010) .................................... 12

*In re Worldwide Web Sys., Inc.,*
    328 F.3d 1291 (11th Cir. 2003) ............................................ 21

*International Beauty Exchange, Inc. v. Tony Dollar Kingdom, Inc.,*
    199 F.R.D. 700 (S.D. Fla. 2001) .......................................... 10

*Jackson v. FIE Corp.,*
    302 F.3d 515 (5th Cir. 202) ............................................... 20

*Jackson v. People's Republic of China,*
    794 F.2d 1490 (11th Cir. 1986) ........................................ 19, 22

*Klapprott v. United States,*
    335 U.S. 601 (1949) ................................................... 19, 22

*Mennonite Bd. of Missions v. Adams,*
    462 U.S. 791 (1983) ....................................................... 7

*Mecurio International v. Stansell, et al.,*
    11th Cir. Nos. 11-11125 & 11-11690, Sept. 2, 2011 ........................ 11

*Mullane v. Central Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950) ...................................................... 21

*Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.,*
    526 U.S. 344 (1999) ...................................................... 21

*National Council of Resistance of Iran v. Dept. of State,*
    251 F.3d 192 (D.C. Cir. 2001) ............................................. 7

**Cases**                                                                                   **Page**

*Pierce v. Commercial Warehouse,*
    142 F.R.D. 687 (M.D. Fla. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Plant v. Various John Does,*
    19 F. Supp. 2d 1316 (S.D. Fla. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Plaut v. Spendthrift Farm,*
    514 U.S. 211 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*RZS Holdings AVV v. PDVSA Petroleo S.A.,*
    506 F.3d 350 (4th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Samantar v. Yousuf,*
    130 S.Ct. 2278 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Saperstein v. The Palistinian Authority,*
    Case No. 04-20225-Civ-Seitz/O'Sullivan (S.D. Fla. Sept. 29, 2008),
    *2008 U.S. Dist. LEXIS 110375* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Scanscot Shipping Services v. Metales Tracomex LTDA,*
    617 F.3d 679 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Seven Elves, Inc. v. Eskenazi,*
    635 F.2d 396 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Shipping Corp. of India Ltd. v. Jaldhi Overseas PTE Ltd.,*
    585 F.3d 58 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Simanonok v. Simanonok,*
    787 F.2d 1517 (11th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Smith v. Federal Reserve Bank of New York,*
    346 F.3d 264 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Sniadach v. Family Fin. Corp. of Bay View,*
    395 U.S. 337 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Teamsters, Chauffeurs, Warehousemen & Helpers Union v. Superline Transp. Co.,*
    953 F.2d 17 (1st Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**Cases**                                                      **Page**

*Tulsa Professional Collection Servs., Inc. v. Pope,*
    485 U.S. 478 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ungar v. The Palestinian Authority,*
    304 F. Supp. 2d 232 (D.R.I. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Varnes v. Local 91, Glass Bottle Blowers Ass'n,*
    674 F.2d 1365 (11th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Weininger v. Castro,*
    462 F. Supp. 2d 457 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Weinstein v. Islamic Republic of Iran,*
    609 F.3d (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Will v. Mich. Dept. of State Police,*
    491 U.S. 58 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Williams v. Mukasey,*
    531 F.3d 1040 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Zamora Radio, LLC v. Last FM, LTD.,*
    No. 09-20940-Civ-Torres (S.D. Fla. Sept. 30, 2010),
    *2010 U.S. Dist. LEXIS 108707* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19


**Code of Federal Regulation**

31 C.F.R. § 501.807 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

31 C.F.R. § 536.312 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

31 C.F.R. § 594 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

31 C.F.R. § 594.201(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

31 C.F.R. § 594.310 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

31 C.F.R. § 597 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

31 C.F.R. § 597.301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Page**

31 C.F.R. § 598.205(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 21

31 C.F.R. § 598.205(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

31 C.F.R. § 598.314 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4


**Federal Register**

75 FR 27118 (May 13, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

75 FR 38212 (July 10, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7


**Federal Rules of Civil Procedure**

Rule 4(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Rule 12(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Rule 55(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 19, 22

Rule 60(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

Rule 60(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Rule 60(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Rule 60(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 20

Rule 60(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19, 20, 21, 22

Rule 60(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Rule 60(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 22

Rule 69(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14, 16

**The Florida Bar**                                                                          **Page**

Rule 4-3.3(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Rule 4-3.3(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Rule 4-3.3(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10


**United States Code**

8 U.S.C. § 1182 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

8 U.S.C. § 1189 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

8 U.S.C. § 1189(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

21 U.S.C. § 1901 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

21 U.S.C. § 1904(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 455(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

28 U.S.C. § 455(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

28 U.S.C. § 455(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

28 U.S.C. § 1610, Note (P.L. 107-297, Title II, § 201(a), 116 Stat. 2337, 2339) . . . . . . . . 10, 15

28 U.S.C. § 1610, Note (P.L. 107-297, Title II, § 201(d)(2)(A), 116 Stat. 2337, 2339) . . . . . . 10

28 U.S.C. § 1610(f)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

50 U.S.C. App. 5(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

50 U.S.C. 1701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

50 U.S.C. 1702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

50 U.S.C. §§ 1701-1702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Miscellaneous**                                                                                    **Page**

AMEND. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

AMEND. V  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 13, 17

Fla. Stat. § 77.28  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 16, 24

Fla. Stat. § 670.502  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Wright, Charles Alan, 11, *Federal Practice and Procedure* § 2857 (2d ed. 1995) . . . . . . . . 19-20

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Tampa Division

KEITH STANSELL,
MARC GONSALVES,
THOMAS HOWES,
JUDITH G. JANIS,
CHRISTOPHER T. JANIS,
GREER C. JANIS, MICHAEL I. JANIS,
and JONATHAN N. JANIS,

     *Plaintiffs,*

v.

REVOLUTIONARY ARMED FORCES
OF COLOMBIA (FARC), et al.,

     *Defendants.*

Case No. 8:09-CV-2308-RAL-MAP

_____/

## CLAIMANT JOSE RICAURTE DIAZ HERRERA'S MOTION FOR RELIEF FROM JUDGMENT AND RELATED ORDERS AND INCORPORATED MEMORANDUM OF LAW

Claimant Jose Ricaurte Diaz Herrera, through undersigned counsel, respectfully moves this

Court, pursuant to Federal Rules of Civil Procedure 12(b)(5), 55(c) and 60(b)(3), (4), (5) and (6), 28

U.S.C. §§ 455(a) and (b)(1), and the Due Process and Taking Clauses of the Fifth Amendment for

an Order vacating: (1) the *ex parte* Order (DE 256) granting Plaintiffs' *ex parte Motion For Entry*

*of Judgment on Answer of Garnishee Wachovia Bank, Etc.* (DE 255); (2) the *ex parte Judgment On*

*Answer To Writ of Garnishment In a Civil Case* (DE 257); and (3) endorsed *ex parte* Order (DE 259)

affirming an *ex parte* "agreed" award of attorneys fees to garnishee Wachovia Bank.[1] Mr. Herrera

_____

[1] Mr. Herrera is separately moving for the dissolution of (1) the Court's earlier *ex parte* Order (DE 252) granting Plaintiffs' *ex parte Motion For Issuance of Writ of Garnishment For Post-Judgment Execution Proceedings and Memorandum of Law* (DE 251), and (2) the *ex parte Writ of Execution/Garnishment* (DE 253), which the Court's Order directed the Clerk of the Court to file.

further requests that the Court direct Plaintiffs' counsel, Porter & Korvik, PA. (hereinafter "P&K"), to return and deposit into the Registry of the Court the $2,006,878.84 it received pursuant to the aforementioned Judgment, plus interest since December 16, 2010. Finally, Mr. Herrera requests attorneys fees and costs under Fla. Stat. § 77.28. In support of these requests, Mr. Herrera submits the following Memorandum.

