# EXHIBIT 11

## Order on Motions For Summary Judgment
### *Hausler v. The Republic of Cuba*
### Case No. 09-20942-Civ-Jordan
### (S.D. Fla. Oct. 13, 2010)

### and

## Order on Motions For Reconsideration
### *Hausler v. The Republic of Cuba*
### Case No. 09-20942-Civ-Jordan
### (S.D. Fla. April 26, 2011)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 09-20942-CIV-JORDAN

JEANNETTE HAUSLER, et al.              )
      Plaintiffs                        )
                                        )
vs.                                    )
                                        )
THE REPUBLIC OF CUBA, et al.,          )
      Defendants                        )
                                        )
vs.                                    )
                                        )
COMCAST IP PHONE II,                   )
                                        )
      Garnishee                         )
_____)

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

The plaintiffs and Comcast IP Phone II ("Comcast") have cross-moved for summary judgment. Following oral argument, and for the reasons set forth below, plaintiffs' motion for partial summary judgment [D.E. 24] is DENIED, and Comcast's motion for summary judgment [D.E. 35] is GRANTED IN PART and DENIED IN PART.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs have moved for partial summary judgment alleging that, because Comcast makes payments to telecommunications carriers for calls terminating in Cuba without a license from OFAC, it is in possession of "blocked assets" under the Terrorism Risk Insurance Act ("TRIA"), Pub. L. No. 107-297, 116 Stat. 2337, codified at 28 U.S.C. § 1610 note, which are subject to garnishment. Comcast has cross-moved for summary judgment, arguing that the plaintiffs' writ of garnishment fails under Florida law, and that, additionally, it does not possess "blocked assets" that would subject it to the TRIA.

#### A. FACTUAL BACKGROUND

Comcast is an indirect subsidiary of Comcast Corporation and provides Voice Over Internet Protocol ("VoIP") services to various parts of the United States. As part of these services, Comcast

contracts with two third-party carriers located in the United States, Carrier C-1 and C-2, that route calls for Comcast. Some of these calls may terminate in Cuba.

All telecommunications services to landlines in Cuba are subject to and controlled by Empresa de Telecomunicaciones de Cuba, S.A. ("ETECSA"). Comcast does not terminate calls in Cuba itself, and has never had a contract with the Cuban government, any of the other judgment defendants in this action, or ETECSA relating to telecommunications services. Instead, Comcast routes calls to C-1 and C-2, which then may terminate calls in Cuba, and Comcast pays C-1 and C-2. C-1 and C-2 may pay ETECSA termination fees for calls terminated in Cuba on Comcast's behalf.

Comcast has submitted evidence indicating that: (1) it has never entered into a contract or agreement with any of the defendants (the Republic of Cuba, Fidel Castro Ruz, Raul Castro Ruz, the Cuban Revolutionary Armed Forces, or the Ministerio del Interior) or ETECSA; and (2) it does not hold any funds belonging to the defendants or ETECSA.

The Cuban Assets Control Regulations ("CACR"), 31 C.F.R. § 515.201, *et seq.*, prohibits all dealings with any property in which Cuba has an interest unless specifically authorized by the U.S. government by means of a license. Comcast has no such license. Comcast's carriers, C-1 and C-2, however, do have licenses. C-1 has a license issued by OFAC. C-2 has a license issued by the FCC.

## B. PROCEDURAL BACKGROUND

On January 19, 2007, Jeanette Hausler - as personal representative of the Estate of Robert Otis Fuller - and others obtained an amended final judgment against The Republic of Cuba, Fidel Castro Ruz, Raul Castro Ruz, the Cuban Revolutionary Armed Forces, and the Ministerio del Interior, in *Hausler, et al v. The Republic of Cuba, et al.*, No. 02-12475-Div. 04 (Hausler I), before the Eleventh Judicial Circuit Court in and for Miami-Dade County. The amended judgment awarded $100 million in compensatory damages and $300 million in punitive damages against the defendants pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 1605(a)(7), for their wrongful killing of Mr. Fuller.

On August 20, 2008, I issued an amended final judgment granting full faith and credit to the Florida court's amended final judgment. *See Hausler, et al. v. The Republic of Cuba, et al.*, Case No. 08-20197-Civ-Jordan.

Case 1:09-cv-22052-AJM    Document 57-4 Entered on FLSD Docket 11/20/2011 Page 15 of
22

In March of 2009, the plaintiffs applied for writs of garnishment against numerous telecommunications companies, including Comcast, pursuant to the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107-297, 116 Stat. 2337, codified at 28 U.S.C. § 1610 note, and Fla. Stat. §§ 77.01, 77.03. On March 11, the Florida court authorized the issuance of the writ against Comcast.

On April 9, 2009, Comcast removed the writ of garnishment proceedings to this Court [D.E. 1], and then on April 16, 2009, it filed an answer to the writ of garnishment [D.E. 3]. In its answer, Comcast alleged that it "is not indebted in any amount" to the judgment debtors and "does not possess or control any property of the [judgment debtors] or ETECSA, and has not possessed or controlled any such property during the time period covered by the Writ."

It should be noted that the plaintiffs have requested additional discovery in this matter [D.E. 42]. Specifically, the plaintiffs have requested discovery on the issue of Comcast's privity with Cuba and Cuban entities, such as the degree of control Comcast exercises over the third-party carriers.

