UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Tampa Division

KEITH STANSELL,                                 Case No. 8:09-CV-2308-RAL-MAP
MARC GONSALVES,
THOMAS HOWES,
JUDITH G. JANIS,
CHRISTOPHER T. JANIS,
GREER C. JANIS, MICHAEL I. JANIS,
and JONATHAN N. JANIS,

    *Plaintiffs*,

v.

REVOLUTIONARY ARMED FORCES
OF COLOMBIA (FARC), et al.,

    *Defendants*.

_____/

## CLAIMANT JOSE RICAURTE DIAZ HERRERA'S MOTION FOR DISSOLUTION OF WRIT OF GARNISHMENT AND RELATED RELIEF AND INCORPORATED MEMORANDUM OF LAW

JOSEPH S. ROSENBAUM, ESQ.
LAW OFFICES OF JOSEPH S. ROSENBAUM, P.A.
Grove Forest Plaza, Suit 101
2937 S.W. 27ᵗʰ Avenue
Miami, FL 33133-3141
Telephone: (305) 446-6099
Fax: (305) 446-6150
E-mail: jsr@rosenbaum-lunalaw.com
*Counsel For Jose Ricaurte Diaz Herrera*
[OFAC LICENSE No. FNK-785]

# TABLE OF CONTENTS

**Page**

MEMORANDUM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.     FLORIDA GARNISHMENT STATUTES GOVERN THESE PROCEEDINGS . . . . . . . . . . . . . . . . . 3

II.     THE PLAINTIFFS' MOTION WAS FACTUALLY AND LEGALLY BASELESS . . . . . . . . . . . . . 8

      A.     Mr. Herrera's Funds Were Not A "Blocked Asset" Under TRIA . . . . . . . . . . . 9

      B.     A Midstream EFT Is Not A Garnishable Form Of Property . . . . . . . . . . . . . . 9

      C.     OFAC Did Not "Determine" That The Funds Were Linked To The FARC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      D.     Mr. Herrera Was Not An "Agency Or Instrumentality" . . . . . . . . . . . . . . . . . 17

III.    THE PLAINTIFFS' FAILURE TO SECURE A LICENSE TO RECEIVE BLOCKED FUNDS RENDERS THE GARNISHMENT ORDERS "NULL AND VOID" . . . . . . . . . . . . . . . . . . . . 18

IV.    OFAC'S PROCEDURES AND TRIA § 201(a) ARE UNCONSTITUTIONAL . . . . . . . . . . . . . 21

      A.     OFAC's Regulations Are Unconstitutional . . . . . . . . . . . . . . . . . . . . . . . . . 21

      B.     TRIA Is Unconstitutional As Applied Herein . . . . . . . . . . . . . . . . . . . . . . . 22

      C.     TRIA Violates The Takings Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

LOCAL RULE 3.01(g) CERTIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page**

*Alejandre v. Telefonica Larga Distancia de Puerto Rico, Inc.,*
   183 F.3d 1277 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Al Haramain Islamic Foundation, Inc. v. OFAC,*
   No. 10-35032 (9th Cir. Sept. 23, 2011),
   *2011 U.S. App. LEXIS 19498* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. Great W. Airlines,*
   767 F.2d 425 (8th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Bank of New York v. Nickel,*
   14 A.D.3d 140, 789 N.Y.S. 2d 95 (N.Y. App. Div. 2004) . . . . . . . . . . . . . . . . . . . 13

*Bennett v. Islamic Republic of Iran,*
   No. CV 11-80065 MISC CRB (NJV) (N.D. Cal. July 26, 2011),
   *2011 U.S. Dist. LEXIS 81143* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Carpenter v. United States,*
   484 U.S. 19 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Citizens Electric Corp. v. Bituminous Fire & Marine Ins. Co.,*
   68 F.3d 1016 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Cleveland v. United States,*
   531 U.S. 12 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

*Cole v. American Capital Partners Ltd., Inc.,*
   Case No. 06-80525-CIV-Hurley/Hopkins (D.D. Fla. Dec. 14, 2009),
   *2009 U.S. Dist. LEXIS 122839* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cole v. American Capital Partners Ltd., Inc.,*
   Case No. 06-80525-CIV-Hurley/Hopkins (D.D. Fla. Jan. 12, 2010),
   *2010 U.S. Dist. LEXIS 2064* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cremeens v. The City of Montgomery,*
   602 F.3d 1224 (11th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Crosby v. National Foreign Trade Council,*
   530 U.S. 363 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Dir., Office of Workers' Comp. v. Newport News Shipbuilding & Dry Dock Co.*,
    514 U.S. 122 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Erlenbaugh v. United States*,
    409 U.S. 239 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Estate of Mark Parsons v. The Palestinian Authority*,
    715 F. Supp. 2d 27 (D.D.C. 2010),
    *aff'd* __ F.3d __ (D.C. Cir. Aug. 5, 2011),
    *2011 U.S. App. LEXIS 16809* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Hausler v. JP Morgan Chase Bank, N.A.*,
    740 F. Supp. 2d 525 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11, 13

*Hausler v. JP Morgan Chase Bank, N.A.*,
    Case No. 09 Civ. 10289 (VM) (Feb. 18, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hausler v. The Republic of Cuba*,
    Case No. 09-20942-Civ-Jordan (S.D. Fla.) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Hausler v. The Republic of Cuba*,
    Case No. 09-21175-Civ-Jordan (S.D. Fla.) . . . . . . . . . . . . . . . . . . 4, 5, 13, 20

*Hawaii Hous. Auth. v. Midkiff*,
    467 U.S. 229 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Hill v. Republic of Iraq*,
    Case A. 1:99CV03346TP,
    2003 WL 21057173 (D.D.C. March 11, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Hooper v. California*, 155 U.S. 648 (1895) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*In re Banco Santander Securities-Optimal Litigation*,
    732 F. Supp. 2d 1305 (S.D. Fla. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Homestore.com, Inc. Securities Litigation*,
    347 F. Supp. 2d 769 (C.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Look*,
    383 B.R. 210 (Bankr. D. Maine 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Johnson v. American Credit Co. of Georgia*,
    581 F.2d 526 (5th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Kelo v. City of New London*,
　　545 U.S. 469 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Kemp Indus. v. Safety Light Corp.*,
　　857 F. Supp. 373 (D. N.J. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Kindhearts For Charitable Humanitarian Development, Inc. v. Geithner*,
　　647 F. Supp. 857 (N.D. Ohio 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Levin v. Bank of New York*,
　　No. 09 CV 5900 (RPP) (S.D.N.Y. Jan. 28, 2011),
　　*2011 U.S. Dist. LEXIS 8946* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11, 13

*Lingle v. Chevron U.S.A., Inc.*,
　　544 U.S. 528 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Marajh v. Broadspire Services, Inc.*,
　　Case No. 07-60975-Civ-Zlock (S.D. Fla. Nov. 21, 2008),
　　*2008 U.S. Dist. LEXIS 99757* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Marsh v. Rosenbloom*,
　　499 F.3d 165 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*McNally v. United States*,
　　483 U.S. 350 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*McReynolds v. Lowe's Companies, Inc.*,
　　Case No. C08-335-S-EJL (D. Idaho Dec. 12, 2008),
　　*2008 U.S. Dist. LEXIS 100594* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mecurio International v. Stansell, et al.*,
　　11th Cir. Nos. 11-11125 & 11-11690, Sept. 2, 2011 . . . . . . . . . . . . . . . . . . . . . 9

*Ministry of Def. v. Elahi*,
　　556 U.S. 366, 129 S.Ct. 1732 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Montgomery Co., MD v. Barwood*,
　　422 B.R. 40 (M.D. Md. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Mo. Pac. Ry. Co. v. Nebraska*,
　　164 U.S. 403 (1896) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Mouzon Enterprises, Inc. v. Department of Revenue*,
    610 F.3d 1329 (11th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Nat'l Council of Resistance of Iran v. Dept. of State*,
    251 F.3d 192 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 22

*Nightlight Systems, Inc. v. Nitelites Manufacturing & Distribution Systems, Inc.*,
    No. 1:04-CV-2112-CAP (N.D. Ga. May 11, 2007),
    *2007 U.S. Dist. LEXIS 95538* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Offshore Logistics, Inc. v. Tallentire*,
    477 U.S. 207 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Pasquantino v. United States*,
    544 U.S. 348 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People's Mojahedin Org. of Iran v. Dept. of State*,
    182 F.3d 17 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*People's Mojahedin Organization of Iran v. Dept. of State*,
    613 F.3d 110 (D.C. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*PG&E Co. v. California*,
    350 F.3d 932 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Pharmaceutical Research and Manufacturers of America v. Meadows*,
    304 F.3d 1197 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-21

