UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Tampa Division

KEITH STANSELL,
MARC GONSALVES,                              CIVIL ACTION CASE NO.:
THOMAS HOWES,                                8:09-CV-2308-RAL-MAP
JUDITH G. JANIS, CHRISTOPHER T. JANIS,
GREER C. JANIS, MICHAEL I. JANIS,
and JONATHAN N. JANIS

       Plaintiffs,

vs.

REVOLUTIONARY ARMED FORCES OF COLOMBIA (FARC); et al.,

       Defendants.

_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO JOSE RICAURTE DIAZ HERRERA'S
MOTION FOR RELIEF FROM JUDGMENT AND RELATED ORDERS
AND MEMORANDUM OF LAW**

Plaintiffs respond in opposition to Jose Ricaurte Diaz Herrera ("Diaz Herrera")'s motion

for relief from judgment and related orders seeking to vacate (the "MotRel"): (i) DE 256 Order

granting plaintiffs' motion for judgment on garnishee Wells Fargo's answer; (ii) DE 257 TRIA

Judgment on answer of garnishee Wells Fargo; and (iii) DE 259 Order awarding attorneys fees to

garnishee Wells Fargo.  The Motion for Relief must be denied, because:  (i) it is untimely and

fails to satisfy the exceptional circumstances required for such extraordinary relief requested; (ii)

seeks to improperly argue the merits and mechanics of OFAC's designation of Diaz Herrera as

an SDNTK as a basis for relief from judgment here that he was not afforded due process and

"notice"; (iii) it will be inequitable and plaintiffs will be prejudiced if this relief is granted on a

completed TRIA execution; (iv) there was no improper motion, improper judgment or fraud

here, the FARC related SDNTK blocked funds were released after DOJ and OFAC review; and

(v) non-conflicting Florida garnishment was complied with in this completed TRIA execution.

1

# I.   DIAZ HERRERA'S MOTION FOR RELIEF MUST BE DENIED BECAUSE HE FAILS TO SATISFY RULE 60(b)'s EXCEPTIONAL CIRCUMSTANCES

Diaz Herrera seeks relief from the Court's orders and Judgment under Rule 60(b).  Upon motion and just terms, Rule 60(b) allows a court to relieve a party from a final judgment or order for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud, misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  Diaz Herrera moves for relief under sections (3), (4), (5), and (6), and also moves for relief under Rule 55(c) and Rule 12(b)(5).  The purpose of Rule 60(b) is to balance the principle of finality of a judgment with the interest of the court in seeing that justice is done in light of the facts.  See Limon v. Double Eagle Marine, L.L.C., 771 F. Supp. 2d 672, 675 (S.D. Tex. 2011)(four month delay in bringing motion for relief from judgment after discovery of facts for motion unreasonable – one year limit is extreme limit).  The "desire for a judicial process that is predictable mandates caution in reopening judgments." Id.  Final judgments should rarely be disturbed especially when there are equities that would make it inequitable to grant the relief.  Id. at 676.  The one year limit is an "extreme limit" and periods less than one year are unreasonable.  Id. at 677.  Denials of Rule 60(b) motions are reviewed for abuse of discretion.  See Arthur v. King, 500 F.3d 1335, 1344 (11th Cir. 2007)(affirming denial of motion to amend judgment).

Rule 60(b) governs this motion.[1]  Diaz Herrera's motion is untimely under these circumstances where none of the elements of Rule 60(b) are present or satisfied justifying such extraordinary relief after completion of this post-judgment TRIA execution.  It would be inequitable to grant this relief.  Plaintiffs will suffer prejudice if this judgment is lifted and orders vacated.  The motion must be denied.

### A.    Diaz Herrera's Motion is Untimely and Must be Denied

A motion under Rule 60(b) must be made within a reasonable time.  Fed. R. Civ. P. 60(c)(1).  Nine (9) months after a completed execution is not a reasonable time within which to move for Rule 60(b) relief.  See Limon v. Double Eagle Marine, L.L.C., 771 F. Supp. 2d 672 (S.D. Tex. 2011)(four month delay in bringing motion for relief from judgment unreasonable – one year limit is extreme limit); United States v. Richlyn Laboratories, Inc., 365 F. Supp. 805 (E.D. Pa.1973)(seven month delay in filing motion to re-open case was not filed in reasonable time); Armstrong v. The Cadle Co., 239 F.R.D. 688 (S.D. Fla. 2007)(motion to vacate final judgment is not timely merely because it was filed less than one year after the entry of judgment court must evaluate the facts in the case to determine whether the motion was filed within a reasonable time after entry of judgment); Railroad Maintenance Laborers' Local 1274 Pension, Welfare, and Educ. Funds v. American R.R. Const. Co., Inc., 96 F.R.D. 433 (N.D. Ill. 1983)(time period shorter than one year may be deemed to be unreasonable); Sorbo v. United Parcel Service, 432 F.3d 1169(10th Cir. 2005)(affirming denial of motion for relief from judgment filed within one year as no abuse of discretion).

Diaz Herrera's motion is untimely here.  Diaz Herrera retained "American lawyer Joaquin Perez" in June 2010 then replaced him with "American lawyer Stanislao German" [DE

---

[1] Rule 55(c) is also subject to the same reasonableness standard in terms of time within which filed.  But the good cause standard does not apply here.

478-1, p. 12]. Mr. German is an attorney with offices in New York. On January 26, 2011, counsel for Garnishee Wells Fargo notified Plaintiffs' counsel that he had been contacted by Stan German, a New York attorney representing SDNTK Jose Ricaurte Diaz Herrera and that:

> "I just spoke to him, and he was talking about various procedural and substantive improprieties in the Tampa litigation. I could only suggest to him that he take up his grievances with Judge Lazzara."

[DE 493-1]. Mr. German appears in PACER dockets in various district courts dating back to 2003. Diaz Herrera admits in his affidavit that he was represented by Mr. Stanislao German. [DE 478-1, p.12]. By January 26, 2011, Diaz Herrera's counsel was aware that this TRIA execution had been completed.[2]

Diaz Herrera then waited nine (9) months from discovering the completed TRIA execution [ten months from the initial Order commencing the TRIA execution DE 252] before filing this motion for relief from judgment and "related orders." Nine months is unreasonable under the circumstances. The motion must be denied.

The federal appellate court affirmed the denial of a motion for relief from final judgment where plaintiff's counsel failed to inquire about an adverse judgment for 77 days. L.Z. v. Parrish, 733 F.2d 585 (8th Cir. 1984). In Parrish, plaintiff's counsel was aware of the adverse judgment and failed to take action for 77 days. The motion for relief was denied. The appellate court affirmed finding no abuse of discretion. Id. at 589. Here, Diaz Herrera's counsel knew of the TRIA judgment and funds transfer 6 days after it occurred. Diaz Herrera took no action for nine months. His motion for relief is not timely filed and must be denied. See Parrish at 589.

---

[2] Diaz Herrera retained Joseph Rosenbaum, Esq. on February 24, 2011, and he too had access to PACER and the entire history of the completed TRIA execution.

**B.**    **Diaz Herrera has No Meritorious Defense and the Motion Must be Denied**

Court have held that the "bald allegation" of counsel in an attempt to demonstrate a meritorious defense is a sufficient basis "alone" to deny a motion for relief under Rule 60(b). Gomes v. Williams, 420 F.2d 1364, 1366 (10th Cir. 1970). In Gomes, the defaulted party moved to set aside the default judgment under Rule 60(b) and his counsel argued that "We do have a good defense to the claim . . . ." Id. The district court denied the motion to set aside the default judgment and the appellate court affirmed the denial. Id. at 1367 (noting that Rule 55(c) and 60(b) motions are left to the sound discretion of the trial court and reversed only if "clearly wrong").

