UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Tampa Division

KEITH STANSELL,
MARC GONSALVES,                                    CIVIL ACTION CASE NO.:
THOMAS HOWES,                                      8:09-CV-2308-RAL-MAP
JUDITH G. JANIS, CHRISTOPHER T. JANIS,
GREER C. JANIS, MICHAEL I. JANIS,
and JONATHAN N. JANIS

    Plaintiffs,
vs.

REVOLUTIONARY ARMED FORCES OF COLOMBIA (FARC); et al.,

    Defendants.
_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO JOSE RICAURTE DIAZ HERRERA'S MOTION FOR DISSOLUTION OF WRIT OF GARNISHMENT AND RELATED <u>RELIEF AND MEMORANDUM OF LAW</u>**

    Plaintiffs respond in opposition to Jose Ricaurte Diaz Herrera ("Diaz Herrera")'s motion for dissolution of writ of garnishment and related relief (the "MotDiss") dissolving: (i) DE 252 TRIA turnover Order granting plaintiffs' motion for issuance of writ of garnishment; and (ii) DE 253 writ of garnishment.  The Motion for Dissolution must be denied, because:  (i) it is untimely and fails to satisfy the exceptional circumstances required for relief; (ii) TRIA and OFAC regulations occupy the field and preempt conflicting Florida law on garnishment; (iii)  Non conflicting Florida law was complied with here; (iv) Diaz Herrera had an interest in the midstream EFT and the EFT was subject to execution under TRIA; (v) OFAC's determination that the blocked assets belonged to a member of the FARC Financial Front makes them subject to TRIA execution; (vi) neither the TRIA or OFAC regulations are unconstitutional; and (vii) plaintiffs did not require an OFAC license in this completed TRIA execution.

1

## I.     PLAINTIFFS' MOTION WAS PROPER

Plaintiffs' motion was proper and not legally and factually baseless. MotDiss pp. 8-18. Plaintiffs' motion seeking issuance of the writ of execution/garnishment was factually based and legally sound.[1] Plaintiffs prove the "four elements" Diaz Herrera complains of in his motion for dissolution. MotDiss p. 8 (blocked IEEPA funds; midstream EFT subject to execution; funds of a terrorist party; agency or instrumentality).

Diaz Herrera's motion is untimely and is without merit. He cannot garner a greater set of rights under Florida garnishment law than those accorded him by OFAC and Supreme Court precedent denying him due process rights as an alien with no substantial connection to the United States. His interest in a blocked $2 million wire transfer does not change the facts or law on due process. Diaz Herrera cannot use a post judgment proceeding and sections of Florida law to trump federal TRIA and OFAC regulations and blunt these terrorism victims' rights to compensation. See Limon v. Double Eagle Marine, L.L.C., 771 F. Supp. 2d 672, 675 (S.D. Tex. 2011)(four month delay in bringing motion for relief from judgment after discovery of facts for motion unreasonable – one year limit is extreme limit); Gomes v. Williams, 420 F.2d 1364, 1366 (10th Cir. 1970)(bald assertions of good defense not meritorious); In re: Worldwide Web Systems, Inc., 328 F.3d 1291, 1296 (11th Cir. 2003(affirming denial of motion to vacate $1.8 million default judgment where "actual defendant" had no meritorious defense); 32 County Sovereignty Comm. V. Dep't of State, 292 F.3d 797, 799 (D.C.Cir. 2002)(bank account not

---

[1] Plaintiffs adopt the legal arguments set forth in their Response in Opposition to Diaz Herrera's Motion for Relief from Judgment related to Diaz Herrera's arguments here that (i) SDNTK Diaz Herrera's funds being "blocked assets" under TRIA (argued in MotDiss pp. 8-9); (ii) a midstream EFT is subject to TRIA garnishment (argued MotDiss pp.9-14) ; (iii) OFAC's determination that Diaz Herrera was a member of the FARC Financial Fronts (argued MotDiss pp. 14-17); (iv) Diaz Herrera is not an agency or instrumentality of the FARC (argued MotDiss. pp. 17-18). Some of these arguments are supplemented here to respond precisely to this motion for dissolution. To the extent the "factually and legally baseless" arguments connote fraud or misconduct allegations, plaintiffs adopt those arguments set forth in the Response in Opposition to the Motion for Relief from judgment and Related Orders.

2

sufficient substantial connection to afford due process); Estate of Heiser v. Islamic Republic of Iran, 2011 WL 3489109 (D.D.C. Aug. 10, 2011)(no notice to agency or instrumentality required); Hausler v. JP Morgan Chase Bank, N.A., 740 F. Supp. 2d 525 (S.D.NY. 2010)(TRIA preempts state law). The motion for dissolution and related relief must be denied.

