UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEITH STANSELL, MARC GONSALVES,
THOMAS HOWES, JUDITH G. JANIS,
CHRISTOPHER T. JANIS,
GREER C. JANIS, MICHAEL I. JANIS,
and JONATHAN N. JANIS,

              **Plaintiffs,**

-vs-                                        Case No. 8:09-cv-2308-T-26MAP

REVOLUTIONARY ARMED FORCES OF
COLOMBIA (FARC) et al.,

              **Defendants.**
_____/

### TRIA TURNOVER JUDGMENT ON HSBC ANSWER DE 923 TO WRIT OF GARNISHMENT DE 910 IN A CIVIL CASE

**IT IS ORDERED AND ADJUDGED,** that based upon the Court's review of the sworn expert witness testimony and supporting materials [DE 891 and 890]; motion and memorandum of law [DE 892]; prior pleadings [Agreed Motion DE 389 by USA]; and prior Orders [DE 900]; [DE 390 Order authorizing SDNT writs of garnishment to be served and enforced]; the 11th Circuit Court of Appeal decision in <u>Mercurio Int'l S.A. v. Stansell et al.</u> 704 F.3d 910, 915 (11th Cir. 2013)(IEEPA blocked assets subject to execution under TRIA); DE 481 (notice non-appeal by garnishees); Garnishee HSBC Bank USA, N.A. ("HSBC")'s Answer [DE 923 to Writ DE 9101 Fawzi Mustafa Kan'an (multiple aka including "Faqzi Kanaa")]; Motion to Lift Stay to Enforce SDNT Writs [DE 576] (unopposed by United States) and Order DE 635 (granting motion to lift stay on enforcement of SDNT writs), other applicable legal authority, <u>Stansell v.</u>

FARC, 771 F.3d 713, 730-32 (11th Cir. 2014)(affirming district court's agency or instrumentality standard as proper standard to carry out Congress' intent), rehearing and rehearing en banc denied, Jan. 5, 2014, mandate issued DE 889; IEEPA Executive Order 13224; Fed. R. Civ. P. 69(a); Fla. Stat. §§ 77.03, 77.04, 77.041, 77.055 and applicable time limits; and Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"); Judgment is hereby entered in favor of plaintiffs on the Answer to Writ of Garnishment [DE 923] filed by Garnishee, HSBC, as follows:

1. Section 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA") applies to this garnishment and execution, plaintiffs satisfy the elements of TRIA, and plaintiffs have fully complied with Florida's garnishment statutes. Stansell v. FARC, 771 F.3d 713, 729-30 (11th Cir. 2014).

2. This Court has subject matter jurisdiction over plaintiffs' post-judgment execution proceedings pursuant to 28 U.S.C. § 1331 because it involves a federal question of execution against a blocked account of an agency or instrumentality of a terrorist party, under Section 201 of the TRIA on a federal Anti-Terrorism Act ("ATA") judgment [18 U.S.C. § 2331 et seq.]. See Stansell v. FARC, 771 F.3d 713, 737 (11th Cir. 2014)(district court has subject matter jurisdiction over TRIA post-judgment executions).

3. Plaintiffs are judgment creditors of the narco-terrorist organization and designated Foreign Terrorist Organization Revolutionary Armed Forces of Colombia ("FARC") [DE 233]. The Judgment was obtained pursuant to the Anti-Terrorism Act ["ATA"], 18 U.S.C. § 2333, arising from the FARC's murder of Tom Janis on February 13, 2003 and the FARC's hostage taking and 1,967 days of captivity and torture of Keith Stansell, Marc Gonsalves and Thomas Howes [2/13/03 – 7/2/08]. The ATA provides for nationwide

2

jurisdiction, venue and service of process. 18 U.S.C. § 2334. The ATA also provides for extra-territorial jurisdiction. 18 U.S.C. § 2339B.

4. On October 8, 1997 the Secretary of State of the United States designated the FARC as a Foreign Terrorist Organization [FTO], pursuant to the Antiterrorism and Effective Death Penalty Act, 8 U.S.C. § 1189. The FARC was re-designated on September 5, 2001.

5. The FARC was named as a Specially Designated Global Terrorists ("SDGT") in October 2001 under President Bush's Executive Order 13224 issued pursuant to authority of the International Economic Emergency Powers Act ("IEEPA") 50 U.S.C. §§ 1701, 1702.

