UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEITH STANSELL, MARC GONSALVES,
THOMAS HOWES, JUDITH G. JANIS,
CHRISTOPHER T. JANIS, GREER C. JANIS,
MICHAEL I. JANIS, AND JONATHAN N. JANIS,

       Plaintiffs,

v.                                    Case No.: 8:09-CV-02308-RAL-MAP

REVOLUTIONARY ARMED FORCES OF
COLOMBIA (FARC), et al.,

       Defendants.

_____/

**CLAIMANTS KASSIM TAJIDEEN, GRUPO AROSFRAN EMPREENDIMENTOS E PARTICIPACOES SARL, AND OVLAS TRADING, S.A.'S MOTION TO DISSOLVE WRITS OF GARNISHMENT AND MEMORANDUM OF LAW**

       Claimants Kassim Tajideen, Grupo Arosfran Empreendimentos E Participacoes SARL, and Ovlas Trading, S.A. (collectively, "Claimants") deny the allegations made in the motion against them on the grounds stated below and respectfully move this Court, pursuant to Fed. R. Civ. P. 69 and Fla. Stat. § 77.07, for an order dissolving the writs of garnishment (DE 907, DE 914, DE 915, DE 930, and DE 934). Claimants respectfully submit that even if the allegations made in the motion against them were true—and they are not—Claimants would be an entitled as a matter of law to an order dissolving the writs of garnishment, based on the absence of any relationship between Claimants and the judgment debtor. In the event the Court is not persuaded that Claimants are entitled to relief on the face of the allegations, Claimants respectfully request that this Court conduct a trial of the disputed issues, as required under Fla. Stat. § 77.07.

## MEMORANDUM OF LAW

Claimants respectfully submit that they are each entitled to the relief they seek on the ground that none of them is an "agency or instrumentality" of the judgment debtor, the Revolutionary Armed Forces of Colombia—People's Army (the "FARC"), a Colombian narco-trafficking, terrorist organization in South America.  Plaintiffs seek to apply the "agency or instrumentality" label to the Claimants because Plaintiffs are holding a massive civil judgment against the FARC for the FARC's acts of terrorism in Colombia, but Claimants are not part of the FARC.  Indeed, Claimants have *never had any relationship of any kind* with the FARC; they have never communicated with the FARC, never acted on the FARC's behalf, never met with the FARC, and never had any other connection to the FARC.  Tellingly, Plaintiffs *do not even allege* that Claimants have any direct relationship with the FARC.  Nor do Plaintiffs allege a single fact that, if proven, would establish any direct relationship between Claimants and the FARC.

Instead, Plaintiffs contend that the FARC allegedly has done business with a Lebanese terrorist organization known as Hizballah and that Claimants allegedly are "supporters" of Hizballah.  This is not true, but even if it were, it would not establish that each Claimant is an "agency or instrumentality" of the FARC, such that Plaintiffs can enforce their FARC judgment against Claimants.  Plaintiffs assert that they can enforce against the Claimants the money judgment against the FARC even in the absence of a direct relationship between Claimants and the FARC, but there is no legal precedent for Plaintiffs' novel theory of "agency or instrumentality" under the Terrorism Risk Insurance Act ("TRIA"), Pub. L. No. 107-297.  To the contrary, both this Court and the Eleventh Circuit have already held *in this case* that Plaintiffs are bound by the "plain meaning" of the terms "agency or instrumentality."  *Stansell v. FARC*, 771 F.3d 713, 732 (11th. Cir. 2014).  Accordingly, Plaintiffs' novel theory must fail.

## I.     Introduction

On February 17, 2015, the Court issued an Order, DE 900, for writs of garnishment post-judgment with respect to the blocked assets of several persons, including Claimants Kassim Tajideen, Grupo Arosfran Empreendimentos E Participacoes SARL ("Grupo Arosfran"), and Ovlas Trading, S.A. ("Ovlas Trading"), pursuant to Fed. R. Civ. P. 69(a); § 201(a) of TRIA, Pub. L. No. 107-297; Fla. Stat. § 77; and other authorities.  Claimants are an individual Lebanese national residing in Lebanon and two private companies wholly owned by that individual. Plaintiffs seek post-judgment execution against Claimants' assets in satisfaction of a judgment obtained by Plaintiffs *not against Claimants*, but rather against the FARC, a narco-trafficking, terrorist organization in Colombia.

Plaintiffs' judgment is against the FARC, so § 201(a) of TRIA permits Plaintiffs to garnish only those assets that belong to the FARC, including an "agency or instrumentality" of the FARC.  The assets subject to seizure are those belonging to the FARC that have been "blocked" by the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") based on OFAC's designation of the asset holder as a Specially Designated Global Terrorist ("SDGT").  *See Stansell*, 771 F.3d at 726.

Federal Rule of Civil Procedure 69(a)(1) directs that state procedure governs garnishment and execution proceedings.  *See also Stansell, 771 F.3d at* 730, 733.  Under Fla. Stat. § 77.07(2) Claimants are permitted to file a "motion to dissolve the garnishment," in which Claimants may "stat[e] that any allegation in plaintiff's motion for writ is untrue."  *Id.*  On Claimants' motion "this issue shall be tried, and if the allegation in plaintiff's motion which is denied is not proved to be true, the garnishment shall be dissolved."  *Id*; *see also Stansell,* 771 F.3d at 725 (describing Claimants' entitlement to protections provided in Fla. Stat. §§ 77.055 and 77.07(2)).  Pursuant to

that provision, Claimants file this Motion seeking the dissolution of the writs of garnishment against Claimants' assets because Claimants are not "agenc[ies] or instrumentalit[ies]" of the FARC, as is required for garnishment and execution under § 201(a) of the TRIA.

