UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEITH STANSELL, MARC GONSALVES,
THOMAS HOWES, JUDITH G. JANIS,
CHRISTOPHER T. JANIS, GREER C. JANIS,
MICHAEL I. JANIS, AND JONATHAN N. JANIS,

    Plaintiffs,

v.       Case No.: 8:09-CV-02308-RAL-MAP

REVOLUTIONARY ARMED FORCES OF
COLOMBIA (FARC), et al.,

    Defendants.

## AFFIDAVIT OF CHIBLI MALLAT

1. My name is Chibli Mallat, and I am personally familiar with the contents of this affidavit.

2. I am a Lebanese-born legal scholar, jurist, and human rights advocate.

3. From 2007 through 2015 I have served on the faculty of the University of Utah S.J. Quinney College of Law as Presidential Professor of Middle Eastern Law and Politics. I also hold the EU Jean Monnet Chair of Law at Saint Joseph's University in Lebanon, and have held research and teaching positions at Princeton University, the University of Virginia Law School, the Library of Congress, the University of California at Berkeley (Boalt Hall) School of Law, London University's School of Oriental and African Studies, the University of Lyon, and the Islamic University in Lebanon. In 2011 I was the Custodian of the Two Holy Mosques Visiting Professor of Islamic Legal Studies at Harvard Law School, and in 2012 I was a Visiting Professor of Law and Oscar M. Ruebhausen Distinguished Senior Fellow at Yale Law School.

1

4. I am Principal Counsel of the Mallat Law Offices in Beirut. My father, Wajdi Mallat, founded the Mallat Law Offices over 60 years ago. When he was elected to the presidency of the Lebanese Constitutional Council in 1993, I took over as Principal. The firm specializes in international and domestic private law, and represents major international companies including Lebanese, Arab, and international firms in corporate law, civil law, administrative cases, and human rights. The firm provides legal and advisory services to several embassies.

5. I have been a consultant on various issues of Islamic and Middle Eastern laws, including for the Foreign and Commonwealth Office, Amnesty International, and the World Bank.

6. From 2008 through 2010, I was a senior legal advisor to the Global Justice Project: Iraq, a legal think-tank established in Baghdad with two major grants from the U.S. Department of State to work with the Iraqi government on constitutional, legislative, judicial, electoral and anti-corruption issues. In the summer of 2009, I helped the Constitutional Revision Committee complete it review work of the 2005 Constitution.

7. In 2005-2006 I ran for president of Lebanon. At the time and throughout my career I have been an outspoken critic of Hizballah, whose attack on Israel which triggered the devastating 2006 war I publicly denounced throughout the summer of 2006.

8. I am the author of several essays and books, including, most recently, "Philosophy of Nonviolence: Revolution, Constitutionalism, and Justice beyond the Middle East." In that book and throughout my career, I have been an advocate and defender of nonviolence and the rule of law, including and especially in my native Lebanon.

9. I have known Kassim Tajideen since 2009. He approached me then about representing him in his effort to petition the U.S. government to remove him from the U.S.

2



Department of the Treasury's list of Specially Designated Nationals and Blocked Persons ("SDN List").

10. Due to my philosophical and moral objections to terrorism and acts of political violence, as well as my condemnation of Hizballah and reputational concerns, I was initially reluctant to take on Mr. Tajideen's case. However, I was immediately impressed by Mr. Tajideen's humility, integrity, and honesty in our meetings. I extensively vetted the matter among colleagues and others in Beirut who knew of Mr. Tajideen and his family. I ultimately decided to take on Mr. Tajideen's case only because of my belief that he is honest and his cause was just.

11. Since that time I have spoken extensively with Mr. Tajideen about his life, his family, and his business. I have also overseen several key aspects of his efforts to persuade the U.S. government that he should be removed from the SDN List.

12. Based on such experience, I believe that Mr. Tajideen is not a member or supporter of Hizballah.

13. I believe that Mr. Tajideen does not have any affiliation with Hizballah.

14. I have observed Mr. Tajideen take extraordinary steps to conduct his affairs without any unnecessary entanglement with Hizballah, including through western-style sanctions screening and due diligence measures by his businesses. This has included, notably, the difficult personal decision to refrain from financial or commercial dealings by Mr. Tajideen with his brothers, Ali and Husayn, who are also on the SDN List because of alleged ties to Hizballah.

3



15. I believe that Mr. Tajideen has never had any dealings nor played any role whatsoever, directly or indirectly, with the Revolutionary Armed Forces of Colombia ("FARC"), or its coca paste or cocaine, or its financial or money laundering network.

16. I do not believe or find it credible that Mr. Tajideen is an agency or instrumentality of the FARC. I think that Mr. Tajideen was not even aware of the existence of this group before the present case brought his attention to them.

17. I understand that Mr. Tajideen is the owner-in-fact of, and exercises sole control over, Grupo Arosfran Empreendimentos E Participacoes SARL and Ovlas Trading SA, and, accordingly, believe that my statements in paragraphs 12-16 apply equally to these two entities.

I declare and state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. 1746.

Executed on May 9, 2015.

Chibli Mallat, Affiant

4