IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Tampa Division

KEITH STANSELL, et al.,

    Plaintiffs,

v.      Case No. 8:09-cv-2308-T-36AAS

REVOLUTIONARY ARMED FORCES
OF COLUMBIA, et al.

    Defendants.

**STATEMENT OF INTEREST OF THE UNITED STATES**

**PRELIMINARY STATEMENT**

The United States of America respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517[1] to address: (1) where assets blocked pursuant to the Foreign Narcotics Kingpin Designation Act ("Kingpin Act"), 21 U.S.C. §§ 1901-08, satisfy the requirements of Section 201 of the Terrorism Risk Insurance Act ("TRIA" or "Terrorism Act"), 28 U.S.C. § 1610 note, whether TRIA overrides any otherwise applicable regulatory requirement of a license; and (2) whether 31 C.F.R. § 598.205(c) contemplates the issuance of a license in the circumstances presented by Plaintiffs' Motion for a TRIA Turnover Judgment ("Plaintiffs' Motion"), Dkt. No. 1185.

These issues arise the context of a motion by Plaintiffs, the victims of a terrorist actions in Columbia, to enforce a default judgment against the Revolutionary Armed Forces of Columbia ("FARC"), a Colombian guerrilla group. They seek to enforce this judgment, in part, through a turnover order against certain specified assets held by a garnishee bank, Ocean Bank, of Aero Continente S.A. ("Aero Continente"), an entity which has been both determined by this Court to be an agency or instrumentality of the FARC, and separately designated by the Department of the Treasury's Office of Foreign Assets Control ("OFAC") as a Specially Designated Narcotics Trafficker ("SDNTK") pursuant to the Kingpin Act. *See* Dkt. No. 1185 (Plaintiffs' Motion).

On March 25, 2019, the Magistrate Judge issued a Report and Recommendation ("Magistrate's Report"), recommending that Plaintiffs' Motion be granted. Dkt. No. 1194. However, the Magistrate's Report specifically declined, as requested by Plaintiffs, to recommend

---

[1] Pursuant to 28 U.S.C. § 517, "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General of the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in the courts of a State, or to attend to any other interest of the United States."

1

that the Court's order contain an instruction that "no OFAC license is required to turn over the garnished funds to Plaintiffs." *Id.* at *7-8. Instead, the Magistrate's Report recommended that the Court find that (1) a license is required in the circumstances presented, but that (2) OFAC's regulations permit Plaintiffs to obtain the required license subsequent to execution of the relevant assets. *Id.* at *8-9.

For the reasons set forth in detail below, both of these recommendations rest on erroneous constructions of the relevant statutes and regulations. Under the Anti-Terrorism Clarification Act of 2018 ("Clarification Act"), Pub. L. 115-253, 18 U.S.C. § 2333(e), no license is required in the circumstances presented by Plaintiffs' Motion. Further, the Magistrate's Report also misreads certain OFAC regulations, and incorrectly assumes that OFAC would issue a license in order to provide an *ex post* authorization for what, under the reasoning of the Magistrate's Report, would be an otherwise null and void transaction. The United States sets forth these analytical errors for the Court's awareness as the Court reviews the Magistrate's Report and adjudicates Plaintiffs' Motion.

## BACKGROUND

### I. The Terrorism Risk Insurance Act and the Clarification Act of 2018

TRIA, originally enacted in 2002, governs post-judgment attachment proceedings in certain cases arising out of terrorist acts—including, as relevant here, judgments such as the one held by Plaintiffs—under the civil remedies provision of the Anti-Terrorism Act, 18 U.S.C. § 2333. As later amended, TRIA Section 201 provides that:

> *Notwithstanding any other provision of law*, and except as provided in subsection (b) [of this note], in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605A or 1605(a)(7) (as such section was in effect on January 27, 2008) of title 28, United States Code, *the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of*

2

*execution* in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

Pub. L. No. 107-297, 116 Stat. 2322 (codified at 28 U.S.C. § 1610 note) (emphasis added).

