UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEITH STANSELL, MARC
GONSALVES, THOMAS HOWES,
JUDITH G. JANIS, CHRISTOPHER T.
JANIS, MICHAEL I. JANIS and
JONATHAN N. JANIS,

    Plaintiffs,

v.                                                        Case No: 8:09-cv-2308-T-36AAS

REVOLUTIONARY ARMED FORCES OF
COLOMBIA (FARC), *et al.*,

    Defendants.
_____/

## **O R D E R**

This cause comes before the Court upon the Report and Recommendation filed by Magistrate Judge Amanda Arnold Sansone on March 25, 2019, (Doc. 1194). In the Report and Recommendation ("R&R"), Magistrate Judge Sansone recommends that the Plaintiffs' Motion for Turnover Judgment under the Terrorism Act (Doc. 1185) be granted and the Court enter final judgment in garnishment against Ocean Bank for $928,756.29, subject to certain conditions.

All parties were furnished copies of the R&R and were afforded the opportunity to file objections pursuant to 28 U.S.C. § 636(b)(1). Plaintiffs filed a limited objection to the R&R (the "Objection") regarding whether the Terrorism Risk Insurance Act, codified at 28 U.S.C. § 1610 (the "TRIA"), requires them to obtain a license for a TRIA Turnover Judgment under these facts. Doc. 1195. The United States filed a Statement of Interest (the "Statement") which indicates that Plaintiffs need no Department of the Treasury Office of Foreign Assets Control ("OFAC") license to obtain turnover judgment under the Anti-Terrorism Act, 18 U.S.C. § 2333; and OFAC would not provide an *ex post* authorization to turnover the funds as reasoned in the R&R. Doc. 1197. The

Court having reviewed the R&R, the Objection, and the Statement, and otherwise being advised of the premises will sustain the objection, modify-in-part the R&R, and grant the Motion for Turnover Judgment.

## I. BACKGROUND[1]

Plaintiffs obtained a judgment for $318,030,000 in compensatory damages against the Revolutionary Armed Forces of Colombia ("FARC") and many individuals due to a 2003 international act of terrorism. Docs. 1, 233. Plaintiffs began collection on their judgment and moved for writs of garnishment against Aero Continente's assets at Ocean Bank. Doc. 314. The Court entered an order that Aero Continente is an agency or instrumentality of the FARC because it is involved in "the cultivation, manufacture, processing, purchase, sale, trafficking, security, storage, shipment or transportation, [or] distribution of FARC coca paste or cocaine." Doc. 322 at ¶ 15. The Court then issued a writ of garnishment against Aero Continente's assets held by Ocean Bank. *Id*. at ¶ 28(i). OFAC also designated Aero Continente as a Specially Designated Narcotics Trafficker ("SDNT").

Thereafter, the Eleventh Circuit held that assets frozen under the Foreign Narcotics Kingpin Designation Act, 21 U.S.C. §§ 1901-08 (the "Kingpin Act") are not "blocked assets" as defined by Section 201 of the TRIA. Therefore, it held that those funds were not available for the enforcement of judgments under the Anti-Terrorism Act. *Stansell v. Revolutionary Armed Forces of Colom.*, 704 F. 3d 910 (11th Cir. 2013) ("*Stansell* I"). This Court stayed the execution on the writs of garnishments, including Aero Continente's assets at Ocean Bank, as a result. Docs. 562, 592.

On October 3, 2018, Congress enacted the Anti-Terrorism Clarification Act of 2018, Pub. Law 115-25 (the "Clarification Act") which expanded the TRIA's definition of "blocked assets"

---

[1] The Court adopts the facts from the R&R. Doc. 1194 at 1-2.

2

to include assets blocked by the Kingpin Act. 18 U.S.C. § 2333(e). Plaintiff moved for a renewed writ of garnishment against Aero Continente's assets held at Ocean Bank, and to lift the Court's stay on the issuance and enforcement of the Kingpin Act writs. Doc. 1161. The Court granted the motion. Doc. 1166.

