IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| KEITH STANSELL, et al., | |
| **Plaintiffs,** | |
| **v.** | **Civil Action: 09-cv-02308** |
| REVOLUTIONARY ARMED FORCES OF COLOMBIA (FARC), et al., | |
| **Defendants.** | |

## MOTION TO AMEND JUDGMENT PURSUANT TO RULE 60(A) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Samark López Bello, Yakima Trading Corporation, EPBC Holdings, Ltd., 1425 Brickell Ave 63-F LLC, 1425 Brickell Ave Unit 46b LLC, 1425 Brickell Ave 64e LLC, 200g PSA Holdings LLC, Leucadendra 325, LLC, and MFAA Holdings Ltd (collectively, "Movants"), by and through counsel of record, hereby file this Motion to Amend Judgment Pursuant to Rule 60(a) of the Federal Rules of Civil Procedure. The Clerk of Court made a clerical mistake in the Default Judgment issued in this case when she added the term "compensatory" next to each damage award, even though this Court's Order on the Plaintiff's Motion for Default Judgment did not include the word "compensatory" next to the damage awards. This clerical mistake must be corrected.

## I.      INTRODUCTION

### A.      The Anti-Terrorism Act Lawsuit Against The FARC Defendants

On November 12, 2009, Plaintiffs, and their representatives, brought an action under the Anti-Terrorism Act, 18 U.S.C. § 2338 ("ATA") for damages sustained as a result of being captured, tortured, and killed by members of the Revolutionary Armed Forces of Colombia (FARC).  Complaint (DE 1).

Plaintiffs made service on the FARC defendants and obtained procedural defaults against each one.  On June 7, 2010, Plaintiffs filed a Motion for Default Judgment seeking an assessment of damages for the injuries sustained by the survivors and the family members under the ATA. Motion for Default Judgment (DE 228), attached hereto as Exhibit A.  In their Motion for Default Judgment, Plaintiffs argued that the ATA provides for compensatory damages, treble damages, and the imposition of liability at any point along the causal chain of terrorism.  Exhibit A at 20. Thus, Plaintiffs knew, in 2010, that the ATA provided for two types of damages: compensatory and treble.

In seeking a default judgment, Plaintiffs argued that Section 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA") allows them to execute on the assets of persons not named in the original lawsuit.  Exhibit A at 35.  In their Motion, Plaintiffs noted that TRIA provides a procedure for executing on any future blocked assets of the FARC or its leaders:

> SEC. 201. SATISFACTION OF JUDGMENTS FROM BLOCKED ASSETS OF TERRORISTS, TERRORIST ORGANIZATIONS, AND STATE SPONSORS OF TERRORISM.
>
> (a) IN GENERAL- Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order **to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.** H.R. 3210, Terrorism Risk Insurance Act of 2002.

*Id.* (emphasis added). Thus, Plaintiffs knew, and acknowledged to this Court, that should they seek to execute against persons who are deemed agents or instrumentalities of the FARC, the recovery against those individuals would be limited to **compensatory damages.**  *See Martinez v. Republic of Cuba*, 149 F. Supp. 3d 469, 471 n.2 (S.D.N.Y. 2016) ("Martinet's [sic] judgment also includes

$20 million in punitive damages; however, TRIA Section 201 permits attachment only to the extent of compensatory damages.").

In seeking damages for Keith Stansell, Marc Gonsalves and Thomas Howes, Plaintiffs submitted evidence detailing their "1,967 days in captivity, including their beatings, psychological torture, constant threats of execution, malnourishment, being chained at the neck like an animal, grueling jungle marches, disease, lack of medical care and other severe emotional and physical distress." Exhibit A at 54. Plaintiffs Stansell, Gonsalves and Howes each requested a **compensatory damage award** of $19,670,000 plus an additional lump sum factor of an amount that the Court determined to be fair and reasonable based upon the horrific injury in fact. *Id.* This additional lump sum factor, Plaintiffs argued, was appropriate "in order to fully **compensate** the victim." *Id.* at 53 (emphasis added). Plaintiffs Stansell, Gonsalves and Howes then requested separate treble damages based on the final compensatory award. *Id*. at 54. In their motion, Plaintiffs Stansell, Gonsalves and Howes cited cases in which similar compensatory damages were awarded in order to assuage the Court that the amounts they sought in a default judgment were in line with other awards:

> See Cronin v. Islamic Republic of Iran, 238 F. Supp. 2d 222, 234-35 (D.D.C. 2002) (court awarded lump sum of $1.2 million in **compensatory damages** to hostage who was held captive for four days and who suffered severe beatings during that time; Surette v. Islamic Republic of Iran, 231 F. Supp. 2d 260, 264-69 (D.D.C. 2002) (court awarded per diem amount of $4,440,000 plus lump sum of $1 million in **compensatory damages** to the estate of a hostage who was held for 14 months prior to his death); Cicippio v. Islamic Republic of Iran, 18 F. Supp. 2d 62, 70 (D.D.C. 1998) (court awarded lump sum of $6.1 million in **compensatory damage**s to hostage who was held captive for 532 days and who suffered regular beatings);) (emphasis added)

*Id.* at 53.

The survivors of Thomas Janis requested damages for pain and suffering and noted that "[f]ederal courts have frequently awarded **compensatory damages** to surviving spouses and children of decedent victims of terrorist acts, both under the state sponsored exceptions to the

FSIA, and also under the ATA." *Id.* at 54 (emphasis added).  Plaintiffs then described that "[w]hile the loss suffered by a spouse is difficult to quantify, courts typically award between $8 million and $12 million for the emotional distress resulting from the death of a spouse." *Id.* Plaintiffs then provided examples of compensatory damage awards for surviving children, whose parents were victims of terrorism, ranging from $5 million to $20 million, before being awarded separate treble damages. *Id.* at 55-57.  Plaintiffs requested an award of non-economic damages of $12,000,000.00 to Judith Janis as spouse and $5,000,000.00 to each of the four surviving children (Christopher, Greer, Michael and Jonathan), with each award then subject to trebling under § 2333(a). *Id.* at 57.

On June 14, 2010, Judge Lazzara, in assessing damages for Plaintiffs Stansell, Gonsalves and Howes held as follows:

> Plaintiffs Stansell, Gonsalves, and Howes describe 1,967 days in captivity that included beatings, psychological torture, constant threats of execution, malnourishment, being chained at the neck like an animal, grueling jungle marches, disease, lack of medical care, and other severe emotional and physical distress. They also assert continued, permanent suffering of damages. (Dkt. 229, Exs. 1-8.) **They each request a compensatory award** of $19,670,000 ($10,000 per day in captivity), plus an additional lump sum factor of an amount based upon the horrific injury in fact, and trebling of the total award pursuant to 18 U.S.C. § 2333.

Order and Opinion, June 14, 2010 (DE 232), attached hereto as Exhibit B at 5 (emphasis added). Judge Lazzara explained that Plaintiffs' request was in line with compensatory awards in other cases: "[T]he requested **compensatory award** is appropriate inasmuch as federal courts have developed a damage calculation standard that grants former hostages roughly $10,000 per day of captivity in pain and suffering damages.".  *Id.* (emphasis added). As for the lump sum factor, Judge Lazzara reviewed the cases provided by Plaintiffs and decided that an additional $5,000,000 lump sum would be an appropriate award "in order to fully **compensate** the victim." *Id.* at 6 (emphasis added). Thus, it is clear that the Plaintiffs sought, and Judge Lazzara awarded, Plaintiffs Stansell,

Gonsalves, and Howes $24,670,000 in compensatory damages each, which was then subject to trebling, for a total award of $74,010,000 per person. Exh. A at 53, 54; Exh. B at 9 ("1. Plaintiffs Stansell, Gonsalves, and Howes are each entitled to an award in the amount of $74,010,000.").