## MEMORANDUM

### I.     INTRODUCTION

Mr. Herrera seeks the vacatur of a Judgment and related orders that this Court entered, and/or directed to be entered, against him *ex parte* without notice and without service of process. These orders stripped Mr. Herrera of his title and ownership interests in of over $2 million and awarded it to the Plaintiffs and P&K. Contrary to well established Eleventh Circuit precedent, the two most lengthy of these orders were drafted entirely by P&K and submitted to the Court as "proposed" orders attached to their *ex parte* motions, none of which were ever served on Mr. Herrera. Despite the constitutional rights at stake, the Court rubber-stamped the ghostwritten proposed orders within 24 hours of their filing.

P&K based their *ex parte* motions on the *ex parte* "determination" of an administrative agency, the Treasury Department's Office of Foreign Assets Control ("OFAC"), to place Mr. Herrera on its "Specially Designated Nationals and Blocked Person's List" ("SDN List"). However, P&K's motions misrepresented both the legal and factual bases for OFAC's determination, misrepresented or grossly exaggerated the holdings of cases they did cite and failed to cite numerous Supreme Court cases that contradicted their specious arguments. The Court then violated Fed. R. Civ. P. 69(a)(1), the Florida garnishment procedures that the rule incorporated by reference and Mr. Herrera's due

process rights by never notifying him that his property rights were being subject to extinction, conducting all relevant proceedings *ex parte* and without ever serving Mr. Herrera with its orders.[2] These unconstitutional orders, obtained through the deceitful *ex parte* machinations of P&K, should be promptly vacated and case returned to the *status quo ante*.

## II.    MR. HERRERA'S BACKGROUND

Mr. Herrera is a 53 year old citizen of Colombia, whose business address and telephone number was and is readily available from publically available sources, including the City of Bogota telephone directory. *See* Affidavit of Jose Ricaurte Diaz Herrera, **Exhibit 1** (hereinafter "Herrera Aff."), at p. 5. Mr. Herrera's hotel business, Promotora Hotelera, LTDA, maintains a web site (also listing its address and telephone number) that is accessible with the click of a computer mouse through internet search engines, such as Google and Yahoo. *Id.*; *see also* **Exhibit 2.** Promotora has maintained the same office in Bogota since 1999. *Id.* at p. 3. And, Mr. Herrera has never been charged with any crime anywhere in the World. *See* Herrera Aff., p. 3.

In addition to his hotel business, Mr. Herrera owns large parcels of land in the Department of Meta, Colombia, where oil was discovered several years ago. *Id.* at pp. 1-2. Mr. Herrera has over 19 multi-million dollar contracts with Ecopetrol, Colombia's largest (and state-owned) oil company, to extract the oil from his property. *Id.* at p. 2.[3] These contracts earned Mr. Herrera over $5 million between 2009 and 2010, over $2 million of which Mr. Herrera invested through Interbolsa, S.A., the largest brokerage firm in Colombia and the only brokerage firm in Latin America trading on the

---

[2] Mr. Herrera is filing simultaneously herewith a motion to disqualify the Court under both 28 U.S.C.§ § 455(a) and (b)(1) for the conduct described in this motion.

[3] Ecopetrol is listed on the New York Stock Exchange and its SEC filings are public records availably on the internet or from the SEC's website.

New York Stock Exchange, in a mutual fund, Premium Capital Appreciation Fund COP, located in Curacao, Netherlands Antilles. *Id.* at pp. 2-3. Premium's Prospectus is available on the Internet. *See* **Exhibit 3**.

## III.   THE LIMITED BASIS OF OFAC's "DETERMINATION"

On May 6, 2010, OFAC issued a Press Release indicating that it was adding various individuals and entities to its "Specially Designated Nationals and Blocked Person's List" ("SDN List"). *See* **Exhibit 4**. Although the Press Release asserted that some of these individuals and entities had connections to a terrorist organization, the "FARC,"[4] OFAC expressly stated that "[t]oday's action ... was taken pursuant to *the Foreign Narcotics Kingpin Designation Act (Kingpin Act)*," 21 U.S.C. §§ 1901, *et seq.*, and that the individuals were only designated as "Specially Designated Narcotics Traffickers." *Id.* (emphasis added).

In the Kingpin Act, Congress empowered OFAC to block transactions of "significant foreign narcotics trafficker[s]" and those supporting such traffickers. *See* 21 U.S.C. § 1904(b). OFAC has promulgated specific regulations governing what findings it must make in order to wield the Kingpin Act to designate someone as either a "SDNT," 31 C.F.R. § 536.312, or as a "SDNTK," 31 C.F.R. § 598.314. Notes to §§ 598.314 and 536.312 provide that when OFAC has decided to issue a blocking order under the Kingpin Act, it must publish its determination in the *Federal Register* and on its SDN List with either the term "SDNT" or the term "SDNTK." *Id.* Nothing in the Kingpin Act or OFAC's Kingpin Act regulations even mention the word "terrorism," much less require OFAC to make a "determination" that the designatee is linked in any way to a terrorist organization.

---

[4] "FARC" is the acronym for the "Fuerzas Armadas Revolucionarias De Colombia" (Revolutionary Armed Forces of Colombia).

Through other statues, Congress has also empowered OFAC to block transactions involving terrorists and terrorist organizations -- in particular, the International Emergency Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1702, the Effective Death Penalty Act of 1966 ("AEDPA") [as amended by the Intelligence Reform and Terrorist Prevention Act of 2004], 8 U.S.C. §§ 1182 and 1189, and Executive Order No. 13,224, 66 Fed. Reg. 49,079 (Sept. 23, 2001). Pursuant to its authority under § 1189(a), on October 8, 1997, the Secretary of State designated the FARC as a "foreign terrorist organization."

OFAC has promulgated two similar sets of regulations governing terrorism-related designations under the AEDPA and IEEPA:  (1)  the Foreign Terrorist Organizations Sanctions Regulations, 31 C.F.R. Part 597; and (2) the Global Terrorism Sanctions Regulations, 31 C.F.R. Part 594. If OFAC determines that someone is a "foreign terrorist" or has provided support to foreign terrorist organization, OFAC must place the person on its SDN List with the identifier "FTO." *See* 31 C.F.R. § 597.301, Note.  If OFAC determines that someone is a "global terrorist" or has "assist[ed]" or provided other "support" to such an organizations, *see* 31 C.F.R. §594.201(a), OFAC must place the person on its SDN List with the identifier "SDGT." *See* 31 C.F.R. § 594.310.