## II. LEGAL STANDARD

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. *See Celotex Corp.*, 477 U.S. at 323. That is, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). The court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *see Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997), and "resolve all reasonable doubts about the facts in favor of the nonmovant." *See United of Omaha Life Ins. v. Sun Life Ins. Co.*, 894 F.2d 1555, 1558 (11th Cir. 1990).

Case 1:09-cv-22905-AJ  Document 537-4 Entered on FLSD Docket 10/12/2010 Page 16 of
22

## III. ANALYSIS

The plaintiffs seek partial summary judgment on two grounds: first, that Comcast's unlicensed payments to C-1 and C-2 for calls terminating in Cuba are "blocked assets" owed to the Cuban government under § 201 of the TRIA; and second, that these funds should be used to satisfy the writ of garnishment. The plaintiffs contend that Florida garnishment law, specifically Fla. Stat. § 77.01, is preempted by the TRIA. Comcast has filed a cross-motion for summary judgment, asserting that the writ of garnishment fails under Florida law, which it alleges is the applicable law in this proceeding. Comcast also contends that the TRIA does not have a preemptive effect on § 77.01, and further, that it does not possess "blocked assets" under the TRIA.

For the reasons set forth below, I agree with Comcast that Florida garnishment law applies to this matter, and that – on this record – the writ of garnishment fails to satisfy § 77.01.

### A. FLA. STAT. § 77.01

Pursuant to Rule 69 of the Federal Rules of Civil Procedure, this garnishment proceeding is to be governed by Fla. Stat. § 77.01, unless federal law controls. *See* Fed.R.Civ.P. 69(a) ("The procedure on execution – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."). *See also Dinh v. Motorcars of Distinction, Inc.*, No. 09-81071-MC, 2009 WL 3096459, at *2 (S.D.Fla. Sept. 23, 2009) ("...[F]ederal courts are to follow state law with regard to garnishment procedures."); *Great Am. Ins. Co. v. General Contractors & Constr. Mgmt., Inc.*, No. 07-21489-Civ-Ungaro, 2008 WL 5056526, at *3 (S.D.Fla. Nov. 21, 2008). Florida law requires that this garnishment statute be strictly construed. *See Skulas v. Loiselle, et al.*, No. 09-60096-Civ-Seitz, 2010 WL 1790439, at *1 (S.D.Fla. April 9, 2010) (citation omitted); *Gigliotti Contracting North, Inc. v. Traffic Control Products of North Florida, Inc.*, 788 So.2d 1013, 1016 (Fla. 2d DCA 2001).

In relevant part, § 77.01 provides:

Every person or entity who has...recovered judgment in any court against any person or entity has a right to a writ of garnishment,...*to subject any debt due to defendant by a third person* or any debt not evidenced by a negotiable instrument that will become due absolutely through the passage of time only to the defendant by a third

person, and *any tangible or intangible personal property of defendant in the possession or control of a third person...*

Fla. Stat. § 77.01 (emphasis added).   Under Florida law, a garnishment proceeding "entitles a garnishor to be subrogated to the primary debtor's right against the garnishee," but the "garnishor gets no greater right than that of the primary debtor." *See Pippin v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania,* 845 F.Supp. 849, 851 (M.D.Fla. 1994) (citations omitted). *See also Carpenter v. Benson,* 478 So.2d 353, 354 (Fla. 5th DCA 1985) ("The garnishee is not the original debtor and the judgment creditor receives no greater rights against a garnishee than would have been available to the judgment debtor in a proceeding against the garnishee.").   Additionally, not only must the garnishee (here Comcast) have actual possession of the defendants' property, as required by the statute, but there must be privity between the garnishee and the defendants (here The Republic of Cuba, Fidel Castro Ruz, Raul Castro Ruz, the Cuban Revolutionary Armed Forces, and the Ministerio del Interior). *See Huot v. Ely,* 17 Fla. 775, at *4 (Fla. June 1880) ("[T]here must be, except in cases of fraudulent dispositions of property, privity, express or implied, of contract and interest between the garnishee and the defendant, by which the defendant would have a right of action or an equitable claim against the garnishee to recover the property for his own use, at the present or some future time.")

The record here shows, without any dispute of material fact, that under Florida law, the plaintiffs do not have a right to a writ of garnishment against Comcast.   Based on the affidavits of Francesca O. Schroeder and Jin Davis, submitted by Comcast, the evidence indicates that, for calls terminating in Cuba, Comcast makes direct payments to two domestic third-party telecommunications carriers, C-1 and C-2, who then may route telecommunications traffic directly to Cuba; and that Comcast does not have, and has not had, a direct telecommunications relationship or interconnection with ETECSA or any Cuban entity, as it does not terminate calls in Cuba itself.   The plaintiffs have not offered any evidence challenging the affidavits of Ms. Schroeder and Ms. Davis, and have failed to refute that Comcast: (a) does not have, and has never had, a contract or agreement relating to telecommunications services with the defendants or ETECSA; (b) does not hold any funds belonging to the defendants or ETECSA; and (c) does not, and has not, made any payments to the defendants or ETECSA related to telecommunication services.   Indeed, the record at this time demonstrates that the Cuban individuals and entities who were the defendants in *Hausler I* (and ETECSA) have no

Case 1:09-cv-22029-FAM   Document 527-4   Entered on FLSD Docket 10/14/2010   Page 7 of 22

rights with respect to moneys paid by Comcast to third-party carriers. *See Carpenter v. Benson*, 478 So.2d at 354.[1]

In conclusion, on this record the plaintiffs have failed to satisfy the requirements of Fla. Stat. § 77.01.