*Raygor v. Regents of the University of Minnesota*,
    534 U.S. 533 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Rudd v. First Union Nat'l Bank of Florida*,
    761 So.2d 1189 (Fla. 4th DCA 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Russian Volunteer Fleet v. United States*,
    282 U.S. 481 (1931) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Samantar v. Yousuf*,
    130 S.Ct. 2278 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Scanscot Shipping Services v. Metales Tracomex LTDA*,
    617 F.3d 679 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Securities Industry Assoc. v. Board of Gov. of the Federal Reserve Sys.,*
    468 U.S. 137 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Shipping Corp. of India Ltd. v. Jaldhi Overseas PTE Ltd.,*
    585 F.3d 58 (2d Cir. 2009),
    *cert. denied,* 130 S.Ct. 1895 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

*Simanonok v. Simanonok,*
    787 F.2d 1517 (11th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Skilling v. United States,*
    130 S.Ct. 2896 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Smith v. Federal Reserve Bank of New York, et al.,*
    280 F. Supp. 2d 314 (S.D.N.Y. 2003),
    *aff'd,* 346 F.3d 264 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 13

*Smith v. Fed. Reserve Bank,*
    346 F.3d 264 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Sniadach v. Family Fin. Corp. of Bay View,*
    395 U.S. 337 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*St. Clair v. Johnn's Oyster & Shrimp, Inc.,*
    76 F. Supp. 2d 773 (S.D. Texas 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*St. Luke's Cataract and Laser Institute, P.A. v. Sanderson,*
    No. 8:06-CV-2223 (M.D. Fla. May 12, 2006),
    *2006 U.S. Dist. LEXIS 28873* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Sun Protection, Inc. v. Tender Corp.,*
    Case No. 6:04-cv-732-Orl-19 KRS (M.D. Fla. Oct. 7, 2005),
    *2005 U.S. Dist. LEXIS 35623* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ungar v. The Palestinian Authority,*
    304 F. Supp. 2d 232 (D.R.I. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. A Parcel of Land (92 Buena Vista Avenue),*
    507 U.S. 111 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Holy Land Found,*
    445 F.3d 771 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Holy Land Found.*, No. 3:04-CR-0240-P (N.D. Tex. April 27, 2011),
    *2011 U.S. Dist. LEXIS 46155* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Trainor,*
    376 F.3d 1325 (11th Cir. 2004)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Vasquez-Alvarez,*
    176 F.2d 1294 (10th Cir. 1999)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Vitek v. Jones,*
    445 U.S. 480 (1980)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Weininger v. Castro,*
    462 F. Supp. 2d 457 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 19, 20

*Weinstein v. Islamic Republic of Iran,*
    609 F.3d 43 (2d Cir. 2010)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*W. Va. Univ. Hosps., Inc. v. Casey,*
    499 U.S. 83 (1991)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Will v. Mich. Dept. of State Police,*
    491 U.S. 58 (1989)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Williamson v. Altapointe Health Systems, Inc.,*
    No. 08-Civ-00284-CB-M (S.D. Ala. June 15, 2009),
    *2009 U.S. Dist. LEXIS 50549*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Wisconsin v. Constantineau,*
    400 U.S. 433 (1971)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Wisconsin Public Intervenor v. Motrier,*
    501 U.S. 597 (1991)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Williams v. Taylor,*
    529 U.S. 420 (2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## **Code of Federal Regulations**

31 C.F.R. § 501.807  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

31 C.F.R. § 515.203(e)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

31 C.F.R. § 594.201  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

31 C.F.R. § 594.202(e)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

31 C.F.R. § 597.202(e)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

31 C.F.R. § 597.301  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

31 C.F.R. § 598.205(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 18, 19

31 C.F.R. § 598.205(e)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 20

31 C.F.R. § 598.307  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

31 C.F.R. § 598.312  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

31 C.F.R. § 598.314  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 20


**Federal Rules of Civil Procedure**

Rule 4(f)(3)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Rule 69(a)(1)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 6


**Florida Statutes**

Fla. Stat. § 77.041  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fla. Stat. § 77.055  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fla. Stat. § 77.07  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fla. Stat. § 77.07(1)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fla. Stat. § 77.07(2)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fla. Stat. § 77.16(1)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fla. Stat. § 77.28  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**United States Code**

18 U.S.C. § 2333(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

21 U.S.C. § 1901 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. § 1904 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

22 U.S.C. § 2370(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

22 U.S.C. § 4308(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

28 U.S.C. § 1332© . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

28 U.S.C. § 1332(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

28 U.S.C. § 1603 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

28 U.S.C. § 1603(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

28 U.S.C. § 1603(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

28 U.S.C. § 1603(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

28 U.S.C. § 1605(a)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

28 U.S.C. § 1608(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 1610, Note (P.L. 107-297, Title II, § 201(a), 116 Stat. 2337, 2339) . . . . . . . . *passim*

28 U.S.C. § 1610, Note (P.L. 107-297, Title II, § 201(d)(2)(A), 116 Stat. 2337, 2339) . . . . . . 8-9

28 U.S.C. § 1610, Note (P.L. 107-297, Title II, § 201(d)(2)(B)(ii), 116 Stat. 2337, 2339) . . . . . 12

28 U.S.C. § 1610, Note (P.L. 107-297, Title II, § 201(d)(3), 116 Stat. 2337, 2339) . . . . . . . . . 12

28 U.S.C. § 1610(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

28 U.S.C. § 1610(f)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

28 U.S.C. § 1610(f)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

50 U.S.C. App. 5(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 19

50 U.S.C. § 1701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 19

50 U.S.C. § 1702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 19

**Miscellaneous**

AMEND IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

AMEND. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 14, 22, 24

Bankruptcy Rule 9024 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Federal Register, Vol. 75. No. 092, May 13, 2010 (75 FR 27118) . . . . . . . . . . . . . . . . . . . . . 15

Federal Register, Vol. 75. No. 126, July 10, 2010 (75 FR 38212) . . . . . . . . . . . . . . . . . . . . . 15

IEEPA § 1702(a)(1)© . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Matthew Bender & Company, *The Law of Electronic Funds Transfers* (2004) . . . . . . . . . . . . 10

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Tampa Division

KEITH STANSELL,                                    Case No. 8:09-CV-2308-RAL-MAP
MARC GONSALVES,
THOMAS HOWES,
JUDITH G. JANIS,
CHRISTOPHER T. JANIS,
GREER C. JANIS, MICHAEL I. JANIS
and JONATHAN N. JANIS,

     *Plaintiffs*,

v.

REVOLUTIONARY ARMED FORCES
OF COLOMBIA (FARC), et al.
     *Defendants*.
_____/

## CLAIMANT JOSE RICAURTE DIAZ HERRERA'S MOTION FOR DISSOLUTION OF WRIT OF GARNISHMENT AND RELATED RELIEF AND INCORPORATED MEMORANDUM OF LAW

Claimant Jose Ricaurte Diaz Herrera respectfully moves this Court, pursuant to Fed. R. Civ.

P. 69(a)(1), Fla. Stat. § 77.07 and the Due Process and Takings Clauses of the Fifth Amendment, for

an order: (1) dissolving the *Writ of Execution/Garnishment* (DE 253) that this Court issued *ex parte*

on December 16, 2010; and (2) vacating the Court's *ex parte Order* (DE 252), also dated December

16, 2010, which granted Plaintiffs' *ex parte Motion For Issuance of Writ of Garnishment For Post-*

*Judgment Execution Proceedings and Memorandum of Law* (DE 251).[1] Mr. Herrera further requests

that the Court consider the instant motion as his Claim of Exemption and Request For Hearing under

---

[1] Mr. Herrera is separately filing a *Motion For Relief From Judgment*, requesting the vacatur of the Court's *ex parte* Order (DE 256), which granted the Plaintiffs' *ex parte Motion For Entry of Judgment on Answer of Garnishee Wachovia Bank, A Division of Wells Fargo Bank, N.A.* (DE 255), and *Judgment On Answer To Writ of Garnishment In a Civil Case* (DE 257).

Fla. Stat. § 77.041 and submits the accompanying affidavit in compliance with Fla. Stat. §§ 77.041 and 77.16(1). Mr. Herrera further requests that the Court direct Plaintiffs' counsel, Porter & Korvik, PA. (hereinafter "P&K"), to return and deposit into the Registry of the Court the $2,006,878.84 it received from Wachovia Bank pursuant to the aforementioned Writ, plus interest since December 16, 2010. Finally, Mr. Herrera requests attorneys fees and costs under Fla. Stat. § 77.28.

In support of these requests, Mr. Herrera submits the following Memorandum. Part I demonstrates that these proceedings are governed by the procedural requirements of Florida Statutes, Chapter 77. Part II demonstrates that the *Plaintiffs' Motion For Issuance of Writ of Garnishment For Post-Judgment Execution Proceedings and Memorandum of Law* (DE 251) was factually and legally baseless. Part III demonstrates that Plaintiffs' motion should be considered "null and void" under 31 C.F.R. § 598.205(a) because neither Plaintiffs nor P&K were licensed by the Treasury Department's Office of Foreign Assets Control ("OFAC") to seek the garnishment of assets "blocked" under the Foreign Narcotics Kingpin Designation Act (Kingpin Act)," 21 U.S.C. §§ 1901, *et seq.*, as OFAC's regulations expressly require. And, Part IV demonstrates that the Plaintiffs' construction of the relevant statutes and regulations would render them unconstitutional on their face and as applied herein under the Warrant Clause of the Fourth Amendment and the Due Process and Takings Clauses of the Fifth Amendment.