Like the defaulted party in Gomes, the SDNTK Diaz Herrera has no meritorious defense to plaintiffs' TRIA execution. Diaz Herrera was a designated SDNTK FARC Financial Front member and his wired proceeds blocked. Plaintiffs needed only to demonstrate that Diaz Herrera was OFAC designated – a fact that Diaz Herrera admits. His lawyer's opinion that "in counsel's experience" a second interview portends a "favorable response" from OFAC is a "bald assertion" with no factual basis. MotRel. p. 9. Subsequent removal from the OFAC SDN list for changed circumstances or remedial steps is also not a meritorious defense. See 31 C.F.R. § 598.402 (liabilities may be enforced as if revocation not made). On this basis alone the court must deny Diaz Herrera's motion for relief of judgment and related orders. Gomes, 420 F.2d at 1366.

**C.**    **Diaz Herrera Cannot Meet the Exceptional Circumstances Standard**

Trial courts' denials of motions for relief are not disturbed absent an abuse of discretion. See Beshear v. Weinzapfel, 474 F.2d 127 (7th Cir. 1973). Discretion is abused "only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as

to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." Id. at 134, citing, Delno v. Market St. Ry. Co., 124 F.2d 965, 967 (9th Cir. 1942). The appellate court in Beshear found no abuse of discretion when it affirmed the district court's denial of the motion for relief from dismissal. Id. In Beshear, like Diaz Herrera here, plaintiff sought relief under Rule 60(b)(6) "any other reason that justifies relief." Id. at 130-31. The 7th Circuit noted clearly that "absent exceptional and compelling circumstances, a party will not be granted relief from judgment under clause (6)." Id., citing, 7 Moore, federal Practice ¶ 60.27[1], at 348 (1972). The court held that there were no exceptional or compelling circumstances in Beshear 474 F.2d at 131. No exceptional or compelling circumstances exist here either. Diaz Herrera's motion must be denied.

The appellate court in Beshear noted that the district court may have "had doubts about the good faith of the 60(b) motion." The plaintiff's affidavit filed in support of the Rule 60(b) motion was peculiarly absent facts as to when he retained counsel. Id. at 131. Similarly, here, independent documents demonstrate he had retained counsel and was aware of the completed TRIA execution on January 26, 2011 – despite his claims under oath that he was unaware of this case until "April 8, 2011" and "My answer and [my lawyers] was that we did not know of any action of this type." [DE 497-5]. The "sworn" statements demonstrate lack of credibility and do not support diligence. See L.Z. v. Parrish, 733 F.2d 585, 588 (8th Cir. 1984)(affirming denial of motion for relief for lack of diligence.

**D.    Diaz Herrera Cannot Show Fraud or Misconduct for 60(b) Relief**

Diaz Herrera's complaints about OFAC's notice, plaintiffs' recitation of OFAC's designation of Diaz Herrera as an SDNTK, and his complaints of no due process are fraud under Rule 60(b)(4) are without merit and go to his challenges with OFAC and not this completed

TRIA execution.  See Williams v. DEA, 51 F.3d 732, 736 (7th Cir. 1995)(complaints about the

governmentsø actions in forfeiture are not misrepresentations that revive an otherwise late motion

for relief-denial of motion for relief affirmed).  In Williams, the criminal defendant had

$9,500.00 seized in a drug arrest.  The money was later forfeited with no notice to Williams even

though DEA knew his location in jail and even though the DEA agent interviewing Williams in

jail was the same DEA agent who filled out the form to initiate forfeiture.  Id. at 734.      After

the forfeiture, Williams wrote a letter to the U.S. Attorney asking for his money back.  No one

responded to the letter.  Williams filed a lawsuit against the government for õreplevinö of  his

money.  The lawsuit was dismissed.  Williams then hired a lawyer to file a motion for relief from

the dismissal.  Id. at 734.  His motion for relief was denied.  The district court concluded that

Williamøs letter indicated he had prior knowledge of the forfeiture and that his lawsuit was time

barred.  The denial of the motion for relief was affirmed on appeal.  Id. at 736.

Like, Williams, Diaz Herrera here had notice of the completed execution nine months before

he filed his request for relief.  His counsel apparently complained about the judgment days after

the money was transferred and the TRIA execution completed.  But, Diaz Herrera waited to file

his motion for over nine months.  Such a delay is not reasonable, does not support his alleged

cries of õfraudö and fails to satisfy Rule 60(b)(3) relief.  See DiVito v. Fidelity Deposit Co. of

Maryland, 361 F.2d 936 (7th Cir. 1966).  In DiVito, the appellate court affirmed the denial of a

motion to vacate under Rule 60(b)(3) for fraud filed five months after the order was rendered.

Id. at 937.  The district court concluded that the affidavits were conclusory statements and did

not support fraud.  Id. at 939.  The court denied the motion seeking extraordinary relief

concluding the defendant has õoffered no convincing explanation of its four and one-half month

delay, after discovery of what it now asserts to be significant evidence of fraud, before filing its

7

motion." Id. at 939.  Diaz Herrera cannot establish fraud or misconduct and cannot explain why his motion was filed nine months after such "misconduct."

Diaz Herrera must prove by "clear and convincing" evidence that there was fraud or misconduct in order to prevail on a 60(b)(3) motion.  He cannot.  Diaz Herrera complains about OFAC notice requirements ("OFAC did nothing more than publish his designation as a SDNTK") – that complaint is without merit.  MotRel. pp.6,7.  Diaz Herrera attempts to contort OFAC's designation of him as a member of the FARC's Financial Fronts network into plaintiffs' saying he is a "member" of the FARC.  MotRel. P. 12, 12 n.9.  It is OFAC, not the plaintiffs or the Court, who designated Diaz Herrera as an SDNTK.  It was OFAC that linked Diaz Herrera to the FARC.  OFAC determined that Diaz Herrera "provided financial or technical services to the FARC in furtherance of the FARC's international narcotics trafficking activities."  31 C.F.R § 598.314(b), SDNTK designation criteria.  The Court simply found, as OFAC had, that Diaz Herrera was an agency or instrumentality of the FARC.  The undisputedly blocked funds were transferred in January 2011 after OFAC and DOJ passed on the order, judgment, and ultimate release to plaintiffs as TRIA blocked proceeds.  It remains undisputed that Diaz Herrera is an OFAC designated SDNTK FARC Financial Front member.  There is no support for Diaz Herrera's assertions that "Plaintiffs' and P&K" made "false accusations or misleading legal arguments."  MotRel. p. 13.  There is no evidence to support Diaz Herrera's allegations that the Court engaged in extrajudicial communications, bias, improper conduct or ex parte procedures.  Mot.Disqualification. pp. 2,18; MotRel. p.15.  See Armstrong v. The Cadle Co., 239 F.R.D. 688, 695 (S.D. Fla. 2007)(motion to vacate final judgment denied no "attempts to engage in fraud or misconduct").

### E.    Equity Mandates Denial of the Motion for Relief

Diaz Herrera's motion for relief must be denied because this TRIA execution is completed and the money properly transferred and disbursed to these terrorism victims.  See Mach v. Pennsylvania Railroad Co., 198F. Supp. 473 (W.D. Penn. 1961).  Here, Diaz Herrera seeks repayment of the $2,006,878.84 million in transferred blocked proceeds.  Equity and finality direct otherwise.  In Mach the district court denied a motion for relief from a judgment of dismissal and to amend a complaint.  Id. at 473.  The court declined to grant the motion for relief, because the non-moving party would suffer "prejudice."  Id. at 475.  The court concluded that there must be finality to lawsuits.  Id.  Plaintiffs here would suffer prejudice if Diaz Herrera's motion is granted after the TRIA blocked funds released and disbursed.

The dismissed Beshear plaintiff, sought relief for "equitable principles of justice."  See Beshear v. Weinzapfel, 474 F.2d 127, 133 (7th Cir. 1973).  The Beshear appellate court stated that "[E]quity contemplates even and fair-handed balancing. To reinstate a cause of action without any real basis for thinking that there was merit to it would scarcely seem to be according equity to the defendants."  Id.  Like the defendants in Beshear, plaintiffs here will suffer prejudice and would not be "accord[ed] equity" if Diaz Herrera's motion were granted.