### A. Diaz Herrera's Funds were a Blocked Asset Under TRIA

Diaz Herrera's funds were a blocked asset *subject to execution under TRIA for these victims of terrorism*. The TRIA allows for execution on the blocked assets of a terrorist party, or its agency or instrumentality, to satisfy a judgment against the terrorist party, provided that the following requirements are met:

  (1) a person has obtained a judgment against a terrorist party;
  (2) the judgment is either
    (a) for a claim based on an act of terrorism, or
    (b) for a claim for which a terrorist party is not immune under § 1605(a)(7);
  (3) the assets are "blocked assets" within the meaning of TRIA; and
  (4) execution is sought only to the extent of any compensatory damages.

Weininger v. Castro et al., 462 F. Supp. 2d. 457, 479 (S.D.N.Y. 2006). Plaintiffs meet and did meet all four requirements for this completed TRIA execution. There was not a single challenge from DOJ or OFAC – who had the ultimate authority to release the "blocked assets" when this execution was started or when it was completed. Blocked Kingpin Act funds are blocked assets under the meaning of TRIA. The Kingpin Act is an IEEPA statute. See DOJ's position in World Fuel Corp. v. Paulson, S.D. Fla. Case No. 07-20398, DE 32 at 4-5. See Ex. 1 to plaintiffs' response in opposition to DE 478.

### B. A Midstream EFT is Subject to TRIA Execution

Diaz Herrera's argument here is simply not the law. These blocked wire transfer funds are subject to execution without delay. See Hausler v. JP Morgan Chase Bank, N.A., 740 F. Supp. 2d 525 (S.D.NY. 2010). In Hausler, a federal court judgment creditor sought to enforce

3

her terrorism judgment and execute on *30 midstream international electronic funds transfers under the TRIA* and Cuban Asset Control Regulations ("CACR"). Id. at 528.  In so doing the Court stated:

> The Court is not persuaded that this self-serving result squares with the plain remedial purpose of TRIA, by which Congress explicitly promulgated a comprehensive scheme providing that **any assets blocked under the CACRs or similar OFAC regulations** are to be subject to judgment execution for the benefit of victims of terrorist states-most fittingly, as in this case, when the crime victim was an American citizen.

Hausler at 538-39.  Diaz Herrera cites Hausler here in this motion with the caveat that it is "poorly reasoned" and should not have been followed here.  MotDiss. p. 11.  Hausler and Levin v. Bank of New York, No. 09 CV 5900 (RPP) (SDNY Mar. 4, 2011), 2011 U.S. Dist. Lexis 23779, are the law.  Diaz Herrera cites to Bank of New York v. Nickel, 14 A.D.3d 140 (N.Y. App. Div. 2004) for the proposition that OFAC may block interests in property.  Id. at 147.  The Nickel case involved a commercial transaction and the release of blocked funds after OFAC sanctions were lifted against Serbia, Montenegro, and Bosnia and Herzegovina.  While the 2004 case did not involve application of TRIA against assets of an OFAC designated FARC related SDNTK and does not address any issue related to garnishment of an EFT in a terrorism post-judgment proceeding mandated in Hausler, it has been cited in a TRIA case for the authority that an intended beneficiary has an interest in a midstream EFT.  Contrary to Diaz Herrera's argument that he did not "own" the funds here, and that they were not subject to garnishment as his "property" [MotDiss p. 10] – that issue has also been decided adversely to Diaz Herrera.  See Hausler, 740 F. Supp. 2d 525, 535 ("despite being blocked, the transfer was not cancelled, and the intended beneficiary retained an interest in the transfer and its proceeds"), citing, Nickel.  Importantly, Florida's UCC does not take

4

priority over TRIA.[2]  See Hausler, 740 F. Supp. 2d at 540 (blocking decisively interrupts the EFT and makes the funds subject to execution from domestic bank accounts).

Court have determined that TRIA preempts state law property rights.  Hausler at 538-39. The Court in Hausler noted that "Courts have routinely interpreted such "notwithstanding" provisions to supersede all other laws … and to indicate preemption, … " (citations omitted), therefore the Court held that insofar as New York state law Article 4-A conflicts with TRIA, TRIA's § 201(a)'s opening phrase weighs in favor of preemption. Id. at 538-39.  The Hausler court found that TRIA preempted conflicting state law because (i) "it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress", or (ii) it may be inferred because TRIA "dominates" the federal system.  Id. at 530.  The Court also stated that such preemption applies with equal force to regulations promulgated by federal agencies.  Id. TRIA preempted conflicting state property law or conflicting garnishment statutes here.  The OFAC regulations governed the procedures to challenge a designation.