6. Congress specifically defined the term "terrorist party" in Section 201(d) of the TRIA to include **both** a "terrorist organization" and a "foreign state designated as a state sponsor of terrorism":

> (4) TERRORIST PARTY- The term `terrorist party' means a terrorist, a terrorist organization (as defined in section 212(a)(3)(B)(vi) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(3)(B)(vi))), or a foreign state designated as a state sponsor of terrorism under section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)) or section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371).

This definition includes the FARC in addition to individual terrorists and foreign state sponsors of terrorism.

7. Plaintiffs satisfy the elements of TRIA: (i) they have a judgment against a terrorist party the FARC; (ii) the judgment is based on acts of terrorism for which a there is no immunity; (iii) the assets of Faqzi Kanaa [the SDGT member of Hezbollah and an agency or instrumentality of the FARC, OFAC designated on June 18, 2008 under IEEPA Executive Order 13224 and continuously designated to date] being held by Garnishee HSBC were

3

blocked assets at the time Writ DE 910 was served [issued by Order DE 900, served February 27, 2015, DE 951] and are therefore õblocked assetsö within the meaning of TRIA and subject to execution; and (iv) plaintiffsø judgment is for compensatory damages.

8. Federal Rule of Civil procedure 69(a)(1) governs the procedural framework of this post-judgment TRIA execution and states that õ[t]he procedure on execution . . must accord with the procedure of the state where the court is located.ö Fed.R.Civ.P. 69(a)(1). See Stansell at 730. The õTRIA § 201 does not preempt Florida law, and judgment creditors seeking to satisfy judgments under it must follow the notice requirements of Florida law.ö Id. This Court made the two separate determinations required for this post-judgment TRIA execution: (i) the Court determined that the property was blocked under IEEPA; and, (ii) the Court determined that the designated persons or entities owning or having an interest in the blocked property are agencies or instrumentalities of the terrorist party FARC. DE 900. See Stansell v. FARC, 771 F.3d 713, 726 (11th Cir. 2014).

9. In it Order DE 900, this Court determined that OFAC had designated Faqzi Kanaa as an SDGT under IEEPA Executive Order 13224. See DE 900 ¶ 15; DE 892 Ex 1.; Id. (õ[T]he first [determination] can be definitively established by the fact that OFAC has taken action against the alleged agency or instrumentality under TWEA or the IEEPA.ö). At the time Writ DE 910 was served on Garnishee on February 27, 2015 [DE 951], and at the time of Garnisheeøs Answer DE 923, Faqzi Kanaa (and all alias names) remained an OFAC designated SDGT member of the Foreign Terrorist Organization Hezbollah *including to the present time*.

10. In its Order DE 900, this Court also made the second required determination for TRIA execution and determined that the designated persons or entities owning or having

4

an interest in the blocked property are agencies or instrumentalities of the terrorist party FARC. See DE 900 ¶¶ 11-17. See also Stansell, 771 F.3d at 730-32. Plaintiffs' filed evidence directly supporting the Court's second determination that this blocked SDGT – Faqzi Kanaa – is a member of Hezbollah and part of its terrorist support network – and is an agency or instrumentality of the FARC under this Court's agency or instrumentality standard. See Stansell v. FARC, 771 F.3d 713, 731-32 (11th Cir. 2014) (agency or instrumentality standard affirmed - no "other standard preferable or proper").

11. Order DE 900 made the specific ruling that Hezbollah, and all its members, money laundering networks, supporters and front persons, are all agencies or instrumentalities of the FARC under §201 of TRIA, including Faqzi Kanaa, the entity who owns the blocked funds subject to this motion, and that these SDGT accounts are "blocked assets" under §201 of TRIA. Therefore the SDGT blocked assets of Faqzi Kanaa identified in HSBC Answer DE 923 ¶ 1 are subject to execution under TRIA. See DE 900; Mercurio Int'l S.A. v. Stansell et al. 704 F.3d 910, 915 (11th Cir. 2013)(IEEPA blocked assets subject to TRIA execution).