In order to execute against Claimants' assets, Plaintiffs have the burden to demonstrate that: (1) Claimants' assets have been blocked by OFAC; and (2) Claimants are "agenc[ies] or instrumentalit[ies]" of the FARC. *Stansell,* 771 F.3d at 723-25. Plaintiffs have not satisfied— and, indeed, cannot satisfy—that burden. Plaintiffs have failed even to allege any facts demonstrating any relationship between each Claimant and the FARC, much less offered any concrete evidence to prove that Claimants are agencies or instrumentalities of the FARC.

As an initial matter, TRIA § 201(a) enables judgment creditors to execute a judgment issued against a *particular* terrorist organization against assets owned by *that particular* terrorist organization, including its "agencies or instrumentalities." Here, Plaintiffs' judgment is against the FARC, not against Hizballah or Claimants. Although Claimants' assets have been blocked by OFAC, that decision was made on the basis of Claimants' alleged support for Hizballah, a Shi'a Islamist group based in Lebanon controlled and funded *by Iran*, not by the FARC. Indeed, Plaintiffs have expressly alleged that Hizballah is "Iran's terrorist and money laundering arm," and that Hizballah is represented by "Iranian government officials." DE 892, para. 16. In contrast, neither OFAC nor any other U.S. Government authority has ever stated publicly that Hizballah is an agency or instrumentality of the FARC, much less that Claimants have any relationship with the FARC. In fact, Claimants have no relationship with the FARC; and Plaintiffs have made no allegations that, even if true, would demonstrate such a relationship.

In the absence of any such facts or evidence linking Claimants and the FARC, Plaintiffs have attempted to establish a connection by cobbling together a string of largely unsubstantiated

4

links, trying first to tie the Claimants to Hizballah and then trying to tie Hizballah to the FARC. Plaintiffs do not even allege any direct connection between Claimants and the FARC. Instead, Plaintiffs first allege that Claimants have some vague relationship with Hizballah, based on OFAC's press releases alleging that Plaintiffs are "supporters" of that organization.

Plaintiffs next argue that Hizballah is itself an "agency or instrumentality" of FARC, based entirely on the conclusory assertions of Plaintiffs' expert, an investigative journalist who offers virtually no admissible evidence in support of his opinion. Finally, Plaintiffs contend that Claimants necessarily have some relationship with the FARC, based on nothing more than the alleged connection between Claimants and Hizballah, on the one hand, and between Hizballah and the FARC, on the other hand. Plaintiffs contend, in other words, that A "supports" B and B does business with C, so A necessarily is an "agency or instrumentality" of C. Plaintiffs, however, offer no legal or factual support for their theory.

Plaintiffs fail to allege any facts demonstrating that each Claimant is an agency or instrumentality of Hizballah. Furthermore, Plaintiffs fail to allege any facts demonstrating that Hizballah is an agency or instrumentality of the FARC. Plaintiffs rely exclusively on their expert to establish these links, but Plaintiffs' expert does not even purport to know anything about Claimants, and he fails entirely to offer any admissible evidence to support his opinions on the relationships between Claimants and Hizballah, on the one hand, and Hizballah and the FARC, on the other hand.

In reality, Claimants are not supporters of Hizballah and Hizballah is not an agency or instrumentality of the FARC. Although the U.S. Government has been gathering and analyzing intelligence regarding Hizballah for decades, we are not aware of any U.S. government agency or authority ever concluding that Hizballah is an "agency or instrumentality" of the FARC, a

narco-trafficking organization in Colombia.  To the contrary, U.S. courts, U.S. government officials, and countless other governmental authorities have concluded—just as Plaintiffs and Plaintiffs' own "expert" seem to concede—that Hizballah is an "agency or instrumentality" of *Iran*, not the FARC.  DE 892, para. 16 (noting, in Plaintiffs' own words, that "Iran government officials" represent Hizballah, which is "Iran's terrorist and money laundering arm"); *see also* DE 891, para. 28 (noting, in the words of Plaintiffs' own expert, that "Iran's terrorist and money laundering arm [is] Hezbollah"); *Prevatt v. Islamic Republic of Iran*, 421 F. Supp. 2d 152, 156 (D.D.C. 2006) (quoting *Peterson v. Islamic Republic of Iran*, 264 F.Supp. 2d 46, 51 (D.D.C.2003) ("Hezbollah is largely under Iranian orders. It's almost entirely acting ... under the order of the Iranians and being financed almost entirely by the Iranians.").