The term "blocked assets" is defined at Section 201(d)(2) of TRIA to include:

[A]ny asset seized or frozen by the United States under section 5(b) of the Trading With the Enemy Act [("TWEA")] [now 50 U.S.C. § 4305(b)] or under sections 202 and 203 of the International Emergency Economic Powers Act [("IEEPA")] (50 U.S.C. [§§] 1701; 1702) [excluding certain assets subject to U.S. Government licenses and other diplomatic property].

28 U.S.C. § 1610 note.

Although this definition of "blocked assets," as originally enacted, did not encompass assets seized or frozen under the Kingpin Act, in 2018 the Clarification Act expressly expanded the term's scope to bring such assets with TRIA's purview. Specifically, Section 3 of the Clarification Act amends the civil remedies provision of the Anti-Terrorism Act, 18 U.S.C. § 2333, to include a sub-section providing that:

For purposes of section 201 of the Terrorism Risk Insurance Act of 2002 (28 U.S.C. 1610 note), in any action in which a national of the United States has obtained a judgment against a terrorist party pursuant to this section, <u>the term *"blocked asset" shall include any asset of that terrorist party (including the blocked assets of any agency or instrumentality of that party) seized or frozen by the United States under section 805(b) of the Foreign Narcotics Kingpin Designation Act*</u> (21 U.S.C. 1904(b)).

18 U.S.C. § 2333(e) (emphasis added).

Thus, under the plain terms of the Clarification Act, assets seized or frozen under the Kingpin Act (that otherwise meet TRIA's requirements for turnover) qualify as "blocked assets" under TRIA. Further, TRIA expressly provides that such assets are "subject to execution or attachment" "notwithstanding any other provision of law." 28 U.S.C. § 1610 note.

## II.  Plaintiffs' Default Judgment against the FARC and the Instant Turnover Judgment Motion

Plaintiffs hold a default judgment under the Anti-Terrorism Act for $318,030,000 in compensatory damages against the FARC.  On September 6, 2011, Plaintiffs obtained a court order in this litigation, to the effect that, *inter alia*, Aero Continente is an agency or instrumentality of the FARC, because it is "involved in the cultivation, manufacture, processing, purchase, sale, trafficking, security, storage, shipmen or transportation, [or] distribution of FARC coca paste or cocaine."  Dkt. No. 322 p. 6 ¶ 15.  On this basis, the Court issued a writ of garnishment against Aero Continente's assets held by Ocean Bank.  *Id.* p. 12 ¶ 28(i).  As the Court also noted in its September 6, 2011 order, Aero Continente is additionally separately designated by OFAC as an SDNTK.  *Id.* p. 14 ¶ 29.

Subsequently, the Eleventh Circuit held that assets frozen under the Kingpin Act are not "blocked assets" within the meaning of TRIA Section 201—and thus, are not available for the enforcement of judgments under the Anti-Terrorism Act.  *Stansell v. FARC*, 704 F.3d 910 (11th Cir. 2013) ("*Stansell I*").  Following this decision, this Court stayed execution on the writs of garnishment it had previously issued against assets frozen under the Kingpin Act, including Aero Contintente's assets at Ocean Bank.  Dkt. Nos. 562, 592.

On October 3, 2018, Congress enacted the Clarification Act, pursuant to which (as explained above) TRIA's definition of "blocked assets" was expanded to include assets blocked pursuant to the Kingpin Act.  18 U.S.C § 2333(e).  On October 5, 2018, on the basis of this change in law, Plaintiffs moved for a renewed writ of garnishment against Aero Continente's assets held by Ocean Bank, and to the lift the Court's stay on the issuance and enforcement of Kingpin Act writs.  Dkt. No. 1161.  On November 13, 2018, the Court granted this motion.  Dkt. No. 1166.