In their Motion for Turnover Judgment against Ocean Bank under the TRIA, (the "Motion"), Doc. 1185, Plaintiffs argue that Aero Continente is a SDNT under the Kingpin Act, (§ 1904(b)), and they are thus entitled to receive its assets held at Ocean Bank. *Id.* This Court referred the Motion to Magistrate Judge Sansone for a report and recommendation. Doc. 1186. Magistrate Judge Sansone entered an R&R recommending that the Court grant the Motion under certain conditions.

Plaintiffs object to the R&R based on its finding that they need a license from OFAC to execute under Section 201 of the TRIA. They recognize that that conclusion does not adversely affect the R&R's ultimate recommendation with which they agree, but they insist that the conclusion regarding the OFAC license is erroneous. The United States concurs.

## II. LEGAL STANDARD

When a party makes a timely and specific objection to a magistrate judge's report and recommendation, the district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *Jeffrey S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990). With regard to those portions of the report and recommendation not objected to, the district judge applies a clearly erroneous standard of review. *See Gropp v. United Airlines, Inc.*, 817 F. Supp. 1558, 1562 (M.D. Fla. 1993). The district judge may accept, reject, or modify in whole or in part, the report and recommendation of the magistrate judge. Fed. R. Civ. P. 72. The district judge may

also receive further evidence or recommit the matter to the magistrate judge with further instructions. *Id*.

### III. DISCUSSION

The R&R states:

> [T]he request for a determination that no OFAC license is required to execute blocked assets under the Kingpin Act appears inappropriate. Judgment creditors seeking to execute property under the Kingpin Act must obtain a license from OFAC. [*Stansell v. Revolutionary Armed Forces of Colom.,* 771 F.3d 713, 734 (11th Cir. 2014)] *Stansell II*, 771 F.3d at 734 (citations omitted); *see also Doe v. JPMorgan Chase Bank, N.A.*, 899 F.3d 152, 158 (2d Cir. 2018) (footnote and citations omitted) (stating applicable OFAC regulations "unambiguously prohibit unlicensed transfers of blocked assets").

Doc. 1194 at 7.

Plaintiffs object to this finding. They also object to the statement in the R&R that the 2006 letter in *Weininger v. Castro* from the Southern District of New York United States Attorney's Office "predates *Stansell II* and the newly amended [TRIA]."[2] Doc. 1194 at 7-8. Plaintiffs maintain that the Clarification Act did not amend the TRIA, it only amended the Anti-Terrorism Act, which brought assets blocked under the Kingpin Act within the scope of the TRIA's definition of "blocked asset." Doc. 1195 at 2.

They point out that the United States appeared in this action and set forth that under the "TRIA, terrorism victims may execute against certain blocked assets, without getting authorization from OFAC, if the assets are judicially determined to be within [the] TRIA's scope." *Id.* (citing *Stansell v. FARC/Mercurio*, 11th Cir. Case Nos: 11-11125 & 11-11690, United States Amicus Brief at 10). Thus, they argue that once the Court determines that the Kingpin Act's blocked assets are subject to execution, as the Court has here, no OFAC license is required. Plaintiffs also contend

---

[2] The R&R refers to the Terrorism Risk Insurance Act as the "Terrorism Act." *See* Doc. 1194 at 1. For clarity, the Court will refer to it as the TRIA throughout this Order.

4

that the Eleventh Circuit did not hold that terrorism victim judgment creditors must obtain an OFAC license to execute on blocked assets subject to the TRIA. Doc. 1195 at 3 (citing *Stansell II*, 771 F.3d at 734).

The United States objects to the Magistrate Judge's refusal to recommend that the Court's order granting Plaintiffs' Motion contain an instruction that "no OFAC license is required to turn over the garnished funds to Plaintiffs." Doc. 1197 at 6 (citing Doc. 1194 at 7-8). Instead, the Magistrate Judge recommended that the Court conclude that a license is required under these facts; and that OFAC's regulations permit Plaintiffs to obtain the required license *subsequent* to execution of the assets. Doc. 1194 at 8. The United States contends that the R&R's reasoning is erroneous.