As for the surviving spouse and children of Thomas Janis, Judge Lazzara reasoned, "federal courts have frequently awarded compensatory damages to surviving spouses and children of decedent victims of terrorist acts under the ATA. While the loss suffered by a spouse is difficult to quantify, courts typically award between $8 million and $12 million for the emotional distress resulting from the death of a spouse." Exhibit B at 7. As for the Janis children, Judge Lazzara cited the cases provided by Plaintiffs, including *Ungar v. Palestinian Auth.,* in which, as Plaintiffs explained in their motion, "the court awarded $10,000,000 **compensatory damages** to each surviving son for loss of companionship, society, and guidance and mental anguish, **trebled to $30,000,000 each** under the ATA," Exh. A at 57 (emphasis added). Based on this and other cases cited by Plaintiffs, Judge Lazzara ultimately determined that "it was reasonable to award non-economic damages of $12,000,000.00 to Judith Janis, as spouse, and $5,000,000.00 to each of the four surviving children (Christopher, Greer, Michael, and Jonathan), as requested, with each award then subject to trebling under § 2333(a)." Exhibit B at 8-9.

Judge Lazzara then entered a combined award for each Plaintiff as follows:

> ACCORDINGLY, it is ORDERED AND ADJUDGED:
>
> Plaintiffs' Motion for Entry of Final Default Judgment on Liability and Damages (Dkt. 228) is granted. Damages are awarded as follows:
>
> 1. Plaintiffs Stansell, Gonsalves, and Howes are each entitled to an award in the amount of $74,010,000.
>
> 2. Plaintiff Judith Janis is entitled to an award in the amount of $36,000,000.

3. Plaintiffs Christopher Janis, Greer Janis, Michael Janis, and Jonathan Janis are each entitled to an award of $15,000,000.

The Clerk shall enter judgment accordingly and close this case.

**DONE AND ORDERED** at Tampa, Florida, on June 14, 2010.

Exhibit B at 9.  In total, based on Plaintiffs' suggested calculations on compensatory damages, as well as caselaw showing that those compensatory damages were in line with other cases, Judge Lazzara awarded the Plaintiffs a total of $106,010,000 in compensatory damages, before trebling. The total amount of the award (compensatory damages plus treble damages) equaled $318,030,000.

On June 15, 2020, the Clerk of Court recorded the default judgment. Clerk of Court's Default Judgment (DE 233), attached hereto as Exhibit C.  The Default Judgment did not properly reflect Judge Lazzara's formal Opinion and award of damages; rather than repeat the language used by Judge Lazzara at the end of his Order, the Clerk's Default Judgment added the word "compensatory" next to each total award.  This language does not appear on Judge Lazzara's Order (see below).

| Judge Lazzara's Opinion and Order | Clerk's Default Judgment |
|---|---|
| 1.  Plaintiffs Stansell, Gonsalves, and Howes are each entitled to an award in the amount of $74,010,000.<br><br>2. Plaintiff Judith Janis is entitled to an award in the amount of $36,000,000.<br><br>3. Plaintiffs Christopher Janis, Greer Janis, Michael Janis, and Jonathan Janis are each entitled to an award of $15,000,000. | 1. Judgment is hereby entered for Plaintiff, Keith Stansell, for **compensatory damages** in the amount of $74,010,000.00 (Seventy Four Million and Ten Thousand Dollars).<br><br>2. Judgment is hereby entered for Plaintiff, Marc Gonsalves, for **compensatory damages** in the amount of $74,010,000.00 (Seventy Four Million and Ten Thousand Dollars). |