Adam J. Szubin, Director of OFAC, explained the process through which blocking determinations are made in an affidavit submitted in *Al Haramain Islamic Foundation v. U.S. Dept. of Treasury*, 585 F. Supp. 2d 1233 (D. Ore. 2008).  *See* **Exhibit 5**, pp. 8-9.  After conducting an investigation, OFAC officials draft an "evidentiary memorandum" and "package" which are ultimately sent to Treasury Department and sometimes the Department of Justice for review.  After this review process, any recommended designations are presented to Director Szubin for his

signature. As indicated on the blocking memos attached to Director Szubin's affidavit, such notices expressly cite *which* statutes and regulations OFAC is relying upon for the determinations. *Id.*

As noted above, OFAC's May 6, 2010 Press Release invoked *only* its authority under the Kingpin Act. While the Press Release contained assertions about some purported links to the FARC, OFAC nonetheless based its actual blocking "determination" *solely* upon the Kingpin Act and designated the individuals and entities only as SDNTs or SDNTKs. The Press Release concluded by directing the reader to a "complete list of individuals and entities designated today" set forth on the Treasury Department's Resource Center. That list, *see* **Exhibit 6**, included Mr. Herrera's name and reflected, consistent with the Press Release, that Mr. Herrera had *only* been designated as a SDNTK. In sharp contrast, when OFAC designated the FARC, it invoked *all* its statutory authority and listed the FARC not only as a SDNTK but also as both a FTO and a SDGT. *See* **Exhibit 7**.

At the very bottom of the May 6th Press Release, under the heading "**REPORTS**," appears a link to something called "Colombian Money Laundering Network." Clicking on the link produces a flow chart with arrows leading to Mr. Herrera's name. *See* **Exhibit 8**. The flow chart purports to show "FARC Financial Fronts." However, at the top right corner, the chart only mentions the Kingpin Act as the statutory authority for its creation. There is no accompanying narrative explaining who created the chart or for what purpose.[5]

Neither before nor after designating Mr. Herrera as a SDNTK did OFAC serve him with the designation under Fed. R. Civ. P. 4(f) or notify him in any other way that it had done so. *See* Herrera Aff., at p. 3. OFAC did nothing more than publish his designation as a SDNTK (and only as a

---

[5] The chart may very well have been created by the Treasury Department's Office of Intelligence and Analysis, an entirely distinct from OFAC.

SDNTK) in the *Federal Register*. *See* 75 FR 27118 (May 13, 2010); 75 FR 38212, 38253 (July 10, 2010). Mr. Herrera first learned about the listing on May 22, 2010, when he heard it on the news or the internet. *See* Herrera Aff., at p. 4.

Where, as here, a person's address(es) are reasonably ascertainable and the government takes an action or threatens to take an action "which will affect an interest in life, liberty, or property protected by the Due Process Clause," he is entitled to service of process. *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 796 (1983) (citation omitted). OFAC's failure to personally serve Mr. Herrera, therefore, violated his right to Due Process. 462 U.S. at 798-800. *See also Tulsa Professional Collection Servs., Inc. v. Pope*, 485 U.S. 478 (1988); *Williams v. Mukasey*, 531 F.3d 1040, 1042 (9th Cir. 2008). Indeed, this type of "notice" has been found unconstitutional even for terrorist organizations. *See National Council of Resistance of Iran v. Dept. of State*, 251 F.3d 192 (D.C. Cir. 2001). Moreover, even if Mr. Herrera had been properly served, as demonstrated in Mr. Herrera's accompanying *Motion For Dissolution of Writ of Garnishment*, OFAC's regulations violate both the Warrant Clause of the Fourth Amendment and the Due Process and Takings Clauses of the Fifth Amendment.

## IV.  THE PENDING FAVORABLE REVIEW OF MR. HERRERA'S ADMINISTRATIVE PETITION

After discovering that Mr. Herrera had been placed on the SDN List, his brokerage firm, Interbolsa, told him that he would have to remove his funds from Premium Capital. *See* Herrera Aff., at p. 3. Accordingly, in June 2010, Mr. Herrera requested that the funds be sent to his account at Banco Davivienda, Colombia's third largest bank. *Id.* at pp. 2-3. On September 8, 2010, however, Mr. Herrera was informed by Premium Capital that Wachovia Bank (apparently the

intermediary bank used by Premium Capital) had blocked the attempted electronic fund transfer ("ETF") in midstream. *Id.* at pp. 3-4.

Meanwhile, in June 2010, shortly after learning that he had been placed on the SDN List, Mr. Herrera first retained counsel in the United States to contest the designation with OFAC. *Id.* at p. 4. Without waiving any constitutional objections to OFAC's conduct, Mr. Herrera, though counsel, then invoked the only administrative procedure available for challenging erroneous designations, 31 C.F.R. § 501.807, and submitted a petition to OFAC's office in Bogota, seeking reconsideration of the blocking designation. OFAC requested additional information in July 2010, which Mr. Herrera provided in October 2010. *Id.*

In February 2011, retained undersigned counsel and new Colombian counsel to take over the matter. *Id.* Since OFAC regulations require U.S. attorneys to obtain a license in order to accept fees to represent a designated person, undersigned counsel had to go through the licensing process. Counsel's license was not issued until May 12, 2011.

While counsel's license request was still pending, Mr. Herrera and his Colombian counsel met with OFAC's Regional Director at the U.S. Embassy in Bogota on April 8, 2011. *Id.* at p. 4. At one point during the interview, the Regional Director asked whether Mr. Herrera and his counsel were aware of a civil suit in the United States involving the blocked funds. *Id.* When Mr. Herrera and his counsel responded that they were unaware of any such action, the Regional Director alerted them to the instant lawsuit and indicated that the Plaintiffs had already been awarded the funds. *Id.*

In July 2011, OFAC requested a second interview with Mr. Herrera, which was conducted on July 22, 2011, again at the U.S. Embassy. *Id.* at p. 5. During the interview, Mr. Herrera and counsel answered OFAC's remaining questions and produced additional documents demonstrating

-8-

the legitimacy of Mr. Herrera's conduct and funds. *Id.* At one point, one of Mr. Herrera's

Colombian lawyers asked whether OFAC had been in contact with anybody involved in the civil

suit, either the Plaintiffs, the Plaintiffs' lawyers, Wachovia Bank or "the Court" and, if so, whether

there had been any written submissions. *Id.* "Mr. Samara's answer was *that the Court had made*

*a request for information* on the blocked funds in the Wachovia Bank and *that OFAC had responded*

*in writing*" to the Court's request. *Id.* (emphasis added). While the Regional Director indicated he

could not provide Mr. Herrera's counsel with the communications, *id.*, in counsel's experience with

OFAC, interviews such as those with Mr. Herrera are conducted only when OFAC is considering

a favorable response and only needs a face-to-face meeting to resolve any final questions before

submitting a recommendation to OFAC headquarters. In short, the second interview was the final

step toward a likely resolution of the matter in Mr. Herrera's favor. However, he is still awaiting a

final ruling from OFAC headquarters.