## B. THE TRIA

In their motion for summary judgment, and in their opposition to Comcast's motion for summary judgment, the plaintiffs' contend that Comcast is in possession of "blocked assets" pursuant to § 201 of the TRIA, which they argue preempts "any impediment under Florida state law to enforcement of the writs in connection with blocked assets of Cuba." In other words, the plaintiffs argue that, even though they cannot satisfy the requirements of Florida garnishment law, they can execute upon "blocked assets" in possession of Comcast pursuant to the TRIA.

### 1. COMCAST'S PAYMENTS TO TELECOMMUNICATIONS CARRIERS ARE NOT "BLOCKED ASSETS" UNDER THE TRIA

In general, § 201 of the TRIA authorizes holders of terrorism-related judgments to execute upon the "blocked assets" of terrorist parties. It reads as follows:

> Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

TRIA § 201(a). The TRIA defines a "blocked asset" as "any asset seized or frozen by the United States under section 5(b) of the Trading With the Enemy Act (50 U.S.C. App. 5(b)) or under sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701; 1702)." *See*

---

[1]

As noted above, the plaintiffs argue that they have not had adequate opportunity for discovery, which they believe would yield additional facts pertaining to Comcast's relationship with the defendants or ETECSA. The plaintiffs' request for additional discovery is addressed later in this order.

TRIA § 201(d)(2)(A). *See also Smith v. Federal Reserve Bank of New York*, 346 F.3d 264, 272 (2ⁿᵈ Cir. 2003) ("To seize or freeze assets transfers possessory interest in the property.").

Applying the definition of "blocked assets" provided by the TRIA, Comcast's payments to C-1 and C-2 do not qualify, as there is no dispute that these payments have not been seized or frozen by the United States government.[2] Faced with this undisputed fact, the plaintiffs argue that Comcast's unlicensed payments to C-1 and C-2 for calls terminating in Cuba were prohibited by the CACR, 31 C.F.R. § 535.201(b), and accordingly, are deemed "blocked assets" under the TRIA. This argument, however, requires that I ignore the plain language of the TRIA, which provides a very specific definition for "blocked asset[s]" -- one that is simply not applicable to Comcast's disputed payments. *See Weinstein v. Islamic Republic of Iran*, 299 F.Supp.2d 63, 75 (E.D.N.Y. 2004) ("[T]he term 'blocked' under the TRIA is specifically limited to assets that are 'seized or frozen' - a limitation that this Court cannot ignore.").[3]

Accordingly, Comcast's payments to C-1 and C-2 are not "blocked assets," and § 201 of the TRIA does not apply here.

## 2. THE TRIA DOES NOT PREEMPT FLA. STAT. § 77.01

The conclusion that § 201 of the TRIA does not apply obviates the need to address the

---

[2] In 1962, President John F. Kennedy established a comprehensive embargo on trade with Cuba. *See Alejandre v. The Republic of Cuba*, 42 F.Supp.2d 1317, 1324 (S.D.Fla. 1999). On July 8, 1963, OFAC, pursuant to the § 5(b) of the Trading with the Enemy Act of 1917, as amended, 12 U.S.C. § 95a ("TWEA"), implemented the Cuban Assets Control Regulations ("CACR"), 31 C.F.R. § 515, to implement the embargo. *See id.* The CACR "ordered that Cuban assets in the United States be blocked," and "prohibit[ed] any United States national from dealing in the blocked property of the Cuban government." *See id.* Payments made by Telecom NZ to non-Cuban telecommunications carriers since 2004 have not been "blocked."

[3] Because I find that Comcast's payments to C-1 and C-2 do not fall under the definition of "blocked assets" pursuant to the TRIA (since they were not seized or frozen), I need not make a determination as to whether Comcast was required to obtain a specific license in order to make those payments.

Case 1:09-cv-22995-FAM   Document 537-4 Entered on FLSD Docket 11/18/2010 Page 20 of
22

plaintiffs' argument regarding TRIA's preemptive effect on Fla. Stat. § 77.01. However, even assuming that Comcast's payments were "blocked assets," § 77.01 would still govern this garnishment proceeding.

The purpose of the TRIA is to override any immunity from execution that the "blocked assets" of terrorist entities might otherwise enjoy under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq. See Weininger v. Castro, et al.*, 462 F.Supp.2d 457, 478 (S.D.N.Y. 2006); *Hill v. Republic of Iraq*, Civ.A. 1:99CV03346TP, 2003 WL 21057173, at *2 (D.C.C. March 11, 2003). Specifically, § 1609 of the FSIA renders the property of a foreign state in the United States immune from execution or attachment, including garnishment, unless §§ 1610-11 provide an exception to this immunity. *See* 28 U.S.C. § 1609. In other words, the TRIA confers courts with subject-matter jurisdiction over enforcement actions, such as this one, that would otherwise fall under the parameters of immunity provided by the FSIA.

The plaintiffs, however, argue that the effect of the TRIA is greater than simply overriding FSIA immunity for "blocked assets." They contend that the TRIA overrides any impediment under Florida law to enforcement of the writs in connection with blocked assets of Cuba or any agency or instrumentality of Cuba. This is because, they argue, the TRIA has a preemptive effect on all laws – an argument they support, in part, by noting the "notwithstanding any other provision of law" language set forth at the outset of § 201.