## MEMORANDUM

### I.    FLORIDA GARNISHMENT STATUTES GOVERN THESE PROCEEDINGS

The Plaintiffs obtained default judgments against the FARC[2] and some 77 specifically named

alleged members of the FARC under the Anti-Terrorism Act, 18 U.S.C. 2333(a), which provides a

civil cause of action for U.S. nationals who have been injured by acts of "international terrorism."

Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"), 28 U.S.C. § 1610 Note,

permits parties to execute such judgments against "assets" that have been "blocked" by the Treasury

Department's Office of Foreign Assets Control ("OFAC").  Section 201(a) thus provides:

> (a) In general. Notwithstanding any other provision of law, and except as provided
> in subsection (b), in every case in which a person has obtained a judgment against a
> terrorist party on a claim based upon an act of terrorism, or for which a terrorist party
> is not immune under section 1605(a)(7) of title 28, United States Code, the blocked
> *assets* of that terrorist party (including the blocked assets of any agency or
> instrumentality of that terrorist party) shall be *subject to execution or attachment* in
> aid of execution in order to satisfy such judgment to the extent of any compensatory
> damages for which such terrorist party has been adjudged liable.

(Emphasis added.)

The Foreign Sovereign Immunities Act ("FSIA"), into which § 201(a) was inserted as a Note,

provides a method for service on an "agency or instrumentality of a *foreign state*" but not for

*individuals. See* 28 U.S.C. § 1608(b) (emphasis added).  Section 201(a) is simply silent about what

procedures govern its implementation.  Since no federal statute "governs" the procedures to be

utilized, the Court is required, under Fed. R. Civ. P. 69(a)(1), to employ state law.  Rule 69(a)(1)

thus provides that "[t]he procedure on execution ... must accord with the procedure of the state where

---

[2] "FARC" is the acronym for the "Fuerzas Armadas Revolucionarias De Colombia" (Revolutionary Armed Forces of
Colombia).

the court is located, but a federal statute governs to the extent it applies." Florida's garnishment

statutes, therefore, govern.

Through their *ex parte* motion, the Plaintiffs convinced the Court to reject this common sense

reading of the relevant provisions by advancing the unprecedented theory that since TRIA was *silent*

about what procedures would be necessary to effectuate attachments, Congress meant to *eliminate*

*all* such requirements.    Plaintiffs based this radical argument entirely on § 201(a)'s

"[n]otwithstanding" clause but did not inform the Court that it's argument had already been soundly

rejected by the Hon. Adalberto Jordan in a series of related cases. *See* Order on Motion For

Summary Judgment, *Hausler v. The Republic of Cuba*, Case No. 09-21175-Civ-Jordan (S.D. Fla.

Oct. 1, 2010), and Order on Motions For Reconsideration, Case No. 09-21175-Civ-Jordan (S.D. Fla.

April 26, 2011); Order on Motions For Summary Judgment, *Hausler v. The Republic of Cuba*, Case

No. 09-20942-Civ-Jordan (S.D. Fla. Oct. 13, 2010), and Order on Motions For Reconsideration,

*Hausler v. The Republic of Cuba*, Case No. 09-20942-Civ-Jordan (S.D. Fla. April 26, 2011),

attached hereto as **Exhibits 1** and **2**. As Judge Jordan explained:

> This reading of the TRIA is not persuasive. The "notwithstanding any other
> provision" language in the TRIA means that "to the extent a foreign country's
> sovereign immunity potentially conflicts with § 201(a) [of the TRIA], the
> 'notwithstanding' phrase removes the potential conflict." *See Smith v. Federal
> Reserve bank of New York, et al.*, 280 F. Supp. 2d 314, 319 (S.D.N.Y. 2003), *aff'd*,
> 346 F.3d 264 (2d Cir. 2003). *See also [Hill v. republic of Iraq*, Case. A.
> 1:99CV03346TP, 2003 WL 21057173, at *2 (D.D.C. March 11, 2003)] ("[B]y its
> plain terms, the TRIA overrides any immunity from execution that blocked Iraqi
> property might otherwise enjoy under the Vienna Convention or the FSIA."). The
> language of the TRIA does not mean "that the TRIA covers the entire field and
> nullifies all previous statutes that pertain to blocked assets." *See Smith*, 280 F. Supp.
> 2d at 319.
>    The TRIA simply offers a right to execute, and is not – as plaintiffs contend
> – an all-encompassing federal remedy preempting all other federal and state laws that
> might somehow regulate, limit, or prohibit execution upon "blocked assets."

Order on Motion For Summary Judgment, *Hausler v. The Republic of Cuba*, Case No. 09-21175-Civ-Jordan (S.D. Fla. Oct. 1, 2010), at p. 11. Judge Jordan refused to read TRIA's notwithstanding clause as nullifying the need for a procedural mechanism and held that Florida law controlled the manner in which the TRIA would be implemented. *Id.* at pp. 11-12. *See also Smith*, 346 F.3d at 269-271 (noting, in an execution on "blocked assets" under the TRIA, that there is "no relevant federal statute" on execution, so that the execution on any judgment issued would proceed according to New York law and rejecting as "stretched" the plaintiffs' argument that TRIA permitted attachment of property already confiscated by the President under the IEEPA § 1702(a)(1)©); *Weininger v. Castro*, 462 F. Supp. 2d 457, 499 (S.D.N.Y. 2006)(applying New York garnishment statute to determine that bank accounts were "blocked assets" under the TRIA and could be used to satisfy the plaintiffs' judgments).

The Plaintiffs' contention that TRIA preempted state law also cannot be squared with the Supreme Court's "clear statement" rule, which bars courts from construing acts of Congress as displacing state law unless Congress makes an "unmistakably clear" statement to that effect. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 65 (1989); *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 228-29 (1986). *See also United States v. Vasquez-Alvarez*, 176 F.2d 1294, 1997-98 (10th Cir. 1999) (refusing to construe "notwithstanding" clause in 8 U.S.C. § 1326 as preempting pre-existing state law where "[t]here is simply no indication whatsoever in the legislative history to § 1252c that Congress intended to displace preexisting state or local authority..."). The clear statement rule applies to state procedural rules as well as substantive laws. *See, e.g., Raygor v. Regents of the University of Minnesota*, 534 U.S. 533, 543-44 (2002). "Mere silence ... cannot suffice" as a

"'clearly and manifest purpose' to pre-empt" state law. *Wisconsin Public Intervenor v. Motrier*, 501 U.S. 597, 607 (1991).[3]

In their *ex parte* motion, the Plaintiffs erroneously argued that their limitless construction of TRIA's "notwithstanding" clause was supported by *Hausler v. JP Morgan Chase Bank, N.A.*, 740 F. Supp. 2d 525 (S.D.N.Y. 2010). In fact, the court in *JP Morgan Chase* applied New York law to the procedural aspects of the case. 740 F. Supp. 2d at 541 & n. 15 (S.D.N.Y. 2010) (holding that New York's garnishment statutes apply in TRIA action so that "third parties will be given notice and afforded time to provide written objections asserting any superior claims they may have to the blocked assets").[4] And, in a subsequent order, the court found that two affected foreign banks had not been given "timely notice of a claim to the funds" and directed the petitioner to serve them with at least "the equivalent of service of process pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure." *See* Order Compelling Turnover of Remaining Funds, *Hausler v. JP Morgan Chase Bank, N.A.*, Case No. 09 Civ. 10289 (VM), February 18, 2011, **Exhibit 3**, at pp. 6-7. More recently, another judge in the same court as *JP Morgan Chase* held that Rule 69(a)(1) and New York law governed procedural requirements. *See Levin v. Bank of New York*, No. 09 CV 5900 (RPP) (S.D.N.Y. March 4, 2011), *2011 U.S. Dist. LEXIS 23779*, at **49-55, and *Levin v. Bank of New York*, No. 09 CV 5900 (RPP) (S.D.N.Y. Jan. 28, 2011), *2011 U.S. Dist. LEXIS 8946*, at **49-55.

---

[3] Courts interpreting other federal statutes containing "notwithstanding" clauses have similarly held that such clauses refer to matters of substance, *not procedure*. *See, e.g., Marsh v. Rosenbloom*, 499 F.3d 165, 177 (2d Cir. 2007); *PG&E Co. v. California*, 350 F.3d 932, 946 (9th Cir. 2003); *Citizens Electric Corp. v. Bituminous Fire & Marine Ins. Co.*, 68 F.3d 1016 (7th Cir. 1995); *Montgomery Co, MD v. Barwood*, 422 B.R. 40 (M.D. Md. 2009).

[4] Judge Jordan's opinions in *Hausler* also recognized that *JP Morgan Chase* applied New York law to the garnishment procedures in that case.