There was no abuse of discretion in denying a death row inmate's motion to alter or amend the judgment.  See Arthur v. King, 500 F.3d 1335, 1344 (11th Cir. 2007).  The district court considered the affidavits filed with the motion and concluded that the affidavit (2 sworn and 1 unsworn) raised credibility issues.  Id. at 1343.  The same can be concluded of Diaz Herrera's affidavit, it makes statements on delayed knowledge of this completed execution that are not supported by the facts.  The affidavit's court certified translation does not support the allegations of ex parte communications.  The equities did not support the death row inmate in

<u>Arthur</u>, and do not support Diaz Herrera here.  No motion was filed here for nine months.
Plaintiffs Stansell, Howes, and Gonsalves were held hostage for more than five years, and Tom
Janis was murdered on February 13, 2003.  Upsetting this judgment would be intrusive under the
circumstances of this anti-terrorism case.  Diaz Herrera fails to show any reason to justify the
extraordinary relief under Rule 60(b) that is granted only in "exceptional circumstances."

Rule 60(b)(5) does not support the relief requested.  <u>See</u> <u>Cook v. Birmingham News</u>, 618
F.2d 1149, 1153 (5th Cir. 1980)(reversing order modifying a consent decree where decree had no
prospective effect).  The 5th Circuit made clear that "we cannot ignore the plain language of rule
60(b)(5) permitting relief from the inequitable operation of a judgment only when the judgment
operates prospectively."  <u>Id</u>.  Because the decree in <u>Cook</u> did not operate prospectively the
district court's order modifying the decree was reversed.  <u>Id</u>.  Here, the TRIA order and
judgment do not operate prospectively and therefore cannot be vacated, modified, or stayed.  <u>See</u>
<u>Cook</u> at 1153 (rule 60(b) also sets policy to achieve finality in litigation, citing, 7 Moore's
Federal Practice P 60.27(1) at 340 (1979)).

Appellate courts have adopted a "narrow construction" of clause 5 of Rule 60(b).  <u>See</u>
<u>Dowell v. State Farm</u>, 774 F.Supp. 996 (S.D. W.Va. 1991)(denying motion to reconsider
judgment on pleadings and dismissal).  In <u>Dowell</u>, the moving party argued a change of law
occurring after the original judgment on pleadings and dismissal required granting relief.  The
court held that "it is well settled that a change of law after a judgment has become final is not a
sufficient basis for vacating the judgment."  <u>Id</u>. at 999, <u>citing</u>, <u>Berryhill v. United States</u>, 199
F.2d 217, 219 (6th Cir.1952); <u>Title v. United States</u>, 263 F.2d 28, 31 (9th Cir.), cert. den. 359
U.S. 989, 79 S.Ct. 1118, 3 L.Ed.2d 978 (1959); <u>Lubben v. Selective Service System Local Board</u>
<u>No. 27</u>, 453 F.2d 645, 650 (1st Cir.1972); <u>DeFilippis v. United States,</u> 567 F.2d 341, 343 (7th

Cir.1977). The <u>Dowell</u> court went on to make clear, however, that there was no "change" in the law, but only a clarification. And, even a change in "decisional law" would not support Rule 60(b)(6) relief. <u>Id</u>. at. 1000. The <u>Dowell</u> court decided that "finality of judgments" governed the denial of extraordinary relief. <u>Id</u>. There is no "change in the law" here. A change of DOJ's opinion now, after a completed TRIA execution, and when DOJ has expressly taken a position that the Kingpin Act is an IEEPA statute in other actions does not support the extraordinary relief sought here. Nothing under Rule 60(b)(5) or (6) supports Diaz Herrera's relief.[3]

### F.    There is No Error of Law, No Abuse of Discretion, & Judgment is Not Void

There was no error of law here and therefore no abuse of discretion. <u>See</u> Arthur v. King, 500 F.3d 1335, 1339 (11th Cir. 2007)(denial of death row prisoner's §1983 claim not abuse of discretion and appropriate under the law- no error of law). The court and plaintiffs followed TRIA and non-conflicting sections of Florida garnishment law. Diaz Herrera was an OFAC designated FARC related SDNTK and his funds blocked. TRIA allows for execution on the blocked proceeds of an agency or instrumentality of terrorist party.

OFAC established the link of Diaz Herrera as a member of the FARC's Financial Front network. OFAC authorizes petitions challenging its designation directly to OFAC. OFAC does not afford notice to a designated foreign national other than the publishing on the SDN list. Diaz Herrera was an alien with no substantial connection to the United States, facts confirmed in his sworn testimony. OFAC did not prohibit or otherwise object to a transfer of these blocked assets set forth in the court's order as subject to TRIA. There is no legal authority for an OFAC designated blocked SDNTK, agency or instrumentality of a terrorist party to receive notice and challenge the OFAC designation in a post-judgment execution proceeding to partially satisfy an

---

[3] The *Cook* case also declined to vacate or modify an award of attorneys fees. *Cook*, 618 F.2d at 1150. MotRel. p. 1.

anti-terrorism act judgment.  See  Estate of Heiser v. Islamic Republic of Iran, 2011 WL

3489109 (D.D.C. Aug. 10, 2011)(declining to allow interpleader to resolve the factual question

of whether entity was an agency or instrumentality of Iran, because court had previously

declared entity to be an agency or instrumentality of Iran, and entity was not a necessary party

and not entitled to notice).

Only judgments that show a jurisdictional defect on the face of the record are void.  See

Days Inn Worldwide, Inc. v. Patel, 445 F.3d 899, 907 (6th Cir. 2006).  There are no jurisdictional

defects related to this judgment, the court had jurisdiction over cause and parties, and is therefore

not void.  Id.  Diaz Herrera is not entitled to vacate the judgment, even were he a defendant,

where he has no meritorious defense.  See In re: Worldwide Web Systems, Inc., 328 F.3d 1291,

1296 (11th Cir. 2003(affirming denial of motion to vacate 1.8 million default judgment where

õactual defendantö had no meritorious defense).  The judgment is not voidable.

### G.    Rule 55(c) Does Not Support the Relief Sought

Rule 55(c) states that a court õmay set aside entry of default for good causeö and õmay

set aside a default judgment under Rule 60(b).)  There is no õentry of defaultö applicable in this

procedural posture and therefore the õgood causeö standard that Diaz Herrera advocates is not

applicable here.  Diaz Herrera cites to Compania Interamericana Export-Import, S.A. v.

Compania Dominicana de Aviacion, 88 F.3d 948 (11th Cir. 1996) as supporting a Rule 55( c)

vacatur and the good cause standard.  The Compania Dominicana case supports nothing Diaz

Herrera seeks.  Id. at 951-52 (default judgment against a õforeign stateö vacated).  Diaz Herrera

is not a foreign state and neither is the FARC.  See Morris v. Khadr, 415 F.Supp.2d 1323, 1333

(D. Utah 2006)(terrorist organization is not a foreign state or agency of a foreign state and act of

12

war exception does not apply).  The argument to vacate this TRIA judgment under <u>Compania
Dominicana</u> is misplaced.  Diaz Herrera's motion must be denied.

The 11th Circuit does set forth several elements for courts to consider under a Rule 55(c)
motion, however, were a good cause standard to apply.  <u>Id</u>. at 951.  Contrary to Diaz Herrera's
assertion that "all factors" weight heavily in favor of granting relief – none can be satisfied here
in any manner by Diaz Herrera.  MotRel. P. 23.   Plaintiffs would be prejudiced if the TRIA
judgment were vacated.  <u>Id</u>.  Diaz Herrera presents no meritorious defense.  <u>Id</u>.  Diaz Herrera did
not act promptly and was untimely under Rule 60(b).  The public interest and Congressional
mandate of compensating victims of terrorism and combating the national emergency of
international drug trafficking would be thwarted if Diaz Herrera's motion were granted.  TRIA's
"notwithstanding any other provision of law" clause is "unambiguous and effectively supersedes
all other conflicting laws."  <u>U.S. v Holy Land Foundation</u>, 2011 WL 3703333 at *5-6 (N.D. Tex.
2011)(holding that TRIA preempts criminal forfeiture statutes and TRIA's intent was "*all* such
judgments are enforceable against any assets or property" of a terrorist party).