The TRIA supercedes criminal forfeiture statutes and "overrides any protection from execution the blocked … property might have due to criminal forfeiture law."  U.S. v Holy Land Foundation, 2011 WL 3703333 at *5-6 (N.D. Tex. 2011)(holding that TRIA preempts criminal forfeiture statutes).

The Hausler court addressed Shipping Corp. of India Ltd. v. Jaldhi Overseas PTE Ltd., 585 F.3d 58, 71 (2d Cir. 2009), and found that Jaldhi – and maritime Rule B - do not compel the result Diaz Herrera's seeks here.  The Wells Fargo intercepted wire transfer was appropriately blocked, and once blocked, subject to execution under TRIA for these plaintiffs.  Hausler at 536, 540.

Diaz Herrera cites to Ministry of Defense v. Elahi, 556 U.S. 366, 129 S.Ct. 1732, 744

---

[2] MotDiss p. 10, n. 6.

5

(2009) to support his "property rights" argument. Elahi was attempting to execute on blocked assets of Iran under the "notwithstanding any other provision of law" clause found in both TRIA and the Victims of Trafficking and Violence Protection Act of 2000("VPA"), § 2002(d)(5)(B), as added by TRIA § 201(c)(4), 116 Stat. 2339. The court in <u>Elahi</u> held that "VPA § 2002(d)(5) requires Elahi, in exchange for having received partial compensation, to relinquish " all rights" to attach property "at issue" in an international tribunal" and that the "relinquishment of "all rights" includes the right given by TRIA § 201(a) to attach blocked assets". <u>Id</u>. at 1744. Elahi relinquished his rights to conduct a TRIA execution on blocked assets by accepting funds under the VPA. <u>Id</u>. No such relinquishment is present here.

Similarly, nothing supports Diaz Herrera's argument that the "notwithstanding" clause was "inserted" "simply" to ward off Presidential waiver. MotDiss. p. 13. The <u>Elahi</u> Court in its dicta did make reference to **one** of the reasons behind TRIA found in the legislative history – to eliminate the effects of Presidential waiver issued under [FSIA] prior to TRIA. Id. at 1744. But the House Conference Report the Court cited to in <u>Elahi</u>, sets forth that terrorist victims shall satisfy their judgments from blocked assets. <u>H.R. Conf. Rep. No. 107-779</u>, at 27, U.S.Code Cong. & Admin.News 2002, pp. 1430, 1434.

Plaintiffs have addressed the issues in <u>Smith v. Federal Reserve Bank of New York</u>, 346 F.3d 264, 270-71 (2d Cir. 2003). The <u>Smith</u> case supports plaintiffs' TRIA execution here and the timing of their motions and the court's TRIA orders and TRIA judgment. Plaintiffs have also addressed the issues in the Southern District's opinions in <u>Hausler</u> argued here and in each of Diaz Herrera's filings.

Unlike the plaintiffs' in <u>Hausler</u>, plaintiffs here do not contend that TRIA abrogates all substantive and procedural requirements for granting a writ of garnishment under Florida law.

6

Plaintiffs' merely contend, and this Court has previously ruled, that TRIA preempts Florida's garnishment statutes insofar as they may provide for notice to a an alien OFAC designated blocked party, or a right to challenge substantive liability, or evidentiary hearing or trial, to the agency or instrumentality of a terrorist party under the facts of this case which are in derogation of OFAC regulations.

### C. OFAC Determined That Diaz Herrera Was linked to the FARC

Diaz Herrera's heading for this section sets forth that OFAC did not determine that the "funds" were linked to the FARC. OFAC determined that Diaz Herrera was linked to the FARC. OFAC determined that Diaz Herrera was a member of the FARC's Financial Front, and OFAC blocked his wire transfer attempting to get his money out of the international financial system after he was designated. *His funds* were therefore blocked. Plaintiffs have addressed in the response to Diaz Herrera's Motion for Relief from Judgment their motion and the basis for their motion. The public record U.S. Government OFAC chart setting forth the FARC money laundering system and identifying Diaz Herrera as part of that FARC system is an exception to the hearsay rule. Fed. R. Evid. 803(8)("[r]ecords, reports, statements, or data compilations *in any form*" are exceptions to the hearsay rule) emphasis added).