12. Order DE 900 found that any SDGT person, entity, drug cartel or organization, including all of its individual members, divisions front companies and networks, that is or was ever involved in the cultivation, manufacture, processing, purchase, sale, trafficking, security, storage, shipment or transportation, distribution of FARC coca paste or cocaine, or that assisted the FARC's financial or money laundering network, is an agency or instrumentality of the FARC under the TRIA because it was either:

> (1) materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of a specially designated narcotics trafficker [FARC]; and/or

5

(2) owned, controlled, or directed by, or acting for or on behalf of, a specially designated narcotics trafficker [FARC]; and/or

(3) playing a significant role in international narcotics trafficking [related to coca paste or cocaine manufactured or supplied by the FARC].

This includes SDGT terrorist organizations, persons or entities which have ever supplied currency, weapons, ammunition, logistics, transportation, or supplies and/or financial or money laundering services to the FARC or its trafficking partners, directly or indirectly, as consideration for FARC coca paste or cocaine. Similarly, any SDGT person or entity involved with the financial or money laundering network of a drug cartel or organization described above also qualifies as an agency or instrumentality of the FARC under the TRIA.

13. The Court found in Order DE 900 that all SDGTs who assist and provide financial or technological support for or to, or who provide goods or services in support of, or who act on behalf of the international narcotics trafficking activities of a specially designated narcotics trafficker like the FARC here – a designated FTO - are each an "agency or instrumentality of a terrorist party." See Ungar v. The Palestinian Authority 304 F. Supp. 2d 232, 241 (D.R.I. 2004)(HLF is an agency or instrumentality of Hamas because it acts "for or on behalf of" Hamas).

14. In Order DE 900, this Court determined that the Foreign Terrorist Organization Hezbollah, a/k/a Hizbullah, including its individual members, divisions, front companies and networks, predecessor, subordinates, derivatives, and/or successor organizations are all agencies or instrumentalities of the FARC, because they are or were involved in the purchase, sale, trafficking, security, storage, shipment or transportation,

6

distribution of FARC coca paste or cocaine, or assisted the FARC's financial or money laundering network and materially assisted or played a significant role in the FARC's cocaine manufacturing and international cocaine trafficking.

15. This Court further found that Faqzi Kanaa is an OFAC designated member, affiliate, front person, supporter or entity within the Hezbollah FTO, and further founds that Faqzi Kanaa is an agency or instrumentality of the FARC, because he was involved in the purchase, sale, trafficking, security, storage, shipment or transportation, distribution of FARC coca paste or cocaine, or assisted the FARC's financial or money laundering network and materially assisted or played a significant role in the FARC's cocaine manufacturing and international cocaine trafficking.  DE 900.

16. The owner of the blocked assets, Faqzi Kanaa is an OFAC designated SDGT under IEEPA Executive Order 13224 and an agency or instrumentality of the FARC at the time Writ DE 910 was ordered, issued and served.  Therefore his blocked property held at HSBC is a "blocked asset" as defined in Section 201(d) of the TRIA and is subject to execution and garnishment under Section 201(a) of the TRIA to partially satisfy plaintiffs' ATA judgment.  See Ungar v. The Palestinian Authority 304 F. Supp. 2d 232, 241 (D.R.I. 2004)(HLF is an agency or instrumentality of Hamas because it acts "for or on behalf of" Hamas).  See Stansell v. FARC,  771 F.3d 713, 731-32(11th Cir. 2014).

17. The February 17, 2015 Order DE 900 granted plaintiffs' motion for issuance of the writ of garnishment to HSBC for the blocked asset information for SDGT Faqzi Kanaa DE 900.  The clerk issued Writ DE 910 to Garnishee HSBC for the blocked property of SDGT Faqzi Kanaa on February 20, 2015.  DE 910.  Plaintiffs promptly served the writ of

7

garnishment on Garnishee HSBC on February 27, 2015. DE 951. At the time of service of the Writ DE 910, Faqzi Kanaa remained an OFAC designated SDGT and its funds blocked. Service of the Writ DE 910 created a judgment lien and any subsequent removal from OFAC's SDN list is not retroactive. See Stansell v. FARC 771 F.3d 713, 732-33 (11th Cir. 2014).

18. This post-judgment TRIA execution must follow the notice requirements of the Florida garnishment statutes. The "TRIA § 201 does not preempt Florida law, and judgment creditors seeking to satisfy judgments under it must follow the notice requirements of Florida law." Fed.R.Civ.P. 69(a)(1). See Stansell at 730.