Claimants respectfully submit that there is no plausible reading of TRIA's "agency or instrumentality" requirement under which Claimants could properly be deemed an "agency or instrumentality" of the FARC.  Plaintiffs have alleged no facts demonstrating that Claimants have any relationship whatsoever with the FARC, much less that Claimants are controlled, directed by, or acted on behalf of, the FARC in any way—the traditional touchstones of any "agency" or "instrumentality" analysis.  Plaintiffs have not alleged facts showing that Claimants have provided *any* support—much less *material* support—to the narcotics trafficking activities of the FARC.  They have alleged no facts that Claimants have played *any* role—much less a *significant* role—in those activities.  Under these circumstances, Plaintiffs have failed to satisfy the standard for "agenc[ies] or instrumentalit[ies]" previously articulated by this Court and the Eleventh Circuit in connection with this litigation.  For this reason, Claimants respectfully request that the writs of garnishment be dissolved as a matter of law.

6

In the alternative, to the extent that this Court determines that the conclusory facts alleged support the theory that Claimants are "agenc[ies] or instrumentalit[ies]" of the FARC, Claimants would contest the facts and respectfully request a trial on those disputed factual issues. In addition, in that circumstance, Claimants would also respectfully submit that any such a finding would be overbroad and inconsistent with the plain and ordinary meaning of the terms "agency or instrumentality." Therefore, in that case, Claimants would respectfully request that the Court clarify or amend its previously-stated standard so that it more closely tracks the traditional understanding of the terms "agency" and "instrumentality," and in particular, so that it incorporates the commonly-accepted requirement that either concept requires a showing that a subservient party was controlled, directed by, or acted on behalf of a "principal" party in some way.

## II.    Background

Claimant Kassim Tajideen is a 60-year old Lebanese and Belgian national who has built and operated businesses in Lebanon and West Africa for more than 40 years. Beginning in the 1970s in Sierra Leone, Mr. Tajideen—a member of the Lebanese diaspora community in that country—established a business primarily focused on importing and distributing European and other western foodstuffs and consumer goods. Over time, Mr. Tajideen's business expanded to include a number of companies focused on the import and broader distribution in Africa of foodstuffs and consumer goods, as well as manufacturing, retail, and other related activities. No facts are alleged to suggest that Mr. Tajideen's businesses have been, and continue to be, anything but lawful, legitimate, and substantial, commercial enterprise.

On May 27, 2009, OFAC designated Mr. Tajideen an SDGT pursuant to Executive Order 13224. DE 890, Ex. 81. OFAC described Mr. Tajideen as a "financial contributor to Hizballah,"

having allegedly contributed funding through his network of businesses in Lebanon and Africa, and through his brother, a Hizballah commander in Lebanon. *Id.* OFAC did not identify (and has never identified) any connection between Mr. Tajideen and the FARC.

On December 9, 2010, OFAC designated Mr. Tajideen's brothers, Ali and Husayn Tajideen, SDGTs pursuant to Executive Order 13224. DE 890, Ex. 80. OFAC also designated a "network" of businesses, including Claimants Ovlas Trading and Grupo Arosfran, both of which OFAC described only as entities founded, owned and operated by Mr. Tajideen. *Id.* OFAC did not identify (and has never identified) any connection between Claimants Ovlas Trading or Grupo Arosfran and the FARC.

Mr. Tajideen denies that he supports Hizballah or that he belongs to that organization. To demonstrate that fact to OFAC, Mr. Tajideen has taken comprehensive remedial action in response to OFAC's designation. Specifically, he retained leading forensic experts to conduct a full review of his business operations, and based on their findings and recommendations, Mr. Tajideen reorganized his companies and established effective internal controls and compliance measures to remove any ongoing sanctions risks – possible transactions involving terrorist financing – relating to his designation. This remediation has resulted in a significant reduction and consolidation of Mr. Tajideen's business operations in Africa, including the "wind down" of Claimants Ovlas Trading and Grupo Arosfran. It has also included an extraordinary undertaking by Mr. Tajideen to ensure that his business affairs are not entangled—and could not be perceived to be entangled—with those of his brothers, including the business of "Tajco" in Lebanon and any business in The Gambia. As a result of the reorganization of Mr. Tajideen's businesses, Claimants Ovlas Trading and Grupo Arosfran no longer have any ongoing commercial activity. These entities have not been formally dissolved only because they hold the

property or interests in property that are the subject of Plaintiffs' writs of garnishment, DE 907, DE 914, DE 915, DE 930, and DE 934, which, by operation of OFAC regulations, would become unblocked and returned to Mr. Tajideen once OFAC removes Mr. Tajideen's—and the companies'—SDGT designations as a result of his pending delisting petition.

On February 17, 2015, the Court issued an Order for issuance of fourteen writs of execution/garnishment, which were then issued to various entities, including to the Bank of New York Mellon, DE 907, DE 930, Standard Chartered Bank, DE 915, and J.P. Morgan Chase, DE 914, DE 934.  In its answers to the writs, these three banks indicated that they hold the blocked property of Claimants, DE 925, DE 942, DE 943, DE 946.  Plaintiffs then provided notice of the banks' answers to various addresses associated with Claimants in Angola and Lebanon.

On or about March 20, 2015, Mr. Tajideen became aware of Plaintiffs' efforts to garnish his assets and those of the Claimant companies by virtue of Mr. Tajideen's supposed status as an "agent or instrumentality" of the FARC.  Prior to that time, Mr. Tajideen is unaware of any allegation—public or otherwise—purporting to link him or any of his business interests to the FARC.[1]

## III.   Argument

Plaintiffs concede that to garnish Claimants' assets pursuant to § 201(a) of Terrorism Risk Insurance Act, Pub. L. No. 107-297, the burden is on Plaintiffs to establish that each Claimant is an "agency or instrumentality" of FARC.[2]  *See Stansell*, 771 F.3d at 722-23;

---

[1] Claimants Kassim Tajideen, Grupo Arosfran, and Ovlas Trading, are filing a single motion for the sake of expediency and because Grupo Arosfran and Ovlas Trading were both entities owned or controlled by Mr. Tajideen.