On January 3, 2019, Plaintiffs filed a motion for a TRIA turnover judgment as to $928,756.29 of Aero Continente's assets held by Ocean Bank. Dkt. No. 1185. On March 25, 2019, the above-discussed Magistrate's Report recommended that this motion be granted, but specifically declined, as requested by Plaintiffs, to recommend that the Court's order contain an instruction that "no OFAC license is required to turn over the garnished funds to Plaintiffs." Dkt. No. 1194 at *7-8. Instead, the Magistrate's Report recommended that the Court find that (1) a license is required in the circumstances here presented, but that (2) OFAC's regulations permit Plaintiffs to obtain the required license subsequent to execution of the relevant assets. *Id.* at *8-9.

## DISCUSSION

As set forth below, the Magistrate's Report contains two analytical errors. First, under the Clarification Act, no license is required in the circumstances presented by Plaintiffs' Motion. Second, 31 C.F.R. § 598.205(c) does not contemplate the issuance of a license, including where (as here) none is required.

### I.  No OFAC License Is Required for TRIA Execution of Assets Blocked under the Kingpin Act.

The Magistrate's Report concludes that "although the newly amended Terrorism Act now allows judgment creditors to execute assets blocked under the Kingpin Act, [OFAC's] regulations appear to still require the judgment creditor, who wants to execute Kingpin-Act assets, to obtain an OFAC license." Dkt. No. 1194 at *8 (citing 31 C.F.R. §§ 598.205, 598.314(b)).

Respectfully, this conclusion conflicts with the plain language of TRIA Section 201 and the Clarification Act. As set forth above, TRIA Section 201 provides that "[n]otwithstanding any other provision of law … the blocked assets of [a] terrorist party [against which a judgment

5

has been entered] (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable." 28 U.S.C. § 1610 note. Accordingly, to the extent that assets are subject to TRIA, Section 201 overrides otherwise applicable OFAC regulations requiring that a license be obtained before an asset owned by a terrorist party or its agent or instrumentality can be attached. *See*, *e.g.*, *Estate of Heiser v. Bank of Tokyo Mitsubishi UFJ, New York Branch*, 919 F. Supp. 2d 411, 422 (S.D.N.Y. 2013) ("[I]n the event a court determines that blocked assets are subject to TRIA, those funds may be distributed without a license from OFAC."); *see also* Amicus Brief of the United States, *Harrison v. Republic of Sudan*, No. 14-121, Dkt. No. 101 (2d Cir. Nov. 6, 2015), at 7 (statement of the United States, informing the Court of its position on this issue); Statement of Interest of the United States, *Martinez v. Republic of Cuba*, No. 07 Civ. 6607, ECF No. 79 (S.D.N.Y. Oct. 16, 2015), at 6-7 (same). In short, TRIA's express application "notwithstanding any other provision of law" obviates any otherwise applicable regulatory licensing requirement, where the asset in question qualifies as a "blocked asset" within the meaning of TRIA Section 201 and the other requirements of that section are met. Under the plain terms of the Clarification Act, assets seized or frozen under the Kingpin Act meet the definition of "blocked assets."

      The Magistrate's Report concludes, incorrectly, that OFAC's regulations require a different result. The Magistrate's Report notes that in *Stansell v. FARC*, 771 F.3d 713 (11th Cir. 2014) (*Stansell II*), the Eleventh Circuit properly concluded that, at the time of that decision, "[j]udgment creditors seeking to execute property under the Kingpin [A]ct" were required to "obtain a license from OFAC." Dkt. No. 1194 at *7 (citing *Stansell II*, 771 F.3d at 734).

Specifically, citing OFAC regulations, 31 C.F.R. §§ 598.205(a), (e), 598.314(b), *Stansell II* held that "where [an entity] is designated pursuant to the Kingpin Act and the Foreign Narcotics Kingpin Sanctions Regulations," a party seeking to execute or attach that party's blocked assets was required by the cited regulations to obtain a license from OFAC. 771 F.3d at 734. The Magistrate's Report concludes from the fact that the cited regulations "contain the same language today that the regulations had when *Stansell II* issued" that "the regulations appear to still require the judgment creditor, who wants to execute Kingpin Act assets, to obtain an OFAC license." Dkt. No. 1194 at *8.