### a. The TRIA and the Clarification Act of 2018

The TRIA governs post-judgment attachment proceedings in certain cases arising out of terrorist acts under the civil remedies provision of the Anti-Terrorism Act, 18 U.S.C. § 2333. These acts include judgments such as the one held by Plaintiffs.

Congress amended Section 201 of the TRIA to provide that:

> Notwithstanding any other provision of law, and except as provided in subsection (b) [of this note], in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605A or 1605(a)(7) (as such section was in effect on January 27, 2008) of Title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

Pub. L. No. 107-297, 116 Stat. 2322 (codified at 28 U.S.C. § 1610 note).

The TRIA defines the term "blocked assets" at Section 201(d)(2) to include:

> [A]ny asset seized or frozen by the United States under section 5(b) of the Trading With the Enemy Act [("TWEA")] [now 50 U.S.C. § 4305(b)] or under sections 202 and 203 of the International

> Emergency Economic Powers Act [("IEEPA")] (50 U.S.C. [§§] 1701; 1702) [excluding certain assets subject to U.S. Government licenses and other diplomatic property].

28 U.S.C. § 1610 note.

Thus, Section 201(a) of the TRIA allows a plaintiff to execute a judgment on blocked assets of a terrorist party, or its agency or instrumentality, to satisfy a judgment against the terrorist party, where:

> (1) a person has obtained a judgment against a terrorist party;
> (2) the judgment is either
> (a) for a claim based on an act of terrorism, or
> (b) for a claim for which a terrorist party is not immune under § 1605(a)(7);
> (3) the assets are "blocked assets" within the meaning of TRIA; and
> (4) execution is sought only to the extent of any compensatory damages.

*Doe v. JPMorgan Chase Bank, N.A.*, 899 F.3d 152, 156 (2d Cir. 2018).

In 2018, Congress passed the Clarification Act which expanded the scope of the assets covered by the TRIA. Section 3 of the Clarification Act[3] changed the civil remedies available under the Anti-Terrorism Act and states:

> USE OF BLOCKED ASSETS TO SATISFY JUDGMENTS OF U.S. NATIONALS.—For purposes of section 201 of the Terrorism Risk Insurance Act of 2002 (28 U.S.C. 1610 note), in any action in which a national of the United States has obtained a judgment against a terrorist party pursuant to this section, the term "blocked asset" shall include any asset of that terrorist party (including the blocked assets of any agency or instrumentality of that party) seized or frozen by the United States under section 805(b) of the Foreign Narcotics Kingpin Designation Act (21 U.S.C. 1904(b)).

18 U.S.C. § 2333(e).

Therefore, the Clarification Act qualifies assets seized or frozen under the Kingpin Act as "blocked assets" under the TRIA, as long as those assets otherwise meet the TRIA's requirements for turnover. And the TRIA makes those assets subject to execution or attachment despite any other provision of law, including those assets designated pursuant to the Kingpin Act and the

---

[3] Pub. L. 115-253, § 3(a), Oct. 3, 2018, 132 Stat. 3183.

Foreign Narcotics Kingpin Sanctions Regulations, 31 C.F.R. § 598.314(b). *See* 31 C.F.R. § 598.205 (listing the Kingpin Act as authority for the regulation requiring licensure).[4] *See also* 28 U.S.C. § 1610 note.

As noted in the Statement, to the extent assets are subject to the TRIA, as they are here, Section 201 overrides the OFAC regulations that require a party to obtain a license before it can attach an asset owned by a terrorist group or its agent or instrumentality. *See, e.g. Estate of Heiser v. Bank of Tokyo Mitsubishi UFJ, New York Branch*, 919 F. Supp. 2d 411, 422 (S.D.N.Y. 2013) ("[I]n the event a court determines that blocked assets are subject to TRIA, those funds may be distributed without a license from OFAC."), *Martinez v. Republic of Cuba*, No. 07 Civ. 6607, ECF No. 79 (S.D.N.Y. Oct. 16, 2015), at 6-7 (same). *See also Harrison v. Republic of Sudan*, 802 F.3d 399, 407 (2d Cir. 2015), *adhered to on denial of reh'g*, 838 F.3d 86 (2d Cir. 2016), *and rev'd and remanded on other grounds*, 139 S. Ct. 1048 (2019)[5] ("Nonetheless, barring any contrary authority, a court will accept that no OFAC license is required on the authority of a DOJ Statement of Interest filed pursuant to 28 U.S.C. § 517."). *See also Doe*, 899 F.3d at 162 (Chin, J, dissenting) (noting that in *Harrison* the court held that "TRIA judgment holders are exempt from the normal