6

|  | 3. Judgment is hereby entered for Plaintiff, Thomas Howes, for **compensatory damages** in the amount of $74,010,000.00 (Seventy Four Million and Ten Thousand Dollars).<br><br>4. Judgment is hereby entered for Plaintiff, Judith Janis. for **<u>compensatory damages</u>** in the amount of $36,000,000.00 (Thirty Six Million Dollars).<br><br>5. Judgment is hereby entered for Plaintiff, Christopher Janis, for **<u>compensatory damages</u>** in the amount of $15,000,000.00 (Fifteen Million Dollars).<br><br>6. Judgment is hereby entered for Plaintiff, Greer Janis, for **<u>compensatory damages</u>** in the amount of $15,000,000.00 (Fifteen Million Dollars).<br><br>7. Judgment is hereby entered for Plaintiff, Michael Janis, for **<u>compensatory damages</u>** in the amount of $15,000,000.00 (Fifteen Million Dollars).<br><br>8. Judgment is hereby entered for Plaintiff, Jonathan Janis, for **<u>compensatory damages</u>** in the amount of $15,000,000.00 (Fifteen Million Dollars). |
|---|---|

Exhibit C at 1-2.

The Clerk inserted the words "compensatory damages" before each award. The Clerk's entry of default does not accurately reflect Judge Lazzara's Order. At no time did Judge Lazzara ever characterize the total award for each plaintiff as solely compensatory damages.

Judge Lazzara awarded $106,010,000 in compensatory damages, and then awarded treble damages under ATA.  The Clerk's error redefines $212,020,000 of treble damages into compensatory damages.  This error is significant.  The Clerk's inaccurate transcription of Judge Lazzara's Opinion and Order affects all persons and entities who are or will later be adjudicated to be, agents or instrumentalities of the FARC.

**B.      Registration Of Default Judgment In The Southern District Of Florida And Plaintiffs' Ex Parte Application For Attachment And Execution**

Plaintiffs knew or should have known that the Default Judgment contained the error by the Clerk of Court, as they knew that they had sought (and Judge Lazzara had ordered) $106,010,000 in compensatory damages, which was then trebled.  Rather than file a motion under Rule 60(a), Plaintiffs instead registered their judgment in the Southern District of Florida and other several other jurisdictions throughout the country. *See e.g., Stansell et al. v. FARC et al.,* Civil Action No. 10-mc-22724 (SDFla.) (DE 1).  That matter, initially filed on July 28, 2010, was administratively closed, and on February 12, 2019, the case was reassigned to the Honorable Robert N. Scola.  The Docket reflects that all entries in the previous case were administratively transferred to *Stansell et al. v. FARC et al.,* Civil Action No. 19-CIV-20896 ("SDFla. Action").

On February 13, 2019, Plaintiffs filed an ex parte Application seeking to attach and execute assets under TRIA, claiming that Samark López Bello was an agent and instrumentality of the FARC and owned a variety of properties and assets located in the district that were blocked by the Office of Foreign Assets Control ("OFAC").   Ps' *Ex Parte*, Expedited Motion for Issuance of Post-Judgment Writs, SDFla. Action, DE 18.

Without setting forth the details of the entire procedural history, relevant to this motion, the District Judge in the Southern District of Florida eventually found on September 26, 2019, after considering affidavits and testimony, that López was an agent or instrumentality of the

8

FARC.  That ruling made Movants' U.S.-based assets subject to execution under TRIA to satisfy the compensatory element of Plaintiffs' default judgment.  Order Adopting R&R, SDFla. Action, DE 247); TRIA Sect. 201(a) (blocked assets "shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable."").  Movants have appealed this finding, as well as a number of other procedural and substantive rulings, and the matter is currently awaiting briefing before the Eleventh Circuit Court of Appeals.

C.      **Plaintiffs' Motion For Order Determining That Plaintiffs' ATA Judgment Is For Compensatory Damages And Enforceable In Full Under TRIA**

To date, by their own admission, the Plaintiffs have executed and recovered more than $108,000,000 against Movants' assets, two million more than the amount of compensatory damages that were awarded by Judge Lazzara on June 14, 2010.  Ps' Expedited Motion for Order, SDFla. Action, DE 422.  Plaintiffs, fully cognizant that the law limits their recovery against third parties under TRIA to the amount of compensatory damages awarded against the FARC, and knowing that the most recent forced sale of an asset would place their recovery over $106,010,000, filed an Expedited Motion requesting that the Southern District Judge essentially modify Judge Lazzara's Opinion and Order of June 14, 2010 and instead impose the erroneous Default Judgment.