## V.   P&K's IMPROPER MOTION FOR WRIT OF GARNISHMENT

On December 15, 2010, P&K filed a motion for a writ of garnishment, seeking the

confiscation of Mr. Herrera's blocked funds. DE 251. Since P&K was proceeding *ex parte*, it was

ethically required to inform this Court of all adverse material facts and court decisions. *See* RULES

REGULATING THE FLORIDA BAR, RULE 4-3.3(c).[6] It should go without saying that, regardless of the

---

[6]  The Comment to this rule explains:

> Ordinarily, an advocate has the limited responsibility of presenting 1 side of the matters that a tribunal
> should consider in reaching a decision; the conflicting position is expected to be presented by the
> opposing party. However, in an ex parte proceeding, such as an application for a temporary injunction,
> there is no balance of presentation by opposing advocates. The object of an ex parte proceeding is
> nevertheless to yield a substantially just result. The judge has an affirmative responsibility to accord
> the absent party just consideration. The lawyer for the represented party has the correlative duty to
> make disclosures of material facts known to the lawyer and that the lawyer reasonably believes are

(continued...)

circumstances, it is improper for attorneys to fail to disclose controlling authority directly adverse to their arguments and to deliberately mis-state material facts. *See* RULES REGULATING THE FLORIDA BAR, RULE 4-3.3(a)(1) and (a)(3).  P&K's *ex parte* motion flouted all of these principles.

## A.    The Legal & Factual Basis For OFAC's "Determination"

Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"), 28 U.S.C. § 1610 Note, permits a judgment obtained against a terrorist organization to be enforced against the "blocked assets" of that organization or "any agency or instrumentality" of that organization. Accordingly, in order to lawfully garnish Mr. Herrera's funds, the Plaintiffs had to prove that:  (1) the midstream EFT satisfied TRIA's definition of a "blocked asset";  (2) the midstream EFT was a garnishable "asset" to begin with;  (3) OFAC's blocking order was based on a "determination" that Mr. Herrera or the funds were linked to the FARC; and (4) Mr. Herrera was a "agency or instrumentality" of the FARC.  As discussed in detail in the accompanying *Motion For Dissolution of Writ of Garnishment*, which Mr. Herrera adopts herein, the Plaintiffs did not and cannot satisfy any of these elements.

*First*, since assets blocked by OFAC under the Kingpin Act do not fall within TRIA's definition of a "blocked asset" in § 201(d)(2)(A),[7] Mr. Herrera's property was not subject to

---

[6](...continued)

     necessary to an informed decision.

*See* also *International Beauty Exchange, Inc. v. Tony Dollar Kingdom, Inc.*, 199 F.R.D. 700 (S.D. Fla. 2001) (dismissing case and vacating *ex parte* seizure order after discovering that plaintiff's counsel had not informed the court about three related cases already pending before other judges and stating that "counsel's behavior appears to be a prima facie violation of his duty of candor to the tribunal" under Rule 4-3.3(c)).  *See also Plant v. Various John Does*, 19 F. Supp. 2d 1316, 1319 (S.D. Fla. 1998);  *Pierce v. Commercial Warehouse*, 142 F.R.D. 687, 690 (M.D. Fla. 1992).

[7] TRIA § 201(d)(2)(A) provides that "[t]he term 'blocked asset' means .. any asset seized or frozen by the United States under *section 5(b) of the Trading With the Enemy Act (50 U.S.C. App. 5(b))* or under sections *202 and 203 of the*

(continued...)

attachment under TRIA. Notably, the U.S. Department of Justice has wholeheartedly agreed that "TRIA does not authorize execution against assets frozen under the Kingpin Act" and that this Court "fundamentally erred in allowing such an execution to take place" with respect to another claimant in this case. *See* **Exhibit 9**, Motion of the United States For Leave to File an Amicus Curiae Brief Out of Time, *Mecurio International v. Stansell, et al.*, 11th Cir. Nos. 11-11125 & 11-11690, Sept. 2, 2011, at p. 2.

*Second*, even if the Plaintiffs had a statutory basis for their motion – and they plainly did not – a midstream EFT is not a form of "property" that is subject to garnishment under Article 4A of the Uniform Commercial Code ("UCC") – Funds Transfers. Due to the unique nature of EFTs under the UCC, "a beneficiary has no property interest in an EFT because 'until the funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary, *the beneficiary has no property interest in the funds transfer* which the beneficiary's creditor can reach.'" *Shipping Corp. of India Ltd. v. Jaldhi Overseas PTE Ltd.*, 585 F.3d 58, 71 (2d Cir. 2009) (emphasis in original, citing New York's version of the UCC), *cert. denied*, 130 S.Ct. 1895 (2010). Thus, under the UCC "EFTs are neither the property of the originator nor the beneficiary while briefly in the possession of an intermediary bank." 585 F.3d at 71. This is so, even where the beneficiary is also the originator. *See Scanscot Shipping Services v. Metales Tracomex LTDA*, 617 F.3d 679 (2d Cir. 2010) (per curiam).[8] For the reasons discussed in Mr.

---

[7](...continued)
*International Emergency Economic Powers Act (50 U.S.C. 1701; 1702)*") (emphasis added.). As previously discussed, OFAC's blocking order in this case was not made under either of these statutes.

[8] Florida's version of the UCC is identical to New York's in this regard. *See* Fla. Stat. § 670.502, Official Comment 4 ("A creditor of the beneficiary cannot levy on property of the originator and until the funds transfer is completed by acceptance by the beneficiary, the beneficiary has no property interest in the funds transfer which the beneficiary's
(continued...)

Herrera's *Motion For Dissolution of Writ of Garnishment*, the two district court decisions from the

Southern District of New York which hold that the definition of property under TRIA is not subject

to the UCC were wrongly decided and should not have been followed by this Court.

*Third*, the Plaintiffs' motion also lacked a factual basis for another reason. Contrary to the

Plaintiffs' repeated misrepresentations, OFAC never "determined" that Mr. Herrera was a "member"

of the FARC.[9]  As previously discussed, OFAC designated Mr. Herrera as a SDNTK under the

Kingpin Act, not as either an FTO or SDGT under its other statutory authority. OFAC's regulations

governing a SDNTK designation do not even mention the word "terrorism." The only factual basis

for P&K's assertions that OFAC had "determined" that Mr. Herrera was "a member of the FARC"

was the flow chart connected by a computer link to OFAC's May 6th Press Release. *See* **Exhibit 8.**

However, P&K did not even authenticate the flow chart, much less establish that Mr. Herrera's

---

[8] (...continued)
creditor can reach"). The only Florida court counsel have found discussing this issue cited *Jaldhi* with approval. *See In re Banco Santander Securities-Optimal Litigation*, 732 F. Supp. 2d 1305, 1324 (S.D. Fla. 2010).