This reading of the TRIA is not persuasive. The "notwithstanding any other provision" language in the TRIA means that "to the extent a foreign country's sovereign immunity potentially conflicts with § 201(a) [of the TRIA], the 'notwithstanding' phrase removes the potential conflict." *See Smith v. Federal Reserve Bank of New York, et al.*, 280 F.Supp.2d 314, 319 (S.D.N.Y. 2003), *aff'd*, 346 F.3d 264, 269 (2nd Cir. 2003). *See also Hill*, 2003 WL 21057173, at *2 ("[B]y its plain terms, the TRIA overrides any immunity from execution that blocked Iraqi property might otherwise enjoy under the Vienna Convention or the FSIA."). The language of the TRIA does not mean "that the TRIA covers the entire field and nullifies all previous statutes that pertain to blocked assets." *See Smith*, 280 F.Supp.2d at 319.

The TRIA simply offers a right to execute, and is not – as the plaintiffs contend – an all-encompassing federal remedy preempting all other federal and state laws that might somehow

Case 1:09-cv-22952-FAM   Document 537-4 Entered on FLSD Docket 12/20/2010   Page 10 of 22

regulate, limit, or prohibit execution upon "blocked assets." The TRIA provides a judgment plaintiff with the opportunity to execute on "blocked assets," but does not provide the means or procedures for actually executing upon those assets. *See Rubin v. Islamic Republic of Iran*, No. 03 CV 9370, 2008 WL 2501996, at *1 (N.D.Ill. May 23, 2008) ("...[T]he FSIA and TRIA...lack any procedures for executing a judgment.").

If the TRIA did set forth actual procedures for execution on "blocked assets," then maybe it could be found to conflict with Florida garnishment statutes like § 77.01. But because of the absence of such a conflict, enforcement actions pursuant to the TRIA are based upon state (or otherwise applicable federal) procedures on execution and attachment. *See Smith*, 346 F.3d at 269 (noting, in matter involving execution on "blocked assets" under the TRIA, that there is "no relevant federal statute" on execution, so that any execution on judgment issued would proceed according to New York law). *See also Weininger*, 462 F.Supp.2d at 499 (applying New York garnishment statute to determine that bank accounts deemed "blocked assets" under the TRIA could be used to satisfy the plaintiffs' judgments). Accordingly, § 201 of the TRIA does not conflict with or preempt Fla. Stat. § 77.01, and the the requirements for a writ of garnishment under Fla. Stat.§ 77.01 govern this proceeding.

## IV. The Plaintiffs' Discovery Requests

The plaintiffs, as noted earlier, have requested additional discovery regarding "the control of Comcast over parties in direct privity with Cuba or any representations Comcast may have authorized those third parties to make to Cuba or Cuban entities on Comcast's behalf." Though I have determined that the plaintiffs have failed to satisfy the requirements of Fla. Stat. § 77.01 pertaining to the writ of garnishment issued against Comcast, I do believe that the plaintiffs are entitled to further discovery regarding the narrow issue of Comcast's relationship and/ or control over C-1 and C-2, and whether there is any actual privity between Comcast and the defendants or ETECSA.

Accordingly, the plaintiff are permitted to take the depositions of Ms. Davis and Ms. Schroeder with respect to their statements in their affidavits by November 12, 2010, and shall file a supplemental memorandum of law by November 19, 2010. Comcast shall file a reply supplemental

Case 1:09-cv-22069-AJ Document 527-4 Entered on FLSD Docket 11/12/2010 Page 11 of
22

memorandum by November 26, 2010.[4]

## V. Conclusion

In sum, the plaintiffs' motion for partial summary judgment is DENIED, and Comcast's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

DONE and ORDERED in chambers in Miami, Florida, this 13th day of October, 2010.

Adalberto Jordan
United States District Judge

Copy to:     All counsel of record

---

[4] Should it turn out, of course, that the affidavits were not accurate, the plaintiffs can resubmit their request for more broad-ranging discovery.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 09-20942-CIV-JORDAN
CASE NO. 09-21175-CIV-JORDAN

| | |
|---|---|
| JEANNETTE HAUSLER, et al. | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| THE REPUBLIC OF CUBA, et al., | ) |
| Defendants, | ) |
| | ) |
| vs. | ) |
| COMCAST IP PHONE II, | ) |
| Garnishee. | ) |
| | ) |
| | ) |

| | |
|---|---|
| JEANNETTE HAUSLER, et al. | ) |
| Plaintiffs, | ) |
| vs. | ) |
| THE REPUBLIC OF CUBA, et al., | ) |
| Defendants, | ) |
| | ) |
| vs. | ) |
| TELECOM NEW ZEALAND USA LIMITED, | ) |
| Garnishee. | ) |
| | ) |

## ORDER ON MOTIONS FOR RECONSIDERATION

For the reasons stated below, the plaintiffs' motions for reconsideration, *see* Case No. 09-20942-Civ-Jordan [D.E. 62, 63, 66]; Case No. 09-21175-Civ-Jordan [D.E. 70, 71, 74], are GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

These two cases are writ of garnishment actions brought by Jeanette Hausler, as a personal representative of the Estate of Robert Otis Fuller, and others against Comcast IP Phone II and Telecom New Zealand USA Limited to execute on $400 million judgment obtained in Florida state court against the Republic of Cuba, Fidel Castro Ruz, Raul Castro Ruz, the Cuban Revolutionary Armed Forces, and the Ministerio del Interior for the wrongful killing of Mr. Fuller. Both Telecom NZ and Comcast are telecommunications providers that – through hubbing agreements with third-party telecommunications carriers – route calls that may terminate in Cuba.