Pursuant to Fla. Stat. § 77.07(1), upon the filing of a motion, a claimant "may obtain the dissolution of a writ of garnishment, unless the petitioner proves the grounds upon which the writ was issued" and purported debtors "may obtain dissolution of a writ of garnishment if they establish that the funds are exempt from garnishment under state or federal law." *Cole v. American Capital Partners Ltd., Inc.*, Case No. 06-80525-CIV-Hurley/Hopkins (S.D. Fla. Dec. 14, 2009), *2009 U.S. Dist. LEXIS 122839*, at *10, *adopted in Cole v. American Capital Partners Ltd., Inc.*, Case No. 06-80525-CIV-Hurley/Hopkins (S.D. Fla. Jan. 12, 2010), *2010 U.S. Dist. LEXIS 2064*. The defendant or "any other person having an ownership interest in the property" may move to dissolve a writ of garnishment. *Rudd v. First Union Nat'l Bank of Florida*, 761 So.2d 1189, 1191 (Fla. 4th DCA 2000).

Moreover, where the party seeking the writ of garnishment fails to serve a known owner of the property as required by Fla. Stat. § 77.055,[5] the 20 day time limit under § 77.07(2) for filing a motion to dissolve a writ of garnishment does not apply. *Rudd*, 761 So.2d at 1192. As discussed in the accompany *Motion For Relief From Judgment*, neither the Plaintiffs nor this Court ever attempted to notify Mr. Herrera about the proceedings. Accordingly, the instant motion is timely and the Court should dissolve the writ based on the following objections. *See Rudd*, 761 So.2d at 1192 (vacating writ and remanding for consideration of claimant's objections).

---

[5] Section 77.055 provides:

Within 5 days after service of the garnishee's answer on the plaintiff or after the time period for the garnishee's answer has expired, the plaintiff shall serve, by mail, the following documents: a copy of the garnishee's answer, and a notice advising the recipient that he or she must move to dissolve the writ of garnishment within 20 days after the date indicated on the certificate of service in the notice if any allegation in the plaintiff's motion for writ of garnishment is untrue. The plaintiff shall serve these documents on the defendant at the defendant's last known address and any other address disclosed by the garnishee's answer and on any other person disclosed in the garnishee's answer to have any ownership interest in the deposit, account, or property controlled by the garnishee. The plaintiff shall file in the proceeding a certificate of such service.

## II.    THE PLAINTIFFS' MOTION WAS FACTUALLY AND LEGALLY BASELESS

TRIA § 201(a) provides that a person who has obtained a judgment against a "terrorist party" may attach "the *blocked assets* of that terrorist party (including the *blocked assets* of any *agency or instrumentality* of that terrorist party)...." (Emphasis added.) Congress has enacted a variety of statutes that give OFAC the authority to "block" or freeze assets. However, § 201(a) did not give victims of terrorism the right to garnish all of them. TRIA § 201(d)(2) expressly limits a prevailing plaintiff to "blocked assets of" the terrorist party. TRIA contains no definition of an "asset" but expressly defines a "blocked asset" as follows:

"(d) Definitions. In this section, the following definitions shall apply:
***
"(2) Blocked asset. The term 'blocked asset' means–

"(A) any asset seized or frozen by the United States under *section 5(b) of the Trading With the Enemy Act (50 U.S.C. App. 5(b)) or under sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701; 1702)*....

(Emphasis added).

Therefore, in order to lawfully garnish Mr. Herrera's funds, the Plaintiffs were required to prove four elements:

(1) That Mr. Herrera's funds were blocked under either the TWEA or the IEEPA;

(2) That the midstream electronic funds transfer was an "asset" of Mr. Herrera when

it was intercepted at Wachovia Bank;

(3) That the funds at issue were assets "of that terrorist party," in this case the FARC; and

(4) That Mr. Herrera was an "agency or instrumentality" of the FARC.

The Plaintiffs did not and cannot satisfy any of these elements.

A.    **Mr. Herrera's Funds Were Not a "Blocked Asset" Under TRIA**

As explained in the accompanying *Motion For Relief From Judgement*, OFAC expressly

blocked Mr. Herrera's funds *solely* under the Kingpin Act, 21 U.S.C. § 1904, *not* under the TWEA

or the IEEPA.  Accordingly, under the plain and unambiguous terms of TRIA § 201(d)(2)(A), the

Plaintiffs had no authority to attach any of Mr. Herrera's assets.

The U.S. Department of Justice ("DOJ") has agreed with this construction of TRIA and

recently moved to file an amicus brief in the appeal of another garnishee in this case.  *See Mercurio*

*International v. Stansell, et al.*, 11th Cir. Nos. 11-11125 & 11-11690.  DOJ thus states that "TRIA

does not authorize execution against assets frozen under the Kingpin Act" and that this Court

"fundamentally erred in allowing such an execution to take place" with respect to Mercurio

International in this case.  *See* Motion of the United States For Leave to File an Amicus Curiae Brief

Out of Time, *Mercurio International v. Stansell, et al.*, 11th Cir. Nos. 11-11125 & 11-11690, Sept.

2, 2011, at p. 2, **Exhibit 4**.  The Court "fundamentally erred" for the same reason when it granted

the Plaintiffs' *ex parte* motion.

B.    **A Midstream EFT Is Not a Garnishable Form of Property**

Even if Congress had included the Kingpin Act in its definition of a "blocked asset," the

attempted wire transfer blocked in this case was not a garnishable "asset" of Mr. Herrera.  The

attempted transfer was from Mr. Herrera's investment account in Curacao, Netherlands Antilles, to

his account at Banco Davivienda in Bogota, Colombia.  *See* **Exhibit 5**, Affidavit of Jose Ricaurte

Diaz Herrera.  To accomplish the transfer, the investment fund apparently attempted to convert the

payment order to U.S. dollars through an intermediary bank in Florida, Wachovia.  Under normal

circumstances, Wachovia, in turn, would have directed the payment to the intermediary bank used

by Banco Davivienda. That intermediary bank would then have directed the order to Banco
Davivienda where Mr. Herrera had his account. After accepting the payment, Banco Davivienda
bank would then and only then have credited Mr. Herrera's account. However, Wachovia Bank
interrupted the attempted transfer in cyberspace before Banco Davivienda could accept payment.
Until it did so, the funds were not "owned" by Mr. Herrera and, therefore, were not subject to
garnishment as "his" property.

The property interests and rights, duties and obligations flowing therefrom in wire transfers
are governed by Article 4A of the Uniform Commercial Code ("UCC") – Funds Transfers. *See*
*generally* Matthew Bender & Company, Inc., *The Law of Electronic Funds Transfers* (2004). Due
to the unique nature of EFTs under the UCC, "a beneficiary has no property interest in an EFT
because 'until the funds transfer is completed by acceptance by the beneficiary's bank of a payment
order for the benefit of the beneficiary, *the beneficiary has no property interest in the funds transfer*
*which the beneficiary's creditor can reach.*'" *Shipping Corp. of India Ltd. v. Jaldhi Overseas PTE*
*Ltd.*, 585 F.3d 58, 71 (2d Cir. 2009) (emphasis in original, citing New York's version of the UCC),
*cert. denied*, 130 S.Ct. 1895 (2010). Thus, under the UCC "EFTs are neither the property of the
originator nor the beneficiary while briefly in the possession of an intermediary bank." 585 F.3d at
71. This is so, even where the beneficiary is also the originator. *See Scanscot Shipping Services v.*
*Metales Tracomex LTDA*, 617 F.3d 679 (2d Cir. 2010) (per curiam).[6]

---

[6] Florida's version of the UCC is identical to New York's in this regard. *See* Fla. Stat. § 670.502, Official Comment 4
("A creditor of the beneficiary cannot levy on property of the originator and until the funds transfer is completed by
acceptance by the beneficiary, the beneficiary has no property interest in the funds transfer which the beneficiary's
creditor can reach"). The only Florida court counsel has found discussing this issue cited *Jaldhi* with approval. *See In*
*re Banco Santander Securities-Optimal Litigation*, 732 F. Supp. 2d 1305, 1324 (S.D. Fla. 2010).

Two judges in the Southern District of New York have attempted to distinguish *Jaldhi* in cases under TRIA to allow the attachment of midstream EFTs: *Hausler v. JP Morgan Chas Bank, N.A.*, 740 F. Supp. 2d 525 (S.D.N.Y. 2010); *Levin v. Bank of New York*, No. 09 CV 5900 (RPP) (S.D.N.Y. March 4, 2011), *2011 U.S. Dist. LEXIS 23779*. This Court, however, should not have followed these poorly reasoned decisions.