The tie-in to Rule 60(b)(6)'s "any other reason that justifies relief" is an extraordinary
remedy requiring "exceptional and compelling circumstances."  None exist here.  <u>See</u> <u>Beshear v.
Weinzapfel</u>, 474 F.2d 127 (7th Cir. 1973).  Diaz Herrera's motion must be denied.

Because Diaz Herrera cannot satisfy the exceptional circumstances for the extraordinary
relief he seeks, his request to payback the funds into the court registry and his claim for attorneys
fees must be denied.

## II.    <u>PLAINTIFFS' MOTIONS ARE PROPER</u>

Diaz Herrera argues that the motions are "improper."  The motion for relief challenges:
(i) the legal and "factual" basis of the motion for issuance of the writ of garnishment; (ii)

OFAC's õnoticeö to Diaz Herrera; (iii) the application of TRIA to this OFAC approved transfer

of blocked SDNTK property in January 2011 not requiring a license; (iv) that TRIA does not

establish procedure; and (v) that plaintiffs did not cite applicable law.  Additional arguments in

this section will be addressed in turn.  None support the relief requested under Rule 60(b).[4]

### A.  OFAC Designation and Notice Does Not Support the Relief Requested

Plaintiffs' motions and the Court's TRIA order and judgment were well grounded in law

and fact.  Diaz Herrera argues that the OFAC designation is of õlimited basis.ö  MotRel p. 4.

There is no support for this statement.  He argues that he has õonly been designated as a

SDNTK.ö  MotRel. P. 6.  Contrary to Diaz Herrera's presentation to this Court, plaintiffs did not

in any court papers state that Diaz Herrera was a õmemberö of the FARC.  MotRel. P. 12.  What

plaintiffs did state is the following:

> 10.    On May 6, 2010, OFAC determined that Carlos Olimpo Diaz Herrera's
> brother ó Jose Ricaurte Diaz Herrera ó is also a member of the FARC Financial
> Fronts Money Laundering Networks [Exhibit 2].   Jose Ricaurte Diaz Herrera is
> therefore an agency or instrumentality of the FARC under § 201 of the TRIA.
> See Ungar v. The Palestinian Authority, 304 F. Supp. 2d 232, 241 (D.R.I.
> 2004)(HLF is an agency or instrumentality of Hamas because it acts õfor or on
> behalf ofö Hamas).
> 11.    Jose Ricaurte Diaz Herrera is a Specially Designated Narcotics Trafficker
> [SDNTK] pursuant to the Kingpin Act and the Foreign Narcotics Kingpin
> Sanctions Regulations, 31 C.F.R. Part 598.314(b), which provides . . .:

[DE 251 ¶¶ 10-12].  It is OFAC that determined that Diaz Herrera satisfied the detailed criteria

above in 31 C.F.R. 598.314(b) for designation as a FARC related narcotics Kingpin.

---

[4] None support relief under Rule 12(b)(5).  First, Diaz Herrera is not a õdefendantö as contemplated under Rule
12(b)(5).  Second, even were Diaz Herrera a defendant, vacatur  under this rule would be inappropriate because he
presents no meritorious defense.  *See In Re: Worldwide Web Systems, Inc.* 328 F.3d 1291, 1296 (11th Cir. 2003)(11th
Cir. affirming denial of motion to vacate $1.8 million default judgment, no meritorious defense, no abuse of
discretion.  None support relief under 28 U.S.C. §§ 455(a) and (b).  See Plaintiffs' response in Opposition to Motion
to Disqualify DE 497.

Similarly, it is OFAC that determined that Diaz Herrera has a nexus with the FARC – a member of the FARC's Financial Fronts money laundering network. The flow chart that Diaz Herrera argues "purports" to show FARC Financial Fronts does not purport to show – it does show FARC Financial Fronts. MotRel p. 6. The public record OFAC chart needing no authentication and filed by plaintiffs, pinpoints Diaz Herrera with a direct arrow from the title of "FARC money launderer." [DE 251-2]. Diaz Herrera's motion for relief leaves out the part of FARC money launderer in the OFAC chart.

The motion for relief also leaves out the OFAC criteria used to designate Diaz Herrera as a link in the FARC's international narcotic trafficking network. Mr. Herrera was designated a Specially Designated Narcotics Trafficker under 31 C.F.R. § 598.314 which means he was found to be: materially assisting in, or providing financial or technological support for providing goods or services in support of; acting for or on behalf of; or played a significant role in international narcotics trafficking of the FARC. 31 C.F.R. § 598.314. Diaz Herrera accuses Plaintiffs and their lawyers of "falsehood[s]." MotRel. p. 13 n.10. This is simply not correct.

OFAC's designation of Diaz Herrera as an SDNTK is not "limited," but is a factual determination. See Weinstein at 50. OFAC's decisions are entitled to great deference. See De Cuelar v. Brady, 881 F.2d 1561, 1565 (11th Cir. 1989)(OFAC decision entitled to great deference, and should be reversed only if arbitrary or capricious); Paradissiotis v. Rubin, 171 F.3d 983, 987 (5th Cir. 1999)(OFAC's designation of SDN being "an agency's application of its own regulations, receives an even greater degree of deference than the Chevron standard, and must prevail unless plainly inconsistent with the regulation."); Consarc Corp. v. OFAC, 71 F.3d 909, 914-15 (D.D.C. 1995); Zarmach Oil Services, Inc. v. U.S. Dept. of the Treasury, 750

F.Supp.2d 150, 156 (D.D.C. 2010)(OFAC regulations carry the force of law); see also 31 C.F.R. § 538.802.[5]

Diaz Herrera continues his impermissible challenge to OFAC here and argues that the type of "notice" here – listing in the SDN list with no advance alert is "unconstitutional" even for a terrorist organization. The motion for relief fails completely to reveal the holding of National Council of Resistance of Iran v. Department of State, 251 F.3d 192, 202 (D.C. Cir. 2001). The National Council case did not involve an OFAC designated SDNTK and the TRIA execution on the blocked SDNTK account to partially satisfy U.S. National terrorism victims' ATA Judgment. The case involved the **re-designation** of an alias foreign terrorist organization – National Council of Resistance of Iran ("NCRI"). NCRI had established *years of substantial business connections to the United States* including a presence in a downtown Washington D.C. office building and a U.S. bank account. Id. at 203. It was under those very different circumstances that the appellate court asked the Secretary of State to allow NCRI to file a response to non-classified information before the re-designation.

Here, the SDNTK Diaz Herrera's own testimony reveals he is an alien and has no connection whatsoever to the United States. He is therefore not entitled to notice or due process. See 32 County Sovereignty Comm. V. Dep't of State, 292 F.3d 797, 799 (D.C.Cir. 2002). See also Estate of Heiser v. Islamic Republic of Iran, 2011 WL 3489109 (D.D.C. Aug. 10, 2011)(declining to allow interpleader to resolve the factual question of whether entity was an agency or instrumentality of Iran, because court had previously declared entity to be an agency or instrumentality of Iran, and entity was not a necessary party and not entitled to notice).

---

[5] Diaz Herrera's counsel's assertion that "in counsel's experience," a second interview foreshadows a "favorable response" is not called for here. MotRel. p. 9. His client is an SDNTK – still on the SDN list - and was so at the time the writ was served, at the time the TRIA Judgment on the answer to the writ was entered, and at the time OFAC authorized release of the blocked funds to plaintiffs.