The Estate of Parsons v. The Palestinian Authority et al., 715 F. Supp. 2d 27 (D.C.D.C. 2010) case does not support Diaz Herrera's position here. In Parsons, plaintiffs in an ATA action seeking to establish liability of the PLO for Parsons death by summary judgment, filed an internal state department memo "indicat[ing] that the State Department received a report from the Agence Frace-Presse ("AFP"), an international news wire agency, to the effect that the PRC claimed responsibility for the bombing in an anonymous phone call

7

to the AFP." Id. at 32. The memo also indicated that the wire agency doubted the caller. Id. No such circumstances exist here.

What is missing here is how plaintiffs' learned of Diaz Herrera. Plaintiffs requested information from OFAC on institutions reporting blocked assets in connection with the designation of the Revolutionary Armed Forces of Colombia ("FARC") and entities or individuals "**designated because of a nexus to the FARC**."[3] Plaintiffs further sought the name(s) of the designated entities or individuals that were reported in connection with the block. OFAC provided Confidential Information subject to the Protective Order limited to the specific information requested in the subpoena. On November 11, 2010, Plaintiffs issued a document subpoena to Wells Fargo for all accounts held in the name of, or for the benefit of, Designated Person JOSE RICAURTE DIAZ HERRERA, a Colombian national "Tier II" Kingpin Act derivative designee [SDNTK] of the FARC [an FTO, SDGT, and SFNT], including the complete account number(s) and current balance(s) for each account. Wells Fargo's response included a Report of Blocked Transaction submitted to OFAC and related verification correspondence which revealed that on June 18, 2010, Wells Fargo blocked a $2,006,878.84 wire transfer from the Firstcaribbean International Bank, Netherlands Antilles branch, to the beneficiary Jose Ricaurte Diaz Herrera. Wells Fargo verified Diaz Herrera's identity with OFAC at the time of the blocking. The entire post-judgment discovery process demonstrated that Diaz Herrera was linked to the FARC.

---

[3] Plaintiffs adopt those legal arguments related to this history form their Response in Opposition to the Motion to Disqualify. DE 497.

8

## II. TRIA PREEMPTS CONFLICTING FLORIDA GARNISHMENT STATUTES

Plaintiffs have traveled under the Florida garnishment statutes to the extent those statutes have not created an obstacle to TRIA execution or have conflicted with TRIA, the Kingpin Act, and governing OFAC regulations on what procedures govern reconsideration of an OFAC designation. The Supreme Court has recognized three types of preemption: (1) express preemption, where a federal statute contains "explicit preemptive language"; (2) field preemption, where the federal regulatory scheme is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it"; and (3) conflict preemption, where "compliance with both federal and state regulations is a physical impossibility" or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Wisconsin Public Intervenor v. Mortier, 501 U.S. 597, 604-05, 111 S. Ct. 2476, 2481-82 (1991). Congressional intent is the "ultimate touchstone" in a preemption case, Medtronic, Inc. v. Lohr, 518 U.S. 470, 485, 116 S. Ct. 2240, 2250 (1996), and this intent "governs our determination of whether federal law preempts state law." Boyles v. Shell Oil Prods. Co., 199 F.3d 1260, 1267 (11th Cir. 2000).

The TRIA allows enforcement of a judgment against blocked assets regardless of how long the assets have been blocked and regardless of whether the sanctioned terrorist agency or instrumentality is named in the judgment. Section 201(a) of the TRIA provides courts with subject matter jurisdiction over post-judgment execution and attachment proceedings against property held in the hands of an instrumentality of the judgment-debtor, even if the instrumentality is not itself named in the judgment." Id. at 50 (emphasis supplied). See Weinstein v. Islamic Republic of Iran, 609 F.3d 43, 50 (2d Cir. 2010); Ungar v. The Palestinian

9

Authority, 304 F. Supp. 2d 232, 241 (D.R.I. 2004)(HLF is an agency or instrumentality of Hamas because it acts "for or on behalf of" Hamas).

The TRIA is a substantive remedial statute intended to provide a comprehensive remedy to victims of terrorism to satisfy their judgments and not intended to allow designated entities to litigate the merits of the OFAC designation or blocking during such execution proceedings. Nowhere in any legislative history of the TRIA is there a discussion about the rights of a foreign person designated on an OFAC list as an agent of a terrorist organization. H.R. Conf. Rep. No. 107-779, at 27, U.S.Code Cong. & Admin.News 2002, pp. 1430, 1434. DOJ sets forth in its proposed amicus brief that "TRIA change[s] the law." First, TRIA broadens the property terrorism victims can use to satisfy their judgments. Second, TRIA "streamline[s] the process" for terrorism victims – "victims may execute against certain blocked assets, without getting authorization from OFAC, if the assets are judicially determined to be within TRIA's scope." DOJ's Proposed Amicus Brief pp. 9-10.