19. This Court finds that the plaintiffs have complied with Florida garnishments statutes in this TRIA execution. Plaintiffs have complied with Fla. Stat § 77.03 in filing a motion to issue writs of garnishment. Plaintiffs have also complied with § 77.04 form of the writ, and in the case of SDGT individual agencies or instrumentalities, have complied with Fla. Stat. § 77.041 notice to an individual for claim of exemption attached to the writ. See DE 900 ¶ 23. Plaintiffs have complied with Fla. Stat. § 77.041(2) by mailing, U.S. Postal Service first class international mail, a copy of the motion to issue the writ and the issued writ and notice to individuals blocked parties within five (5) business days of the writs being issued. The § 77.041(2) service was mailed to each SDGT owner at their multiple last known addresses published by OFAC. See Certificate of Service/Compliance DE 916 (all Writs DE 902-915, issued Feb. 20 and served Feb. 26, 2015).

20. HSBC Bank USA, N.A. timely filed its Answer to Writ DE 910 on March 19, 2015. DE 923. It its Answer, HSBC sets forth that HSBC is indebted to Fawzi Mustafa Kan'an

8

(multiple aka including "Faqzi Kanaa"), and holding Faqzi Kanaa's blocked Specially Designated Global Terrorist ("SDGT") funds in the amount of $95,460.40, blocked as originator on June 23, 2008 HSBC Acct. xxx 9359. DE 923 ¶ 1. Plaintiffs move for entry of judgment on the answer for this blocked account where Faqzi Kanaa owned and was transferring the funds when HSBC blocked the transfers. Plaintiffs are satisfied with Answer DE 923 and will not file a reply. Fla. Stat. § 77.061.

21. HSBC's Answer DE 923 identified no other persons or entities indebted to Grand Stores and did not identify any other person or entity who had an ownership interest in the deposit, account, or property controlled by the garnishee (DE 923 ¶ 1). HSBC Answer DE 923 shows HSBC indebted only to Faqzi Kanaa and no other person or entity. That Answer DE 923 states that the funds were "being transferred by Faouzi &/or Ffatima Kanaa" at the time of blocking is immaterial. The blocked SDGT Faqzi Kanaa is "seized of and owns the entire account" even were this a joint account, "therefore the whole account is subject to TRIA execution." See TRIA Turnover Judgment DE 756, ¶¶13-14 and cases cited therein.

22. The Court finds that the SDGT Faqzi Kanaa was the owner of the blocked property set forth in HSBC Answer DE 923 ¶ 1 and that no other person or entity owns the blocked funds. Article 4A of the UCC is a "proper federal rule of decision for applying the ownership requirements of § 201" of TRIA to EFTs. Heiser v. Islamic Republic of Iran, 735 F.3d 934, 941 (D.C. Cir. 2013). Under the UCC, a blocked electronic funds transfer ("EFT") is subject to execution under TRIA when the blocked party is the sender [originator] of an EFT that is blocked midstream by an intermediary bank before reaching the recipient's bank (EFT is cancelled by operation of law and ownership reverts back to sender/originator);

9

This Court has previously applied the UCC to an EFT and determined that an EFT, if not completed with five business transfer days, reverted back to the originator of the EFT. On May 13, 2013, this Court ruled that:

> U.C.C. Article 4A's rules indicate that if, for any reason, an intermediary bank is unable to execute an EFT payment order within five funds transfer business days, the EFT payment order is, by operation of law, deemed to be canceled.[5]
>
> \* \*\* \*
>
> Rather, the originating bank regains the right to the funds, <u>and the originator has a right to the funds pursuant to a right of subrogation spelled out in U.C.C. § 4A-402(d)</u>.[6]  Section 4A-402(e) then provides that when "an intermediary bank is obliged to refund payment [to the originator]… but is unable to do so because it is not permitted by applicable law," <u>the originator of the transfer is still deemed as retaining his rights of subrogation vis à vis the funds in question</u>.[7]

DE 808 pp. 7-8 (emphasis added)(footnotes omitted).

The Second Circuit's decision in <u>Heiser</u>, published post Order DE 808, confirms this Court's reasoning and ruling:

> If the intermediary bank is prohibited from completing a transfer, then the originator is subrogated to its bank's right to a refund. U.C.C. § 4A–402(d)–(e). As the district court explained, this **<u>provision means that claims on an interrupted funds transfer ultimately belong to the originator</u>**, not the beneficiary or its bank.