[2] Section 201(a) of TRIA directs that "in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that

*Plaintiffs' Motion for Issuance of TRIA IEEPA/SDGT Writs of Garnishment and Memorandum of Law*, DE 892, at paras. 33-35.

This Court has previously articulated a standard whereby a party is considered an "agency or instrumentality" under § 201(a).  As the Court explained in an earlier Order, it undertook to craft that standard consistent with "the ordinary and plain meaning of those terms." *Order Granting Writs of Garnishment*, DE 900, at para. 11.  With that objective, the Court stated that a party is considered an "agency or instrumentality" where one of the following criteria is met:

> "(1) [the party is] materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of [the FARC]; and/or
>
> (2) [is] owned, controlled, or directed by, or acting for or on behalf of, [the FARC]; and/or
>
> (3) [is] playing a significant role in international narcotics trafficking [related to … cocaine manufactured or supplied by the FARC]."

*See, e.g.*, *Order Granting Writ of Garnishment*, February 17, 2015, DE 900, at paras. 11-13; *Stansell*, 771 F.3d at 724 n. 6.

As set forth in part III.A. below, Plaintiffs here are not entitled to garnishment of Claimants' assets because Plaintiffs have failed to satisfy their burden under § 201(a) of TRIA. Plaintiffs have not properly alleged (much less demonstrated with evidence) that Claimants are agencies or instrumentalities of the FARC as required under the standard set forth by this Court.

---

terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment…"

10

In the alternative, as explained in part III.B, assuming for the sake of argument that Plaintiffs' allegations can be said to satisfy the first and/or third prongs of the Court's standard for "agency or instrumentality," Claimants respectfully submit that any such expansive standard cannot be squared with the "plain and ordinary meaning" of those terms.

A. **Plaintiffs Have Failed to Allege—Much Less Establish—that Claimants are Agencies or Instrumentalities of FARC**

As discussed in part B below, this Court has found that an appropriate standard for "agency or instrumentality" should be based on the "the ordinary and plain meaning" of those terms. *Order Granting Writs of Garnishment*, DE 900, at para. 11-13; *see Stansell*, F.3d at 732. Despite the Court's stated touchstone, however, the standard it has articulated in its prior orders appears to be more expansive than the plain and ordinary meaning of those terms would dictate. But even applying that standard, and even assuming for the sake of argument that all of the facts alleged by the Plaintiffs are true, there is simply no basis to conclude that Claimants are agencies or instrumentalities of the FARC.

Plaintiffs purport to establish that Claimants are "agenc[ies] or instrumentalit[ies]" of the FARC by cobbling together a multi-step chain of alleged, vaguely-defined relationships between Claimants, Hizballah, and the FARC. Specifically, Plaintiffs allege that: (a) Claimants have some vaguely-defined connection to Hizballah; (b) *Hizballah* is somehow an agency or instrumentality of *the FARC,* because Hizballah has some undefined involvement in narcotics activities related in some way to the FARC; and (c) therefore, Claimants—and presumably any other party with any purported connection to Hizballah—are also "agenc[ies] or instrumentalit[ies]" of the FARC for purposes of the TRIA. *See Plaintiffs' Motion for Issuance of TRIA IEEPA/SDGT Writs of Garnishment and Memorandum of Law*, DE 892, paras. 22-51.

11

Plaintiffs' novel theory fails because it lacks legal and factual support. *First*, Plaintiffs do not—and cannot—allege any meaningful connection between Claimants and the FARC. *Second*, Plaintiffs do not—and cannot—allege that Claimants provided material support to the narcotics trafficking activities of the FARC. *Third*, Plaintiffs do not—and cannot—allege that Claimants were owned, controlled, directed by, or acted on behalf of, the FARC. *Fourth*, Plaintiffs do not—and cannot—allege that Claimants played a significant role in international narcotics trafficking related to cocaine supplied by the FARC. Under these circumstances, there is simply no basis to conclude that Claimants are "agenc[ies] or instrumentalit[ies]" of the FARC.

### 1.   Plaintiffs have failed to allege any direct connection between Claimants and the FARC

Plaintiffs have failed to allege any meaningful connection between Claimants and the FARC. Plaintiffs' allegations purporting to make such a connection are limited to a single affidavit, provided by Mr. Douglas Farah. In that affidavit, the only reference Mr. Farah makes to Mr. Tajideen, Ovlas Trading, Groupo Arosfran or any other company operated by Mr. Tajideen is to identify them as among the entities designated as SDGTs by OFAC. *See* Farah Affidavit, DE 891, at para. 84. Mr. Farah's affidavit is otherwise silent regarding the Claimants.