But, for the reasons set forth above, this conclusion is foreclosed by TRIA's express language, which, again, provides for application of its rule—expanded by the Clarification Act to encompass assets seized or frozen pursuant to the Kingpin Act—"[n]otwithstanding any other provision of law." 28 U.S.C. § 1610 note. Thus, where assets that are blocked under the Kingpin Act now fall within the scope of TRIA, TRIA overrides any otherwise applicable regulatory requirement, including those set forth in 31 C.F.R. Part 598. That these regulations have not changed since the issuance of *Stansell II* has no bearing on this analysis.

## II. 31 C.F.R. § 598.205(c) Does Not Provide for Issuance of a License in the Circumstances Presented.

The Magistrate's Report further concludes that, although an OFAC license is required in the circumstances presented by Plaintiffs' Motion,

> [T]he OFAC regulations appear to allow judgment creditors to execute property before obtaining an OFAC license. *See* 31 C.F.R. § 598.205(c) (2018) (stating that an OFAC license issued 'before, during, or after a transfer shall validate such transfer or make it enforceable'). Therefore, although an OFAC license appears necessary to execute Kingpin-Act assets, under the OFAC regulations, the court may allow the plaintiffs to execute Aero Continente's assets at Ocean Bank before obtaining an OFAC license.

Dkt. No. 1194, at *8.

7

Even setting aside that, as explained above, any regulatory requirement for a license here is overridden by TRIA, the Magistrate Judge's analysis otherwise misreads the cited OFAC regulation even where it is applicable. The regulation provides:

> Unless otherwise provided, an *appropriate* license or other authorization issued by or pursuant to the direction or authorization of the Director of the Office of Foreign Assets Control before, during, or after a transfer shall validate such transfer or make it enforceable to the same extent that it would be valid or enforceable but for the provisions of the Foreign Narcotics Kingpin Designation Act, this part, and any regulation, order, directive, ruling, instruction, or license issued pursuant to this part.

31 C.F.R. § 598.205(c) (emphasis added).

Thus, 31 C.F.R. § 598.205(c) simply provides that where—in "appropriate" circumstances—OFAC issues a license respecting Kingpin Act assets, the license will "validate" an otherwise null and void transaction, regardless of when the license issues. *Id.* It does not contemplate the issuance of a license when no license is required to enable a particular transaction—*e.g.*, where TRIA overrides any otherwise applicable licensing requirement.

Under the reasoning of the Magistrate's Report, Plaintiffs' attachment of the Ocean Bank funds would be a null and void transaction in the absence of a license. The Magistrate's Report nonetheless recommends that this "null and void" attachment may be authorized by a court on the assumption that OFAC will issue a license in order to provide an *ex post* authorization for the transaction. This conclusion is unfounded: 31 C.F.R. § 598.205(c) does not contemplate the issuance of a license where none is required, and does not require OFAC to issue one here. And even in circumstances (not present here) where a license is, in fact, required, courts should not issue attachment orders on the assumption that OFAC will later license those transfers; rather, where a license is required, a court should require the judgment creditor to obtain the necessary license as a condition *precedent* to any attachment.

8

## CONCLUSION

For the reasons set forth above, the district court should correct two analytical errors in the Magistrate's Report. First, under the Clarification Act, no license is required in the circumstances presented by Plaintiffs' Motion. Second, 31 C.F.R. § 598.205(c) does not contemplate the issuance of a license, where (as here) none is required.

Dated: April 26, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

/s/ *Antonia Konkoly*
ANTONIA KONKOLY
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
1100 L Street NW
Washington, DC 20005
Phone: 202-514-2395
Email:  antonia.konkoly@usdoj.gov

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on April 26, 2019, I filed the foregoing via the CM/ECF system, which will send a Notification of Electronic Filing to all counsel of record.


/s/ *Antonia Konkoly*
ANTONIA KONKOLY
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
1100 L Street NW
Washington, DC 20005
Phone: 202-514-2395
Email:  antonia.konkoly@usdoj.gov