---

[4] But courts have recently (post-Clarification Act) held that pre-judgment lien creditors require an OFAC license to pursue outstanding debts. *See Versilia Supply Serv. SRL v. M/Y WAKU*, 371 F. Supp. 3d 1143 (S.D. Fla. 2019) (holding that plaintiff's *in rem* claims against a vessel owned by an individual designated a SDNT under the Kingpin Act were barred; the vessel was "blocked property" and plaintiff had not obtained an OFAC license to execute against the vessel, thus ending the inquiry). *See also P. Solar Energy, S.A. de C.V. v. U.S. Dept. of Treas.*, CV 18-48 (RDM), 2019 WL 1359283, at *2 (D.D.C. Mar. 26, 2019) ("The plain language of the regulation would seem to indicate that any transfer of funds made in violation of the Kingpin Act and OFAC's implementing regulations or orders is 'null and void.' ").

[5] The United States Supreme Court reversed the judgment on the basis that a litigant does not properly serve a foreign state in the courts of the United States under the Foreign Sovereign Immunities Act when a service packet that names the foreign minister is mailed to the foreign state's embassy in the U.S. *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1056 (2019).

OFAC licensure requirement," and concluding that the OFAC license requirement did not apply when financial institutions, acting as intermediary, received blocked electronic funds transfers).

Thus, Plaintiffs and the United States argue that Plaintiffs do not need an OFAC license for execution of Kingpin Act blocked assets under the TRIA on these specific facts. The Court agrees.

Upon consideration of the R&R, the Objection, the Statement, and upon this Court's independent examination of the file, it is determined that the R&R should be modified to reflect that Plaintiffs do not require an OFAC license under these circumstances and otherwise adopted.

Accordingly, it is now **ORDERED**:

(1) Plaintiffs' Objection is **SUSTAINED**.

(2) The Report and Recommendation of the Magistrate Judge (Doc. 1194) is modified to reflect that Plaintiffs can execute their judgment on blocked assets under the Kingpin Act without an OFAC license. No OFAC license is required under these circumstances.

(3) The Report and Recommendation of the Magistrate Judge (Doc. 1194) is otherwise adopted, confirmed, and approved and is made a part of this Order for all purposes, including appellate review.

(4) Plaintiff's Motion for Turnover Judgment under the Terrorism Act (Doc. 1185) is **GRANTED**.

(5) The Court finds the following:

   a. Aero Continente's assets identified in Ocean Bank's answer to the writ of garnishment are Specially Designated Narcotics Trafficker Kingpin blocked assets.

      b. Ocean Bank must turn over Aero Continente's assets to the Plaintiffs under the Terrorism Act.

(6) A Final Judgment in Garnishment against Ocean Bank for $928,756.29, subject to offset for Ocean Bank's statutory attorney's fees, will be entered by separate order.

(7) Ocean Bank shall submit a motion for its statutory costs and expenses, including attorney's fees, within fourteen days of this Order if Plaintiffs and Ocean Bank fail to agree on Ocean Bank's statutory costs and expenses.

(8) Plaintiffs shall pay Ocean Bank $100 under Section 77.28, Florida Statutes.

(9) Ocean Bank will be discharged from further liability under the Plaintiffs' Writ of Garnishment.

**DONE AND ORDERED** at Tampa, Florida on June 20, 2019.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
The Honorable Amanda Arnold Sansone
Counsel of Record