Specifically, Plaintiffs sought a declaration that Judge Lazzara awarded them $318,030,000 and that the entire award was for compensatory damages.  In support of their Motion, Plaintiffs claimed:

> "Judge Richard Lazzara of the Middle District—the Judge who had entered the ATA judgment—expressly stated in the judgment that the trebled damage awards were for 'compensatory damages.'" See MDFL No. 09-2308, DE 233 Judgment (registered in this district as DE 1 in prior case 1:10-cv-22724) (specifying that each Plaintiff's award was exclusively for "compensatory damages")."

*See* Plaintiffs' Expedited Motion (SDFLA DE 422) at 2-3, attached hereto as Exhibit D.  Plaintiffs

representation, however, is false. Judge Lazzara **never stated** that the entire $318,030,000.00

award was for compensatory damages in his June 14, 2010 Opinion and Order. The docket entry

cited by Plaintiffs – DE 233 in the case at bar – was not signed by Judge Lazzara, but was rather

the erroneous default judgment signed by a deputy Clerk of Court.  Default Judgment (DE 233),

Exhibit C.

Quite to the contrary, Judge Lazzara awarded the sum of $106,010,000 in compensatory

damages based on Plaintiffs' own request in their Motion for Default Judgment.  Plaintiffs did not

request, nor did Judge Lazzara, award them $318,030,000 in compensatory damages. *See* Exhibits

A and B.  Plaintiffs' Motion for Default Judgment set forth the elements of compensatory damages

for pain and suffering, emotional distress and other non-economic awards in the same context.

Plaintiffs then requested an additional lump sum multiplier for pain and suffering relating to the

prolonged captivity.  Plaintiffs also requested a separate treble damages award.

Now, apparently dissatisfied with the collection to date, Plaintiffs argued in the Southern

District of Florida that treble damages are the same as compensatory damages.  Their newly

contrived argument contradicts the representations they made to this Court during the default

judgment motion.  Specifically, even though they requested a separate award for compensatory

damages and treble damages under the ATA, Plaintiffs now contend the entire award was

compensatory.  Plaintiffs should be judicially estopped from taking a contrary position, ten years

later, against individuals who were neither original defendants nor original judgment debtors.

Movants opposed Plaintiffs' motion to modify the original default judgment, making these same

arguments, which were ignored by the Court in the Southern District, based on the Clerk's

mistaken entry.  Movant's Opp. Brief, SDFla. Action, DE 450, attached hereto as Exhibit E.

In their papers, Plaintiffs misrepresented to the Southern District Court that Judge Lazzara repeatedly stated that the judgment was for "compensatory damages":

> Judge Richard Lazzara of the Middle District—the Judge who had entered the ATA judgment—expressly stated in the judgment that the trebled damage awards were for "compensatory damages.']:   *See* MDFL No. 09-2308, DE 233 Judgment (registered in this district as DE 1 in prior case 1:10-cv-22724) (specifying that each Plaintiff's award was exclusively for "compensatory damages")

Exh. D at 2-3; Ps' Reply Brief, SDFla. Action, DE 453 at 1, attached hereto as Exhibit F ("when Judge Lazzara used the word "compensatory damages" 8 times in his Order, Judge Lazzara didn't *really* mean "compensatory"). The documents, however, speak for themselves: it was not Judge Lazzara who "repeatedly stated that the judgment was for 'compensatory damages.'" To the contrary, it was the Clerk's mistaken entry on the Default Judgment that "repeatedly stated that the judgment was for "compensatory damages."