[9] *See Plaintiff's Motion*, at p. 3 (asserting that Mr. Herrera "has been designated by the Department of Treasury – Office of Foreign Assets Control ('OFAC') as a Tier II derivative SDNTK *of the FARC*") (emphasis added); *id.* at 4 (asserting that on May 6, 2010, "OFAC *determined* that ... [Mr. Herrera] is ... *a member of the FARC Financial Fronts Money Laundering Networks*") (emphasis added); *id.* at p. 5 (asserting that Mr. Herrera's "assets in the United States ... have been blocked *by his OFAC designation as a FARC* SDNTK") (emphasis added); *id.* at p. 6 (claiming that "*OFAC has determined* that [Mr. Herrera] is owned, controlled, or directed by, or acting for or on behalf of, the FARC, or is materially assisting in, or providing financial or technical support for or to the FARC, or providing goods or services in support of the FARC's international narcotics trafficking activities....") (emphasis added); *id.* at p. 7 (alleging that OFAC "confirmed" to Wells Fargo that Mr. Herrera was a "*FARC* narcotics Kingpin") (emphasis added); *id.* at p. 11 (claiming that "OFAC has made a 'factual determination' in his designation as a *FARC* SDNTK"); *id.* at p. 12 (claiming that "it is undisputed" that the blocked funds are subject to execution because they are assets of a "*terrorist party*" or "agency or instrumentality of that *terrorist party*") (emphasis added); *id.* at p. 12 (claiming that Mr. Herrera "remains OFAC designated as an agency or instrumentality *of the FARC*") (emphasis added).

placement on it meant that OFAC had thereby made a formal "determination" about any connection between the FARC and Mr. Herrera.[10]

*Fourth*, Mr. Herrera's property was also not subject to garnishment under TRIA because he did not meet the definition of an "agency or instrumentality." The term "agency or instrumentality" refers only to entities or groups of two or more people – not an individual human being – as the Supreme Court *unanimously* held in *Samantar v. Yousuf*, 130 S.Ct. 2278, 2286-90 (2010), six months *before* the Plaintiffs filed their motion. Yet, P&K did not even cite *Samantar* in its *ex parte* motion. Instead, it cited two inapposite cases that involved *entities*, not natural persons: *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43 (2d Cir. 2010), and *Ungar v. The Palestinian Authority*, 304 F. Supp. 2d 232, 241 (D.R.I. 2004).[11]

## B.     Other Misleading Legal Arguments

As demonstrated in greater detail in the accompanying *Motion For Dissolution of the Writ of Garnishment*, the Plaintiffs' motion was fatally flawed for additional reasons, including:

● Despite the fact that Mr. Herrera had Fifth Amendment protected property rights in the blocked funds, P&K argued that he was not entitled to any form of notice that they were attempting to garnish his funds, that he was not entitled to be heard to contest the Plaintiffs' and P&K's false accusations and misleading legal arguments and that this Court could strip Mr. Herrera of his property in an *ex parte* proceeding. P&K based these extremist arguments solely on the fact that TRIA § 201(a) was

---

[10] P&K *only* attached a copy of the Flow Chart, with its misleading "FARC-EP" heading, to its motion. Since the Press Release to which the link was attached expressly stated that OFAC's determination was limited to the Kingpin Act, if P&K had included the Press Release, the Court might have been tipped off to the falsehood.

[11] *Weinstein* involved an Iranian bank and *Ungar* involved a Foundation. and the Holy Land Foundation was blocked as a SDGT, a Specially Designated Global Terrorist. *See Holy Land Foundation For Relief & Devel. v. Ashcroft*, 333 F.3d 156 (D.C. Cir. 2003), *cert. denied*, 540 U.S. 1218 (2004).

*silent* about the procedures that a party had to use to accomplish any requested garnishment. P&K never stopped to discuss the constitutional implications of its argument or cite the numerous Supreme Court and Eleventh Circuit cases which have consistently found that garnishment and attachment statutes must provide basic procedural due process protections. *See, e.g., Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337, 342 (1969); *Simanonok v. Simanonok*, 787 F.2d 1517, 1521 (11th Cir. 1986).

●Similarly, in arguing that TRIA § 201(a) preempted state garnishment procedures which are incorporated into Fed. R. Civ. P. 69(a)(1), P&K did not disclose: (1) that its argument was contrary to decades of Supreme Court precedent that require an "unmistakably clear" statement from Congress to preempt state law, *see, e.g., Will v. Mich. Dept. of State Police*, 491 U.S. 58, 65 (1989); (2) that its argument had been squarely rejected by the Hon. Adalberto Jordan in a series of related cases;[12] (3) an entire body of precedent holding that similar "notwithstanding" clauses apply only to matters of substance, not procedure, *see, e.g., Citizens Electric Corp. v. Bituminous Fire & Marine Ins. Co.*, 68 F.3d 1016, 1019 (7th Cir. 1995); (4) numerous cases that have refused to give TRIA § 201(a)'s "notwithstanding" clause an overly broad meaning inconsistent with its legislative history, *see, e.g., Smith v. Federal Reserve Bank of New York*, 346 F.3d 264, 270-71 (2d Cir. 2003); and (5) that the principal case it was relying on was consistent with this substantive/procedural distinction and, in fact, discussed how New York's attachment statute would govern procedural issues. *See Hausler v. JP Morgan Chase Bank, N.A.*, 740 F. Supp. 2d 525, 541 & n. 15 (S.D.N.Y. 2010).

---

[12] *See* Order on Motion For Summary Judgment, *Hausler v. The Republic of Cuba*, Case No. 09-21175-Civ-Jordan (S.D. Fla. Oct. 1, 2010), and Order on Motions For Reconsideration, Case No. 09-21175-Civ-Jordan (S.D. Fla. April 26, 2011); Order on Motions For Summary Judgment, *Hausler v. The Republic of Cuba*, Case No. 09-20942-Civ-Jordan (S.D. Fla. Oct. 13, 2010), and Order on Motions For Reconsideration, *Hausler v. The Republic of Cuba*, Case No. 09-20942-Civ-Jordan (S.D. Fla. April 26, 2011), **Composite Exhibits 10 & 11**.

• In arguing that the Plaintiffs were not required to obtain a license from OFAC before attempting to garnish assets blocked under the Kingpin Act, P&K failed to disclose that OFAC's Kingpin Act regulations *expressly* provide that any garnishment order obtained without a license is "null and void." *See* 31 C.F.R. § 598.205(a) and (e). Instead, P&K cited only to a letter an Assistant U.S. Attorney had written a district court judge in a different jurisdiction (New York) about a completely different matter (the statutes and executive orders governing the embargo of Cuba), and about a "notwithstanding" clause in a different statute (§ 1610(f)(1)(A)), which – unlike TRIA § 201(a) – contains an explicit reference to licensure. *See* Plaintiff's Motion, at p. 7, citing *Weininger v. Castro*, 462 F. Supp. 2d 457 (S.D.N.Y. 2006).