After an initial status conference on July 8, 2009, I ordered that Telecom NZ and Comcast (the garnishees) produce information that would enable the plaintiffs to determine if they possessed funds owed to the Republic of Cuba or the other Cuban parties or entities that could be garnished under Florida garnishment laws (i.e., Fla. Stat. § 77.01). Specifically, I required the garnishees to submit affidavits providing information pertaining to their relationships with the third-party telecommunications carriers and a copy of their OFAC licenses (if any). No further discovery was authorized unless, after these initial disclosures, the plaintiffs notified the court of the need for additional discovery, and the court approved such a request. Subsequent to the garnishee's initial disclosures, the plaintiffs filed a motion for partial summary judgment against Comcast (along with a request for further discovery), and requested further discovery from Telecom NZ. Both of the garnishees then filed motions for summary judgment asserting that the plaintiffs could not establish the right to a writ of garnishment against them under § 77.01.

On February 8, 2010, I held a hearing on the motions for summary judgment and the requests for further discovery, after which the parties were instructed to, and did, submit supplemental memoranda regarding whether § 77.01 was preempted by the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub L. No. 107-297, 116 Stat. 2337, codified at 28 U.S.C. § 1610 note. I subsequently issued orders granting, in part, both Comcast's and Telecom NZ's motions for summary judgment because, based on the record in both cases, the plaintiffs had failed to establish a right to writ of garnishment against either garnishee pursuant to § 77.01. *See* Order On Motion for Summary Judgment, Case No. 09-20942-Civ-Jordan [D.E. 56]; Order on Motions for Summary Judgment, Case No. 09-21175-Civ-Jordan [D.E. 62]. Additionally, I concluded that the TRIA did not preempt

2

the Florida garnishment statute, and that the TRIA did not apply to funds owed by Telecom NZ to other telecommunications carriers that ultimately routed calls to Cuba. I did, however, permit the plaintiffs to depose representatives for Comcast and Telecom NZ pertaining to statements they had made in affidavits, and instructed the plaintiffs to file supplemental memoranda based on any newly acquired information.

The plaintiffs have filed a single supplemental memorandum in response to both summary judgment orders, as the legal issues in both cases are virtually identical. The memorandum, for the most part, sets forth arguments seeking reconsideration of the legal conclusions in the previous orders on summary judgment. It also requests further discovery to demonstrate the allegedly fraudulent nature of the contractual relationships between the garnishees (Comcast and Telecom NZ) and the Republic of Cuba and the other Cuban entities and parties.

## II. LEGAL STANDARD

Motions for reconsideration "are only granted in rare circumstances to 'correct manifest errors of law or fact or to present newly discovered evidence.'" *See Young Apartments, Inc v. Town of Jupiter, Florida*, Case No. 05-807650-Civ-Ryskamp, 2007 WL 1490933, at *1 (S.D.Fla. May 21, 2007) (citing *Z.K. Marine v. M/V Archigetis*, 808 F.Supp. 1561, 1563 (S.D.Fla. 1992)). In particular, there are three major grounds which justify reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. *See id.* (citation omitted). A motion for reconsideration cannot be used to "'relitigate old matters, raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *See Wilchombe v. TeeVee Toons, Inc.* 555 F.3d 949, 957 (11th Cir. 2009) (citation omitted). "This prohibition includes new arguments that were 'previously available, but not pressed.'" *Id.* A "motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made." *Z.K. Marine, Inc.*, 808 F.Supp. at 1563. Denial of a motion for reconsideration is "especially soundly exercised" when the movant offers no reason for having failed to previously raise an issue. *See O'Neal v. Kennamer*, 958 F.2d 1044, 1047 (11th Cir.1992) (citation omitted).

## III. DISCUSSION

The plaintiffs seek reconsideration of several legal conclusions in my previous orders on the

3

summary judgment motions filed by Comcast and Telecom NZ. I will discuss the arguments in turn.

### A. THE TRIA DOES NOT ABROGATE THE REQUIREMENTS OF FLA. STAT. § 77.01

The plaintiffs seek reconsideration of my ruling that the TRIA does not preempt Fla. Stat. § 77.01. I concluded that §201(a) of the TRIA is not an "all-encompassing federal remedy preempting all other federal and state laws," including the Florida garnishment statutes, but rather is intended to override any *immunity* afforded to the assets of terrorist parties (or their agencies and instrumentalities) by rendering them subject to execution "in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism." *See* TRIA § 201(a). In reaching that conclusion, I ruled that the "notwithstanding any other provision of law" language was not intended to indiscriminately override any and all laws that may, in some way, apply to a judgment creditor seeking to execute upon the assets of a terrorist party; the language, instead, is intended to abrogate any laws that may provide immunity to, and thus prohibit execution upon, these type of assets.[1]