*Hausler* and *Levin* ruled that TRIA's "notwithstanding" clause somehow freed them from the UCC's (and any other traditional) definition of property. However, there was no basis for construing the "notwithstanding" clause as having any relationship whatsoever to the definition of the term "asset" in the statute. Since TRIA did not provide a definition of an "asset," its common meaning should have controlled. *See Williams v. Taylor*, 529 U.S. 420, 431 (2000) ("We give words of a statute their 'ordinary, contemporary, common meaning absent an indication Congress intended them to bear some different import.'") (citations omitted). "Moreover, we presume that when Congress drafts legislation incorporating common law terms it is aware of well-established judicial construction of those terms." *United States v. Trainor*, 376 F.3d 1325, 1330 (11th Cir. 2004). Similarly, Congress is presumed to be aware of the principles governing property rights under the UCC. *See Arkwright-Boston Mfrs. Mut. Ins. Co. v. Great W. Airlines*, 767 F.2d 425, 428 (8th Cir. 1985); *Kemp Indus. v. Safety Light Corp.*, 857 F. Supp. 373, 388 (D. N.J. 1994); *In re Look*, 383 B.R. 210, 217 (Bankr. D. Maine 2008) (citations omitted). And, the Supreme Court has consistently employed the common law meaning of property absent express direction from Congress.[7] Therefore,

---

[7] *See, e.g., Pasquantino v. United States*, 544 U.S. 349, 356 (2005) (holding that a foreign government's uncollected taxes was a form of property cognizable by the mail and wire fraud statutes based on an examination of fraud at common law); *United States v. A Parcel of Land (92 Buena Vista Avenue)*, 507 U.S. 111, 125-127 (1993) (looking to "the common law-rule" to determine when government had a property right in potentially forfeitable assets); *Cleveland v.*
(continued...)

if Congress intended the term "asset" in TRIA to have a meaning unmoored from and broader than the UCC's definition or the common law, it had to explicitly say so.

That Congress did *not* intend the term "asset" to have some unique meaning is confirmed by other portions of TRIA itself. Thus, §201(d)(2)(B)(ii) excludes from the definition of "blocked asset" certain "property subject to the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations...." Section 201(d)(3) then defines the terms "'property" and "assets" that would be exempt under these two Conventions as "any property or asset, respectively, the attachment in aid of execution or execution of which would result in a violation of an obligation of the United States under the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations, as the case may be." Congress would not have *limited* the definition of the term "asset" so as not to violate its international agreements if it meant the term to simultaneously have a definition at odds with the UCC. Indeed, the Second Circuit in *Jaldhi* overruled its prior precedent concerning midstream EFTs, in part, because of criticisms from "[v]arious commentators and courts" that the failure to follow the UCC's definition had "led to strains on ... international banks operating within our Circuit" and "some have even suggested that [its prior precedent] has threatened the usefulness of the dollar in international transactions." *Jaldhi*, 585 F.3d at 61. Allowing private plaintiffs to confiscate midstream EFTs under TRIA presents the same concerns.

---

[7](...continued)
*United States*, 531 U.S. 12, 24 (2000) (licenses not property because licenses do not comport with "traditional concepts of property"); *McNally v. United States*, 483 U.S. 350, 356-59 & n. 8 (1987) (the "common understanding" of the statutory phrase "money or property" did not include conduct aimed at interfering with the administration of government); *Carpenter v. United States*, 484 U.S. 19, 26 (1987) (confidential business information was a form of "property" under the mail fraud statute "confidential business information .... has long been recognized as property").

Moreover, nothing in TRIA's legislative history even hints that Congress meant to alter traditional property law concepts. Congress inserted the "notwithstanding" clause into TRIA simply "to eliminate the effect of any Presidential waiver issued under 28 U.S.C. § 1610(f), prior to the date of TRIA's enactment." *Ministry of Def. v. Elahi*, 556 U.S. 366, 129 S.Ct. 1732, 1744 (2009). *See also Smith v. Federal Reserve bank of New York, et al.*, 280 F. Supp. 2d 314, 319 (S.D.N.Y. 2003), *aff'd*, 346 F.3d 264 (2d Cir. 2003); Order on Motion For Summary Judgment, *Hausler v. The Republic of Cuba*, Case No. 09-21175-Civ-Jordan (S.D. Fla. Oct. 1, 2010), at p. 11 (recognizing that the purpose of TRIA was to confer "courts with subject matter jurisdiction over enforcement actions ... that would otherwise fall under the parameters of immunity provided by the FSIA").

*Hausler* and *Levin* ignored these principles and ruled that the term "asset" should be given a meaning equal to OFAC's *blocking* authority. *See Hausler*, 740 F. Supp. 2d at 533-34. Under OFAC's Kingpin regulations, for example, OFAC has the authority to block transactions in which a designated person has any "interest" that is "tangible or intangible ... whether present, future, or contingent." 31 C.F.R. § 598.312; *see also* 31 C.F.R. § 598.307 (stating that "the term interest when used with respect to property ... means an interest of any nature whatsoever, direct or indirect"). Thus, OFAC's blocking authority is not limited to property right concepts. OFAC may issue blocking orders "based on interests in property and the use to which such property [is] put, not based on who own[s] the property in question." *Bank of New York v. Nickel*, 14 A.D.3d 140, 147, 789 N.Y.S. 2d 95, 100 (N.Y. App. Div. 2004) (citations omitted).

When Congress enacted TRIA, however, it did not authorize the garnishment of every kind of "interest" against which OFAC could exert its blocking power. Congress limited garnishments to "assets" and a midstream EFT is not a garnishable "asset" of its beneficiary. *Cf. Bennett v. Islamic*

-13-

*Republic of Iran*, No. CV 11-80065 MISC CRB (NJV) (N.D. Cal. July 26, 2011), *2011 U.S. Dist.*

*LEVIS 81143*, at *17 (denying writ of attachment under TRIA to two blocked bank accounts because

plaintiffs failed to "provide any support whatsoever that the Iranian government owns assets,

property, or financial accounts held at either bank").[8]

### C.    OFAC Did Not "Determine" That the Funds Were Linked To the FARC

In addition to having no legal basis for their motion, the Plaintiffs repeatedly misrepresented

that they had a factual basis, claiming that when OFAC placed Mr. Herrera on its "Specially

Designated Nationals and Blocked Person's List" ("SDN List"), it made a "determination" that he

was a "member" of the FARC.[9] OFAC determined no such thing. As OFAC's regulations require,

*see* 31 C.F.R. § 598.314, Note,[10] OFAC published its "determination" as to Mr. Herrera in the

---

[8] Recognizing the midstream EFT in Florida as a form of property owned by Mr. Herrera would have other consequences, one of which is that it would entitle Mr. Herrera to the protections of both the Due Process and Takings Clauses of the Fifth Amendment. *See Russian Volunteer Fleet v. United States*, 282 U.S. 481, 489-42 (1931); *Nat'l Council of Resistance of Iran v. Dept. of State*, 251 F.3d 192, 202-205 (D.C. Cir. 2001).

[9] *See Plaintiff's Motion*, at p. 3 (asserting that Mr. Herrera "has been designated by the Department of Treasury – Office of Foreign Assets Control ('OFAC') as a Tier II derivative SDNTK *of the FARC*") (emphasis added); *id.* at 4 (asserting that on May 6, 2010, "OFAC *determined* that ... [Mr. Herrera] is ... *a member of the FARC Financial Fronts Money Laundering Networks*") (emphasis added); *id.* at p. 5 (asserting that Mr. Herrera's "assets in the United States ... have been blocked *by his OFAC designation as a FARC* SDNTK") (emphasis added); *id.* at p. 6 (claiming that "*OFAC has determined* that [Mr. Herrera] is owned, controlled, or directed by, or acting for or on behalf of, the FARC, or is materially assisting in, or providing financial or technical support for or to the FARC, or providing goods or services in support of the FARC's international narcotics trafficking activities....") (emphasis added); *id.* at p. 7 (alleging that OFAC "confirmed" to Wells Fargo that Mr. Herrera was a "*FARC* narcotics Kingpin") (emphasis added); *id.* at p. 11 (claiming that "OFAC has made a 'factual determination' in his designation as a *FARC* SDNTK"); *id.* at p. 12 (claiming that "it is undisputed" that the blocked funds are subject to execution because they are assets of a "*terrorist party*" or "agency or instrumentality of that *terrorist party*"); *id.* at p. 12 (claiming that Mr. Herrera "remains OFAC designated as an agency or instrumentality *of the FARC*") (emphasis added).

[10] Note 1 to § 598.314 thus provides:

The names of persons determined to fall within this definition, whose property and interests in property therefore are blocked pursuant to this part, are published in the Federal Register and incorporated into the Office of Foreign Assets Control's Specially Designated Nationals and Blocked Persons List ("SDN List") with the identifier "[SDNTK]." The SDN List is accessible through the following page on the Office of Foreign Assets Control's Web site: http://www.treasury.gov/sdn.

(continued...)

Federal Register. Contrary to the Plaintiffs' false assertions, OFAC's designation made absolutely no reference to "the FARC." Instead, OFAC has consistently listed Mr. Herrera *only* as a SDNTK:

> DIAZ HERRERA, Jose Ricaurte, c/o PROMOTORA HOTELERA LTDA, Bogota, Colombia; DOB 16 Aug 1958; POB Venecia, Cundinamarca, Colombia; citizen Colombia; Cedula No. 79263544 (Colombia) (individual) [SDNTK]

*See Federal Register*, Vol. 75, No. 092, May 13, 2010 (75 FR 27118); *Federal Register*, Vol. 75, No. 126 (75 FR 38212, 38253), July 10, 2010.