The sanctions of blocking or õfreezingö Diaz Herreraøs $2,006,878.84 were immediate

upon Diaz Herreraøs designation and the same designation for his business Promotora Hotelera

Ltda.[6]  Diaz Herrera was placed on notice on May 6, 2010 that he was on the SDN list and that

these funds were blocked and that he and his business were õsubject to any and all sanctionsö as

a result of the designations.  31 C.F.R. § 598.201.  OFACøs *designation* of Diaz Herrera as a

FARC connected SDNTK and his own admissions in his affidavit that ***through counsel*** in June

2010 made submissions to OFAC demonstrate Diaz Herrera has received notice and an

opportunity to be heard.  See Al-Aqeel v. Paulson, 568 F. Supp. 2d 64, 71 (D.D.C. 2008)(due

process satisfied by designation notice and opportunity to submit evidence to OFAC).   The

designation *itself* is notice to Mercurio of potential õlegal consequencesö - that the blocked assets

are subject to execution.  See Bennett v. Spear, 520 U.S. 154, 177-78, 117 S.Ct. 1154, 137

L.Ed.2d 281 (1997).  Diaz Herrera cite to none of these cases.  Diaz Herrera was OFAC

designated which is all that was required for plaintiffs to execute on the blocked asset under the

TRIA without delay.  See Hausler at 538-39.  Diaz Herrera has not been denied due process.

### B.     This Kingpin Act Blocked Asset Execution was Supported Under TRIA

The Terrorism Risk Insurance Act (õTRIAö) includes the Kingpin Act.  Kingpin Act

blocked assets ó those of SDNTKs like Diaz Herrera here ó are subject to TRIA execution.  That

was correct and unchallenged in January 2011 when this TRIA execution was completed after

having been reviewed by DOJ and OFAC, and it remains correct today.  DOJøs change of

position is without merit under the law, is exactly the opposite to DOJøs position in another

federal court case.  Plaintiffs adopt additional arguments in DE 497 and in their supplemental

brief on appeal [Excerpts supplemental brief Ex. 1].

---

[6] Diaz Herrera fails to advise the Court that his business Promotora Hotelera Ltda. also is an OFAC
designated SDNTK and that it too remains on the SDN list.

17

Here, neither OFAC nor DOJ asserted that a license was necessary before frozen funds previously belonging to a FARC-associated SDNTK were turned over to the Plaintiffs as "blocked assets" under the TRIA.  DOJ argues months later that the decision in <u>World Fuel Corp. v. Geithner</u>, 568 F.3d 1345 (11th Cir. 2009), somehow compels the conclusion that IEEPA and the Kingpin Act should be treated differently for purposes of construing "blocked assets" under the TRIA.  But <u>World Fuel Corp.</u> said nothing of the sort.  That case arose from a fuel company suing an OFAC-blocked entity over a breach of contract, and the case involved whether OFAC's criteria <u>for granting a license</u> were the same under the Kingpin Act and IEEPA.  <u>Id.</u> at 1348-49.  In dismissing the appeal for lack of jurisdiction, this Court mentioned merely that IEEPA and the Kingpin Act were different statutes and thus may or may not have different criteria "to use when evaluating a license application."  <u>Id.</u> at 1349.  The case had nothing to do with the TRIA, which deliberately dispenses with the need for victims of international terrorism to obtain a license from OFAC in order to recover the assets of their assailants, or those affiliated entities which supported them.  But DOJ's citation to <u>World Fuel Corp.</u> is ironic, ***because in that case DOJ took a remarkably different position from the one it now urges in its proposed brief***.

At issue here is the President's authority to preserve assets under <u>the Kingpin Act, an Act expressly modeled on the successful IEEPA blocking powers against narcotics cartels, specifically the "Cali Cartel" program</u>. . . . Under the Cali program alone, hundreds of ostensibly legitimate businesses have been designated and had their assets blocked in the U.S., Colombia, and eight other countries.  These businesses include a drugstore chain, a supermarket chain, hotel and restaurant service companies, radio stations, real estate firms, cosmetics laboratories, and poultry farms.  Both before and since the Kingpin Act's enactment, blocking actions under the Cali program, therefore "affected" not only the designated persons, but U.S. companies and others who had contacts and other transactions with the designated persons in the ordinary course of business, and who may have had no knowledge of the ownership or activities of the sactioned businesses and persons. . . . <u>Congressional intent could not be clearer: implement the Kingpin Act like the "Cali Cartel" program.  The blocking authority and discretion are the same.  The parties do not dispute that OFAC has implemented the Kingpin Act consistent with its administration of the "Cali Cartel" program.</u>

World Fuel Corp. v. Paulson, S.D. Fla. Case No. 07-20398, D.E. 32 at 4-5 (emphasis supplied).
In World Fuel Corp. DOJ asserted that the Kingpin Act regime and the IEEPA/Executive Order
No. 12978 regime are indistinguishable – that Congress intended them to be implemented
consistent with one another and that the Executive has indeed implemented them that way.  But
now, DOJ conveniently argues exactly the opposite.

Accepting DOJ's interpretation would lead to absurd results.  Congress did not intend
terrorism victims to be able to use the TRIA to execute upon the blocked assets of a terrorist
group, ***but not upon the blocked assets of that terrorist group's worldwide narcotics trafficking
machine determined by our Government to be fueling the terrorists' activities and, like here,
linked by the Government to the terrorist group that held them hostage or murdered their
family member.***  The same criteria applies to designate somebody as either an SDNT or an
SDNTK, so a FARC member (or a Colombian entity deliberately financing the FARC's
operations) could be designated as either an SDNT or an SDNTK (or theoretically both).[7]

If DOJ's present argument were accepted, then the unbridled Executive decision to
designate a narco-terrorist as an SDNTK (instead of as an SDNT) could have enormous practical
consequences for terrorism victims, because designation as an SDNTK could effectively
preclude terrorism victims from gaining access to that Kingpin's blocked assets.  Under DOJ's

---

7  This is not merely a theoretical point: One of the people the Plaintiffs have secured their ATA final
judgment against – for the capture, torture, and killing of their family member – is one Alonso Olarte
Lombana, whom OFAC has identified as a Front Commander for the FARC.  To be clear: Mr. Lombana
is not merely some financier or remotely-related FARC entity; his is an actual commander in FARC's
guerilla military operations.  *See Stansell et al. v. FARC et al.*, M.D. Fla. No. 09-CIV-2308, D.E. 233,
322-1.  Nevertheless, the Executive designated Mr. Lombana as an SDNTK, rather than as an SDNT.  So
even though the Government has formally identified the FARC as a terrorist entity, and has also formally
identified Mr. Lombana as a front commander in that terrorist entity, his designation was not as a terrorist
(SDNT), but rather as a Kingpin (SDNTK) – even though the designation criteria for the two categories
are the same.

view of the law, the terrorism victim could then not travel under the TRIA procedures, and instead would have to apply to OFAC for a license even to begin efforts to collect those assets.[8]

As the 11th Circuit has noted: "Nowhere do we find any indication that the Kingpin Act is designed to give the President 'bargaining chips' with narcotics traffickers." World Fuel Corp., 568 F.3d at 1349. Indeed, the TRIA was enacted precisely to end just such shenanigans by the Executive. This Court's order stated that Diaz Herrera's funds were "blocked assets" under the TRIA and this was not contested by OFAC – which was copied on all relevant pleadings, and which was consulted throughout the process. Nor was it contested by DOJ which had appeared in this case on October 8, 2010. Neither raised a peep suggesting that these assets were not "blocked assets" under TRIA and subject to execution.