Like here, the Court in Hausler v. J.P. Morgan Chase Bank, N.A., 740 F.Supp. 2d 525 (S.D.NY. 2010) applied some sections of New York's CPLR [Civil Practice Law and Rules]. However, the Court also held that state law that conflicted with the TRIA were preempted by the TRIA. Id.

Some of the Florida statutory garnishment procedures do not conflict with the TRIA and were followed here. For example, Plaintiffs have complied with Fla. Stat. §77.03 (requiring a motion for writ of garnishment stating the amount of the judgment before issuance of the writ of garnishment) and § 77.04 (form of writ of garnishment requiring garnishee to serve answer within 20 days of service of writ). Other Florida garnishment statutes simply do not apply to the facts of this case. For example, Fla. Stat. § 77.041 [providing for notice to individual defendant

10

for claim of exemption] has no bearing here because all individual defendants are foreign national members of a designated narco-terrorist organization [FTO, SDGT and SDNTK] with no rights to assert any state law exemptions to garnishment (i.e. head of family wages, homestead exemption, or other government benefits, etc.), and because Fed. R. Civ. P. 5(a)(2) does not require service of pleadings on Defendants who have all been defaulted for failing to appear or respond.[4] Diaz Herrera does not and cannot assert any such state law exemptions. Plaintiffs have also previously complied with Fla. Stat. §§ 77.083 and 77.28 in obtaining the Judgment on Wells Fargo's Answer to Writ of Garnishment [DE 257] and stipulating to an Order awarding garnishee's attorneys fees [DE 258, 259].

Florida Statutes § 77.07(2) allows a "person having an ownership interest in the property, as disclosed by the garnishee's answer" to file a motion to dissolve the garnishment "stating that any allegation in plaintiff's motion for writ is untrue." Diaz Herrera's motion for dissolution – nine months after completed TRIA execution - does not and could not deny the determinative allegations in Plaintiffs' motion – namely, that Diaz Herrera remains an OFAC designated SDNTK member of the FARC Financial Front and that the subject funds are still blocked. Diaz Herrera seeks to use § 77.07(2) to improperly challenge the substantive aspects of his OFAC designation.

Florida Statues § 77.07 directly conflicts with the TRIA in this case of an agency or instrumentality of the FARC, because it fails to acknowledge the intent of TRIA to compensate victims of terrorism in post-judgment execution and attachment proceedings against property held in the hands of an instrumentality of the judgment-debtor, even if the instrumentality is not itself named in the judgment." <u>Weinstein v. Islamic Republic of Iran</u>, 609 F.3d 43, 50 (2d Cir.

---

[4] Diaz Herrera's motion for dissolution seeks to blur this distinction when he asks to consider his motion a "claim of exemption." MotDiss. p. 1. This request must be denied.

11

2010). The Florida statute § 77.07 does not simply afford a procedural vehicle, but implicates and tramples a substantive right under TRIA – that is designed to "streamline" the satisfaction process for victims. Nowhere does TRIA offer any rights to banks or blocked parties. See Hausler 740 F. Supp. 2d at 539 (TRIA intended to protect American citizens – victims of terrorism - and not banks or blocked parties).

Section § 77.07 directly conflicts with OFAC regulations which authorizes the procedure for "delisting." See 31 C.F.R. § 501.807. The OFAC regulation allows "administrative reconsideration," and information submission. Nowhere is there a right to contest the designation in some other forum. OFAC's § 501 Regulations also apply to OFAC's Kingpin Act Regulations under § 598. 31 C.F.R. §§ 598.101(a); 598.801. Neither TRIA or the OFAC regulations authorize a stay of garnishment for some unknown period of time.

Florida Statutes § 77.055, service of garnishee's answer and notice of right to dissolve writ, is also in conflict with the TRIA and applicable OFAC regulations and is therefore also subject to implied preemption. See Hausler, at 540 (implied preemption applies where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."), quoting, English v. General Electric Co., 110 S.Ct. 2270 (1990). Further, this statutory notice is not required for foreign person SDNTK's with no substantial connections to the United States who remain OFAC designated with blocked assets in the U.S. at the time of the TRIA garnishment. There are no due process requirements for such notice. When foreign persons or entities are OFAC designated they are on notice that they are subject to any and all sanctions, including blocking actions and subsequent execution on blocked assets under the TRIA. 31 C.F.R. §§ 598.201, 202.

Florida statute § 77.16, claims by third persons to garnished property, must be preempted

12

because it also clearly conflicts with the TRIA. Section 77.16(1) provides that:

> "If any person other than defendant claims that the debt due by a garnishee is due to that person and not to defendant, or that the property in the hands or possession of any garnishee is that person's property and shall make an affidavit to the effect, the court shall impanel a jury to determine the right of property between the claimant and plaintiff unless a jury is waived."