<u>See</u> <u>Heiser</u>, 735 F.3d at 941 (D.C. Cir. Nov. 19, 2013)(emphasis added), <u>citing</u>, <u>Heiser III</u>, 885 F. Supp. 2d at 448.  This transfer was blocked and not completed more than three years ago.  As such, the transfer is cancelled by operation of UCC law and the funds revert to ownership of the originator, here a blocked party Faqzi Kanaa.  As a matter of law, under U.C.C. § 4A, the blocked party SDGT Faqzi Kanaa owns the property interest in the blocked funds sufficient to enable plaintiffs to execute on these blocked funds under TRIA.  <u>See also</u> <u>Heiser v Islamic Republic of Iran</u>, 735 F.3d. 934, 940-41 (D.C. Cir. 2013); Calderón–Cardona

10

v. JPMorgan Chase Bank, N.A., 770 F.3d 993 (2d Cir.2014). Plaintiffs are subrogated to the rights of each blocked party – SDGT - agency or instrumentality at the time each writ was served on garnishee. In re Masvidal, 10 F.3d 761 (11th Cir. 1993).

23. Plaintiffs have further complied with the notice requirements of the Florida garnishment statutes, Fla. Stat. § 77.055 by serving a copy of the Garnishee HSBC's Answer DE 922, and the statutory Notice:

**NOTICE**
(Fla. Stat § 77.055)

You are being served a copy of the garnishee's answer and this notice of right to dissolve writ pursuant to Florida law in the Anti-Terrorism Act case above pending in a United States Federal Court. You must move to dissolve the writ of garnishment within twenty (20) days after the date set forth below in the Certificate of Service if any allegation in the plaintiff's motion for writ of garnishment is untrue.

The Notice contains a dated and executed certificate of service by United States Postal Service first class international mail. The Answer DE 923 and Notice were served on March 20, 2015 on the OFAC designated SDGT Faqzi Kanaa (identified in DE 923 ¶ 1), who owns the blocked assets being garnished, at the last known addresses identified by the OFAC SDN Listings and Press Releases attached as Exhibits 1-4 and 19-23 to DE 892. Garnishee's Answer DE 923 identified no other addresses and no other persons or entities indebted to Faqzi Kanaa or who had an ownership interest in the deposit, account, or property controlled by the garnishee (DE 923 ¶ 1). Plaintiffs also provided Answer and § 77.055 Notice to Ffatima Kanaa, at the last known addresses identified by the OFAC SDN Listings and Press Releases for Faqzi Kanaa attached as Exhibits 1-4 and 19-23 to DE 892. See DE 927-1.

11

24. More than twenty (20) days has expired since the March 20, 2015 service of the Answer, Notice of right to dissolve the writ and certificate of service (Fla. Stat § 77.055 compliance). See DE 927. No person or entity has appeared in this action to move to dissolve the Writ DE 910. No person or entity has appeared in response to the February 26, 2015, Fla. Stat. § 77.041(2) notice of the writ and motion. DE 916.1 No person or entity has ever appeared in this action to assert any claim of ownership of or beneficial interest in these blocked assets, or to otherwise challenge the Order DE 900, allegations in Motion DE 892 as untrue, Writ DE 910, or Garnishee's Answer DE 923.

25. Faqzi Kanaa received multiple forms of notice and had an opportunity to be heard to challenge the Court's findings in Order DE 900 that it is an agency or instrumentality of the FARC. The Court hereby renews its findings and determinations in Order DE 900 that Hezbollah and Faqzi Kanaa are each an agency or instrumentality of the FARC subject to TRIA § 201. The blocked party owner of the blocked property, SDGT Faqzi Kanaa did not appear and has waived his rights to challenge this TRIA execution by terrorism victim judgment holders against its blocked assets being held at HSBC. See Stansell v. FARC, 771 F.3d 713, 727 (11th Cir. 2014)("Further, because Claimants were entitled to the basic constitutional protection of due process, they were entitled to be heard on their challenge to the agency or instrumentality issue.").

26. The Court finds that no other person or entity has rights in the HSBC held blocked proceeds of Faqzi Kanaa that are superior to the perfected lien and rights of plaintiffs, who are terrorism victim judgment creditors, under Section 201(a) of the Terrorism Risk

12

Insurance Act.