As noted above, however, OFAC's designation of Claimants as SDGTs was based on Claimants alleged connection to *Hizballah*, not the FARC. OFAC's designation of Claimants had nothing to do with the FARC. There is no allegation that Claimants themselves have any relationship whatsoever with the FARC. Mr. Farah offers only the sweeping and conclusory opinion that "[Hizballah], its members, affiliates, supporters, fundraisers, front companies, and financial networks are each an agency or instrumentality of the FARC and its members." *Id.* at para. 83. But nothing in Mr. Farah's affidavit, Plaintiffs' memorandum in support of its motion to issue the writ of garnishment, or in any of the additional supporting materials presented by

Plaintiffs even attempts to present a factual basis purporting to connect **Claimants** to the FARC. *See* DE 891; DE 892; DE 890.  For this reason alone, Plaintiffs have failed to allege a claim that would satisfy their burden under § 201(a) of the TRIA, and Claimants are thus entitled as a matter of law to the relief they seek in this Motion.

As noted above, in the place of allegations purporting to demonstrate that Claimants are agents or instrumentalities of the FARC, Plaintiffs purport to establish some undefined relationship between Claimants and the FARC by virtue of: (a) Claimants' alleged connection to Hizballah, and (b) Plaintiffs' allegation that Hizballah is somehow an agency or instrumentality of ***the FARC***.  *See Plaintiffs' Motion for Issuance of TRIA IEEPA/SDGT Writs of Garnishment and Memorandum of Law*, DE 892, paras. 22-51.  But even setting aside whether Plaintiffs have sufficiently alleged that Claimants could be viewed as "agenc[ies] or instrumentalit[ies]" of Hizballah for purposes of the TRIA,[3] Plaintiffs' allegation that Hizballah is an agent or instrumentality of the FARC is directly contradicted by decades of U.S. intelligence, case law, and findings regarding Hizballah, as well as Plaintiffs' own evidence.

As Plaintiffs' evidence demonstrates, Hizballah is an instrumentality of the ***Islamic Republic of Iran***, not the FARC. Mr. Farah states unequivocally that Hizballah is the "terrorist and money laundering arm" of Iran, not of the FARC.  DE 891, para. 28.  Indeed, Mr. Farah's

---

[3] Claimants deny that they have provided support to Hizballah.  More importantly, however, they are completely irrelevant here. Plaintiffs allege that Claimant Mr. Tajideen is a "supporter of," and "financial contributor to," Hizballah.  DE 892, para. 44. Plaintiffs contend that he "sent funds to Hizballah through his brother," *id.*, and that the so-called "Tajideen network"—which Plaintiffs do not define—includes Claimants, *id.* at para. 45. But these allegations are irrelevant because (i) they do not demonstrate any connection between the Claimants themselves, *i.e.*, Mr. Tajideen, Ovlas Trading, or Groupo Arosfran, on the one hand, and Hizballah, on the other; and (ii) in any case, Plaintiffs' judgment is against the FARC, not Hizballah. Accordingly, Plaintiffs must allege and prove that Claimants have a direct agency or instrumentality relationship with the FARC, not with Hizballah. Again, Plaintiffs do not—and cannot—allege or prove any such relationship.

affidavit leaves no doubt as to the close relationship—and at times, the functional equivalency—of Hizballah and Iran.  *See id.* at para. 2 (discussing the close relationship between Iran and Hizballah); para. 44 ("According to the U.S. Department of State, [Hizballah] receives training, weapons and explosives, as well as political, diplomatic, monetary, and organizational aid from Iran"); para. 55 ("Iranian clerics issued a fatwa that allowed [Hizballah] to trade in what the clerics referred to as 'white death'"); para. 59 (describing a U.S. House of Representatives Majority Report that observed, "Venezuela is a safe haven for not only Iran and [Hizballah], but also the FARC"); and para. 72 ("Hizballah was formed in approximately 1982 with the assistance of the Iranian Revolutionary Guards …").

Plaintiffs' evidence also shows that other experts and the U.S. government have reached similar conclusions that Hizballah is an Iranian agent, not an agent or instrumentality of the FARC.  *See* DE 890, Ex. 77 (testimony of Ilan Berman of the American Foreign Policy Council describing Iran to the U.S. House of Representatives Subcommittee on Counterterrorism and Intelligence as Hizballah's "progenitor and main sponsor"); *id.*, Ex. 88 (transcript of testimony of Plaintiffs' expert, Mr. Farah, before the U.S. House of Representatives Subcommittee on Oversight and Investigations, in which Mr. Farah describes Hizballah as "a proxy for Iran"); *id.*, Ex. 92 (testimony of Plaintiffs' expert, Mr. Farah, before the Senate Subcommittee on Western Hemisphere, Peace Corps, and Global Narcotics Affairs, in which Mr. Farah identifies "the Iran-[Hizballah]-ICRG/Qods forces combine" and describes Hizballah as "the non-state, armed branch of radical Shi'ite Islamists"); *id.* at Ex. 94 (2012 Majority Report by the U.S. House Subcommittee on Oversight, Investigations, and Management describing Hizballah as a "proxy" for Iran); *Peterson*, 264 F.Supp.2d at 51 ("Hezbollah is ... the name of a group of Shi'ite Muslims in Lebanon that was formed under the auspices of the government of Iran."); *Wagner v.*

*Islamic Republic of Iran*, 172 F. Supp. 2d 128, 132 (D.D.C. 2001) ("Hizballah, in turn, has been shown to be an agency or instrumentality of the Iranian [Ministry of Intelligence]"). OFAC itself has described Iran as Hizballah's "patron."[4] Notably, Plaintiffs have offered no comparable evidence demonstrating that Hizballah is an instrumentality of the FARC.