On July 16, 2020, the Honorable Robert N. Scola granted Plaintiffs' Motion and repeated the Plaintiffs' misrepresentation about the record, stating:

> District Court Judge Lazzara from the Middle District of Florida entered the Plaintiffs' ATA judgment for compensatory damages in the amount of $318,030,000. (ECF No. 1-1) (repeatedly stating that the judgment was for "compensatory damages"). And the Eleventh Circuit has referred to the judgment in this case as compensatory damages. *Stansell v. FARC*, 704 F.3d 910, 913 (11th Cir. 2013).

(SDFLA DE 460 at 2), attached hereto as Exhibit G.  As set forth above, the Clerk erroneously inserted the words "compensatory damages" before each individual award when recording the judgment. It is apparent that the Clerk's mistake has resulted in another federal judge relying on this erroneous entry.

Plaintiffs further mischaracterized the original Default Judgment arguing that the Eleventh Circuit has determined that the original judgment solely reflected compensatory damages.  This too is false.  The Eleventh Circuit has never ruled on the question of whether compensatory

damages include treble damages in this case.  Rather, the quotes Plaintiffs selectively excerpt from the Eleventh Circuit Opinion merely repeat the Plaintiffs' unchallenged characterization of the Clerk's mistaken entry in the form of *dicta*. Plaintiffs misrepresented to Judge Scola that the characterization of the $318,030,000.00 award as compensatory and "the very nature of that Judgement was central to the 2013 appeal." Exh. F at 4. However, the Eleventh Circuit *clearly* stated what was at issue in the case – and whether the amount of damages was characterized as fully compensatory or compensatory plus trebled was **not** at issue: "This case focuses **solely** on the interpretation of § 201(d)(2) of the Terrorism Act, which defines "blocked assets" for purposes of that statute." *Stansell v. Revolutionary Armed Forces of Colombia*, 704 F.3d 910, 914 (11th Cir. 2013) (emphasis added).

Based on these reasons, and those that follow, Movants request this Court to correct the Clerk's mistake and amend the June 15, 2010 default judgment to conform to Judge Lazzara's Opinion and Order of June 14, 2010.  This correction is necessary to avoid manifest injustice.

## II.    ARGUMENT

### A.    The Default Judgment Entered By The Clerk Of Court Must Be Corrected To Conform To The District Court's Opinion And Order Of June 14, 2010.

"It is axiomatic that courts have the power and the duty to correct judgments which contain clerical errors or judgments which have issued due to inadvertence or mistake." *Am. Trucking Ass'ns v. Frisco Transp. Co.*, 358 U.S. 133, 145 (1958).  Rule 60(a) of the Federal Rules provides that "the court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice." Fed.R.Civ.P. 60(a).[1]

---

[1]  While the Movants could find no cases in the Eleventh Circuit on Rule 60(a), the Eleventh Circuit has held that nonparties have standing to file a motion under Rule 60(b) if the

"Under this rule the court may correct errors, created by mistake, oversight, or omission, that cause the record or judgment to fail to reflect what was intended at the time of trial."  *Warner v. City of Bay St. Louis*, 526 F.2d 1211, 1212 (5th Cir. 1976)(citations omitted);[2] *Mullins v. Nickel Plate Mining Co., Inc.,* 691 F.2d 971, 973 (11th Cir. 1982).

"While such mistakes are not necessarily made by the clerk, they are often errors made in transcribing or recording the judgment."  *Warner*, 526 F.2d at 1212.  Since the court is correcting merely clerical errors, Rule 60(a) explicitly states that the correction may be made at any time. *Weeks v. Jones*, 100 F.3d 124, 129 (11th Cir. 1996).  As the Fourth Circuit put it:

> Rule 60(a) is not confined just to fixing typographical and other clerical errors. The Rule's text also authorizes a court to correct "a mistake arising from oversight or omission." Fed. R. Civ. P. 60(a). Such a mistake occurs when there is an inconsistency between the text of an order or judgment and the district court's intent when it entered the order or judgment. A "mistake arising from oversight or omission" also includes an unintended ambiguity that obfuscates the court's original intent. Rule 60(a) authorizes a district court to correct either such mistake to conform the text with its original intent.