### C.    The Court's First Ghostwritten Order

As discussed more fully in the accompanying *Motion For Dissolution of Writ of Garnishment* and *Motion For Disqualification*, the Court itself violated Mr. Herrera's Due Process rights by permitting the Plaintiffs to proceed *ex parte*. *See generally RZS Holdings AVV v. PDVSA Petroleo S.A.*, 506 F.3d 350, 357 (4th Cir. 2007) ("It is beyond peradventure that, in our system of justice, ex parte judicial proceedings ... are greatly disfavored" and "present substantial due process concerns"). In addition to constituting one of the bases for Mr. Herrera's disqualification motion, the improper use of *ex parte* procedures standing alone warrants granting Mr. Herrera's motion to vacate under Rule 60(b)(4). *See* Section VI *infra*.

Despite the Court's own enhanced duty to protect Mr. Herrera's rights when proceeding *ex parte*, the Court's review of P&K's motion was cursory at best. Although it would not have been humanly possible to conduct the legal research necessary to examine all the statutory and constitutional issues posed by P&K's motion in even a week's time, this Court granted P&K's

motion *within 24 hours. See* 252. Moreover, the Court not only granted P&K's motion, it rubber stamped both the 10-page proposed Order and draft Writ of Execution/Garnishment attached to P&K's motion. *Compare* Proposed Order (DE 251-5) and Proposed Writ of Execution DE 251-6), *with* Order (DE 252) and Writ of Execution (DE 253). As demonstrated in the accompanying *Motion For Disqualification,* the Court ignored long-standing Eleventh Circuit precedent prohibiting courts from allowing a party's counsel to ghostwrite substantive orders. And, consistent with P&K's contention that Mr. Herrera had no Due Process rights to protect, after signing P&K's proposed order, the Court made no attempt to serve Mr. Herrera with it. By failing to do so, the Court deprived Mr. Herrera of his right to appeal the order directly to the Eleventh Circuit.

### D.  P&K's Motion For Judgment

On January 11, 2011, Wachovia Bank filed an Answer to the writ of garnishment and objected to the writ. Acknowledging that Mr. Herrera was "the ultimate beneficiary of the funds," Wachovia suggested that he was probably a "necessary and indispensable party" to the proceeding under Fed. R. Civ. P. 19. *See* DE 254, p. 2. Alternatively, Wachovia argued that others – obviously meaning Mr. Herrera – would "at least have the right to receive notice of these proceedings and an opportunity to be heard before the Court enters a judgment that may terminate their rights" since they may have "ownership" interests superior to the Plaintiffs. *Id.* Believing (correctly) that Fed. R. Civ. P. 69(a)(1) incorporated Florida's garnishment statutes, Wachovia also requested that its attorney's fees be paid for from Mr. Herrera's funds under Fla. Stat. § 77.28.[13]

---

[13] Although Wachovia was now asking for a portion of Mr. Herrera's funds, it too did not attempt to serve its Answer on Mr. Herrera. Nor did Wachovia file an interpleader action.

No doubt fearing that Wachovia would serve Mr. Herrera with its Answer, P&K took only two days to file its January 13, 2011, *Plaintiffs' Motion For Entry of Judgment on Answer, Etc.* (DE 255). In this motion, P&K continued to falsely claim that OFAC's designation of Mr. Herrera was based on a finding that he was a "member of the FARC's money laundering network." *Id.* at p. 2; *see also id.* at p. 6. P&K, in direct violation of Fla. Sta. § 77.055, then claimed that Mr. Herrera did not have "any right to contest or seek dissolution of any form of writ of execution, nor any right to jury trial, nor any right to service of the garnishee's answer, or any right to claim exemptions available to debtors under state law." *Id.* at p. 5. P&K continued to cite nothing other than TRIA's silence on the appropriate procedural mechanisms for these sweeping propositions and continued to ignore all Supreme Court jurisprudence on the Due Process and Takings Clauses of the Fifth Amendment and the need for a "clear statement" from Congress in order to preempt state law. P&K closed by requesting that the Court enter an order holding "that no other person or entity is entitled to notice, or has a right to request dissolution of the writ, or any other right to be heard under the TRIA" and to order Wachovia to give P&K a cashier's check for $2,006,878.84 within two business days. *Id.* at p. 9. To add insult to injury, P&K claimed Mr. Herrera deserved this treatment for failing to be clairvoyant about the existence of the garnishment proceedings and for allegedly not acting promptly enough to challenge OFAC's designation. In fact, Mr. Herrera had been contesting the designation within a month of learning about it.[14]

---

[14] In making this argument, P&K also ignored the licensing requirement that Mr. Herrera's counsel had to go through in order to represent him.

-17-

E.    **The Court's Second Ghostwritten Order**

In the only relevant order in this case which was *not* ghostwritten by P&K, on January 14, 2011 – again, within 24 hours of the filing of P&K's January 13th motion – the Court summarily granted that motion. *See* DE 256.

As previously discussed, at some time during the pendency of these proceedings, the Court – apparently on its own – contacted OFAC for information about either Mr. Herrera, the funds or both. The Court, however, has never since disclosed the existence or substance of its extrajudicial communication with OFAC.[15]

On January 18, 2011, the Court signed P&K's ghostwritten *Judgment on Answer To Writ of Garnishment In a Civil Case. See* DE 257. That order included the P&K-drafted holdings (1) that "no other person or entity is entitled to notice, or has a right to request dissolution of the writ, or any other right to be heard" and (2) that "no other person or entity has rights in the blocked proceeds that are superior to the perfected lien of Plaintiffs...." DE 257. Just in case Wachovia might have alerted Mr. Herrera to this miscarriage of justice – which, unfortunately, it did not – P&K inserted into the proposed Judgment that P&K was "authorized to *immediately* disburse" the proceeds – Mr. Herrera's

---

[15] While the Court was undoubtedly acting in a judicial capacity in initiating contact with OFAC, its investigation of the facts was still "extrajudicial" under 28 U.S.C. § 455(b).

> The point of distinguishing between "personal knowledge" and knowledge gained in a judicial capacity is that information from the latter source enters the record and may be controverted or tested by the tools of the adversary process. Knowledge gained in other ways, which can be neither accurately stated nor fully tested, is "extrajudicial." Thus information a judge learns at a workshop devoted to a subject is extrajudicial, [citations omitted,] even though the workshop is open to other persons, and evidence could be taken about the proceedings. Off-the-record briefings in chambers, by contrast, leave no trace in the record – and in this case the judge has forbidden any attempt at reconstruction. What information passed to the judge, and how reliable it may have been, are now unknowable. This is "personal" knowledge no less than if the judge had decided to take an undercover tour of a mental institution to see how the patients were treated."

*Edgar v. K.L.*, 93 F.3d 256, 259 (7th Cir. 1996) (per curiam), *cert. denied*, 519 U.S. 1111 (1997).