---

[1] The plaintiffs' argument is that the TRIA abrogates the substantive requirements for granting a writ of garnishment under Florida law. The Florida garnishment statute, § 77.01, provides that a judgment creditor (here, the plaintiffs) has a right to a writ of garnishment over any debt due to the judgment debtor (the Cuban entities or parties) by a third-party (allegedly Comcast and Telecom NZ). There is no evidence on this record that Comcast or Telecom NZ owe any debts to the Cuban entities or possess any of their property. The plaintiffs argue, however, that the substantive requirements for a writ of garnishment under Florida law are overridden by the TRIA, which they claim eliminates any impediment to executing upon the "blocked assets" of terrorist states. The plaintiffs' reasoning and argument is flawed because Florida garnishment laws do not operate on the same plane as the TRIA. The Florida garnishment statute establishes that where A has a judgment against B, that A can collect money owed by C to B in order to enforce the judgment. The TRIA, on the other hand, does not pertain to the circumstances under which a judgment creditor can collect from a third-party, but instead establishes that certain assets – the "blocked assets" of a terrorist party – are subject to execution. Thus, the Florida garnishment statute and the TRIA compliment one another: if Comcast and Telecom NZ owed funds directly to the Cuban entities that had been frozen or seized (therefore constituting "blocked assets"), then the plaintiffs would be entitled to garnish those funds under the TRIA. *See Hausler v. JP Morgan Chase*, No. 09 Civ 10289 (VM), 2010 WL 3817546, at *4 n. 8 (S.D.N.Y. Sept. 13, 2010) (in related writ of garnishment proceeding seeking to execute on the same judgment at issue here, the court denied a motion dismiss filed by banks allegedly in possession of "blocked assets" belonging to the Cuban entities, but stated that, based on Rule 69 of the Federal Rules of Civil Procedure, New York's state laws on garnishment applied because the "TRIA does not provide specific rules on execution of judgments"). I therefore disagree with the plaintiffs' argument that the TRIA clashes with, and abrogates, Florida

In seeking reconsideration of this conclusion, the plaintiffs cite to three specific decisions that they say were issued subsequent to the orders on summary judgment: *Weinstein v. Iran*, 609 F.3d 43 (2d Cir. 2010); *Bennett v. Iran*, 618 F.3d 19 (D.C. Cir. 2010); and *Hausler v. JP Morgan Chase*, 740 F.Supp.2d 525 (S.D.N.Y. 2010). However, not only were all three of these decisions issued prior to my orders (with two of them being submitted by the plaintiffs in notices of supplemental authority), but none of them contradict my conclusions as to the scope of the TRIA.

In *Weinstein*, the Second Circuit concluded, in relevant part, that § 201(a) of the TRIA abrogated a portion of a treaty between the United States and Iran that might be deemed to *immunize* the assets of companies that were considered agencies or instrumentalities of Iran. *See* 609 F.3d at 53. The Second Circuit specifically noted that the "notwithstanding any other provision of law" language of § 201(a) supported such a conclusion. *See id.* The application of the TRIA to override immunity afforded to Iranian assets through a treaty is entirely consistent with my application of §201(a), and has no bearing on whether that provision preempts Florida garnishment laws.

In *Bennett*, the D.C. Circuit ruled that Iran's former diplomatic properties were not subject to attachment because they are expressly excluded from the definition of "blocked assets" under §201 of the TRIA. *See* 618 F.3d at 24. It concluded that the properties qualified as "property subject to the Vienna Convention on Diplomatic Relations . . . that is being used exclusively for diplomatic or consular purposes," *see* TRIA § 201(d)(2)(B)(ii), which are explicitly excluded from the definition of "blocked assets" under the TRIA. The plaintiffs, in their motion, cite a brief portion of *Bennett* where the D.C. Circuit noted that the Foreign Missions Act, *see* 22 U.S.C. § 4308(f), which prohibits attachment of foreign mission property in custody of the State Department, does not apply to properties subject to the TRIA. *See* 618 F.3d at 24. This subsidiary observation, however, has no bearing on whether §201(a) the TRIA abrogates state garnishment procedures, and only addresses how the TRIA overrides any laws affording immunity to the assets of terrorist states. This is, again, in harmony with my construction of the TRIA.

In *J.P. Morgan Chase*, Judge Marrero ruled that "midstream electronic fund transfers" that the Republic of Cuba had an interest in, and were blocked subject to the Cuban Assets Control

garnishment laws.

Regulations, 31 C.F.R. § 515, were subject to execution under the TRIA.  In coming to this conclusion, Judge Marrero found that the definition of "blocked assets" under the TRIA preempted New York state law, which provides that midstream EFTs are "'neither the property of the originator nor the beneficiary while briefly in the possession of an intermediary bank.'" See 740 F.Supp.2d at 529 (citation omitted).  The decision, therefore, concerned an issue unrelated to the one here: whether assets blocked under the CACR, but not considered property of Cuba under New York state law, could be executed upon under the TRIA.  Notably, as previously indicated, Judge Marrero stated in a footnote that, based on Rule 69, New York's state laws on garnishment applied because the "TRIA does not provide specific rules on execution of judgments." See id. n. 8.

      In sum, none of these decisions contradict my ruling that the TRIA does not preempt or override the requirements of the Florida garnishment statute.