As explained in the accompanying *Motion For Relief From Judgement*, the Plaintiffs' only "factual" support for its repeated assertions about what OFAC allegedly "determined" was a flow chart that can be found through an internet hyperlink at the bottom of a Press Release issued by on May 6, 2010. Clicking on the link produces a flow chart with arrows leading to Mr. Herrera's name. The flow chart purports to contain "FARC Financial Fronts" but, at the top right corner, only mentions *the Kingpin Act* as the statutory authority for its creation. Moreover, there is no accompanying narrative explaining who created the chart or for what purpose. Nor did Plaintiffs' motion include any affidavits explaining the creation, purpose and factual basis for the chart. Under these circumstances, the Court should not have even considered the chart since material found on the web is not self-authenticating.[11] Indeed, without an authenticating affidavit of some kind, the

---

[10](...continued)
    Additional information pertaining to the SDN List can be found in Appendix A to this chapter.

The Note to § 536.312 is identical except that it creates the identifier "SDNT."

[11]  *See St. Luke's Cataract and Laser Institute, P.A. v. Sanderson*, No 8:06-CV-2223 (M.D. Fla. May 12, 2006 ), *2006 U.S. Dist. LEXIS 28873*, at 5 ("To authenticate printouts from a website, the party proffering the evidence must produce 'some statement or affidavit from someone with knowledge [of the website] ... for example [a] web master or someone else with personal knowledge would be sufficient.'"); *Sun Protection, Inc. v. Tender Corp.*, Case No. 6:04-cv-732-Orl-19KRS (M.D. Fla. Oct. 7, 2005), *2005 U.S. Dist. LEXIS 35623*, at *17 & n. 4 (refusing to consider unauthenticated website material in determining summary judgment, finding that "websites are not self-authenticating") (citation omitted); (continued...)

flow chart was nothing more than "rank hearsay." *Williamson v. Altapointe Health Systems, Inc.*,

Civil Action No. 08-00284-CB-M (S.D. Ala. June 15, 2009), *2009 U.S. Dist. LEXIS 50549*, at *12.

*See also St. Clair v. Johnn's Oyster & Shrimp, Inc.*. 76 F. Supp. 2d 773, 3775 (S.D. Texas 1999)

("Any evidence procured off the Internet is adequate for almost nothing, even under the most liberal

interpretations of the hearsay exception rules.");  *Estate of Mark Parsons v. The Palestinian*

*Authority*, 715 F. Supp. 2d 27, 32 (D.D.C. 2010) (rejecting use of internal U.S. State Department

memorandum reporting a claim by an anonymous caller to an international news agency about who

was responsible for a bombing, stating that "[g]iven the multiple levels of hearsay involved, this

report is not admissible evidence") (citation omitted), *aff'd* ___ F.3d ___ (D.C. Cir. Aug 5, 2011),

*2011 U.S. App. LEXIS 16809.*

On its face, the chart also failed to contain any statements supporting the Plaintiffs' claim that

it represented a "determination" by OFAC. The fact that OFAC chose to designate Mr. Herrera

*solely* as a "SDNTK" under the Kingpin Act and *not* as either a "FTO" under its Foreign Terrorist

Organization regulations, *see* 31 C.F.R. § 597.301, Note, or as a "SDGT" under its Global Terrorism

---

[11](...continued)

*Marajh v. Broadspire Services, Inc.*, Case No. 07-60975-Civ-Zloch (S.D. Fla. Nov. 21, 2008), *2008 U.S. Dist. LEXIS 99757*, at *19 (refusing to consider "an unauthenticated and hearsay document printed out from a website" at least "[w]ithout any supporting affidavit or certification supporting that the document is what it purports to be (or even identifying what that might be)"); *McReynolds v. Lowe's Companies, Inc.*, Case No. C08-335-S-EJL (D. Idaho. Dec. 12, 2008), *2008 U.S. Dist. LEXIS 100594*, at *19-20 (finding that photocopy of Lowe's web-site was inadmissible under Rule 901(a) because the person who made the photocopy had "no personal knowledge of who maintain[ed] the website, who authored the documents, or the accuracy of their contents" and holding that "authentication requires that someone with knowledge of the accuracy of the contends of the internet print-outs testify as to the authenticity of the content") (citation omitted); *Nightlight Systems, Inc. v. Nitelites Manufacturing & Distribution Systems, Inc.*, Civil Action No. 1:04-CV-2112-CAP (N.D. Ga. May 11, 2007), *2007 U.S. Dist. LEXIS 95538*, at *15-16 (refusing to consider website material that had not been authenticated "by producing a 'statement or affidavit from someone with knowledge of the website'") (citation omitted); *In re Homestore.com, Inc. Securities Litigation*, 347 F. Supp. 2d 769, 782-83 (C.D. Cal. 2004) (website material not self-authenticating and "[t]o be authenticated, some statement or affidavit from someone with knowledge is required").

Sanctions Regulations, *see* 31 C.F.R. §594.201, Note 2 – as it did when it designated the FARC itself[12] – means that OFAC itself did not consider the chart as a "determination." Accordingly, the flow chart was not only inadmissible; it was irrelevant.

**D.    Mr. Herrera Was Not An "Agency or Instrumentality"**

Mr. Herrera's funds were also not subject to garnishment because he was not an "agency or instrumentality." TRIA itself does not contain a definition of that phrase. However, 28 U.S.C. § 1603 does. Where Congress has consistently employed a term in the same way, that definition should control unless Congress specifically says otherwise. *See, e.g., Dir., Office of Workers' Comp. v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 129-30 (1995); *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 88-92 (1991); *Securities Industry Assoc. v. Board of Gov. of the Federal Reserve Sys.*, 468 U.S. 137 (1984). "[P]ractical experience in the interpretation of statutes [indicates that] a legislative body generally uses a particular word with a consistent meaning in a given context." *Erlenbaugh v. United States*, 409 U.S. 239, 243-44 (1972). *Accord Mouzon Enterprises, Inc. v. Department of Revenue*, 610 F.3d 1329, 1333-34 (11th Cir. 2010) (construing phrase "entered without a contest" in Bankruptcy Rule 9024 based, in part, on "the manner in which that term is used elsewhere in the rules governing bankruptcy procedure").

Subsection 1603(b) provides:

> (b) An "agency or instrumentality of a foreign state" means any *entity*–
>    (1) which is a separate legal person, corporate or otherwise, *and*
>    (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, *and*

---

[12] On the SDN List, the FARC is designated as follows: "REVOLUTIONARY ARMED FORCES OF COLOMBIA (a.k.a. FARC; a.k.a. FUERZAS ARMADAS REVOLUCIONARIAS DE COLOMBIA) [FTO] [SDGT] [SDNTK]."

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title [28 USCS § 1332(c) and (e)] nor created under the laws of any third country.

(Emphasis added.)

A human being is patently not an "entity." Moreover, a human being cannot satisfy § 1603(b)(2) because a terrorist organization neither has an "ownership interest" in nor owns "a majority of [the] shares" in a natural person. Nor can a human being satisfy § 1603(b)(3) because a living person cannot naturally be described as having been "created under the laws of any third country." Plaintiffs filed their motion on December 15, 2010. Over six months earlier, the Supreme Court ruled *unanimously* in *Samantar v. Yousuf*, 130 S.Ct. 2278 (2010), that the term "agency or instrumentality" in § 1603(b) included *only* "entit[ies]" and *not* individuals. 130 S.Ct. at 2286-90.[13]

In short, Mr. Herrera's funds were never subject to attachment under TRIA, as a matter of both law and fact.

## III.    THE PLAINTIFFS' FAILURE TO SECURE A LICENSE TO RECEIVE BLOCKED FUNDS RENDERS THE GARNISHMENT ORDERS "NULL AND VOID"

OFAC regulations expressly require that in order to garnish the assets of someone designated under the Kingpin Act and blocked as a "SDGTK," a party must first obtain a license from OFAC and if no license is obtained any garnishment orders are "null and void." *See* 31 C.F.R. §§ 598.205(a) and (e).[14] However, neither the Plaintiffs nor P&K ever requested a license and, indeed,

---

[13] Conversely, neither of the cases cited by the Plaintiffs for their claim that Mr. Herrera could be an "agency or instrumentality" involved a human being. *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43 (2d Cir. 2010), involved an Iranian bank and *Ungar v. The Palestinian Authority*, 304 F. Supp. 2d 232, 241 (D.R.I. 2004), involved a foundation.