### C.    Midstream EFT's are Subject to TRIA Execution

Contrary to Diaz Herrera's assertions that these blocked wire transfer funds are not subject to garnishment/execution [MotRel. p. 11] – these blocked wire transfer funds are subject to execution without delay. See Hausler v. JP Morgan Chase Bank, N.A., 740 F. Supp. 2d 525 (S.D.NY. 2010). In Hausler, a federal court judgment creditor sought to enforce her terrorism judgment and execute on 30 midstream international electronic funds transfers under the TRIA and Cuban Asset Control Regulations ("CACR"). Id. at 528. The court in Hausler shot-down the argument that blocked funds should remain in banks' "interest bearing accounts in perpetuity, or until further direction from the federal government." Id. at 538. The Court denied the bank's

---

8  Without access to the comprehensive, streamlined processes authorized by the TRIA, terrorism victims would presumably have to chase down each asset holder and initiate separate ATA actions or supplementary proceedings against each one – even though the exact same conduct would satisfy designation as either an SDNTK or an SDNT – during which proceedings the blocked individuals or entities would undoubtedly use the proceedings (in an otherwise prohibited attempt) to challenge OFAC's factual findings and re-litigate the propriety of their initial designation.

motion to dismiss the writ of garnishment and allowed execution on EFT's that had been blocked

five years.  Id.  In so doing the Court stated:

> Respondents would have this Court leave the assets in private hands and grant them
> indefinite possession, and potential beneficial use of the funds, for what could be
> years, decades, or even centuries.  In the meantime, while the blocked funds would lie
> idle in the banks' vaults, benefiting no one except the financial institutions, claimants
> holding judgments against the terrorist states and seeking to redress heinous crimes
> would remain thwarted in their efforts to obtain due compensation.
>
> *        *        *
>
> The Court is not persuaded that this self-serving result squares with the plain remedial
> purpose of TRIA, by which Congress explicitly promulgated a comprehensive
> scheme providing that **any assets blocked under the CACRs or similar OFAC
> regulations** are to be subject to judgment execution for the benefit of victims of
> terrorist states-most fittingly, as in this case, when the crime victim was an American
> citizen.

Hausler at 538-39.  Diaz Herrera does not cite Hausler here.

　　　The Court in Hausler noted that "Courts have routinely interpreted such

"notwithstanding" provisions to supersede all other laws … and to indicate preemption, … "

(citations omitted), therefore the Court held that insofar as New York state law Article 4-A

conflicts with TRIA, TRIA's § 201(a)'s opening phrase weighs in favor of preemption.  Id. at

538-39.  The Hausler court found that TRIA preempted conflicting state law because (i) "it

stands as an obstacle to the accomplishment and execution of the full purposes and objectives of

Congress," or (ii) it may be inferred because TRIA "dominates" the federal system.  Id. at 530.

The Court also stated that such preemption applies with equal force to regulations promulgated

by federal agencies.  Id.  TRIA preempted conflicting state property law or conflicting

garnishment statutes here.

　　　Florida's UCC does not take priority over TRIA.[9]  See Hausler, 740 F. Supp. 2d at 540

(blocking interrupts the EFT and makes the funds subject to execution from domestic bank

accounts).  The TRIA supercedes criminal forfeiture statutes and "overrides any protection from

---

[9] MotRel. p. 11 n.8.

execution the blocked í property might have due to criminal forfeiture law.ö  U.S. v Holy Land Foundation, 2011 WL 3703333 at *5-6 (N.D. Tex. 2011)(holding that TRIA preempts criminal forfeiture statutes).

**D.    Diaz Herrera is an Agency or Instrumentality of the FARC**

Diaz Herrera is mistaken that he cannot be an agency or instrumentality of the FARC. DOJ has agreed that persons can be agencies or instrumentalities of the FARC [DE389,390]. Like one of the garnishees, Diaz Herrera argues that the FSIA definition of õagency or instrumentality of a **foreign state**ö ó which is limited to õany entityö -  somehow applies to a foreign terrorist organization which is not  a foreign state.[10]

In Samantar v. Yousuf, 130 S. Ct. 2278, (2010), the Supreme Court held that an individual Somalian foreign official sued for acts of torture undertaken in his official capacity was not a õforeign stateö entitled to immunity from a Torture Victim Protection Act suit within the meaning of the FSIA.  The FSIA defines õforeign stateö in § 1603 as follows:

õ(a) A =foreign stateø... includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

õ(b) An =agency or instrumentality of a foreign stateø means any entity-

õ(1) which is a separate legal person, corporate or otherwise, and

õ(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

õ(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.ö

The Court in Samantar stated:

---

[10] See DE 459 denying the banksø motions to quash writs of garnishment.  See also Heiser at *11-12 where court denied interpleader request on the  õIøm-afraid-it-might-happen-somedayö argument of requester.  Court declined to õstand as roadblock on the path of justice by imposing new requirements or permitting supplementary procedures that Congress itself did not deem necessary.ö  Court found that õextensive delayö for victims of terrorism did not justify any postponement of action.

[7]  The term "foreign state" on its face indicates a body politic that governs a particular territory. See, e.g., Restatement § 4 (defining "state" as "an entity that has a defined territory and population under the control of a government and that engages in foreign relations"). In § 1603(a), however, the Act establishes that "foreign state" has a broader meaning, by mandating the inclusion of the state's political subdivisions, agencies, and instrumentalities. Then, in § 1603(b), the Act specifically delimits what counts as an agency or instrumentality. Petitioner argues that either "foreign state," § 1603(a), or "agency or instrumentality," § 1603(b), could be read to include a foreign official. Although we agree that petitioner's interpretation is literally possible, our analysis of the entire statutory text persuades us that petitioner's reading is not the meaning that Congress enacted.

We turn first to the term "agency or instrumentality of a foreign state," § 1603(b). **It is true that an individual official could be an "agency or instrumentality," if that term is given the meaning of "any thing or person through which action is accomplished," In re Terrorist Attacks on Sept. 11, 2001, 538 F.3d 71, 83 (C.A.2 2008)**. But Congress has specifically defined "agency or instrumentality" in the FSIA, and all of the textual clues in that definition cut against such a broad construction.

Id. at 2287 (emphasis added).  In the instant case, the FARC is not a "foreign state" so none of

the "textual clues" in the sub-definition of an "agency or instrumentality of a foreign state"

apply.  See DE 22, pp. 4-10.  See also Morris v. Khadr, 415 F. Supp. 2d 1323, 1334 (D.C. Utah

2006)(terrorist organization is not a "nation"); Klinghoffer S.N.C. v. Achille Lauro, 937 F.2d 44,

47-48 92d Cir. 1991)(terrorist organization is not a foreign state).

        The fact that TRIA was codified as a note to the FSIA does not change the fact that

Congress specifically chose not to adopt the FSIA definition of "agency or instrumentality of a

foreign state" when it passed TRIA.  Nor did Congress express any indication that an individual

could not qualify as an agency or instrumentality of a foreign terrorist organization.  Congress

made certain to specifically adopt the definitions found in other statutes for the TRIA definition

of "terrorist party" and it chose not to adopt the FSIA definition of "agency or instrumentality of

a foreign state".  Instead, Congress stated that TRIA applied to "the blocked assets of **any** agency

or instrumentality of that terrorist party".  The term "any" clearly signifies that Congress did not

intend to limit agencies or instrumentalities of a terrorist party to exclude individuals.  This was

not an issue during the transfer of these blocked proceeds in this now completed TRIA

execution.  And, the "individual cannot be an agency or instrumentality" was not an issue, during

the clarification conferences with DOJ and OFAC and orders allowing TRIA executions and

turnover of the blocked SDNT proceeds [DE 389, 390].  See Ali v. Federal Bureau of Prisons,

552 U.S. 214, 222, 128 S.Ct. 831  (2008)(construction of a statutory term "must, to the extent

possible, ensure that the statutory scheme is coherent and consistent"); Davis v. Michigan Dept.

of Treasury, 489 U.S. 803, 809, 109 S.Ct. 1500 (1989)("[St]atutory language cannot be

construed in a vacuum. It is a fundamental canon of statutory construction that the words of a

statute must be read in their context and with a view to their place in the overall statutory

scheme")(emphasis added); Harrison v. Benchmark Electronics Huntsville, Inc., 593 F.3d 1206,

1212-13 (11th Cir. 2010)(plain meaning not accorded if leads to absurd result.  Diaz Herrera's

argument that a person can never be an agency or instrumentality defeats the comprehensive

remedial purpose of TRIA.  H.R. Conf. Rep. No. 107-779, at 27, U.S.Code Cong. &

Admin.News 2002, pp. 1430, 1434.