Diaz Herrera is a person other than a defendant and is now claiming that the formerly blocked proceeds are his property. Under the statute this would require a jury trial [or bench trial if jury was waived] to determine the right to the property between plaintiffs and Diaz Herrera. This is in direct conflict with the provisions of the TRIA which allow plaintiffs to execute on the blocked funds even though Diaz Herrera is not a named judgment debtor. See also Estate of Heiser v. Islamic Republic of Iran, 2011 WL 3489109 (D.D.C. Aug. 10, 2011)(no notice to agency or instrumentality required, no interpleader and not a necessary party). This also conflicts with the Kingpin Act and regulations. Under the TRIA, § 77.16 becomes moot because there is no need to determine the priority of the "third person" rights relative to Plaintiffs' rights as terrorist victim judgment creditors vis a vis the agency or instrumentality of a terrorist party judgment debtor.

There is no right to a jury trial under any OFAC regulation governing sanctions and no right to a jury trial to execute on a blocked asset once plaintiff has satisfied all four elements under Weinstein. Neither is Diaz Herrera entitled to a "hearing" under Fla. Stat § 77.041. Therefore, Fla. Stat. § 77.08 conflicts with the TRIA.

Florida statutes § 77.055 on notice also directly conflicts with TRIA, the Kingpin Act, and OFAC regulations insofar as it authorizes notice greater than that required by OFAC and interpreted by the courts for blocked individuals or aliens with no substantial connection to the United States. Here, the SDNTK Diaz Herrera's own testimony reveals he is an alien and has no

13

connection whatsoever to the United States. He was therefore not entitled to notice or due process even though he claims an interest in the formerly blocked wire. See 32 County Sovereignty Comm. v. Dep't of State, 292 F.3d 797, 799 (D.C.Cir. 2002). OFAC does not engage in notice to a blocked SDN except publishing and that is considered sufficient notice and due process. See Al-Aqeel v. Paulson, 568 F. Supp. 2d 64, 71 (D.D.C. 2008)(due process satisfied by designation notice and opportunity to submit evidence to OFAC). The designation *itself* is notice to Diaz Herrera of potential "legal consequences" - that the blocked assets are subject to execution. See Bennett v. Spear, 520 U.S. 154, 177-78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997).

One court has determined that agencies or instrumentalities are not entitled to notice during post-judgment enforcement proceedings. See also Estate of Heiser v. Islamic Republic of Iran, 2011 WL 3489109 (D.D.C. Aug. 10, 2011)(declining to allow interpleader to resolve the factual question of whether entity was an agency or instrumentality of Iran, because court had previously declared entity to be an agency or instrumentality of Iran, and entity was not a necessary party and not entitled to notice).

In finding that TRIA preempts state property law the court stated

> It is a "fundamental principle of the Constitution ... that Congress has the power to preempt state law." Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000). Preemption can be achieved by explicit statutory language evincing Congressional intent to preempt state law, see English v. Gen. Elec. Co., 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990), or by implied preemption, where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Crosby, 530 U.S. at 372–73, 120 S.Ct. 2288. Preemption may be inferred (1) because "[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," (2) because "the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or (3) because "the object sought to be obtained by federal law and the character of obligations imposed by it may

14

reveal the same purpose." Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). The preemption doctrine applies with equal force to Congressional statutes and federal regulations promulgated by agencies. See Geier v. Am. Honda Motor Co., Inc., 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000); Fidelity Fed. Sav. & Loan Ass'n, 458 U.S. at 153, 102 S.Ct. 3014.

Hausler, at 530.

Here, certain of the Florida statutes are obstacles to TRIA, the Kingpin Act and OFAC regulations and are preempted impliedly. Id. TRIA is intended to be dominant in the field of terrorism victim compensation and preemption can also be inferred. Id. The OFAC regulations preempt Florida statutes procedural requirements of a motion to dissolve the writ and notice. Diaz Herrera's challenges must be dealt with OFAC. Diaz Herrera, however, like Mercurio before him, is not content to take up his dispute with OFAC. He instead argues here the legitimacy of his businesses and income stream, - designation challenges - because he cannot defeat the operative requirement for plaintiffs' TRIA execution – that he is OFAC designated member of the FARC Financial Front. The case Rudd v. First Union Nat'l Bank of Florida is inapposite. 761 So. 2d 1189 (Fla. 4th DCA 2000). This case involved a head of household being allowed to file a claim for exemption after the garnishee did not answer but acquiesced to continuing garnishment of wages. Id. at 1192. The case did not involve TRIA or an OFAC blocked SDNTK. Diaz Herrera cannot satisfy the exemptions in Fla. Stat. § 77.041.