27. None of the FARC defendants have appeared and defaults were properly entered against them all prior to entry of the Default Judgment. Accordingly, no further notice or service of pleadings, motions or writs is required to be served on the FARC or the individual FARC members identified in the ATA Judgment DE 233. These defendants are not indispensable parties here. Fed. R. Civ. P. 5(a)(2).

28. Plaintiffs have complied with all requirements of the Florida garnishment statutes for notice and timing of notice such that any person or entity who has any ownership interest in the blocked deposit, account or property controlled by Garnishee HSBC has had an "opportunity to be heard in order to rebut the allegations and preserve their possessory interest in blocked assets." See Stansell v. FARC, 771 F.3d 713, 726 (11th Cir. 2014). None appeared.

29. No license has been issued to release the blocked funds identified and held by HSBC. DE 922. No other creditor, claimant or third party has ever obtained a license from OFAC related to these blocked proceeds. DE 922.

30. Department of Justice received notice of these proceedings by ECF. Plaintiffs have complied with the OFAC litigation reporting requirements separately by serving OFAC's counsel pursuant to 31 CFR 501.605.

31. Plaintiffs' Judgment provides that "[i]nasmuch as the FARC used profits from the manufacture and distribution of cocaine, money laundering, and extortion to support their terrorist acts, Plaintiffs are deemed crime victim judgment creditors with perfected liens on proceeds derived from these related offense criminal activities." DE 233, ¶ 9.

13

32. The blocked accounts held by Garnishee are not immune from attachment under the TRIA as sovereign, diplomatic or consular property. The blocked accounts held by Garnishee are not and never were "property subject to the Vienna Convention on Diplomatic Relations" that "is being used exclusively for diplomatic or consular purposes" and are therefore not excluded from the definition of blocked assets under the TRIA. Neither Hezbollah, Faqzi Kanaa, the FARC or any individual FARC judgment debtor has ever been recognized as a sovereign state by any nation, nor have they ever held any form of diplomatic or consular status.

33. OFAC does not require any license for plaintiffs to execute on and take possession of the blocked proceeds here which are subject to the TRIA. Weininger v Castro, 462 F. Supp. 2d. 457, 499 (S.D.N.Y. 2006)(U.S. DOJ has indicated that "[i]n the event the Court determines that the funds are subject to TRIA, the funds may be distributed without a license from the OFAC). See DE 250-4.

34. Because of the fleeting nature of blocked assets, Plaintiffs seek to execute on these SDNT blocked assets without delay. See Smith v. Federal Reserve Bank, 346 F.3d 264, 271 n.6 (2d Cir. 2003)("In addition to the possibility that blocked assets may become unblocked or confiscated, they may also be depleted by the claims of other victims.").

35. Plaintiffs are terrorism victim judgment holders with priority to these blocked assets. See Hausler v. JPMorgan Chase Bank, N.A., 845 F. Supp. 2d 553, 569 (S.D.N.Y. 2012)(TRIA mandates that "terrorist victims' holding judgments, as a group, must be first in line" to blocked assets).

36. The TRIA allows terrorism victim judgment holders to execute on blocked

14

assets of designated persons, entities or organizations not named in the ATA Judgment. Weinstein v. Islamic Republic of Iran, 609 F.3d 43, 50 (2d Cir. 2010)("Accordingly, we find it clear beyond cavil that Section 201(a) of the TRIA provides courts with subject matter jurisdiction over post-judgment execution and attachment proceedings against property held in the hands of an instrumentality of the judgment-debtor, **even if the instrumentality is not itself named in the judgment**.")(emphasis added). See Weinstein v. Islamic Republic of Iran, 609 F.3d 43, 50 (2d Cir. 2010); Ungar v. The Palestinian Authority, 304 F. Supp. 2d 232, 241 (D.R.I. 2004)(HLF is an agency or instrumentality of Hamas because it acts "for or on behalf of" Hamas). See also Stansell 771 F.3d 713 at 732 (North Valley Cartel "individuals and front companies" were agencies or instrumentalities of FARC and blocked assets subject to TRIA execution). Therefore, the TRIA provides for execution against the HSBC blocked accounts identified in DE 922 ¶¶ 1A; 1B; 1C; 1D even though the blocked SDGT Grand Stores, Ltd. or its aliases are not named defendants in plaintiffs' Judgment.