Under these circumstances, there is no rational basis to conclude that Hizballah is an "agency or instrumentality" of the FARC. Plaintiffs' attempt to allege a connection between Claimants and the FARC by virtue of Hizballah's supposed status as an agency or instrumentality of the FARC therefore must be rejected. For this additional reason, Plaintiffs' have failed to satisfy their burden under § 201(a) of the TRIA.

> **2.    Plaintiffs have failed to allege that Claimants provided material support to the narcotics trafficking activities of the FARC**

Plaintiffs likewise have failed to allege (much less, demonstrate) that Claimants provided material support to the FARC's narcotics trafficking activities. Mr. Farah's affidavit asserts that Hizballah has some undefined involvement in narcotics activities related to the FARC. *See* DE 891, para. 83 (*e.g.*, "[Hizballah] assists the FARC's financial or money laundering network. [Hizballah] engages in the distribution of FARC cocaine …"). But Mr. Farah provides no facts purporting to link Claimants to any such activities.[5] Absent factual allegations, there is simply

---

[4] *See* U.S. Department of the Treasury, Press Release, *Treasury Targets Hizballah for Supporting the Assad Regime*, Aug. 10, 2012, *available at* http://www.treasury.gov/press-center/press-releases/Pages/tg1676.aspx.

[5] Mr. Farah's affidavit does list a series of corporate entities, including two entities associated with members of the Tajideen family (Tajco and Tajco Ltd.) that are characterized in chart form with the designation: "[m]ovement of cocaine proceeds and money laundering." DE 891 at para. 84. This description is not supported by OFAC's designations of Tajco or Tajco Ltd., which do not suggest any connection whatsoever to the narcotics trade. DE 892, Ex. 1. Nor does Mr. Farah's affidavit purport to connect Tajco or Tajco Ltd. to Mr. Tajideen. Indeed, and as noted above, Mr. Tajideen has gone to great lengths to disassociate himself from the business of "Tajco" in Lebanon and any business in The Gambia conducted by those other members of the Tajideen family, Ali and Husayn. But in any event, Mr. Farah's description is completely

no basis to conclude that Claimants provided any support, much less *material* support, to the FARC's narcotics trafficking activities.

### 3. Plaintiffs have failed to allege that Claimants were owned, controlled, directed by, or acted for or on behalf of, the FARC

Plaintiffs have not alleged or demonstrated that Claimants have acted "for or on behalf of" the FARC.  In *Estates of Unger ex rel. Strachman v. Palestinian Auth.*, 304 F. Supp. 2d 232, 241 (D.R.I. 2004), a Federal district court held that the Holy Land Foundation for Relief and Development ("HLF") was an agency and instrumentality of Hamas because it acts "for or on behalf of" Hamas as Hamas' fund-raising agency in the United States.  That conclusion was supported by the factual record: OFAC's designation of HLF was accompanied by a specific statement from OFAC that it acts "for or on behalf of" Hamas.  *Id.*  By contrast, OFAC's press statement that accompanied Claimants' designation contained no mention of the FARC; it also contained no suggestion of any connection whatsoever between Claimants and the FARC, let alone a statement that Claimants' acted "for or on behalf of," or were owned, controlled, or directed by the FARC.  *See* DE 892, Ex. 1.  Nor do Plaintiffs provide any other evidence of such a relationship.  Plaintiffs have therefore failed completely to allege that the Claimants were owned, controlled, directed by, or acting for or on behalf of, the FARC.

### 4. Plaintiffs have failed to allege that Claimants played a significant role in international narcotics trafficking related to cocaine supplied by the FARC

---

unsubstantiated, and, even on its face, does not purport to connect any activities undertaken by those companies (much less Claimants) to the FARC. But if Mr. Farah is suggesting that Tajco and/or Tajco Ltd. are somehow involved in the FARC's narcotics trafficking activities, then a single, vague assertion, provided without context or detail, appears to be the only specific allegation on the record to support that conclusion.  This is an insufficient basis by which to conclude that Mr. Tajideen or the other Claimants here are agents or instrumentalities of the FARC for purposes of the TRIA.

Finally, as discussed above, Plaintiffs have failed to allege (and introduced no evidence to support) the conclusion that Claimants have played any role in the narcotics trade, whether related to cocaine supplied by the FARC or otherwise.  Aside from a single ambiguous and unsubstantiated sentence fragment in Mr. Farrah's affidavit,[6] the evidence discussing Claimants contains no information connecting them to such activities.  *See* DE 891, para. 84; DE 892, paras. 42, 44-46. There is therefore no factual allegation that Claimants played any role in international narcotics trafficking related to cocaine supplied by the FARC.