*Sartin v. McNair Law Firm PA*, 756 F.3d 259, 265–66 (4th Cir. 2014).  "[T]he scope of a court's authority under Rule 60(a) to make corrections to an order or judgment is circumscribed by the court's intent when it issued the order or judgment." *Id.* at 266. The court's original intent "'may

---

"nonparty's interests are directly affected by the final judgment." *Kem Mfg. Corp. v. Wilder*, 817 F.2d 1517, 1521 (11th Cir. 1987).  By virtue of the Southern District Court's ruling that López is an agency of instrumentality of the FARC, a ruling that López disputes and is appealing, López and the Movants' interests in property have been directly affected by the final judgment and indeed have been sold in order to satisfy the final judgment.  Thus, Movants have standing. Even if this Court were to find that Movants did not have standing, the Court may, on "its own initiative" fix the clerical mistake. This Court should not wait for Plaintiffs to come forward – they have used the clerical mistake to their benefit and have failed to seek correction of the error in the past decade since the default judgment was issued.

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

be ascertained through consideration of contemporaneous documents, such as a memorandum opinion or transcript, and by the presiding judge's own subsequent statements regarding his intent.'" *Id.*

Movants' requested relief falls squarely within this Court's power under Rule 60(a) to correct errors and to fix the inconsistency between the text of the June 15, 2010 Default Judgment and Judge Lazzara's June 14, 2010 Opinion and Order. As set forth above, the Clerk's entry of default was transcribed improperly. The Clerk inserted the words "compensatory damages" before each damage award. The Clerk's entry of default does not accurately reflect Judge Lazzara's Order. At no time did Judge Lazzara ever characterize the total award for each plaintiff as solely compensatory damages. As evidenced from Plaintiffs' offers of proof in their Motion for Default Judgment and Judge Lazzara's Opinion, he awarded $106,010,000 in <u>compensatory damages</u>. The Court then awarded treble damages, which are designed to deter future acts of terrorism, not compensate the victim for pain and suffering type damages.

Treble damages under the ATA are not compensatory damages and Judge Lazzara never held that treble damages under the ATA were compensatory damages. *See* Exhibit B. The Clerk's error must be corrected to accurately reflect the Court's June 14, 2010 Opinion and Order.

**B.   This Court Should Find That Plaintiffs Are Judicially Estopped From Arguing That The Entire Amount Of The Court's Order -- $316,030,000 Consists Of Compensatory Damages.**

Plaintiffs' current position, that the entire $318,030,000 damage award is compensatory, is inconsistent with their position in 2010 when they sought $106,010,000 in compensatory damages and a separate award for treble damages. *See* Exhibit A at 54. Plaintiffs are now estopped from taking a contrary position in this litigation.

> Under the doctrine of judicial estoppel, "where a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, he may not thereafter, simply because his interests

> have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Allapattah Servs., Inc. v. Exxon Corp.,* 372 F. Supp. 2d 1344, 1367 (S.D. Fla.2005) (citing *New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S. Ct. 1808, 149 L.Ed.2d 968 (2001)). The doctrine is used to prevent "a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Allapattah Servs.,* 372 F .Supp. 2d at 1367 (citing *New Hampshire,* 532 U.S. at 749, 121 S. Ct. 1808). Thus, "[j]udicial estoppel is an equitable doctrine invoked at a court's discretion, designed to protect the integrity of the judicial process." *Stephens v. Tolbert,* 471 F.3d 1173, 1177 (11th Cir. 2006).

*In re Gosman,* 382 B.R. 826, 841 (S.D. Fla. 2007).