-18-

property – directly to P&K. *Id.* (emphasis added). The Court also subsequently endorsed Wachovia's request for $7,500.00 in attorney's fees.

## IV.    RULES 55(c) AND RULE 60(b) Require Vacatur

A court "may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b) lists six reasons justifying relief from a final judgment. Where, as here, the motion is filed within one year of the entry of the final judgment, the Court may vacate the judgment for reasons of "mistake, inadvertence, surprise, or excusable neglect" (Rule 60(b)(1)), "newly discovered evidence" (Rule 60(b)(2)), or "fraud . . ., misrepresentation, or misconduct by an opposing party" (Rule 60(b)(3). The other three reasons – "the judgment is void" (Rule 60(b)(4)), the "judgment has been satisfied, released or discharged" (Rule 60(b)(5)), and "any other reason that justifies relief (Rule 60(b)(6)), are not subject to the one-year time limit. *See* Fed. R. Civ. P. 60(b). "The rule is equitable in origin, and the court may take action appropriate to accomplish justice. " *Zamora Radio, LLC v. Last.FM, LTD.*, No. 09-20940-Civ-Torres (S.D. Fla. Sept. 30, 2010), *2010 U.S. Dist. LEXIS 108707*, at *9, citing *Klapprott v. United States*, 335 U.S. 601, 614-15 (1949). *Accord Jackson v. People's Republic of China*, 794 F.2d 1490, 1494 (11th Cir. 1986); *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984). *See generally Plaut v. Spendthrift Farm*, 514 U.S. 211, 233-34 (1995) (Rule 60(b) confirms the courts' longstanding "inherent and discretionary power . . . to set aside a judgment whose enforcement would work inequity.").

Rule 60(b) relief is not limited to judgments resulting from defaults, but courts justifiably have construed the requirements of Rule 60(b) more liberally when a party seeks relief from a default judgment. *See* 11 Charles Alan Wright, *et al., Federal Practice and Procedure* § 2857 at 257 (2d

ed. 1995). This is because "[t]here is much more reason for liberality in reopening a judgment when the merits of the case never have been considered than there is when the judgment comes after a full trial on the merits." *Id.* at 257-58. As stated by the Fifth Circuit,

> [A]lthough the desideratum of finality is an important goal, the justice-function of the courts demands that it must yield, in appropriate circumstances, to the equities of the particular case in other that the judgment might reflect the true merits of the cause.

*Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981). *Accord Teamsters, Chauffeurs, Warehousemen & Helpers Union v. Superline Transp. Co.*, 953 F.2d 17, 19 (1st Cir. 1992) (Rule 60(b)(6) "must be construed so as to recognize the desirability of deciding disputes on their merits").

### A.     The Court's Orders Were Obtained Through Fraud

Mr. Herrera is entitled to relief under Rule 60(b)(3) because the orders were obtained through the fraudulent conduct of Plaintiffs and P&K, including both (1) repeated false factual assertions that OFAC had placed Mr. Herrera on its SDN List because he was a "member" of the FARC, when, in fact, OFAC never made any such determination, and (2) repeated misleading legal arguments that ignored or mis-cited governing statutes, regulations and precedent.

### B.     The Court's Orders Must Be Considered Void

Rule 60(b)(4) provides for the mandatory vacation of void judgments. "Unlike motions pursuant to other subsections of Rule 60(b), Rule 60(b)(4) motions leave no margin for consideration of the district court's discretion as the judgments themselves are by definition either legal nullities or not ...." *Burke v. Smith*, 252 F.3d 1260, 1263 (11th Cir. 2001); *accord Jackson v. FIE Corp.*, 302 F.3d 515, 522 (5th Cir. 2002). The judgment and orders in this case should be considered "void" for two distinct reasons. First, as demonstrated in Mr. Herrera's *Motion For Dissolution of Writ of*

-20-

*Garnishment*, the Plaintiffs' failure to secure a license from OFAC renders all the Court's orders "null and void" under 31 C.F.R. §§ 598.205(a). Second, the Court improperly accepted Plaintiffs' invitation to conduct all the proceedings *ex parte* and with no attempt to notify Mr. Herrera of either the Plaintiffs' motions or the Court's own orders.

As the Supreme Court emphasized in *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 350 (1999), "[s]ervice of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." Therefore, where service of process is insufficient, "the court has no power to render judgment and the judgment is void." *In re Worldwide Web Sys., Inc.,* 328 F.3d 1291, 1299 (11th Cir. 2003). *See also Varnes v. Local 91, Glass Bottle Blowers Ass'n,* 674 F.2d 1365, 1368 (11th Cir. 1982) (holding judgment "void because the amended complaint was required to be personally served ... and was not so served, and thus the district court erred in not granting relief ... under Rule 60(b)(4)"); *Blois v. Friday*, 612 F.2d 938, 940-91 (5th Cir. 1980) (reversing denial of motion to set aside a default judgment based on lack of service and notice). A judgment may be challenged as void *at any time. See, e.g., Hertz Corp. v. Alamo Rent-a-Car, Inc.,* 16 F.3d 1126, 1130-31 (11th Cir. 1994). *Accord Austin v. Smith,* 312 F.2d 337, 343 (D.C. Cir. 1962).

If a judgment is "void" when service is done *incorrectly*, surely a judgment is "void" where, as here, both the opposing party and presiding judge have *deliberately* chosen not to even attempt service. Indeed, in the instant case, such conduct, standing alone, violated Mr. Herrera's right to due process. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (the notice required by due process must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their

-21-

objections"). Therefore, the judgment and orders herein should be considered void for purposes of Rule 60(b)(4).

### C.    Good Cause/Extraordinary Circumstances

Relief would also be appropriate under the "good cause" requirement of Rule 55(c) and/or under Rule 60(b)(6). Rule 60(b)(6) allows a judgment to be set aside for 'any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). "[I]t is well settled that Rule 60(b)(6) allows a district judge to grant relief when equitable considerations so counsel." *Hugel v. McNell*, 886 F.2d 1, 6 (1st Cir. 1989). Courts from a variety of circuits have endorsed vacatur of final judgments applying this standard. *See, e.g., Klapprott*, 335 U.S. at 614-15; *Jackson v. People's Republic of China*, 794 F.2d 1490 (11th Cir. 1986).