### B. THE GARNISHEES PAYMENTS TO THIRD-PARTY TELECOMMUNICATIONS CARRIERS ARE NOT BLOCKED ASSETS

      The plaintiffs move for reconsideration of my conclusion that Telecom NZ's payments to third-party telecommunications carriers for calls terminating in Cuba (through hubbing agreements) were not "blocked" assets under §201 of the TRIA. I reached this conclusion because Telecom NZ's disputed payments did not fall under the definition of "blocked assets" for two separate reasons: (1) the payments were not "seized or frozen by the United States" as explicitly required under the statute, see TRIA § 201(d)(2)(A), and (2) they were made pursuant to a specific license obtained from the Office of Foreign Asset Control, see id. at §201(d)(2)(B)(I).[2]  I also rejected the plaintiffs'

---

[2]  Under §201(d)(2) of the TRIA, the term "blocked asset" means:

"(A) any asset seized or frozen by the United States under section 5(b) of the Trading With the Enemy Act (50 U.S.C. App. 5(b)) or under sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701; 1702); and

"(B) Does not include property that--

"(i) is subject to a license issued by the United States Government for final payment, transfer, or disposition by or to a person subject to the jurisdiction of the United States in connection with a transaction for which the issuance of such license has been specifically required by statute other than the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.) or the United Nations Participation Act of 1945 (22 U.S.C. 287 et seq.) . . .

argument that all payments regulated by the CACR, even licensed transactions, constituted "blocked" or "frozen" assets under the TRIA.

The plaintiffs contend that I have misconstrued the definition and scope of the term "blocked asset" under the TRIA; they repeat their previous argument, which I found unpersuasive, that all assets or payments regulated by the CACR, even if they are subject to an OFAC license, fall within the parameters of "blocked assets." The plaintiffs, however, have not offered any viable basis for reconsideration of my ruling on this issue -- they have not cited to new authority, they have not demonstrated that the basis for my conclusion has been subsequently (or at any point in time) contravened, and they rely on previously rejected arguments (i.e., references to the legislative history of the TRIA). This is a quintessential effort to "relitigate old matters," which is not permitted on a motion for reconsideration. *See Wilchombe*, 555 F.3d at 957.

### C. THE PLAINTIFFS DO NOT HAVE A RIGHT TO A WRIT OF GARNISHMENT AGAINST THE GARNISHEES

The plaintiffs also request reconsideration of my conclusion that the plaintiffs do not have a right to a writ of garnishment against Comcast and Telecom NZ under Fla. Stat. § 77.01. They provide three separate grounds for reconsideration: (1) that there is no privity requirement under Florida garnishment law; (2) that the garnishees' payments to third-party telecommunications carriers are fraudulent payment schemes under Florida law; and (3) that Comcast is subject to garnishment for funds paid to Cuba through its agents.

First, the issue of the requirements for obtaining a writ of garnishment -- including the privity requirement -- was one of the primary issues briefed, and ruled upon, in the summary judgment orders. The plaintiffs now argue that the Florida Supreme Court's decision in *Hout v. Ely*, 17 Fla. 774 (Fla. 1880), has been superseded by amendments to the Florida garnishment statute. This is, however, an argument that could have and should have been raised during the initial round of briefing, and thus, is not a viable basis for reconsideration. Moreover, the plaintiffs cite no decisions indicating that *Huot* has not remained operative legal precedent on the issue of garnishment in Florida. Finally, regardless of the issue of privity, the plaintiffs have not submitted any evidence

_____

*See* TRIA § 201(d)(2)(A) and (B)(i).

demonstrating that the garnishees owe any debts to, or are in possession of "any tangible or intangible . . . property" of, the Republic of Cuba or the other Cuban entities or parties.

Second, the contention that the garnishees' payments to third-party telecommunications carriers for calls ultimately routed to Cuba are fraudulent conveyances under Florida law is an argument the plaintiffs could have, and did not, raise beforehand. That alone renders it an invalid basis for reconsideration of this issue. *See Wilchombe*, 555 F.3d at 957. Moreover, the fraudulent conveyance statutes referenced by the plaintiffs – Fla. Stat. §§ 222.30, 726.105 – do not apply here. For example, § 726.105 applies to transfers, or obligations incurred, by a debtor (here, the Republic of Cuba and the other Cuban entities or parties) that adversely affect a creditor (here, the plaintiffs). Specifically, the statute provides that a transfer or transaction by a debtor is fraudulent when it is undertaken "with actual intent to hinder, delay, or defraud any creditor of the debtor," or when it is undertaken "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation." *See* § 726.105(1). Here, the plaintiffs argue that Cuba's alleged telecommunications scheme – where Cuba only enters into direct relationships with foreign telecommunications carriers – is an attempt to evade debts to the plaintiffs and other judgment creditors. However, the issue here is entirely different - the narrow inquiry here is whether Comcast's or Telecom NZ's payments to third-party telecommunications carriers are "fraudulent conveyances" under Florida law. To that end, the plaintiffs have not offered any evidence that the payments or transfers made by the garnishees were made "with actual intent to hinder, delay, or defraud any creditor of the debtor," or were undertaken "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation." *See* § 726.105(1). I reach the same conclusion regarding the application of § 222.30 to the garnishees' payment obligations. That statute pertains to the conversion by a debtor of assets that are then made exempt by law from the claims of a creditor, and again, there is no evidence that Comcast or Telecom NZ have engaged in any such conduct.