[14] Section 598.205 provides in pertinent part:

(a) Any transfer after the effective date that is in violation of any provision of this part or of any regulation, order, directive, ruling, instruction, or license issued pursuant to this part, and that involves

(continued...)

expressly argued in their motions that "OFAC does not require any license for Plaintiffs to execute

on and take possession of the blocked proceeds under TRIA." Plaintiff's Motion, at p. 7. The

Plaintiffs made this bald assertion without even citing 31 C.F.R. §§ 598.205(a) and (e). Instead, they

cited only a letter an Assistant U.S. Attorney had written a district court judge in a different

jurisdiction (New York) about a completely different matter (the statutes and executive orders

governing the embargo of Cuba), and about a "notwithstanding" clause in a different statute (§

1610(f)(1)(A), which – unlike TRIA § 201(a) – contains an explicit reference to licensure. *See Id.*,

citing *Weininger v. Castro*, 462 F. Supp. 2d 457 (S.D.N.Y. 2006).[15]

In light of § 1610(f)(1)'s specific reference to license requirements, courts have construed

§ 1610(f)(1)(A) as evincing Congress' intent to "allow plaintiffs to execute upon property claimed

---

[14](...continued)

any property or interest in property of a specially designated narcotics trafficker *is null and void and shall not be the basis for the assertion or recognition of any interest in or right, remedy, power, or privilege with respect to such property or property interests.*

\*\*\*

(e) *Unless licensed or authorized pursuant to this part,* any attachment, judgment, decree, lien, execution, garnishment, or other judicial process is *null and void* with respect to any property in which on or since the effective date there existed an interest of a specially designated narcotics trafficker.

(Emphasis added.)

[15] Section 1610(f)(1)(A) provides:

(f) (1) (A) Notwithstanding any other provision of law, including but not limited to section 208(f) of the Foreign Missions Act (22 U.S.C. 4308(f)), and except as provided in subparagraph (B), any property with respect to which financial transactions are prohibited or regulated pursuant to section 5(b) of the Trading with the Enemy Act (50 U.S.C. App. 5(b)), section 620(a) of the Foreign Assistance Act of 1961 (22 U.S.C. 2370(a)), sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701-1702), or any other proclamation, order, regulation, *or license issued pursuant thereto*, shall be subject to execution or attachment in aid of execution of any judgment relating to a claim for which a foreign state (including any agency or instrumentality or such state) claiming such property is not immune under section 1605(a)(7) [28 USCS § 1605(a)(7)] (as in effect before the enactment of section 1605A [enacted Jan. 28, 2008]) or section 1605A [28 USCS § 1605A].

(Emphasis added.)

by the foreign government without first obtaining a license," as required by 31 C.F.R. § 515.203(e).
*Weininger*, 462 F. Supp. 2d at 486-87, citing *Alejandre v. Telefonica Larga Distancia de Puerto
Rico, Inc.*, 183 F.3d 1277, 1282, 1287-88 (11th Cir. 1999).  However, as the district court in
*Weininger* itself pointed out, "while similar, TRIA § 201(a) is worded differently from §
1610(f)(1)(A)." *Weininger*, 462 F. Supp. 2d at 486-87.

Section 1610(f)(1)(A) was enacted in 1998.  When TRIA § 201(a) was added in 2002,
Congress *omitted* the reference to licenses.  Yet, Congress must be presumed to have been aware of
the explicit license requirements in 31 C.F.R. §§ 598.205(e), 597.202(e), and 594.202(e).  *See
generally Cremeens v. The City of Montgomery*, 602 F.3d 1224, 1230 n. 4 (11th Cir. 2010) ("When
Congress adopts a new law incorporating sections of a prior law, it is presumed to be aware of
existing administrative regulations") (citation omitted).  Aware of OFAC's licensure regulations,
Congress nonetheless enacted TRIA *without* the language in § 1610(f)(1)(A) that avoided licensure.

Moreover, TRIA § 201(a)'s "notwithstanding" clause only applies where there is a true
"conflict" with another law.  Order on Motion For Summary Judgment, *Hausler v. The Republic of
Cuba*, Case No. 09-21175-Civ-Jordan (S.D. Fla. Oct. 1, 2010)  at p. 11 (finding no conflict with
Florida garnishment statutes).  *See also United States v. Holy Land Found.*, 445 F.3d 771, 787 (5th
Cir. 2006) (finding no conflict); *United States v. Holy Land Found.*, No. 3:04-CR-0240-P (N.D. Tex.
April 27, 2011), *2011 U.S. Dist. LEXIS 46155* (appeal pending) (finding conflict).  A conflict exists
between two laws only when it is "impossible" to comply with both or when one law "stands as an
obstacle to the accomplishment and execution of the full purposes and objectives of Congress."
*Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372-73 (2000).  However, compliance
with both licensure and implementation of TRIA are "certainly possible."  *Pharmaceutical Research*

*and Manufacturers of America v. Meadows*, 304 F.3d 1197, 1202 (11ᵗʰ Cir. 2002). And, there are

no reported cases where OFAC licensure has presented an "obstacle" to enforcement of any federal

law. Since Plaintiffs and P&K obtained the garnishment order without the required license, the

Court's order granting their motion (and all other relevant orders) should be deemed "null and void."

## IV.     OFAC'S PROCEDURES AND TRIA § 201(a) ARE UNCONSTITUTIONAL

While the Court need not reach the constitutional questions presented by this case if it accepts

any of the arguments in Parts II and III above, OFAC's procedures and the Plaintiffs' construction

of TRIA render both unconstitutional.

### A.     OFAC's Regulations Are Unconstitutional

Neither Congress nor the applicable OFAC regulation, 31 C.F.R. § 598.314, has specified

how OFAC is to arrive at its blocking "determinations" – *i.e.*, what criteria and evidence can or

cannot be used and what quantum of proof is necessary to trigger its determinations. As the District

of Columbia Circuit observed in connection with the State Department's similar power to designate

terrorist organizations, "nothing in the legislation restricts the Secretary from acting on the basis of

third hand accounts, press stories, material on the Internet or other hearsay regarding the

organization's activities...." *People's Mojahedin Organization of Iran v. Dept. of State*, 182 F.3d

17, 19 (D.C. Cir. 1999). OFAC's regulations also fail to provide any meaningful *post*-blocking

procedural protections. While a designated person may "seek administrative reconsideration" of the

designation under 31 C.F.R. § 501.807, the regulation promises only that the person's submissions

"will be reviewed" by OFAC and that OFAC will provide the blocked person with "a written

decision." The regulation provides no criteria or standard of proof for the "review," no discovery

of evidence OFAC relied upon for its determination in order to guide the person's submissions, no

hearing on the submission and no meaningful remedy for an adverse "decision." And, OFAC itself conducts the review rather than a *neutral* judge or magistrate. Several courts have already held that OFAC's unilateral blocking power violates both the Warrant Clause of the Fourth Amendment and/or the Due Process Clause of the Fifth Amendment. *See Al Haramain Islamic Foundation, Inc. v. OFAC*, No. 10-35032 (9th Cir. Sept. 23, 2011), *2011 U.S. App. LEXIS 19498*, at **45-55, 62-75; *People's Mojahdein Org. of Iran v. U.S. Dept. of State*, 613 F.3d 110 (D.C. Cir. 2010); *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 205-208 (D.C. Cir. 2001); *Kindhearts For Charitable Humanitarian Development, Inc. v. Geithner*, 647 F. Supp. 857 (N.D. Ohio 2009). Therefore, OFAC's blocking determination concerning Mr. Herrera was unconstitutional under the Fourth and Fifth Amendments.

## B.     TRIA IS Unconstitutional As Applied Herein

There is a well-established distinction between "seiz[ing] or freez[ing] assets" – that is, blocking them – which merely "transfers possessory interest in the property[,]" and a transfer of "ownership of terrorist property by vesting right, title and interest" in either the government or a third party. *Smith v. Fed. Reserve Bank*, 346 F.3d 264, 272 (2d Cir. 2003) (citations omitted). Thus, even if the statutes and regulations governing OFAC's blocking authority could pass constitutional muster, TRIA § 201(a) unconstitutionally transforms OFAC's limited power to block or freeze transactions into a garnishment statute – permanently depriving an owner of his property and conveying it to a private third party based *solely* on OFAC's secret blocking decisions.

This case is the poster child for the abuse such a statutory scheme can produce. Based on nothing more than OFAC's press release and an unauthenticated flow chart claiming some link between Mr. Herrera and the FARC, the Court awarded the Plaintiffs over $2 million of Mr.

Herrera's property without providing him with notice or a hearing of any kind and without having to prove anything in court. Indeed, under the Plaintiffs' construction of TRIA, the judiciary's role in a garnishment proceeding is purely ministerial. According to the Plaintiffs, once OFAC (allegedly) made its nearly unreviewable blocking determination, the Court was supposedly obliged to rubber-stamp their request to award the blocked funds to them with the original owner having no right to contest or even to notice of the proceeding. No other federal statute gives even *the government* such unbridled forfeiture authority. TRIA purports to give *private parties* that power. If that is what Congress intended in enacting TRIA, then the statute is patently unconstitutional.[16]

"The Supreme Court has repeatedly emphasized that constitutional requirements of due process apply to garnishment procedures whenever the government acts jointly with a creditor in securing disputed property." *Simanonok v. Simanonok*, 787 F.2d 1517, 1521 (11th Cir. 1986) (citations omitted). The Plaintiffs' *ex parte* motion ignored both *Simanonok* and the many Supreme Court cases that would render TRIA unconstitutional as they have so far applied it. *See, e.g., Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337, 342 (1969) (holding that Wisconsin garnishment procedure violated procedural due process by allowing the respondent to seize her wages without notice and an opportunity to be heard). *See also Vitek v. Jones*, 445 U.S. 480, 494-97 (1980); *Wisconsin v. Constantineau*, 400 U.S. 433, 439 (1971); *Johnson v. American Credit Co. of Georgia*, 581 F.2d 526, 533-34 (5th Cir. 1978).