### E.     The Orders and Timing of the Orders Were Appropriate

The requirement is that plaintiffs' obtained their TRIA judgment and writ of execution

while the funds were blocked.  Smith v. Federal Reserve Bank of New York, 346 F.3d 264 (2d

Cir. 2003).  Plaintiffs have done so.[11]  In Smith, plaintiffs obtained a default judgment against the

Republic of Iraq, Saddam Hussein, and other entities for anti-terrorism damages for the deaths of

family members in the World Trade Center on September 11, 2001.  The Smith Plaintiffs filed a

declaratory judgment action against the Federal Reserve Bank of New York and the Secretary of

---

[11] Plaintiffs adopt additional arguments set forth on timing and reasonableness of orders and judgments in DE 497.

24

the Treasury seeking to enforce their judgment against the Republic of Iraq by attaching certain

Iraqi assets held by the Federal Reserve Bank.  Id.  The Second Circuit Court of Appeals

affirmed the district court's granting of summary judgment for the defendants because plaintiffs

had no judgment at the time the assets were blocked.  Smith at 270-71.  Plaintiffs required a

judgment before executing on blocked assets.  Smith v. Federal Reserve Bank of New York, 346

F.3d 264, 270-71 (2d Cir. 2003).

    Unlike the Smith plaintiffs, plaintiffs here obtained a judgment for damages on June 15,

2010 [DE 233].  And, unlike the plaintiffs in Smith, at every phase of execution the Diaz Herrera

funds were blocked:  (i) December 15, 2010 motion for issuance of a writ of

execution/garnishment; (ii) December 16, 2010 order granting writ for turnover of TRIA blocked

funds; (iii) December 21, 2010 service of the writ on Wells Fargo; (iv) January 13, 2011 motion

for TRIA judgment on garnishee's answer; and (v) January 18, 2011 TRIA Judgment; and (vi)

January 20, 2011 transfer of SDNTK blocked funds.  At all times material, the plaintiffs'

judgment was obtained, the writ of garnishment was ordered and served, and the execution

completed while these assets were blocked.  Diaz Herrera cites none of this history.

    The Smith court recognized *the timing issues* of when a judgment holder actually seeks

to execute on blocked assets or funds.  "In addition to the possibility that blocked assets may

become unblocked or confiscated, they may also be depleted by claims of other victims."  Smith

at 271 n.6.  In other words, blocked assets subject to TRIA execution, like these here, may not

always be blocked.  Plaintiffs recognize that blocked assets must be "available" to execute on

and in accordance with Smith, used post-judgment remedies such as writs of execution.  Id. at

271 n.7.  Both plaintiffs and this court recognized the "timing" issues associated with executing

on blocked funds – funds must be executed on without delay, because they may not always

remain blocked.  This was not an instance where plaintiffs sought a "future" execution against

some blocked funds.  As the Second Circuit stated:

> As we have already explained, section 201 operates to empower a plaintiff with a
> "judgment" against a "terrorist party" to execute against any "blocked assets" of that party.
> TRIA § 201(a), 116 Stat. at 2337.  It imposes no obligation on the President to maintain
> such funds for future attachment.

Id. at 271.

The Second Circuit Court of Appeals applied the TRIA timing of judgment and execution

rules when it granted summary judgment for the defendants in Smith, effectively cutting the

victims off from satisfying their judgment.  The reason was simple, the Smith plaintiffs did not

have a judgment at the time the assets were unblocked by the President and when they did have a

judgment there "were no more -blocked assets" in the Federal Reserve Bank's custody against

which Plaintiffs could execute."  Smith at 272, 272 n.8.  Neither circumstance exists here.

Further Diaz Herrera's challenges to a one day review of a proposed order submitted on ECF

publicly and not ex parte are without merit.  See Hausler v. The Republic of Cuba, DE 479-2

(issuance of writ of garnishment **on same day** as application in TRIA execution not criticized by

federal district court judge).

### F.    Entry of Plaintiffs' Proposed Orders Was Entirely Reasonable

Diaz Herrera argues that the Court's entry of Order [DE 252](granting motion for

issuance of writ of garnishment], and Order [DE 256](granting motion for entry of judgment on

garnishees' answer) and Judgment [DE 257], was somehow improper.  These Orders simply do

not fall into the category of fact sensitive, dispositive orders at issue in the cases cited by Diaz

Herrera.  Plaintiffs' proposed orders did not contain detailed findings of disputed fact that

formed the basis for the Court's rulings, and all facts contained therein concerning the

Government's various designations are beyond dispute and true.  All factual findings included in

the orders were findings made by the United States government in compliance with the authority,

standards and procedures that Congress set forth in the AEDPA, IEEPA or Kingpin Act.  These

fact findings were made after consultations by OFAC with multiple law enforcement,

intelligence agencies and/or the military.  OFAC's factual findings are a matter of public record,

were made long before the orders were drafted or entered, and are entitled to greater than

*Chevron* deference.  The OFAC fact findings and final agency action recited in the subject

Orders were not subject to challenge by Diaz Herrera before entry, at entry or over 9 months

later now.

Diaz Herrera's citation to <u>Chudasama v Mazda Motor Corp</u>., 123 F.3d 1353 (11th Cir.

1997), does not apply here.  Drafting proposed detailed factual findings of a party's flagrant,

willful and repeated and intentional discovery violations in violation of court orders, like the

conduct in <u>Chudasama</u>, does not fall in the same category as merely reciting the United States

Government's published findings under AEDPA, IEEPA or the Kingpin Act into the proposed

order. [12]

### G.    There are No Misleading Legal Arguments

Diaz Herrera argues that plaintiffs' counsel have set forth misleading arguments to the

Court.  MotRel. pp. 13-15.  They have not.

First, Diaz Herrera cites to <u>Hausler v. The Republic of Cuba</u>, Southern District Case No.

09-21175 and 09-20942 that TRIA preempts state garnishment statutes.   The <u>Hausler</u> case and

Judge Jordan's opinion did not address blocked assets of an OFAC designated Kingpin in a

TRIA execution over those blocked assets. DE 479-1.   <u>Hausler</u> did not involve any issues of

notice to any OFAC sanctioned and blocked party.  The opinion did not reach the issue here,

---

[12] Plaintiffs adopt additional legal arguments on timing and reasonableness of orders and judgments in DE 497.

where a blocked SDNTK seeks to use the Florida statutes to substantively challenge his OFAC designation and blocking.  DE 479-1.  Judge Jordan found no conflict with the Florida statute § 77.01 for a non-designated commercial entity, not an agency or instrumentality of a state sponsor of terrorism, that had been issued a license by OFAC for telecommunications traffic to Cuba seeking summary judgment on its answer to the writ where the answer specifically indicated that the garnishee, Telecom NZ was not indebted to Cuba or its state owned telecommunications company.[13]  Facts very different from here, where Wells Fargo acknowledges holding blocked proceeds involving Diaz Herrera, where Diaz Herrera himself, an alien with no substantial connection to the United States is the blocked party, admits that he owned the blocked proceeds.