Diaz Herrera argues that the Hausler opinions in the Southern District govern this case. They do not. The Hausler case and Judge Jordan's opinions did not address blocked assets of an OFAC designated Kingpin in a TRIA execution over those blocked assets. DE 479-1. Hausler did not involve any issues of notice to any OFAC sanctioned and blocked party. The opinion did not reach the issue here, where a blocked SDNTK seeks to use the Florida statutes to

substantively challenge his OFAC designation and blocking. DE 479-1. Judge Jordan found no conflict with the Florida statute § 77.01 for a non-designated commercial entity, not an agency or instrumentality of a state sponsor of terrorism, that had been issued a license by OFAC for telecommunications traffic to Cuba seeking summary judgment on its answer to the writ where the answer indicated that the garnishee, Telecom NZ was not indebted to Cuba or its state owned telecommunications company. Here, Wells Fargo acknowledged holding blocked proceeds involving Diaz Herrera, where Diaz Herrera himself, an alien with no substantial connection to the United States is the blocked party - who admits he owned the blocked proceeds.[5]

Federal Rules of Civil Procedure 69 mandates that TRIA applies. Fed. R. Civ. P. 69.

### III. NEITHER OFAC REGULATIONS OR TRIA ARE UNCONSTITUTIONAL

The TRIA is not unconstitutional and not unconstitutional as applied. See Hausler v. J.P. Morgan Chase Bank, N.A., 740 F.Supp. 2d 525 (S.D.NY. 2010). The Hausler court held:

> But despite its treatment to date, the Notwithstanding Clause's plain language is not restricted only to issues of immunity and jurisdiction, and TRIA § 201's legislative history also evinces a broader Congressional purpose to "deal *comprehensively* with the problem of enforcement of judgments rendered on behalf of victims of terrorism in any court of competent jurisdiction." H.R. Conf. Rep. No. 107–779 at 27 (emphasis added). Courts have routinely interpreted such "notwithstanding" provisions to supersede all other laws, *see* Weinstein v. Islamic Republic of Iran, 609 F.3d 43, 54 (2d Cir.2010) (finding that TRIA § 201(a)'s Notwithstanding Clause would abrogate conflicting treaty) (citing Cisneros v. Alpine Ridge Group, 508 U.S. 10, 18, 113 S.Ct. 1898, 123 L.Ed.2d 572 (1993)), and to indicate preemption, see, e.g., City of N.Y. v. Permanent Mission of India to the United Nations, No. 08–1805–cv, 2010 WL 3221889, at *15 (2d Cir. Aug. 17, 2010). Accordingly, the Court finds that, insofar as Article 4–A conflicts with TRIA, § 201(a)'s opening phrase weighs in favor of preemption.

Id. at. 531.

---

[5] Plaintiffs adopt the legal arguments that Diaz Herrera is not entitled to due process in the Response in opposition to the Motion for Relief from Judgment and related Orders.

The OFAC regulations are not unconstitutional. See 32 County Sovereignty Comm. v. Dep't of State, 292 F.3d 797, 799 (D.C.Cir. 2002); Al-Aqeel v. Paulson, 568 F. Supp. 2d 64, 71 (D.D.C. 2008)(due process satisfied by designation notice and opportunity to submit evidence to OFAC). The designation *itself* is notice to Mercurio of potential "legal consequences" - that the blocked assets are subject to execution. See Bennett v. Spear, 520 U.S. 154, 177-78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). The National Council of Resistance of Iran v. Department of State, 251 F.3d 192, 202 (D.C. Cir. 2001), case did not declare the OFAC regulations unconstitutional. The National Council case did not involve an OFAC designated SDNTK and the TRIA execution on the blocked SDNTK account to partially satisfy U.S. National terrorism victims' ATA Judgment. The case involved the re-designation of an alias foreign terrorist organization – National Council of Resistance of Iran ("NCRI"). NCRI had established ***years of substantial business connections to the United States*** including a presence in a downtown Washington D.C. office building. Id. at 203. Diaz Herrera cannot even meet the substantial connection facts of the terrorist organization in National Council.

Diaz Herrera cites to Simanonok v. Simanonok, 787 F.2d 1517 (11th Cir. 1986). The Simanonok case involved the attempted garnishment of a retired Air Force former husband by his former wife through the Former Spouse Protection Act. The court reversed the denial of the husband's right to amend his complaint against the Air Force. Id. at 1521. It did not involve TRIA execution by terrorism victims against blocked property of an OFAC designated Specially Designated Narcotics Trafficker.