37. The Court hereby orders and directs the turnover of the SDGT blocked proceeds of Faqzi Kanaa identified in Garnishee HSBC's Answer [DE 923 ¶ 1] and that the funds must be turned over by Garnishee HSBC to plaintiffs pursuant to TRIA, and that no OFAC license is required to turn over the garnished funds to plaintiffs.

38. Garnishee is hereby ordered pursuant to TRIA to turnover to plaintiffs' counsel, Porter & Korvick, P.A., the SDGT blocked proceeds owned by Faqzi Kanaa identified in its Answer DE 923 ¶ 1, in the amount of $95,460.40, blocked as originator on June 23, 2008 HSBC Acct. xxx 9359 (plus interest), by cashiers' checks payable to Porter & Korvick, P.A. Trust Account, within fourteen (14) days of receipt from plaintiffs' counsel of a

W-9 form.

39. Counsel for the plaintiffs and garnishee are directed to confer in a good faith effort to resolve the issue of attorneys fees without the need for this Court's intervention.

40. Porter & Korvick, P.A. are ordered to hold in trust the amount of garnishee's claimed attorneys fees and expenses pending either a stipulated agreement for payment of reasonable fees and expenses of garnishee, or a ruling of this court awarding fees and expenses to garnishee, and Porter & Korvick, P.A. are authorized to pay same from the trust proceeds upon a stipulation or Court Order awarding such fees and expenses.

41. Porter & Korvick, P.A. are authorized to immediately disburse the remaining proceeds over and above the total amount claimed by garnishee for fees and expenses.

42. Upon completing the turnover and delivery of the cashiers' checks to Porter & Korvick, P.A. Trust Account, in satisfaction of this Court's Order, Writ, and Judgment under the TRIA, plaintiffs, Garnishee HSBC Bank USA, N.A., and their respective counsel shall be released and absolved from any and all liability, including to plaintiffs, Faqzi Kanaa (and all aliases) or any other persons or entities, and Garnishee HSBC Bank USA, N.A. shall be discharged from the Writ of Garnishment, and otherwise discharged from any and all liability, with respect to the funds being turned over under this Judgment.  This Order and Judgment shall be entered as and constitute a final judgment under F.R.C.P. 54(b) based on this Court's determination that this Order and Judgment disposes entirely of a separate claim in this action and that there is no just reason for delay in entering judgment on this claim.

DONE and ORDERED in chambers at Hillsborough County, Florida this __ day of _____, 2015.

                                                                                     _____
                                                                                     Honorable Richard A. Lazzara
                                                                                      United States District Court Judge

Copies furnished to:
Counsel of Record

## CIVIL APPEALS JURISDICTION CHECKLIST

1. **Appealable Orders**: Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a) **Appeals from final orders pursuant to 28 U.S.C. Section 1291**: Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C. Section 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. V. Mestre, 701 F.2d 1365, 1368 (11th Cir. 1983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. Section 636(c).

    (b) **In cases involving multiple parties or multiple claims**, a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b), Williams v. Bishop, 732 F.2d 885, 885-86 (11th Cir. 1984). A judgment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S. 196, 201, 108 S. Ct. 1717, 1721-22, 100 L.Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

    (c) **Appeals pursuant to 28 U.S.C. Section 1292(a)**: Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions..." and from "[i]nterlocutory decrees...determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

    (d) **Appeals pursuant to 28 U.S.C. Section 1292(b) and Fed.R.App.P.5:** The certification specified in 28 U.S.C. Section 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

    (e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen V. Beneficial Indus. Loan Corp., 337 U.S. 541,546,69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F. 2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S. Ct. 308, 312, 13 L.Ed.2d 199 (1964).

2. **Time for Filing:** The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P.4(a) and (c) set the following time limits:

    (a) **Fed.R.App.P. 4(a)(1)**: A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD - no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

    (b) **Fed.R.App.P. 4(a)(3)**: "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

    (c) **Fed.R.App.P.4(a)(4)**: If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

    (d) **Fed.R.App.P.4(a)(5) and 4(a)(6)**: Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

    (e) **Fed.R.App.P.4(c)**: If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. Section 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3. **Format of the notice of appeal**: Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant

4. **Effect of a notice of appeal**: A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).

Rev.: 4/04