**B.    The Standard for Determining What Constitutes an "Agency or Instrumentality" Under TRIA Previously Set Forth By This Court Is Broader than the Plain and Ordinary Meaning of Those Terms**

As the Eleventh Circuit recognized in its prior decision in this litigation, the standard for what constitutes an "agency or instrumentality" under TRIA is not well-developed in case law, particularly outside the context of state actors.  *Stansell*, 771 F.3d at 730-732.  In the absence of such guidance, this Court, apparently evaluating the question as a matter of first impression in this Circuit, announced a standard for what constitutes an "agency or instrumentality" under TRIA consistent with "the ordinary and plain meaning  of [those] terms."  *Order Granting Writs of Garnishment*, DE 900, at para. 11-13.  With that stated objective, the Court articulated the three-pronged standard set forth above.  *See id.*[7]

---

[6] *See* note 5, supra.

[7] In its prior decision in connection with this litigation, the Eleventh Circuit agreed with this Court that the proper standard should be one based on the "plain and ordinary meaning of those terms."  *Stansell*, 771 F.3d at 731-32.  There, a different set of claimants appearing in this litigation challenged the issuance of writs of garnishment before the Eleventh Circuit, arguing that the proper standard for "agency or instrumentality" under TRIA should be based upon the Foreign Sovereign Immunities Act ("FSIA").  *Id.* at 730-31.  In rejecting the claimants' argument, the Eleventh Circuit suggested that this Court developed "a proper standard" but did not squarely analyze the three-part test adopted by this Court in depth, instead simply concluding

On its face, the standard set forth by this Court directs that an "agency or instrumentality" can include, among other things, any party that is "materially assisting," "providing financial or technological support," or providing goods or services in support of," or "playing a significant role" in connection with the FARC's narcotics trafficking activities. *Id.* As explained above, Plaintiffs have failed to establish that Claimants are "agenc[ies] or instrumentalit[ies]" of the FARC, even under the Court's three-part standard. But Claimants respectfully submit that, even if this Court finds that Claimants here could be viewed as constituting "agenc[ies] or instrumentalit[ies]" of the FARC upon proof that Claimants are supporters of Hizballah under that standard, the Court should decline to so find, and should instead clarify its standard to conform to the "plain and ordinary" meaning of the terms "agency" and "instrumentality."

First, the plain meaning of the term "agency" is narrower than the standard that appears to have been adopted by the Court. *See Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000) ("We begin, as we always do when construing statutory text, with the plain meaning of the word at issue."). "Agency" connotes an assessment of the principal and agent relationship; control, domination, or management by the principal of the agent; and/or the agent's subservience to and actions "on behalf of" the principal. Black's Law Dictionary, for example, defines agency as "[a] relationship that arises when one person (a principal) manifests assent to another (an agent) that the agent will act on the principal's behalf, subject to the principal's control, and the agent manifests assent or otherwise consents to do so." Black's Law Dictionary 74 (10th ed. 2014). Similarly, the Florida Supreme Court—which has extensively examined the scope of an agency relationship—has explained that "[e]ssential to the existence of an actual agency relationship is (1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of

_____

that the claimants there gave the court "no reason to believe that any other standard is preferable or proper." *Id.* at 732.

the undertaking, and (3) control by the principal over the actions of the agent." *Goldschmidt v. Holman*, 571 So. 2d 422, 424 n.5 (Fla. 1990); *see Hollingsworth v. Perry*, 133 S. Ct. 2652, 2666 (2013) ("the most basic features of an agency relationship are missing here. Agency requires more than mere authorization to assert a particular interest. 'An essential element of agency is the principal's right to control the agent's actions.'") (internal citations omitted); *see also Estates of Ungar*, 304 F. Supp.2d at 241 ("The HLF is an agency and instrumentality of Hamas because it acts 'for or on behalf' Hamas as Hamas' fund-raising agent in the United States.").

Similarly, the plain and ordinary meaning of "instrumentality" is less sweeping than the standard adopted by the Court. According to Black's Law Dictionary, an instrumentality is "[a] means or agency through which a function of another entity is accomplished, such as a branch of a governing body." Black's Law Dictionary 919 (10th ed. 2014). Webster's Third New International Dictionary says the word means "something that serves as an intermediary or agent through which one or more functions of a controlling force are carried out: a part, organ, or subsidiary branch esp. of a governing body." Webster's Third New International Dictionary 1172 (3d ed.1993); *see also United States v. Esquenazi*, 752 F.3d 912, 920-25 (11th Cir.), *cert. denied*, 135 S. Ct. 293, 190 L. Ed. 2d 141 (2014). That concept relates to a situation involving a parent-subsidiary/branch office relationship or where the purported instrumentality functions as an "arm" of another entity.[8]

---

[8] Although typically applied in the context of sovereign actors, Florida courts have applied the instrumentality concept in the context of non-state actors as well, suggesting that it applies where there is "control of the parent over the subsidiary" or where the "parent committed fraud or wrongdoing through its subsidiary." *American Int'l. Group, Inc. v. Cornerstone Businesses, Inc.*, 872 So. 2d 333, 337 (Fla. 2d Dist. Ct. App. 2004); *see also Dep't of Employment v. United States*, 385 U.S. 355, 359-360 (1966) (factors for determining "instrumentality" status include whether it "functions indispensable to the workings" of an entity; receipt of "substantial material assistance" from that entity; or "status virtually as an arm of" the entity.).