As the Supreme Court noted in *New Hampshire v. Maine*, the purpose of the doctrine is to "prohibit[] parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire,* 532 U.S. at 750. The Supreme Court set forth three nonexclusive factors for courts to consider in determining whether the doctrine of judicial estoppel applies: "[f]irst, a party's later position must be "clearly inconsistent" with its earlier position[;] second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; . . . a third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750–51 (internal citations omitted].

Here, Plaintiffs current position that the entire $318,030,000 is compensatory is indisputably inconsistent with its position in the motion for default judgment that it sought $106,010,000 in compensatory damages before trebling. *See, e.g.*, Exh. A at 54 (Plaintiffs' counsel requested "a **compensatory damage award** of $19,670,000 plus an additional lump sum factor of an amount that the Court determines to be fair and reasonable" for the surviving Plaintiffs; *id.* at

57 (Plaintiffs' counsel requested "that this court award non-economic damages of $12,000,000.00 to Judith Janis as spouse and $5,000,000.00 to each of the four surviving children . . . with **each award subject to trebling** under § 2333(a)."). Second, by providing other court judgments on the proper amount of compensatory damages, Plaintiffs clearly persuaded Judge Lazzara in the Middle District litigation that Plaintiffs were entitled to these compensatory damages before trebling. *See e.g.* Exh. A at 52-54 (citing cases setting appropriate measure of damages); *id.* at 53 ("The $10,000 per day figure is meant to **compensate** a former hostage for their intense suffering, including, inter alia, loneliness, beatings, and a lack of hygiene.") (emphasis added); Exh. B at 7 (Judge Lazzara found that "federal courts have frequently awarded **compensatory damages** to surviving spouses and children of decedent victims of terrorist acts under the ATA . . . courts typically award between $8 million and $12 million.")(emphasis added). Plaintiffs are most certainly trying to impose an unfair advantage and detriment on Movants by now taking the inconsistent position that all $318,030,000 in damages were compensatory in nature. Should Plaintiffs file a response in opposition to this Motion, this Court should find that Plaintiffs are judicially estopped from now claiming a position inconsistent from the one they successfully advocated before this Court.

### IV.   LOCAL RULE 3.01(g) CERTIFICATE

Counsel for Movants have consulted with has conferred with counsel for Plaintiffs, who opposes the requested relief.

### V.   CONCLUSION

Movants request this Court to enter an order, amending the Default Judgment in the following manner:

1. Judgment is hereby entered for Plaintiff, Keith Stansell in the amount of $74,010,000.00 (Seventy Four Million and Ten Thousand Dollars).

2. Judgment is hereby entered for Plaintiff, Marc Gonsalves in the amount of $74,010,000.00 (Seventy Four Million and Ten Thousand Dollars).

3. Judgment is hereby entered for Plaintiff, Thomas Howes in the amount of $74,010,000.00 (Seventy Four Million and Ten Thousand Dollars).

4. Judgment is hereby entered for Plaintiff, Judith Janis in the amount of $36,000,000.00 (Thirty Six Million Dollars).

5. Judgment is hereby entered for Plaintiff, Christopher Janis in the amount of $15,000,000.00 (Fifteen Million Dollars).

6. Judgment is hereby entered for Plaintiff, Greer Janis in the amount of $15,000,000.00 (Fifteen Million Dollars).

7. Judgment is hereby entered for Plaintiff, Michael Janis in the amount of $15,000,000.00 (Fifteen Million Dollars).

8. Judgment is hereby entered for Plaintiff, Jonathan Janis in the amount of $15,000,000.00 (Fifteen Million Dollars).

Respectfully submitted,

 /s/ Adam S. Fels
**Adam S. Fels**
Florida Bar No. 114917
Fridman Fels & Soto, PLLC
2525 Ponce de Leon Boulevard, Suite 750
Coral Gables, FL 33134
Tel : 305-569-7701
afels@ffslawfirm.com

Counsel for Movants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing has been filed via the Court's CM/ECF system, which will send an electronic copy of the foregoing to all counsel of record, on this 23rd day of July, 2020.

 /s/  Adam S. Fels