Under Rule 55(c), a court uses a "good cause" standard to determine whether to set aside a default. *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996). Good cause is both a "'liberal'" standard and "'a mutable standard, varying from situation to situation.'" *Id.* (citation omitted). Courts have considered a laundry list of factors in applying this standard, including (1) whether the default was "culpable or willful," (2) whether the defaulting party has a "meritorious defense"; (3) whether the defaulting party suffered "significant financial loss"; (4) whether the defaulting party acted "promptly to correct the default"; (5) whether any "public interest" is implicated; and (5) any prejudice to the adversary. *Id.* at 951-52 (citations omitted). In addressing these factors, as well as Rule 60(b)(6), "a court should keep in mind that the law strongly disfavors default judgments, preferring the resolution of genuine disputes on the merits...." *Id.*

All of these factors weigh heavily in favor of granting Mr. Herrera relief. Mr. Herrera's conduct certainly was not "willful." Rather it was part of Plaintiffs' fraudulent scheme to willfully keep Mr. Herrera in the dark and prevent him from exposing their many deceptions. Mr. Herrera, as demonstrated herein and in his *Motion For Dissolution of Writ of Garnishment*, has meritorious defenses. Indeed, the Plaintiffs' claim to Mr. Herrera's property was factually and legally baseless. Mr. Herrera obviously has suffered a "significant financial loss." And, Mr. Herrera has acted as promptly as possible, in light of the deliberate nature of the concealment that occurred here. He did not learn of the Court's *ex parte* orders until well after they were filed and had to obtain a license from OFAC to permit undersigned counsel to represent Mr. Herrera. Since this case necessarily involves the constitutionality of OFAC's procedures, the public would be served by allowing the issues to be litigated. And, Plaintiffs and P&K would be no more "prejudiced" by vacatur than a thief is "prejudiced" by having to return stolen property to his victim.

At least two other factors also strongly support vacatur. First, as demonstrated in the accompanying *Motion For Disqualification*, the manner in which the Court itself handled this case has created the appearance of impropriety and bias—a fact that would be compounded if the Court's orders were not vacated. Second, "[i]t is essential in our zeal to thwart terrorism and compensate its victims, we do not trample on the fundamental principles of our judicial system. Our system is respected because all litigants, even unpopular ones, have the right to their day in court and all litigants are entitled to equal justice under our laws without sympathy or prejudice for either side." *Saperstein v. The Palestinian Authority*, Case No. 04-20225-Civ-Seitz/O'Sullivan (S.D. Fla. Sept. 29, 2008), *2008 U.S. Dist. LEXIS 110375*, at *51 (vacating default judgment against the PLO).

## CONCLUSION

For all of the foregoing reasons, the Court should (1) vacate DE 252, 256, 257 and 259, (2) direct P&K to deposit $2,006,878.84, plus interest since December 16, 2010, into the Registry of the Court pending OFAC's final resolution of Mr. Herrera's petition, and (3) grant Mr. Herrera attorneys fees and costs under Fla. Stat. § 77.28.

## LOCAL RULE 3.01(g) CERTIFICATION

Counsel has conferred with opposing counsel who opposes granting the relief requested herein.

Respectfully submitted,

JOSEPH S. ROSENBAUM, ESQ.
LAW OFFICES OF JOSEPH S. ROSENBAUM, P.A.
Grove Forest Plaza, Suit 101
2937 S.W. 27th Avenue
Miami, FL 33133-3141
Telephone: (305) 446-6099
Fax: (305) 446-6150
E-mail: jsr@rosenbaum-lunalaw.com
*Counsel For Jose Ricaurte Diaz Herrera*
[OFAC LICENSE No. FNK-785]

BY: _____ s/Joseph S. Rosenbaum _____
   JOSEPH S. ROSENBAUM, ESQ.
   Florida Bar No. 240206

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 31, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I served the foregoing document on additional counsel and *pro se* parties identified in the attached Service List in the manner specified thereon.

BY: _____ s/Joseph S. Rosenbaum _____
   JOSEPH S. ROSENBAUM, ESQ.

-24-

## SERVICE LIST

TONY KORVICK, ESQ.
NEWTON P. PORTER, ESQ.
PORTER & KORVICK, P.A.
9655 South Dixie Highway
Suite 208
Miami, FL 33156
*Counsel for Plaintiffs*
*[via CM/ECF]*

LILLY ANN SANCHEZ, ESQ.
MATTHEW JOHN VALCOURT, ESQ.
FOWLER WHITE BURNETT, P.A.
Espirito Santo Plaza, 14th Floor
1395 Brickell Avenue
Miami, FL 33131-3302
*Counsel for Mercurio Internacional S.A.*
*[via CM/ECF]*

DOUGLAS N. LETTER
BENJAMIN M. SHULTZ
Attorneys, Appellate Staff
Civil Division, Room 7211
U.S. Department of Justice
Washington, DC 20530-0001
*Counsel for United States of America*
*[via U.S. Mail]*

JONATHAN E. ZIMMERMAN, ESQ.
U.S. DEPARTMENT OF JUSTICE
Civil Division
Federal Programs Branch,
20 Massachusetts Ave., N.W.
Suite 7116
Washington, DC 20503
*Counsel for United States of America*
*[via CM/ECF]*

I. WILLIAM SPIVEY, II, ESQ.
COURTNEY M. WITTE, ESQ.
GREENBERG TRAURIG, P.A.
450 South Orange Avenue
Suite 32801
Orlando, FL 32801
*Counsel for Garnishee, Wachovia Bank*
*[via CM/ECF]*

JUNE GALKOSKI HOFFMAN, ESQ.
FOWLER WHITE BURNETT P.A.
100 S.E. 3rd Ave., Fl 21
Fort Lauderdale, FL 33934-0014
*Counsel for Mercurio Internacional S.A.*
*[via U.S. Mail]*

JARY CONRAD NIXON , ESQ.
MARK D. SMITH, ESQ.
VICTOR H. VESCHIO, ESQ.
VESCHIO LAW GROUP, LLC
2001 W. Kennedy Boulevard
Tampa, FL 33606
*Counsel for Garnishee, Capital Bank, NA*
*[via CM/ECF]*

JOSE ANTONIO CELIS
No. 28057-016
Yazoo City Low Federal Correctional Institute
Inmate Mail/Parcels
P.O. Box 39194
Yazoo City, MS 39194
*Pro Se Defendant*
*[via U.S. Mail]*

MARTHA ROSA MORA, ESQ.
AVILA RODRIGUEZ HERNANDEZ
  MENA & FERRI, LLP
2525 Ponce de Leon Blvd., Suite 1225
Coral Gables, FL 33134
*Counsel for Garnishee, Ocean Bank*
*[via CM ECF]*

JOHN C. DOTTERRER, ESQ.
AKERMAN SENTERFITT
125 Worth Avenue, Suite 330
Palm Beach, FL 33480
*Counsel for Garnishee, Wells Fargo Bank, NA*
*[via CM/ECF]*

DENNIS CAMPBELL, ESQ.
CAMPBELL LAW FIRM, PLLC
95 Merrick Way, Suite 514
Coral Gables, FL 33134
*Counsel for Bank of America, N.A.*
*[via CM/ECF]*

ALEX LAKATOS, ESQ.
MAYER BROWN, LLP
1909 K. Street, N.W.
Washington, D.C. 20006
*Counsel for Garnishee, Wells Fargo Bank, NA*
*[via CM/ECF]*

EDWARD M. MULLINS, ESQ.
ASTIGARRAGA DAVIS MULLIN, ET AL.
701 Brickell Avenue, Suite 1650
Miami, FL 33131-2847
*Counsel for JPMorgan Chase Bank, NA and The bank of New York Mellon*
*[via CM/ECF]*