Third, the plaintiffs argue that they are entitled to garnish funds from Comcast because C-1 and C-2 (the third-party telecommunications carriers to which Comcast routes calls that may terminate in Cuba) are agents of Comcast, acting on its behalf. The plaintiffs contend that Ms. Davis, Comcast's representative, testified that C-1 and C-2 were acting on behalf of Comcast, but they do not cite to any portion of the deposition supporting this claim. Comcast responds that,

during the deposition, the only reference made to C-1 and C-2 acting "on behalf of Comcast" was made by plaintiff's counsel. Based on this record, there is no evidence that C-1 or C-2 were agents of Comcast; instead, the evidence demonstrates that Comcast and C-1 and C-2 were involved in an arms-length contract for the provision of telecommunications services and that Comcast had no knowledge of any payments made by C-1 and C-2 to the Republic of Cuba or any Cuban entities or parties. On this record Comast and C-1 and C-2 were not involved in an agency relationship. *See Raney v. Aware Woman Center for Choice, Inc.,* 224 F.3d 1266, 1268 (11th Cir.2000) ("Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall *act on his behalf and subject to his control,* and consent by the other so to act.") (emphasis added).[3]

## D. THE MOTION FOR FURTHER DISCOVERY IS GRANTED IN PART AND DENIED IN PART

The plaintiffs have also moved for further discovery, arguing that "the extremely truncated discovery allowed to date has demonstrated that there are genuine issues of material fact [that] . . . entitle[] [the plaintiffs] to further discovery . . . before any further adjudication . . . ." The plaintiffs list the areas of discovery that they claim require further inquiry, including the identity of the third-party telecommunications carriers (C-1, C-2, T-1, T-2, T-3), the terms of any government licenses issued to these third-party carriers, the terms of the agreements between Telecom NZ / Comcast and these carriers, and discovery from the downstream carriers through whom the third-party telecommunications carriers transmit calls to Cuba. They claim that under Rule 56(d) they are entitled to this discovery before I render a final decision on the motions for summary judgment.[4]

Much of the proposed discovery goes beyond the scope of the dispositive issue here –

---

[3] The plaintiffs' motion for reconsideration of this issue is denied as to the grounds proffered by the plaintiffs. Nevertheless, I have granted, in part, the plaintiffs' motion for further discovery. As indicated below, the plaintiffs may, through the use of new evidence, submit supplemental memoranda demonstrating that they are entitled to garnish funds from Comcast and Telecom NZ.

[4] The plaintiffs cited Rule 56(f) in support of their argument that they are entitled to further discovery before I rule on the summary judgment motions. Pursuant to the recent amendments to the Federal Rules of Civil Procedure, effective December 1, 2010, this section was re-designated as Rule 56(d).

whether Telecom NZ and Comcast are in possession of any funds or assets that the plaintiffs have a right to garnish under Fla. Stat. § 77.01. For example, the plaintiffs have requested discovery regarding the downstream carriers through which the third-party telecommunications carriers route their calls – in other words, carriers that are twice removed from Comcast and Telecom NZ. Discovery pertaining to these downstream carriers is simply not relevant to the limited issues presented in this garnishment proceeding. *See Allen v. U.S. EEOC Office,* 366 Fed.Appx. 972, 974 (11ᵗʰ Cir. 2010) ("Where 'the documents or other discovery sought *would be relevant to the issues presented by the motion for summary judgment,* the opposing party should be allowed the opportunity to utilize the discovery process to gain access to the requested materials.") (emphasis added) (quoting *Snook v. Trust Co. of Ga. Bank of Savannah, N.A.,* 859 F.2d 865, 870 (11th Cir.1988)).

I find, however, that the plaintiffs are entitled to certain limited additional discovery – namely, discovery regarding the (1) identity of the third-party telecommunications carriers through which Comcast and Telecom NZ route their calls, and (2) the terms of the hubbing agreements or telecommunications contracts between Comcast / Telecom NZ and these third-party carriers. This information would allow the plaintiffs, and the court, to determine whether the third-party carriers are, for example, wholly owned subsidiaries or affiliates of Comcast or Telecom NZ – which would potentially provide the plaintiffs with new legal arguments in support of the writs of garnishment.

Accordingly, by May 9, 2011, Comcast and Telecom NZ shall provide the plaintiffs with: (1) affidavits providing the identity and, if known, the corporate ownership of any and all third-party telecommunications carriers through which they route calls that terminate in Cuba, and (2) redacted copies of all hubbing agreements and contracts with these telecommunications carriers.[5] By May 30, 2011, the plaintiffs may depose the Comcast / Telecom NZ affiants, and by June 14, 2011, they shall submit supplemental memoranda providing any new evidence – obtained through this new

---

[5] These agreements obviously contain confidential information and, thus, should be redacted to prevent disclosure of such information. The purpose of requiring disclosure of these agreements is to permit the plaintiffs to learn more about the identity of these third-party telecommunications carriers and the nature of the relationships between them and the garnishees. All discovery pursuant to this order shall be subject to a confidentiality order. If the parties cannot agree on the scope of such an order, they shall let me know as soon as possible.

discovery – that may have bearing on whether the plaintiffs are entitled to garnish funds from Comcast and Telecom NZ under Fla. Stat. § 77.01. Comcast and Telecom NZ shall submit responses to the supplemental memoranda by June 30, 2011.

## IV. CONCLUSION

The plaintiffs' motions for reconsideration of the orders on summary judgment and requesting additional discovery, *see* Case No. 09-20942-Civ-Jordan [D.E. 62, 63, 66] and Case No. 09-21175-Civ-Jordan [D.E. 70, 71, 74], are GRANTED IN PART and DENIED IN PART. The plaintiffs' arguments seeking reconsideration of the prior orders are DENIED. The plaintiffs' request for further discovery is GRANTED IN PART and DENIED IN PART.

DONE and ORDERED in chambers in Miami, Florida, this 26th day of April, 2011.

*Adalberto Jordan*

Adalberto Jordan
United States District Judge

Copy to:    All counsel of record

11