---

[16] Of course, the Court should strive to avoid such a construction. *See Skilling v. United States*, 130 S.Ct. 2896, 2929-30 (2010) (under the doctrine of constitutional avoidance, "'*every reasonable construction* must be resorted to, in order to save a statute from unconstitutionality,'" quoting *Hooper v. California*, 155 U.S. 648, 657 (1895) (emphasis by the Supreme Court in *Skilling*)).

TRIA, as applied in this case by the Plaintiffs, P&K and apparently a growing number of other personal injury lawyers,[17] is especially draconian. *First*, the Plaintiffs and their contingent fee counsel initiate a lawsuit against one or more of OFAC's ever-growing list of "terrorist" organizations, knowing full well that the "terrorist" defendants will never walk into court to defend the lawsuits. *See Al Haramain Islamic Foundation, Inc. v. OFAC*, No. 10-35032 (9th Cir. Sept. 23, 2011), *2011 U.S. App. LEXIS 19498*, at *42 (noting that "[s]o far as we can tell from the record in this case, very few designated persons respond to OFAC at all...").[18] *Second*, once armed with their default judgments, the lawyers then subpoena OFAC to identify any assets linked to the terrorist defendant(s) that OFAC had blocked unilaterally *ex parte* with no standards or procedures. *Third*, the lawyers then use *ex parte* proceedings under TRIA to transfer the ownership of the blocked funds to them, without ever having to sue (or even serve) the owners of the blocked assets or to prove anything in court. Using this blueprint, P&K managed to turn a mere press release and flow chart found on OFAC's web site into a $2 million-plus windfall judgment. Such an abuse of the system cannot possibly be and patently is not constitutional.

C.    **TRIA Violates the Takings Clause**

The Plaintiffs' misuse of TRIA also violates the Takings Clause of the Fifth Amendment, which provides "nor shall private property be taken for public use, without just compensation." The Takings Clause "presupposes that the government has acted in pursuit of a valid public purpose."

---

[17] *See The Miami Herald*, August 25, 2011, p. B1-2, captioned "Exile sues Cuba, wins $2.8B." The article discusses how one Miami-based firm has used the procedure discussed in the text in at least eight lawsuits involving OFAC-blocked countries, including Cuba, Iraq, Libya and the Sudan.

[18] In the instant case, for example, the 77 individual defendants were either fugitives or incarcerated in U.S. or Colombian prisons.

*Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 543 (2005). "A purely private taking could not withstand the scrutiny of the public use requirement; it would serve no legitimate purpose of government and would thus be void." *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 245 (1984); *see also Kelo v. City of New London*, 545 U.S. 469, 477 (2005).

TRIA, as already applied in this case, has taken Mr. Herrera's private property and transferred it directly to a private party for a patently non-public purpose – to pay "compensatory damages" in a private civil action to redress the particular losses of the Plaintiffs, private parties. TRIA would thereby work a taking from one private owner directly to another, without even a momentary stop along the way for public ownership, and without even the veneer of a public purpose, as in eminent domain cases. Congress, in fact, enacted TRIA "to benefit a particular class of identifiable individuals," *Midkiff*, 467 U.S. at 245 – judgment creditors of terrorist parties. "[T]ransfers intended to confer benefits on particular, favored private entities, and with only incidental or pretextual public benefits, are forbidden by the Public Use Clause." *Kelo*, 545 U.S. at 490 (Kennedy, J., concurring). *See Mo. Pac. Ry. Co. v. Nebraska*, 164 U.S. 403, 416-17 (1896) (administrative order directed railroad to allow a "voluntary association" of farmers to build a grain elevator on railroad's land; order held a taking for a "private use"). TRIA here has worked a private taking that should be void. "No amount of compensation can authorize such action." *Lingle*, 544 U.S. at 543. Of course, Mr. Herrera has received none for the unconstitutional conduct of Plaintiffs and their counsel.

## CONCLUSION

For all of the foregoing reasons, the Plaintiffs' motions should have been and should be denied.

## LOCAL RULE 3.01(g) CERTIFICATION

Counsel has conferred with opposing counsel who opposes granting the relief requested

herein.

Respectfully submitted,

JOSEPH S. ROSENBAUM, ESQ.
LAW OFFICES OF JOSEPH S. ROSENBAUM, P.A.
Grove Forest Plaza, Suit 101
2937 S.W. 27th Avenue
Miami, FL 33133-3141
Telephone: (305) 446-6099
Fax: (305) 446-6150
E-mail: jsr@rosenbaum-lunalaw.com
*Counsel For Jose Ricaurte Diaz Herrera*
[OFAC LICENSE No. FNK-785]


BY: _____ s/Joseph S. Rosenbaum _____
        JOSEPH S. ROSENBAUM, ESQ.
        Florida Bar No. 240206

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 31, 2011, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system.  I further certify that I served the foregoing

document on additional counsel and *pro se* parties identified in the attached Service List in the

manner specified thereon.


BY: _____ s/Joseph S. Rosenbaum _____
        JOSEPH S. ROSENBAUM, ESQ.
        Florida Bar No. 240206

## SERVICE LIST

TONY KORVICK, ESQ.
NEWTON P. PORTER, ESQ.
PORTER & KORVICK, P.A.
9655 South Dixie Highway
Suite 208
Miami, FL 33156
*Counsel for Plaintiffs*
*[via CM/ECF]*

I. WILLIAM SPIVEY, II, ESQ.
COURTNEY M. WITTE, ESQ.
GREENBERG TRAURIG, P.A.
450 South Orange Avenue
Suite 32801
Orlando, FL 32801
*Counsel for Garnishee, Wachovia Bank*
 *[via CM/ECF]*

LILLY ANN SANCHEZ, ESQ.
MATTHEW JOHN VALCOURT, ESQ.
FOWLER WHITE BURNETT, P.A.
Espirito Santo Plaza, 14th Floor
1395 Brickell Avenue
Miami, FL 33131-3302
*Counsel for Mercurio Internacional S.A.*
*[via CM/ECF]*

JUNE GALKOSKI HOFFMAN, ESQ.
FOWLER WHITE BURNETT P.A.
100 S.E. 3rd Ave., Fl 21
Fort Lauderdale, FL 33934-0014
*Counsel for Mercurio Internacional S.A.*
*[via U.S. Mail]*

DOUGLAS N. LETTER
BENJAMIN M. SHULTZ
Attorneys, Appellate Staff
Civil Division, Room 7211
U.S. Department of Justice
Washington, DC 20530-0001
*Counsel for United States of America*
*[via U.S. Mail]*

JONATHAN E. ZIMMERMAN, ESQ.
U.S. DEPARTMENT OF JUSTICE
Civil Division
Federal Programs Branch,
20 Massachusetts Ave., N.W.
Suite 7116
Washington, DC 20503
*Counsel for United States of America*
*[via CM/ECF]*

JARY CONRAD NIXON , ESQ.
MARK D. SMITH, ESQ.
VICTOR H. VESCHIO, ESQ.
VESCHIO LAW GROUP, LLC
2001 W. Kennedy Boulevard
Tampa, FL 33606
*Counsel for Garnishee, Capital Bank, NA*
*[via CM/ECF]*

JOSE ANTONIO CELIS
No. 28057-016
Yazoo City Low Federal Correctional Institute
Inmate Mail/Parcels

DENNIS CAMPBELL, ESQ.
CAMPBELL LAW FIRM, PLLC
95 Merrick Way, Suite 514
Coral Gables, FL 33134

P.O. Box 39194
Yazoo City, MS 39194
*Pro Se Defendant*
*[via U.S. Mail]*

MARTHA ROSA MORA, ESQ.
AVILA RODRIGUEZ HERNANDEZ
  MENA & FERRI, LLP
2525 Ponce de Leon Blvd., Suite 1225
Coral Gables, FL 33134
*Counsel for Garnishee, Ocean Bank*
*[via CM ECF]*

JOHN C. DOTTERRER, ESQ.
AKERMAN SENTERFITT
125 Worth Avenue, Suite 330
Palm Beach, FL 33480
*Counsel for Garnishee, Wells Fargo Bank, NA*
*[via CM/ECF]*

*Counsel for Bank of America, N.A.*
*[via CM/ECF]*

ALEX LAKATOS, ESQ.
MAYER BROWN, LLP
1909 K. Street, N.W.
Washington, D.C. 20006
*Counsel for Garnishee, Wells Fargo Bank, NA*
*[via CM/ECF]*

EDWARD M. MULLINS, ESQ.
ASTIGARRAGA DAVIS MULLIN, ET AL.
701 Brickell Avenue, Suite 1650
Miami, FL 33131-2847
*Counsel for JPMorgan Chase Bank, NA and*
*The bank of New York Mellon*
*[via CM/ECF]*