Second, he argues that TRIA's notwithstanding clause does not support terrorism victims' TRIA executions on blocked funds here.  This argument is also not correct.  The Court in Hausler noted that "Courts have routinely interpreted such 'notwithstanding' provisions to supersede all other laws … and to indicate preemption, …" (citations omitted), therefore the Court held that insofar as New York state law Article 4-A conflicts with TRIA, TRIA's § 201(a)'s opening phrase weighs in favor of preemption.  See Hausler v. JP Morgan Chase Bank, N.A., 740 F. Supp. 2d 525, 538-39 (S.D.NY. 2010).  Florida's UCC does not take priority over TRIA.  Id. at 540 (blocking interrupts the EFT and makes the funds subject to execution from domestic bank accounts).   And plaintiffs' complied with Florida garnishment statutes to the extent they did not conflict with TRIA.  TRIA preempts conflicting state property law or conflicting garnishment statutes here.  See Hausler at 530 (state law is obstacle to federal purpose and dominates the federal system).  The Court also stated that such preemption applies with equal force to regulations promulgated by federal agencies.  Id.  The TRIA supercedes

---

[13] Plaintiffs do not contend that the entire Florida garnishments statutes are preempted.

criminal forfeiture statutes and "overrides any protection from execution the blocked í property might have due to criminal forfeiture law." U.S. v Holy Land Foundation, 2011 WL 3703333 at *5-6 (N.D. Tex. 2011).

Unlike the plaintiffs' in Hausler, plaintiffs here do not contend that TRIA abrogates all substantive and procedural requirements for granting a writ of garnishment under Florida law. Plaintiffs' merely contend, and this Court has previously ruled, that TRIA preempts Florida's garnishment statutes insofar as they may provide for notice to an alien OFAC blocked party, or a right to challenge, or evidentiary hearing or trial, to the agency or instrumentality of a terrorist party under the facts of this case which are in derogation of OFAC regulations. Diaz Herrera seeks to argue that § 77.07(2) required notice to him for an opportunity to challenge his OFAC designation, or authorizes a stay of garnishment for some unknown period of time (in the hopes that in some future year Plaintiffs' allegations of OFAC designation and blocking are then no longer true), this clearly conflicts with TRIA's substantive right to immediate execution and must be preempted under the TRIA's notwithstanding clause and the doctrine of implied preemption. His interpretation of what "procedure" should apply would conflict with OFAC regulations setting forth specific steps to address his OFAC designation with OFAC. See 31 C.F.R. § 501.807. Diaz Herrera's argument demonstrates why certain of the Florida Garnishment statutes like Fla. Stat. § 77.02 involves a substantive right that conflicts with TRIA. His arguments here demonstrate that he seeks a judicial forum to improperly challenge OFAC in this post-judgment execution. No court has ever allowed a terrorist party or an agency or instrumentality of a terrorist party to use a TRIA post-judgment execution or state garnishment procedures, to challenge the Government's designation, but that is what Diaz Herrera seeks here. Plaintiffs have complied with non-conflicting procedure in Florida law.

Third, that somehow, an alien with no substantial connection to the United States has rights greater in this TRIA garnishment and completed execution than the U.S. Supreme Court has held.  Diaz Herrera is a Colombian national residing in Colombia.  His affidavit identifies a history of prior residence solely in Colombia.  His employment has all been in Colombia. Diaz Herrera does not allege any contacts with or presence in the United States.  Diaz Herrera claims he õinvestedö the subject blocked proceeds in December 2009 in the Premium Capital Appreciation Fund in Curacao, Netherlands Antilles.  Then in June 2010, after learning that he had been OFAC designated as an SDNTK, õI went to withdraw money from the Fondo Premium Capital Appreciation Fund through stockbroker Bolsa Interbolsa, Ltda.ö  [DE 478-1].  There is no evidence or allegation that Diaz Herrera ever resided in the U.S. or maintained any property here.  The routing of the ETF through Wells Fargo as intermediary was completely fortuitous and not something that he was aware of, planned or requested.  [DE 478-1].  Designated individuals are denied visas to enter the United States. 8 U.S.C. § 1182(a)(2)(C).

There is no dispute - Diaz Herrera was a foreign national OFAC designated SDNTK with no substantial connection to the U.S. and therefore he has no rights to due process.  Plaintiffs and the Court got it right on the law.  A foreign national without property or presence in this country has no constitutional rights, under the due process clause or otherwise. õ[A]liens receive constitutional protections [only] when they have come within the territory of the United States and developed substantial connections with this country.ö  United States v. Verdugo-Urquidez, 494 U.S. 259, 271, 110 S.Ct. 1056, 108 L.Ed.2d. 222 (1990).  It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders.  Id. at 494 U.S. 269.  The due process guaranty of the Fifth Amendment is applicable to aliens within the territory of the United States, not to Diaz Herrera.

Johnson v. Eisentrager, 70 S.Ct. 936 (1950).  See also Zadvydas v. Davis, 533 U.S. 678, 693,

121 S.Ct. 2491, 2500, 150 L.Ed.2d 653 (2001) (holding that "once an alien enters the country, ...

the Due Process Clause applies"); People's Mojahedin Org. of Iran v. U.S. Dep't of State, 182

F.3d 17, 22 (D.C.Cir. 1999), cert. denied, 529 U.S. 1104, 120 S.Ct. 1846, 146 L.Ed.2d 788

(2000).

       Any interest Diaz Herrera may have had in the midstream EFT blocked by Wells Fargo

does not meet the requirement of a substantial connection with the United States granting due

process rights.  See 32 County Sovereignty Comm. v. Dep't of State, 292 F.3d 797, 799

(D.C.Cir. 2002).  Diaz Herrera cites to Simanonok v. Simanonok, 787 F.2d 1517 (11th Cir.

1986).  In Simanonok, the 11th Circuit reversed the denial of a former Air Force  husband's right

to amend his complaint against the Air Force challenging the garnishment of his wages for an ex-

spouse's support.  Id. at 1521.   It did not involve an alien OFAC designated as a FARC related

SDNTK.

       The inconsistency of Diaz Herrera's argument is patent.  He argues that he – Diaz

Herrera - has no property interest in an EFT (MotRel p. 11), but also claims his due process and

fifth amendment rights are violated – even though he is an alien with no substantial connection to

the United States and the law says he has an interest in the EFT (MotRel p. 1).  Diaz Herrera

filed a declaration where he admits that he is an alien and has absolutely no connection to the

United States [DE478-1].  Taking all of Diaz-Herrera's arguments on this issue as true, the Court

is left to conclude that as it ruled in the December 16, 2010 Order [DE252] and the January 18,

2011 Judgment  [DE 257], Diaz Herrera is an alien with no substantial connection to the United

States and therefore has no due process rights.  Diaz Herrera cites none of this law.  Fourth,

plaintiffs do not need a license to execute on and take possession of blocked proceeds once the

court rules that TRIA applies to the blocked asset.  <u>Weininger v. Castro</u>, 462 F. Supp. 2d. 457,

499 (S.D.N.Y. 2006).  DE 299-7.  Diaz Herrera is not a "claimant" here.

### <u>CONCLUSION</u>

For the foregoing reasons Jose Ricaurte Diaz Herrera's Motion for Relief from Judgment

and Related Orders [DE 478] must be denied.

Respectfully submitted November 14, 2011

/s Newton Porter                              /s  Tony Korvick
NEWTON P. PORTER                    TONY KORVICK
(Florida Bar No. 833738)                (Florida Bar No. 768405)
nporter@porterandkorvick.com       tkorvick@porterandkorvick.com
PORTER & KORVICK, P.A.             PORTER & KORVICK, P.A.
9655 South Dixie Highway Suite 208   9655 South Dixie Highway Suite 208
Miami, Florida 33156                       Miami, Florida 33156
Telephone:     (305) 373-5040         Telephone:     (305) 373-5040
Facsimile:      (305) 668-9154          Facsimile:      (305) 668-9154
Attorneys for Plaintiffs                    Attorneys for Plaintiffs

### <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 14, 2011, I electronically filed the foregoing with the
Clerk of the Court by using the CM/ECF system.  I further certify that I served the foregoing
document and the notice of electronic filing by first class mail and electronic mail to the
following persons: NONE

  s/Newt Porter
NEWT PORTER (Florida Bar No. 833738)
Attorneys for Plaintiffs
PORTER & KORVICK, P.A.
9655 South Dixie Highway Suite 208
Miami, Florida 33156
Telephone:     (305) 373-5040
Fax:             (305) 668-9154
nporter@porterandkorvick.com