He also cites to Al Haramain Islamic Foundation, Inc. v. U.S. Dep't of Treasury, 2011 WL 4424934 (C.A. 9 (Or.))(Sep. 23, 2011) that OFAC's blocking power violates due process. The Al Haramain case did not hold there were violations of due process. Id. at *20. The Ninth

17

Circuit affirmed the dismissal of Al Haramain Islamic Foundation – Oregon's ("AHIF-Oregon") due process claims. In so doing, the appellate court noted that AHIF-Oregon was a "domestic organization" with rights different than foreign persons or entities. Id. at *10. The Al Haramain court further cited the cases that an alien with no presence in the United States has "no constitutional rights, under the Due Process Clause or otherwise." Id. at * 14. Importantly, AHIP-Oregon filed suit against Treasury directly.

Diaz Herrera cites to Kindhearts for Charitable Humanitarian Development, Inc. v. Geithner, 647 F. Supp. 2. 857 (N.D. Ohio 2009) supporting argument on violations of due process. The Kindhearts case involved the blocking of a U.S. corporation in Ohio and a search of its president's residence in the United States. Id. at 863. The court noted that the situation of a U.S. corporation in the context of a 4th Amendment search violation, was "strikingly" different than a case against a foreign person or entity with no presence in the United States. See Id. at 874. The People's Mojahedin Organization of Iran v. United States Dep't of State, 613 F.3d 220 (D.C. Cir. 2010), addresses only the opportunity to be heard on a re-designation or petition for revocation of an FTO. Id. at 231.

Here, Diaz Herrera admits he has actual notice of the OFAC designation, afforded the opportunity to submit evidence, and has had two in-person meetings with OFAC. He has been afforded due process. Al-Aqeel v. Paulson, 568 F. Supp. 2d 64, 71 (D.D.C. 2008).

## IV. PLAINTIFFS DO NOT REQUIRE A LICENSE FOR TRIA EXECUTIONS

Plaintiffs do not require an OFAC license to execute on these blocked assets. The Terrorism Risk Insurance Act "change[s] the law." The TRIA "streamline[s] the process" for terrorism victims – "victims may execute against certain blocked assets, without getting

18

authorization from OFAC, if the assets are judicially determined to be within TRIA's scope."
DOJ's Proposed Amicus Brief pp. 9-10.

OFAC does not require any license for Plaintiffs to execute on and take possession of the blocked proceeds under the TRIA. Weininger v Castro, 462 F. Supp. 2d. 457, 499 (S.D.N.Y. 2006)(U.S. DOJ has indicated that "[i]n the event the Court determines that the funds are subject to TRIA, the funds may be distributed without a license from the Office of Foreign Assets Control."[6] Plaintiffs have complied with OFAC litigation reporting requirements under 31 CFR 501.605 in the form specifically directed by OFAC for these victims of terrorism.

Throughout the course of these proceedings, OFAC has never required a license from plaintiffs as Diaz Herrera now asserts.

## **CONCLUSION**

For the foregoing reasons Jose Ricaurte Diaz Herrera's Motion for Dissolution and Related Relief from Judgment and Related Orders [DE 479] must be denied.

Respectfully submitted November 14, 2011

/s Newton Porter_____  
NEWTON P. PORTER  
(Florida Bar No. 833738)  
nporter@porterandkorvick.com  
PORTER & KORVICK, P.A.  
9655 South Dixie Highway Suite 208  
Miami, Florida 33156  
Telephone: (305) 373-5040  
Facsimile: (305) 668-9154  
Attorneys for Plaintiffs  

/s_Tony Korvick_____  
TONY KORVICK  
(Florida Bar No. 768405)  
tkorvick@porterandkorvick.com  
PORTER & KORVICK, P.A.  
9655 South Dixie Highway Suite 208  
Miami, Florida 33156  
Telephone: (305) 373-5040  
Facsimile: (305) 668-9154  
Attorneys for Plaintiffs

---

[6] Plaintiffs have already shown that the "affidavit" in *Weinstein* attaching a DOJ letter has no bearing on this case.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 14, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I further certify that I served the foregoing document and the notice of electronic filing by first class mail and electronic mail to the following persons: NONE

    _s/Newt Porter_____
NEWT PORTER (Florida Bar No. 833738)
Attorneys for Plaintiffs
PORTER & KORVICK, P.A.
9655 South Dixie Highway Suite 208
Miami, Florida 33156
Telephone:     (305) 373-5040
Fax:                (305) 668-9154
nporter@porterandkorvick.com