As the Eleventh Circuit recognized in *Stansell*, the meaning of "agency or instrumentality" in the context of non-state actors implicates other considerations because the organizational structures of non-state actors typically do not lend themselves to traditional legal "agency" analysis. *See Stansell*, 771 F.3d at 731 (refusing to adopt the FSIA standard for "agency or instrumentality" because it would "eviscerat[e] TRIA's effectiveness vis-à-vis non-state terrorist organizations"). For that reason, the concept of "implied agency" is also instructive in such cases because it relates to situations in which the conduct of a principal creates an agency relationship by implication. But here too, an element of "control" must be present. Black's has defined implied agency as "[a]n actual agency arising from conduct by the principal that implies an intention to create an agency relationship." Black's Law Dictionary 74 (10th ed. 2014). Similarly, the Eleventh Circuit has explained that "[u]nder the common law actual agency, either implied or express, requires: (1) consent to the agency by both principal and agent; and (2) the control of the agent by the principal." *Commodity Futures Trading Comm'n v. Gibraltar Monetary Corp.,* 575 F.3d 1180, 1189 (11th Cir. 2009).

This overly-broad standard may have resulted in part from the adoption of definitions from Executive Orders and OFAC regulations that do not themselves purport to define the scope of the notions of "agency" and "instrumentality." *See Order Granting Writ of Garnishment*, February 17, 2015, DE 900, at paras. 11-13. Further, the definitions on which the Court relied are apparently those used to delineate the standards by which OFAC is authorized to designate narcotics traffickers themselves—a completely different purpose that should have no bearing on the meaning of "agency" or "instrumentality." For example, 31 C.F.R. § 598.314 and 31 C.F.R. § 536.312 define the terms "specially designated narcotics trafficker" and do not even mention the terms "agency" or "instrumentality." Executive Orders 12978 and 13224 likewise do not

20

purport to define the scope of these terms and only mention "agency" in the context of U.S. government agencies that are authorized to take action pursuant to the Orders.

Under the plain meaning standard, the terms "agency" or "instrumentality" refer to the relationship between principal and agent—*i.e.*, where the principal has authority (express or implied) to control and direct the agent, such that the agent acts "on behalf of" the principal. *See Hollingsworth v. Perry*, 133 S. Ct. at 2666 ("An essential element of agency is the principal's right to control the agent's actions."); *United States v. Esquenazi*, 752 F.3d at 921 (an instrumentality "must perform a …function at the…behest" of another); *Commodity Futures Trading Comm'n* 575 F.3d at 1189 (agency requires "control of the agent by the principal"); *Estates of Ungar*, 304 F. Supp.2d at 241 (agency or instrumentality may be found when it acts "for or on behalf of" another).  The relationship is akin to that between a parent and subsidiary, where the subsidiary is wholly controlled and acts as an "arm" or "instrumentality" of the parent. *Dep't of Employment* 385 U.S. at 359-360 (an "instrumentality" may be found from its "status virtually as an arm of" the entity).

Claimants respectfully request that the Court clarify its standard to make clear that it incorporates and reflects these concepts.  Claimants submit that under any such standard, there is no basis to conclude that they are "agenc[ies] or instrumentalit[ies]" of the FARC.  As discussed above, Plaintiffs have made no allegations and offered no evidence that the FARC controlled, dominated, or directed Claimants (or Hizballah) with respect to any activities.  They have made no allegations and offered no evidence that Claimants (or Hizballah) acted in subservience to or "on behalf of" FARC.  They have made no allegations and offered no evidence that Claimants (or Hizballah) have acted as an "arm" of FARC.  In short, there is no basis under which to

conclude that Claimants are agents or instrumentalities of the FARC under the plain and ordinary meaning of those terms.

In the alternative, to the extent that this Court determines that the conclusory facts alleged by Plaintiffs could support a finding that Claimants are "agenc[ies] or instrumentalit[ies]" of the FARC, Claimants contest Plaintiffs' allegations and respectfully request a trial on those disputed factual issues.

## IV.    Conclusion

WHEREFORE, Claimants deny the allegations made in the motion against them on the grounds stated and respectfully move this Court, pursuant to Fed. R. Civ. P. 69 and Fla. Stat. § 77.07, for an order dissolving the writs of garnishment (DE 907, DE 914, DE 915, DE 930, and DE 934).  In the event the Court is not persuaded that Claimants are entitled to relief on the face of the allegations, Claimants respectfully request that this Court conduct a trial of the disputed issues, as required under Fla. Stat. § 77.07.

/s/ Robert M. Quinn
Robert M. Quinn
Florida Bar No. 305898
CARLTON FIELDS JORDEN BURT, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Boulevard
Suite 1000
Tampa, FL 33607-5780
Telephone: (813) 223-7000
Facsimile: (813) 229-4133
rquinn@cfjblaw.com
lrodriguez@cfjblaw.com
tpaecf@cfdom.net


/s/ David W. Bowker

David W. Bowker
District of Columbia Bar No. 989309

(pro hac vice application pending)
WILMER   CUTLER   PICKERING   HALE   AND
DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C.  20006
Telephone: (202) 663-6558
Facsimile: (202) 663-6363
David.Bowker@wilmerhale.com


Attorneys for Kassim Tajideen, Grupo Arosfran
Empreendimentos E Participacoes SARL, and
Ovlas Trading, S.A.


## CERTIFICATE OF SERVICE

I CERTIFY that on the 16th day of April, 2015, I electronically filed the foregoing with

the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing

to all counsel of record.


/s/ Robert M. Quinn

Attorney

23